**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
:
In re:                                                                          :        Chapter 15
:
MURRAY HOLDINGS LIMITED,[1]                            :        Case No. 15-11231 (MG)
:
       Debtor in a Foreign Proceeding.              :
:
---------------------------------------------------------------x

# DECLARATION OF VICTORIA UNSWORTH IN SUPPORT OF CHAPTER 15 PETITION AND REQUESTED RELIEF

---

[1] The Isle of Man registered number of Murray Holdings Limited is 080684C. The mailing address and registered office of Murray Holdings Limited is 69 Athol Street, Douglas, Isle of Man IM1 1JE.

I, Victoria Unsworth, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

**I.      Introduction**

1. I am a Director of Advocates Smith Taubitz Unsworth Ltd, an Isle of Man law firm. My firm represents Kaupthing hf. ("Kaupthing") in relation to the Isle of Man liquidation proceedings of Murray Holdings Limited, formerly Isis Investments Limited (in liquidation) (the "Company") and the related scheme of arrangement in the Isle of Man among the Company and its creditors (the "Isle of Man Scheme"). As a result of the settlement and compromises reached in the Isle of Man Scheme, Kaupthing is the ultimate equity owner of the Company. I am the lead Director at my firm dealing with this case.

2. I submit this declaration (this "Declaration") in support of (a) the chapter 15 Petition of Murray Holdings Limited and (b) the *Verified Petition of the Foreign Representative for Recognition of the Isle of Man Foreign Proceeding as a Foreign Main Proceeding, and Motion for (I) Recognition and Enforcement of the Isle of Man Scheme of Arrangement and the Order of the Isle of Man Court Sanctioning the Isle of Man Scheme of Arrangement, (II) a Final Decree and (III) Certain Related Relief*.

3. I have read the *Declaration of Arnaldur Jon Gunnarsson in Support of Chapter 15 Petition and Requested Relief* (the "Gunnarsson Declaration"). I rely on the Gunnarsson Declaration for the factual background relevant to the views which I express in this Declaration.

4. I obtained a Bachelor of Laws Degree with Honours in 2003 and then undertook and passed with commendation the Post Graduate Diploma in Legal Practice in 2004. I was admitted as an Advocate in the Isle of Man on 26 March 2007, following a two

2

year training contact and successfully passing the Manx Bar Exams. I am qualified in the Isle of Man to practice in all areas of law and to appear before all courts without restriction, including the Privy Council on an Isle of Man Appeal. Following my admission to the Manx Bar I have continued to undertake training relevant to my areas of practice, on a regular basis. In addition, I run Advocacy training for all members of the Manx Bar and provide lectures to Trainee Advocates on a twice yearly basis.

5. I currently reside in the Isle of Man, where I work as a Director at Advocates Smith Taubitz Unsworth Ltd. My practice focuses on insolvency, restructuring, civil and commercial litigation. As a practising Isle of Man Advocate, I am competent to testify with respect to the Isle of Man legal matters discussed herein, which are well within my experience.

6. Copies of the statutory provisions of Isle of Man law and decisions of the Isle of Man and English Courts cited in this Declaration are attached hereto as Exhibit A.

7. I am over the age of 18 and, if called to testify, would testify competently to the facts set forth herein.

**II.  Isle of Man Legal System**

8. I set out below a brief overview of the Isle of Man legal system.

9. The Isle of Man is a self-governing British Crown dependency, although it is not part of the United Kingdom. The head of state is Queen Elizabeth II, who holds the title of the Queen, Lord of Mann. The courts of the Isle of Man administer justice in accordance with local statutes, subordinate legislation, statutes passed by the parliament of the United Kingdom that have been expressly extended to the Isle of Man, orders of Her Majesty's Judicial Committee of the Privy Council of the UK (the "Privy Council") applicable in the Isle of Man, and principles of common law.

10. The High Court of Justice of the Isle of Man (the "Isle of Man Court") is the court of first instance for insolvency matters, with appeals lying to the Manx Appeal Court (the Staff of Government Division) (the "Court of Appeal"), and finally to the Privy Council.

11. The doctrine of judicial precedent applies in the Isle of Man. The structure of the court system is hierarchical, with the courts being bound by the *rationes decidendi* of decisions of the courts above. The *rationes decidendi* of decisions of the Privy Council are therefore binding on the Court of Appeal and the Isle of Man Court. The *rationes decidendi* of decisions of the Court of Appeal are similarly binding on the Isle of Man Court. The Isle of Man Court will generally follow the *rationes decidendi* of its previous decisions, unless satisfied that they are clearly wrong.

12. There is a comparatively small body of reported case law in the Isle of Man, contained in the Manx Law Reports and published on the court's website www.judgments.im. In the absence of binding Isle of Man case law, the Isle of Man courts will look to English and other common law jurisdiction authorities, which are highly persuasive, but not binding. As a general rule, the Isle of Man courts follow English authorities to the extent that they are not inconsistent with either Isle of Man statutory provisions or Isle of Man authorities, and to the extent that they do not relate to English statutory provisions which have no equivalent in the Isle of Man or exceptionally, some local condition which gives good reason for not following the English decision. Decisions of courts in other Commonwealth jurisdictions are also of persuasive, but not binding authority.

**III.    Isle of Man Companies**

13. Isle of Man companies may be incorporated pursuant to the Companies Acts 1931-2004 (the "Companies Act") or the Companies Act 2006.[2] All companies must maintain registered offices in the Isle of Man to which all communications and notices may be addressed or served, and where matters such as the administration of annual filings and the payment of annual fees with the companies registry maintained by the Isle of Man Department of Economic Development (the "Registrar") are usually dealt with. Isle of Man companies are also required to maintain statutory registers of members (i.e. shareholders), mortgages, charges, and directors.

14. As a result of the introduction of the Isle of Man Companies Act 2006 on 1 November 2006, there are now two separate company law regimes in the Isle of Man: one governed by the Companies Act; and one governed by the Companies Act 2006.

15. The English Companies Act 1929 was the foundation for the Companies Act. Many (but not all) provisions in Isle of Man legislation mirrored the equivalent English statutes. Companies incorporated under the Companies Act are subject to a traditional English company law regime. For example:

    (a)    Companies Act companies which are limited by shares are required to comply with strict capital maintenance rules;

    (b)    Companies Act companies which are limited by shares must have an authorised share capital;

    (c)    Companies Act companies must prepare accounts; and

    (d)    Companies Act companies are not allowed to have corporate directors.

16. The types of company available under the Companies Act include:

    (a)    a company limited by shares (this is by far the most popular type of company used);

    (b)    a company limited by guarantee and not having a share capital;

---

[2] References to section numbers in this Declaration are references to sections of the Companies Act 1931, as amended from time to time unless otherwise specified.

5

 (c) a company limited by guarantee and having a share capital; and

 (d) an unlimited company having a share capital.

17. Once incorporated, a Companies Act company will have separate legal personality and may continue in existence indefinitely. Generally, save for the case of unlimited companies, a member of a Companies Act company will have no liability as a member for the liabilities of the company itself. In the case of a company limited by shares, members will only be liable to pay to the company the amount (if any) unpaid on their shares (which will consist of the nominal value of the shares together with any share premium which may have been agreed between the company and the member).

18. Every Companies Act company must have a memorandum of association and articles of association. All companies incorporated after the Companies Act 1986 came into force simply have the capacity and "the rights, powers and privileges of an individual," and there is no requirement to include a long list of objects in the company's memorandum of association. The articles of association regulate the internal affairs and management of the company. The Companies Act prescribes model sets of articles of association for adoption by companies. The model set of articles of association for a company limited by shares is known as Table A. A company limited by shares can either exclude Table A or, as is more common, adopt Table A subject to appropriate modifications.

19. Every Companies Act company must have at least two individual directors. Corporate directors are not permitted. There is no requirement that the directors of a Companies Act company must be resident in the Isle of Man.

20. The management of the company is usually vested in the board of directors collectively. The proceedings at board meetings are governed by the company's

articles of association which usually provide that the directors may conduct their proceedings as they think fit. At board meetings directors will exercise their powers by resolutions which are passed in the manner set out in the company's articles of association. They decide usually by the majority of votes of those directors present. The chairman of the board of directors is usually given a casting vote by the articles of association. The articles of association normally also enable directors to pass resolutions as written resolutions without the need for a meeting. Such written resolutions must be in writing and signed by every director entitled to receive notice of a meeting of directors. Within one month of any change in a company's directors or their particulars, details of the change must be sent to the Companies Registry for filing and is therefore a matter of public record.

21. Private companies limited by shares and private companies limited by guarantee can have a single member. All other types of Companies Act companies must have at least two members.

**IV.    Liquidation Proceedings**

22. Mr Andrew Paul Shimmin of Shimmin Wilson & Co was appointed liquidator of the Company by the Isle of Man Court on 29 March 2010 pursuant to section 174 of the Companies Act.

23. The liquidation process in the Isle of Man is very similar to that which applied in England and Wales before the introduction of reforms enacted in the Insolvency Act 1986. The role of the liquidator is to realize and distribute the company's assets. In many cases, including that of the Company, the liquidation proceeding is commenced by petition to the Isle of Man Court and is supervised by the Isle of Man Court. Once a Winding Up Petition has been presented to the Court the Petitioning Creditor must advertise the Petition in local Isle of Man newspapers as well as the London Gazette.

       All hearings are held in public, unless the Court Orders otherwise, and any Creditor or interested person may attend the hearings. At the first hearing any Creditor or interested person will be given the opportunity to make representations to the Court as to the Winding Up of a company. Following the first hearing, and if a Winding Up Order is made, the Provisional Liquidator and Deemed Official Receiver appointed by the Court will advertise the fact of the Order being made, which will also be lodged forthwith with the Registrar, and Creditors' meeting will be advertised. In addition, the Provisional Liquidator and Deemed Official Receiver will contact all known and potential Creditors to advise of the Winding Up.

24. It is not possible for a company to exit an Isle of Man liquidation proceeding other than through dissolution, but a liquidation may be permanently stayed in appropriate circumstances. Following such a stay, the liquidator may vacate office and directors of the company assume executive power and authority in accordance with the company's constitution, unless and until the Isle of Man Court orders that the liquidation proceedings be resumed. In the case of the Company, Mr Shimmin vacated office at midnight on 31 March 2015 pursuant to the Appointment Order (as defined in the Gunnarsson Declaration and attached thereto as Exhibit B). The Appointment Order ordered that "*. . . All further proceedings in the winding up of Isis Investments Limited (in liquidation) ("the Company") be and hereby are stayed altogether with effect from midnight on 31 March 2015.*"

## V.   Isle of Man Schemes of Arrangement

### A.   Summary

25. Pursuant to section 152 of the Companies Act (Power to compromise with creditors and members), the Isle of Man Court may sanction a compromise or arrangement between a company and its creditors or any class of them, or between a company and

8

its members[3] or any class of them. In practice, a "compromise" or an "arrangement" under section 152 of the Companies Act is known as a "scheme of arrangement".[4]

26. A scheme of arrangement is therefore a statutory form of compromise or arrangement with a company's creditors or members (or one or more classes thereof). It allows a company to overcome the absence of consent of a minority of its creditors or members (as the case may be) to a compromise of their rights, provided that the requisite statutory majorities approving the scheme are achieved and the Isle of Man Court subsequently sanctions the Isle of Man Scheme.

27. The proceedings for a scheme of arrangement can be commenced by the company, by any creditor or member of the company, or, if the company is subject to winding up proceedings, by its liquidator.

28. A scheme of arrangement in the Isle of Man involves the three stage process summarized below:

   i. an initial hearing, at which the Isle of Man Court is requested to order the company to convene one or more meetings of creditors or members to consider and, if thought fit, approve the scheme;

   ii. the meeting(s) of classes of creditors or members to approve the scheme by voting; and

   iii. a second hearing, at which the Isle of Man Court considers whether to sanction the scheme.

29. To become binding, a scheme of arrangement must be approved by a majority in number representing 75 percent by value of each class of creditors or members present in person or proxy and voting at each of the applicable scheme meeting(s),

---

[3] The term "member" is defined in section 25 of the Companies Act as the subscribers to the memorandum of a company and any other person who subsequently agrees to become a member.
[4] In the scheme context, the expressions "compromise" or "arrangement" have been construed as having the broadest possible meaning requiring only some element of "accommodation" or "give and take" on each side and "an element of reciprocity of benefit": see, for example, *Re NFU Development Trusts* [1972] 1 WLR 1548 at 1555C-D and *Re Bluebrook Ltd* [2009] EWCH 2114(Ch) at 72.

9

and sanctioned by order of the Isle of Man Court.[5] If approved by the requisite majorities and sanctioned by the Isle of Man Court, the scheme becomes binding on the company and on each class of creditors or members that it affects, including those creditors or members who voted against it or who did not vote at all. If one or more classes do not approve the scheme by the statutory majorities it cannot be sanctioned, there is no provision to "cram down" a dissenting class.

30. For an overview of the terms and conditions of the Isle of Man Scheme please refer to Section IV of the Gunnarsson Declaration.

### B.    Convening Hearings

31. The process of implementing a scheme of arrangement is commenced by an application to the Isle of Man Court for an order to convene a meeting of each relevant class of member or creditor.[6] The application is made by the issue of a Form HC8A in the Isle of Man Court together with a witness statement and a draft order including the directions requested from the Isle of Man Court. The witness statement is usually made by a director of the company proposing the scheme or if the company is in liquidation, the liquidator. An advanced draft of the scheme's explanatory statement is generally attached as an exhibit to the witness statement and the most important terms of the scheme are explained to the Isle of Man Court at this hearing.

32. The Isle of Man Court will decide at this first stage whether to order that the meeting(s) at which the proposed scheme will be voted upon are to be convened. Following the hearing, the court may then issue an order directing that the meeting(s) be convened. This order appoints someone to act as a chairman of the meeting(s) and directs him to report the result to the Isle of Man Court.[7] It will also direct that any

---

[5] Pursuant to section 152(3) of the Companies Act the Isle of Man Court's order is of no effect until a copy of it has been delivered to the Registrar for registration. That is a purely administrative process.
[6] Section 152(1) of the Companies Act.
[7] *Re Abbey National plc* [2004] EWHC 924 (Ch) at paragraph 14.

necessary advertisements are made and that the explanatory statement from the company be circulated to members or creditors (as relevant) and notices convening the meeting(s) are sent to members to creditors (as relevant), together with the forms of proxy.

33. The Isle of Man Court may also be addressed as to the proposed constitution of the meetings of classes of members or creditors voting on the proposed scheme. A company is free to select the creditors or members to whom a scheme should be put. Therefore, a company need not include in a scheme any classes of its creditors whose rights are not altered by the terms of the scheme.[8]

34. The company should group such creditors or members into classes, based on their ability to reasonably consult together with a view to their common interest, and hold a separate meeting for each class. A company is free to configure the classes itself, provided that the rights of the creditors within a class and the effects of the scheme on those rights are not so dissimilar as to make it impossible for those creditors to consult together with a view to acting in their common interest.

35. The composition of classes is a fact specific question. In the conduct of this exercise, it is necessary to ensure not only that those whose rights really are so dissimilar that they cannot consult together with a view to a common interest should be treated as parties to distinct arrangements, but also that those whose rights are sufficiently similar to the rights of others that they can properly consult together should be required to do so, lest by ordering separate meetings the Isle of Man Court gives a veto to a minority group.[9] In other words, the Isle of Man Court should adopt a broad, rather than a narrow, approach to class composition where there is any doubt about the matter. In order to remain in the same class, creditors (or, as the case may be,

---

[8] *Sea Assets Limited v Perusahaan Perseroan (Persero) PT Perusahan Penerbangan Garuda Indonesia* [2001] EWCA Civ 1696 at [45], [51] and [66].
[9] *Re Hawk Insurance Company Limited* (ibid) at 519d-f per Chadwick LJ.

11

members) may have rights which are different, but they should not have rights which are so different that they cannot reasonably consult together.

36. Jurisdiction is relevant at the convening hearing stage as well as the sanctioning hearing stage because the Isle of Man Court will not be able to order the relevant shareholder or creditor meetings to be convened or grant a sanction order if the court does not have jurisdiction. The Isle of Man Court must therefore be satisfied that there are no obvious issues with jurisdiction on the fact of the evidence put before it.

37. The notice of a meeting to consider a scheme of arrangement must be accompanied by a statement providing creditors and members with sufficient information to enable them to make an informed decision.

38. The applicant should also satisfy the Isle of Man Court at the convening hearing that the explanatory statement is sufficient to enable a member or creditor: (i) "to exercise a reasonable judgment as to whether the [scheme is] in his interest or not"; and (ii) "to reach a sensible decision on the pros and cons of the [scheme]."[10]

39. The required standard of disclosure has been described in the following terms in *Residues Treatment & Trading Co Ltd v Southern Resources Ltd* (1988) 14 ACLR 375:

> "**Sufficiency of information is a matter of fact and degree**. The directors have a **duty** in equity **to give** to shareholders [or as the case may be, creditors] **sufficient information** for them **to make informed decisions about proposals to be put** to them **at meetings**. The duty is one of long standing. It has been variously expressed in a number of cases. The facts peculiar to each case tend to affect or colour the language in which that duty in equity is expressed.
> …
> **The essence of the duty is the requirement of reasonableness or fairness** in the circumstances, having regard to the interests of the company as a whole. A surfeit of information may well obscure the purpose of the resolution. A lack of information may constitute misrepresentation by omission. **It is a matter of**

---

[10] *Re Heron International NV and others* [1994] 1 BCLC 667 at 675.

12

> *sensible judgment by the directors [or as the case may be, liquidators] in each case and ultimately by the court if complaint is made to it. [at 377-8]*
>
> *...*
> *it is unnecessary for the directors to give to shareholders [or as the case may be, creditors] in a notice convening a meeting of this kind every piece of information which might conceivably affect their voting...* ***It is sufficient if directors make a full and fair disclosure of all matters within the knowledge of the directors which would enable*** *shareholders [or creditors] to make* ***a properly informed judgment*** *on the matters intended to be submitted to them. [at 394]"* (per White J, emphasis added).[11]

40. At the convening hearing of the Isle of Man Scheme, His Honour Deemster Doyle made an order (the "<u>IOM Convening Order</u>"), attached hereto as <u>Exhibit B</u>, convening a meeting of the Company's Scheme Creditors for the purpose of considering and if thought fit, approving (with or without modification) the Isle of Man Scheme (the "<u>Isle of Man Scheme Meeting</u>").

**C. Scheme Meetings**

41. After the convening hearing, the scheme meetings for each class must then be convened in accordance with the Isle of Man Court's directions.

42. Before the Isle of Man Court will consider granting an order sanctioning a scheme, it must be approved by the requisite majority of members or creditors. This approval threshold comprises two components: (i) approval by a majority in number of each class of members or creditors present and voting (either in person or by proxy) at the relevant meeting convened by the Isle of Man Court to vote on the scheme; and (ii) approval from members or creditors representing 75 percent in value of each class of member or creditor present and voting (either in person or by proxy) at that meeting.

43. As mentioned above, a scheme meeting consists of creditors or members whose rights against the company which are to be released or varied under the scheme (or the new

---

[11] This test was approved by the English Court, in the context of a scheme of arrangement, in *Re RAC Motoring Services Limited* [2000] 1 BCLC 307, 326-27.

13

rights which the scheme will give in their place) are not so dissimilar as to make it impossible for them to consult together with a view to their common interest.[12]

44. In accordance with the terms of the IOM Convening Order, on 19 November 2014, the Company circulated the Isle of Man Scheme and Explanatory Statement, along with the notice convening the Isle of Man Scheme Meeting, claim form for the Scheme Creditors to submit their claims and the proxy form for which to nominate a proxy to vote at the Isle of Man Scheme Meeting (the "Proxy Form"). The Isle of Man Scheme Meeting was also advertised in *The Financial Times*, the *Isle of Man Courier*, the *Isle of Man Examiner*, the *Lögbirtingablað* and the *London Gazette* in accordance with the directions of the IOM Convening Order. The Proxy Forms were returned to the Scheme Supervisor ahead of the Isle of Man Scheme Meeting.

45. The Isle of Man Scheme Meeting was convened on 15 December 2014. As reported by the meeting chairman to the Isle of Man Court, the scheme was approved by the requisite statutory majority (please see further the description in the Gunnarsson Declaration at paragraphs 65-67).

### D. Sanction Hearings

46. If the necessary majorities approve the scheme at the scheme meetings, the sanction hearing will take place on the date which is fixed at or before the convening hearing.

47. Shareholders, creditors or even interested third parties[13] who object to the scheme of arrangement may be heard at the court hearing to sanction the scheme.

---

[12] *Sovereign Life Assurance Co v Dodd* [1892] 2 QB 573 per Bowen LJ, *Re Euro Bank Corp* [2003 CILR 205], at [9]-[10] per Henderson J; *Re Hawk Insurance Company Limited* [2001] 2 BCLC 480, at 518b — 519f per Chadwick LJ; *Re UDL Argos Engineering* [2001] 3 HKLRD 634, at [26]-[27] per Lord Millett.

[13] *Re BAT Industries plc; BAT Indistries plc and another v BAT Reconstructions Ltd*, 3 September 1998 (Unreported). In this case the court held that third party objectors had a right to be heard at a court meeting to sanction the scheme, even though they were not shareholders in the company.

15-11231-mg    Doc 7    Filed 05/11/15    Entered 05/11/15 18:34:00    Main Document
Pg 15 of 20

48. If a sanction order is made and delivered to the companies registry maintained by the Registrar, it becomes binding on the creditors, liquidator, administrators, members (as the case may be) and the company itself.[14]

49. In deciding whether to sanction the scheme, the Isle of Man Court will consider three general matters.[15]

    (a) First, that the Isle of Man Court's directions and the statutory provisions were complied with.

    (b) Second, that the majority fairly represented the class, acted in good faith and are not coercing the minority in order to promote interests adverse to those of the class whom they purport to represent.

    (c) Third, that the arrangement is such that an intelligent and honest man, who is a member of the class concerned and is acting in his own interest, might reasonably approve.

50. The Isle of Man Court will not simply endorse the majority vote,[16] but at the same time it will be "*slow to differ from the meeting*".[17] The scheme proposed "*need not be the only fair scheme or even, in the court's view, the best scheme*"[18]; the role of the Isle of Man Court is not to substitute its own assessment of what is reasonable for that of the creditors, who are generally recognised as being better judges of what is in the interests of their class than the Isle of Man Court.[19]

51. The application to sanction the Isle of Man Scheme was heard by the Isle of Man Court on 22 December 2014 ("IOM Sanctioning Hearing").

---

[14] *Nicholl v Eberhardt Co* (1889) 59 LT 860.
[15] See, for example, *Re Telewest Communications plc (No. 2)* [2005] 1 BCLC 772 per David Richards J at 777e-g.
[16] In *Re Alabama, New Orleans, Texas & Pacific Junction Railway Co* [1891] 1 Ch 213, Bowen LJ explained, at 244: "*[A]lthough in a meeting which is to be held under this section it is perfectly fair for every man to do that which is best for himself, yet the Court, which has to see what is reasonable and just as regards the interests of the whole class, would certainly be very much influenced in its decision, if it turned out that the majority was composed of persons who had not really the interests of that class at stake.*"
[17] See, for example, *Re Telewest Communications plc (No. 2)* (ibid) at 777h.
[18] *Telewest (No.2)* (ibid) at 778a.
[19] See, for example, *Re English, Scottish and Australian Chartered Bank* [1893] 3 Ch 385 at 409 and *Telewest (No. 2)* (ibid) at 778b.

52. In deciding whether to sanction a scheme, the Isle of Man Court must consider the following matters:[20]

  (i)  whether it has jurisdiction to do so;

  (ii)  whether the scheme meeting was properly convened and held in accordance with any directions given by the Isle of Man Court;

  (iii)  whether the schemes were approved with the requisite statutory majorities under section 152(2) of the Companies Act;

  (iv)  whether the creditors were fairly represented by the creditors voting at the meeting; and

  (v)  whether the scheme is fair: whether the arrangement is such that an intelligent and honest man, acting in respect of the interests of the creditors, might reasonably approve.

53. The Isle of Man Court sanctioned the Isle of Man Scheme, being satisfied that based on the law and evidence that it was appropriate to do so. Deemster Doyle stated at paragraph 22 of his judgment:

> "I am satisfied as to the relevant issues including compliance with the relevant statutory provisions. I am also satisfied in respect of the issues raised in the *Dev Property* judgment. The statutory majorities under section 152 of the Companies Act 1931 have been satisfied. The creditors have been fairly represented and the Isle of Man Scheme is a fair scheme. The Isle of Man Scheme is such that as an intelligent and honest man, acting in respect of the interests of the creditors, might reasonably approve. There is no reason to differ from the views given by the creditors in this matter."

54. It was made clear in written and oral submissions for the IOM Sanctioning Hearing that the Company intends to seek recognition under chapter 15 of the Bankruptcy Code. An order was sought and granted from the Isle of Man Court (being the jurisdiction of incorporation) designating the Nominated Directors (as envisaged by Clause 49 of the Isle of Man Scheme) as foreign representatives for this purpose. The

---

[20] *Re Telewest Communications plc (No. 2)* [2005] 1 BCLC 772 per David Richards J at 777e-g.

16

order also designated Andrew Paul Shimmin, who was then the Liquidator and Scheme Supervisor, but this ceased to be relevant when Mr. Shimmin vacated office on March 31, 2015.

55. The Isle of Man Scheme was sanctioned by the Isle of Man Court on 22 December 2014 and the order sanctioning the Isle of Man Scheme was delivered to the Registrar on 23 December 2014.

### E.   Post-Sanction of a Scheme

56. If sanctioned by the Isle of Man Court, the compromise or arrangement will be binding in accordance with its terms on the company and on all creditors (or members) who are party to the scheme, even if they voted against it.[21] Importantly, therefore, the scheme binds dissentients and constitutes a discharge or variation of creditors' (or, as the case may be, members') rights against the company in accordance with the terms of the scheme.

57. It is permissible for schemes to contain conditions to their effectiveness which must, after the sanction hearing, be satisfied (or sometimes waived) before the terms of the scheme become effective. If those conditions are not satisfied (or, if permissible, waived) then the scheme will not become binding on the company or the scheme creditors/members, notwithstanding its sanctioning by the Isle of Man Court. The Isle of Man Scheme was conditional upon a sealed copy of the English court order sanctioning the English scheme being delivered to the Registrar of Companies for England and Wales.

### F.   Jurisdiction to Sanction Scheme Releases

58. A consideration for the Isle of Man Court may be whether it has jurisdiction to sanction schemes containing releases of claims against third parties.

---

[21] Section 152(2) of the Companies Act.

17

59. An arrangement proposed under section 152 of the Companies Act must be an arrangement between the company and its creditors which affects their existing rights and obligations *inter se*, i.e., as between creditor and debtor.[22] A scheme may, however, in limited circumstances, require creditors to give up their rights against third parties, for example, where the release of such third party claims is merely ancillary to the arrangement between the company and its own creditors and is necessary in order to give effect to the arrangement proposed for the disposition of the debts and liabilities of the company to its own creditors.

60. In APCOA Mr Justice Hildyard agreed that "*the proposition that the court's jurisdiction does extend to the variation or release of claims against third parties designed to recover the same loss is indeed "entirely logical" and (as in the case of "ricochet" claims) necessary to protect schemes from being undermined by such collateral claims. But that proposition does not in my judgment extend to the imposition of new obligations, even where the obligations can be said to be similar to existing ones arising in a tripartite context.*"[23]

61. The releases in the Isle of Man Scheme were sanctioned by the Isle of Man Court. Although not dealt with in the judgment of the Isle of Man Court, I note that the Isle of Man Court was addressed on the justifiability of the releases, in the Isle of Man Scheme and Deed of Settlement and Release, in the convening hearing skeleton at section C, paragraphs 20-23 and the sanctioning hearing skeleton at section B, paragraph 7, each of which were prepared by Richard Snowden QC and Alex Barden ahead of the English court hearings of the parallel English scheme. Copies of the skeletons are attached hereto as Exhibit C. The skeletons set out that the releases were justifiable as they were ancillary to the compromise or arrangement of the

---

[22] *Re T&N Ltd* [2006] 1 WLR 1728 at [45]; *Re Lehman Brothers International (Europe)* [2010] BCC 272 at [63]-[66].
[23] *Re Apcoa Parking Holdings GmbH and others* [2014] EWHC 3849 (Ch) at [149].

18

creditor's claim against the Company, where the Scheme Creditor might have claims against a third party in respect of the loss resulting from the compromise of his claim against the Company, such that if the Scheme Creditor was able to pursue the third party, the third party might assert a "ricochet" claim against the Company seeking an indemnity. The Isle of Man Court acknowledged that it had read fully all papers produced in advance of the Sanction Hearing and therefore had clearly considered the releases as part of its consideration and sanction of the Scheme.

IN WITNESS WHEREOF, I have executed this Declaration under penalty of perjury under the laws of the United States of America this 11th day of May, 2015.

_____
Victoria Unsworth