**SIDLEY AUSTIN LLP**
Jessica C.K. Boelter (*pro hac vice admission pending*)
Candice L. Kline (*pro hac vice admission pending*)
Matthew G. Martinez (*pro hac vice admission pending*)
One South Dearborn
Chicago, Illinois 60603
Telephone:  (312) 853-7000

- and -

Danielle E. Perlman
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 839-5300

*Counsel to the Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                                       :
In re:                                                 :          Chapter 15
                                                       :
MURRAY HOLDINGS LIMITED,[1]                            :          Case No. 15-11231 (MG)
                                                       :
              Debtor in a Foreign Proceeding.          :
                                                       :
------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF CHAPTER 15 PETITION FOR**
**RECOGNITION OF FOREIGN MAIN PROCEEDING AND RELATED RELIEF**

---

[1] The Isle of Man registered number of Murray Holdings Limited is 080684C.  The mailing address and registered office of Murray Holdings Limited is 69 Athol Street, Douglas, Isle of Man IM1 1JE.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

BACKGROUND .................................................................................................................5

JURISDICTION AND VENUE ...........................................................................................6

ARGUMENT .......................................................................................................................7

I.     The Isle of Man Scheme Proceeding Meets the Requirements for Recognition as
a Foreign Main Proceeding...........................................................................................7

     A.     The Chapter 15 Petition Satisfies the Procedural Requirements for
Chapter 15 Recognition as a Foreign Main Proceeding .........................................7

     B.     Foreign Representatives Commenced the Chapter 15 Case ...................................8

     C.     The Isle of Man Scheme Proceeding Is a Foreign Main Proceeding.......................9

II.     Recognition and Enforcement of the Isle of Man Scheme and Sanction Order Is
Appropriate ...............................................................................................................16

     A.     Principles of Comity Support Recognition and Enforcement of the Isle of
Man Scheme and Sanction Order .........................................................................17

     B.     The Additional Relief Sought to Enforce the Isle of Man Scheme and
Sanction Order and Protect the Company's U.S. Assets Is Authorized
and Appropriate in this Chapter 15 Case ..............................................................19

          1.     Comity Warrants Recognition and Enforcement of the Isle of Man
Scheme and Sanction Order....................................................................22

          2.     Relief Requested Meets Standards for Permanent Injunctive Relief........26

     C.     Recognition and Enforcement of the Isle of Man Scheme Is Not Contrary
to Public Policy....................................................................................................29

CONCLUSION...................................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*The Argo Fund Ltd. v. Bd. of Dirs. of Telecom Argentina, S.A. (In re Bd. of Dirs. of Telecom Argentina, S.A.),*
  528 F.3d 162, 175 (2d Cir. 2008)..........................................................................27

*Canada S.Ry. Co. v. Gebhard,*
  109 U.S. 527 (1883)................................................................................25, 27

*CT Inv. Mgm't Co., LLC v. Cozumel Caribe, S.A. de C.V. (In re Cozumel Caribe S.A. de C.V.),*
  482 B.R. 96 (Bankr. S.D.N.Y. 2012)..............................................................18, 19

*Cunard S.S. Co. Ltd. v. Salen Reefer Services AB,*
  773 F.2d 452 (2d Cir. 1985)............................................................................17

*Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet),*
  737 F.3d 238 (2d Cir. 2013)..........................................................................6–7

*Hilton v. Guyot,*
  159 U.S. 113 (1895)...................................................................................17

*In re Atlas Shipping A/S,*
  404 B.R. 726 (Bankr. S.D.N.Y. 2009)..................................................................18

*In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd., Inc.,*
  *238 B.R. 25 (Bankr. S.D.N.Y. 1999), aff'd, 238 B.R. 699 (S.D.N.Y. 2002)*............................19

*In re Bear-Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.,*
  *389 B.R. 325 (S.D.N.Y. 2008)* ........................................................................18

*In re Ephedra Prods. Liab. Litig.,*
  *349 B.R. 333 (S.D.N.Y. 2006)* ........................................................................29

*In re Fairfield Sentry Ltd.,*
  Case No. 10-13164, 2013 Bankr. LEXIS 136 (Bankr. S.D.N.Y. Jan. 10, 2013)....................18

*In re Lines,*
  81 B.R. 267 (Bankr. S.D.N.Y. 1988)...................................................................27

*In re Metcalfe & Mansfield Alternative Invs.*,
    *421 B.R. 685 (Bankr. S.D.N.Y. 2010)* ...........................................17, 18, 19, 20–21, 23, 25, 27

*In re MMG LLC*,
    256 B.R. 544 (Bankr. S.D.N.Y. 2000) ...................................................................................26

*In re Rede Energia S.A.*,
    515 B.R. 69 (Bankr. S.D.N.Y. 2014) ................................................................18, 20, 22, 23

*In re Sino-Forest Corp.*,
    *501 B.R. 655 (Bankr. S.D.N.Y. 2013)* ...............................................................19, 23, 25, 29

*In re SPhinX, Ltd.*,
    351 B.R. 103 (Bankr. S.D.N.Y. 2006)...........................................................................13–14

*In re Suntech Power Holdings Co., Ltd.*,
    520 B.R. 399 (Bankr. S.D.N.Y. 2014) ................................................................................15

*In re Vitro S.A.B. de C.V.*,
    701 F.3d 1031 (5th Cir. 2012) ...........................................................................................19

*Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*,
    714 F.3d 127 (2d Cir. 2013)..........................................................12, 13, 14, 15, 29

*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*,
    825 F.2d 709 (2d Cir. 1987)...............................................................................17, 25, 26

Sᴛᴀᴛᴜᴛᴇꜱ

11 U.S.C. § 101(23) .........................................................................................................10

11 U.S.C. § 101(24) ...........................................................................................................8

11 U.S.C. § 101(41) ...........................................................................................................8

11 U.S.C. § 109(a) .........................................................................................................6–7

11 U.S.C. § 362...............................................................................................................16

11 U.S.C. § 1501.............................................................................................................18

11 U.S.C. §§ 1501 and 1508 ......................................................................................16, 29

11 U.S.C. § 1501(a)(1).....................................................................................................18

11 U.S.C. § 1501(a)(3), (a)(4)..........................................................................................30

11 U.S.C. § 1502(4) ....................................................................................................12, 16

11 U.S.C. § 1507(a) .................................................................................................20

11 U.S.C. §§ 1507(a), 1521(a) ..............................................................................17

11 U.S.C. § 1507(b) .................................................................................................20

11 U.S.C. § 1509(b)(3) ............................................................................................18

11 U.S.C. § 1515 ........................................................................................................7

11 U.S.C. § 1515(b), (c) ............................................................................................8

11 U.S.C. § 1516(c) .................................................................................................12

11 U.S.C. § 1517(a)(1)–(3) ....................................................................................7, 9

11 U.S.C. § 1517(b)(1) ..................................................................................7, 12, 16

11 U.S.C. § 1520(a) ............................................................................................16, 21

11 U.S.C. § 1521(a)(1)–(7) .....................................................................................21

11 U.S.C. § 1522(a) .................................................................................................22

28 U.S.C. §§ 157 and 1334 .......................................................................................6

28 U.S.C. § 1410(1) ...................................................................................................6

## OTHER AUTHORITIES

Section 152 of the Companies Act...................................................................1, 10, 25

Bankruptcy Rule 1007(a)(4) ......................................................................................7

H.R. Rep. 109-31(1), 109 Cong., 1st Sess. 2005, reprinted in 2005 U.S.C.C.A.N. .....................29

Arnaldur Jon Gunnarsson and Arnar Scheving Thorsteinsson in their capacities as the Nominated Directors and authorized foreign representatives (in such capacities, the "Nominated Directors" or the "Foreign Representatives") of Murray Holdings Limited (the "Company") in connection with the Company's Scheme of Arrangement (the "Isle of Man Scheme") pursuant to section 152 of the Isle of Man Companies Act 1931 (the "Companies Act") and the proceeding (such proceeding, the "Isle of Man Scheme Proceeding") pursuant to which the Isle of Man Scheme was proposed, solicited, and sanctioned by the High Court of Justice of the Isle of Man (the "Isle of Man Court") by order dated December 22, 2014 (the "Sanction Order"), by and through the undersigned counsel to the Foreign Representatives, respectfully submit this Memorandum of Law in support of the *Verified Petition of Foreign Representatives for Recognition of the Isle of Man Scheme Proceeding as a Foreign Main Proceeding, and Motion for (I) Recognition and Enforcement of the Isle of Man Scheme of Arrangement and the Order of the Isle of Man Court Sanctioning the Isle of Man Scheme of Arrangement, (II) a Final Decree and (III) Certain Related Relief* (the "Verified Petition") under sections 105, 350, 362, 1507, 1515–1517, and 1520–1522 of title 11 of the United States Code (the "Bankruptcy Code").[2]

## PRELIMINARY STATEMENT

The Company is an investment company incorporated under the laws of the Isle of Man and is an indirect subsidiary of Kaupthing hf. ("Kaupthing"), an entity currently in winding up proceedings in Iceland and a chapter 15 debtor in this District.[3]  The Company was established

---

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion, the Isle of Man Scheme, the Explanatory Statement, or the Verified Petition.

[3]  *See In re Kaupthing hf.*, Case No. 08-14789 (MG) (Bankr. S.D.N.Y.).  This Chapter 15 Case is entirely separate from Kaupthing's chapter 15 case, and the Company is not seeking any joint administrative relief.  The Nominated Directors do not presently anticipate any overlapping issues between the two cases or the foreign proceedings.

as an investment vehicle for Kaupthing and its related companies and has no operations or employees of its own.

As described in the Gunnarsson Declaration referenced below, the Company currently holds cash and equity assets with significant assets in the United States in the form of shares of Spirit Realty Capital, Inc. ("Spirit"), which shares trade on the New York Stock Exchange under the symbol SRC.  This Chapter 15 Case is the final step in a multi-jurisdictional restructuring process of the Company.

Following the international liquidity crisis in the mid to late 2000s, the Company faced severe financial difficulty and entered liquidation proceedings in the Isle of Man.  Accordingly, on March 8, 2010, the Isle of Man Court appointed Andrew Paul Shimmin as "Liquidator Provisional," and then on March 29, 2010, ordered his appointment as "Liquidator" (the "Liquidator Order").  As Liquidator Provisional, and then Liquidator, Mr. Shimmin took control of the Company's affairs from his offices in the Isle of Man.

Both prior to and during the Company's liquidation proceedings, the Company became involved in several legal actions in England and Wales, the British Virgin Islands, and the Isle of Man.  Complex litigation was commenced regarding certain claims arising from a series of high value, substantial transactions entered into from late 2005 until late 2007 (as further described in the Gunnarsson Declaration, the "Pre-Liquidation Transactions").  The Pre-Liquidation Transactions, which are further described in the Gunnarsson Declaration and in the Explanatory Statement, generally involve:  (i) a series of transactions, involving, among other transactions, over €80 million in two promissory notes, related to the acquisition of the Somerfield supermarket chain located in the United Kingdom; (ii) an agreement to restructure certain investments, including transactions related to the Somerfield acquisition; (iii) an agreement to

invest in Sampo oyj, a Finnish insurance company, involving a funding amount of approximately €50 million; (iv) a loan from Kaupthing to the Company in excess of $120 million to ultimately fund an investment of approximately 10,008,969 common equity shares in Spirit (the "Spirit Shares") presently valued at approximately $114 million; and (v) Kaupthing's claimed advance of more than £1.2 million on behalf of the Company to an entity called Alumdawn Limited (now dissolved) for the Company to invest in Alumdawn shares.

The litigation proceedings related to these Pre-Liquidation Transactions are complex with uncertain outcomes, and necessarily presented costs and delays for creditors seeking timely distributions. After prolonged settlement negotiations, the Liquidator, Kaupthing, Kaupthing Finance, and the Sub-Participants agreed to a settlement of certain major litigation, and the Liquidator and Kaupthing jointly proposed the Isle of Man Scheme (and the materially identical English Scheme)[4] to effectuate the litigation and claim settlements and to complete the Company's restructuring for the benefit of its creditors and all interested stakeholders.

The objectives of the Isle of Man Scheme are primarily to (i) restore the Company to a position of solvency; (ii) resolve and compromise the bulk of the claims and disputes arising out of the Pre-Liquidation Transactions, as described in the Gunnarsson Declaration, notably the Action 599 Proceedings, the Kaupthing Finance English Proceeding, the Proof of Debt Proceedings, the Isle of Man Proceedings, the Zaria Global Proceedings, and the Icelandic Proceedings, but excluding the Action 363 Proceedings, the Revised 599 Proceedings, and the Revised Isle of Man Proceedings; and (iii) provide the Scheme Creditors with a swift resolution in respect of their claims.

---

[4] The Foreign Representatives seek chapter 15 recognition and enforcement of only the Isle of Man Scheme. The Isle of Man Scheme and the English Scheme are collectively referred to herein as the "Schemes."

After due notice and an opportunity to consider the Isle of Man Scheme, the Scheme Creditors overwhelmingly supported the Isle of Man Scheme with 100% of Scheme Creditors (in number and value) present at the Scheme Meetings voting in favor of the Isle of Man Scheme. The Isle of Man Court granted an order sanctioning the Isle of Man Scheme on December 22, 2014[5] and the Isle of Man Scheme became effective on December 23, 2014. The Isle of Man Scheme is binding on the Company and all Scheme Creditors.

After the Schemes became effective, the Liquidator executed several transactions authorized by the Schemes and made distributions of more than £88 million under the Schemes on March 10, 2015. Pursuant to an Isle of Man Court order made on March 26, 2015 (the "Appointment Order"), the Liquidator vacated his office and the appointment of the Nominated Directors became effective at midnight on March 31, 2015. Additionally, on April 21, 2015, a court in the British Virgin Islands, the Eastern Caribbean Supreme Court in the High Court of Justice, entered an order dated April 1, 2015 in aid of the English Scheme generally staying and restraining any actions or enforcement in respect of any of the Company's property, including property in the British Virgin Islands.

The Isle of Man Scheme, including the process for creditor solicitation and court approval, is similar to a chapter 11 plan of reorganization. Like a plan in a United States bankruptcy, the Isle of Man Scheme provides sufficient creditor protections and affords adequate due process to vote and participate in the proceedings. The Isle of Man Scheme has also been approved by the Isle of Man Court in accordance with the Companies Act. The Isle of Man is a common law jurisdiction.

---

[5] The materially identical English Scheme was approved by the High Court of Justice of England and Wales (the "English Court") on December 19, 2014. The English Scheme and the Isle of Man Scheme are interconditional such that both Schemes had to come into effect for either Scheme to do so.

Recognition of the Isle of Man Scheme Proceeding and recognition and enforcement of the Isle of Man Scheme and Sanction Order in this Chapter 15 Case is an important component of the Company's global reorganization.  The Isle of Man Scheme is a consensual restructuring involving one class of creditors, the Scheme Creditors, which overwhelmingly voted to support the Isle of Man Scheme.  However, without the requested relief, this Isle of Man Scheme could be threatened by a dissident creditor or other interested party willing to litigate in the United States to gain advantage relative to other creditors and disrupt what otherwise is an orderly and consensual restructuring in the Isle of Man.  This is exactly the scenario intended for chapter 15 recognition and the additional relief requested for enforcement of the Isle of Man Scheme in the United States.

Granting the relief requested in the Verified Petition will promote the fair and equitable treatment of claim holders under the Isle of Man Scheme and is supported by principles of international comity and cooperation with foreign courts that underpin chapter 15 of the Bankruptcy Code.  Moreover, the relief requested is consistent with the relief granted by courts in this District when recognizing similar schemes of arrangement in common law jurisdictions. Accordingly, the Court should exercise comity and approve the chapter 15 relief.

## BACKGROUND

The background and facts supporting the Chapter 15 Petition and other requested relief are set forth in two declarations accompanying the Verified Petition and incorporated by reference here: (1) the Declaration of Arnaldur Jon Gunnarsson in Support of Chapter 15 Petition and Requested Relief (the "Gunnarsson Declaration"), which provides facts concerning the Company's background, liquidation proceedings, and the Isle of Man Scheme; and (2) the Declaration of Victoria Unsworth of Advocates Smith Taubitz Unsworth Ltd., an Isle of Man

law firm, in Support of Chapter 15 Petition and Requested Relief (the "Unsworth Declaration"),

which provides an overview of relevant Isle of Man law and which describes the Company's Isle

of Man Scheme from an Isle of Man legal perspective and in relation to chapter 15 requirements.

The Foreign Representatives also submitted with the Chapter 15 Petition a declaration in

satisfaction of section 1515 of the Bankruptcy Code and all lists required by the Bankruptcy

Rules.  The Foreign Representatives respectfully refer the Court to the facts set forth in these

declarations in support of the arguments below.

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334, sections

109 and 1501 of the Bankruptcy Code, and the Amended Standing Order of Reference of the

United States District Court for the Southern District of New York (Preska, C.J.) dated January

31, 2012.  Recognition of foreign proceedings under chapter 15 are core proceedings.  28 U.S.C.

§ 157(b)(2)(P).  Venue is proper in this District under 28 U.S.C. § 1410(1).

The Company has significant assets located in the United States in the form of the Spirit

Shares.[6]  (Gunnarsson Decl. ¶¶ 5, 20.)  As of May 8, 2015, the trading price of Spirit's stock

closed at $11.40/share.  (*Id*. at ¶ 23.)  The Company's Spirit Shares are held in an account with

AST Investor Services in New York, New York.  (*Id*. ¶ 22.)  Because the Company has property

in the United States (and in this District) and is the subject of a foreign proceeding, the Company

is eligible for chapter 15 relief.  11 U.S.C. §§ 109(a), 1501(b), 1502(1); *see also Drawbridge*

*Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238, 251 (2d Cir. 2013) ("11

---

[6]  The Company's shareholding in Spirit was worth approximately £68 million in total as of August 8, 2014.
(Gunnarsson Decl. ¶ 23.)  Further, the Spirit Shares currently provide the Company with a dividend of
approximately $1 million (£650,000) per quarter.  (*Id*.)

U.S.C. § 109(a) applies to the debtor in a foreign main proceeding under Chapter 15 of the

Bankruptcy Code").

## <u>ARGUMENT</u>

**I.      The Isle of Man Scheme Proceeding Meets the Requirements for Recognition
         as a Foreign Main Proceeding**

Recognition of a foreign proceeding is largely driven by objective standards under

chapter 15.  In particular, section 1517 of the Bankruptcy Code provides that, "after notice and a

hearing, an order recognizing a foreign proceeding shall be entered" if

(1) such foreign proceeding . . . is a foreign main or nonmain proceeding . . . ;
(2) the foreign representative applying for recognition is a person or body; and
(3) the petition meets the requirements of section 1515.

11 U.S.C. § 1517(a)(1)–(3).  For the reasons provided below, the Isle of Man Scheme Proceeding

readily satisfies these standards and should be recognized as a foreign proceeding.  Further,

because the Isle of Man Scheme Proceeding is a proceeding pending in the country where the

Company has its center of main interests—the Isle of Man—the Isle of Man Scheme Proceeding

should also be recognized as a foreign main proceeding.  *See* 11 U.S.C. § 1517(b)(1).

**A.      The Chapter 15 Petition Satisfies the Procedural Requirements for
         Chapter 15 Recognition as a Foreign Main Proceeding**

The Foreign Representatives filed the Chapter 15 Petition in compliance with sections

1504, 1509(a), and 1515 of the Bankruptcy Code.  The Chapter 15 Petition meets the

requirements of section 1515 and was accompanied by:  (a) a true and correct copy of the

Sanction Order; (b) a statement identifying all foreign proceedings known to the Foreign

Representatives with respect to the Company; (c) a corporate ownership statement containing the

information described in Bankruptcy Rule 1007(a)(4); and (d) a list containing the names and

addresses of all persons or bodies authorized to administer foreign proceedings of the Company.[7]

*See* 11 U.S.C. § 1515(b), (c).  The Foreign Representatives are not aware of any litigation in the

United States to which the Company is a party at the time of the filing of the Chapter 15

Petition.[8]  The Foreign Representatives respectfully submit that they have complied with the

objective standards listed in section 1515 of the Bankruptcy Code.

### B.    Foreign Representatives Commenced the Chapter 15 Case

The Foreign Representatives commenced this Chapter 15 Case by filing the Chapter 15

Petition, the Verified Petition, and related documents, in accordance with sections 1504, 1509(a),

and 1515(a) of the Bankruptcy Code.  The Bankruptcy Code defines "foreign representative" as

"a person or body, including a person or body appointed on an interim basis, authorized in a

foreign proceeding to administer the reorganization of the liquidation of the debtor's assets or

affairs or to act as a representative of such foreign proceeding."  11 U.S.C. § 101(24).  A

"person" includes an "individual, partnership, and corporation" under the Bankruptcy Code.  11

U.S.C. § 101(41).  Under section 1516(a) of the Bankruptcy Code, the Court may presume that a

person seeking recognition is a foreign representative if "the decision or certificate referred to in

section 1515(b) indicates that . . . the person or body [seeking recognition] is a foreign

representative."  11 U.S.C. § 1516(a).  Here, the Foreign Representatives are individuals who

have been duly appointed and authorized under a foreign court order, the Sanction Order, and

therefore are "foreign representatives" in this Chapter 15 Case.

---

[7]  The Court may presume that "the documents submitted in support of the petition for recognition are authentic, whether or not they have been legalized."  11 U.S.C. § 1516(b).

[8]  *See Foreign Representatives' Statements and Lists Pursuant to Fed. R. Bankr. P. 1007(a)(4) and 7007.1* and the *Declaration of Foreign Representatives in Satisfaction of 11 U.S.C. § 1515*, both of which were filed contemporaneously herewith.

Following their appointment under the Isle of Man Scheme, in combination with the Kirna Resolution and the Appointment Order, the Nominated Directors possess full power and authority to manage and control the affairs of the Company as approved by the Isle of Man Court.  In particular, the Sanction Order entered by the Isle of Man Court provides that "[t]he Nominated Directors (as defined in the Scheme), when appointed, will be persons authorised to act as representatives of the Company and the Scheme including acting as a foreign representative in any proceedings under Chapter 15 of the United States Bankruptcy Code." (Gunnersson Decl. ¶ 39.)  Additionally, section 49 of the Isle of Man Scheme provides that "[t]he Nominated Directors shall be authorized to act as representatives for the Company on any application for recognition and assistance in relation to [the Isle of Man Scheme] . . . in any jurisdiction and under whatever laws including . . . Chapter 15 of the United States Bankruptcy Code . . . ." (*Id.*)

Accordingly, on the Effective Date, the Nominated Directors were granted authority to act as Foreign Representatives of the Company in a case under chapter 15 of the Bankruptcy Code.  The Nominated Directors satisfy the definition set forth in section 101(24) of the Bankruptcy Code, and have properly commenced the Chapter 15 Case under sections 1509(a) and 1515(a) of the Bankruptcy Code.

### C.    The Isle of Man Scheme Proceeding Is a Foreign Main Proceeding

The Isle of Man Scheme Proceeding is a "foreign proceeding" as required for recognition under section 1517(a) of the Bankruptcy Code.  *See* 11 U.S.C. § 1517(a)(1)–(3).  The Bankruptcy Code defines a "foreign proceeding" as a

> collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor

9

are subject to control or supervision by a foreign court, for the purposes of
reorganization or liquidation.

11 U.S.C. § 101(23).  The Isle of Man Scheme Proceeding easily meets this definition.

The Isle of Man Scheme Proceeding is a judicial proceeding subject to the control and

supervision of the Isle of Man Court.  (Gunnarsson Decl. ¶ 41; Unsworth Decl. ¶¶ 23, 26–29.)

As described in the Unsworth Declaration, the Companies Act governs schemes of arrangement.

(Unsworth Decl. ¶ 25.)  The purpose of the Isle of Man Scheme is to, among other things: (a)

restore the Company to a position of solvency, free from historic liabilities; (b) provide the

creditors of the Company with certainty and a cost-efficient outcome; and (c) provide the

Scheme Creditors with a swift resolution by providing prompt payment of a cash dividend in

respect of their claims.[9]  (Gunnarsson Decl. ¶¶ 15, 41, 49.)  The Isle of Man Scheme Proceeding

is collective, with due process, including proper notice and an opportunity to participate, for

groups of, and individual, creditors and interested parties.  (*Id*. ¶ 41.)  The Company's assets and

financial affairs are subject to judicial oversight by the Isle of Man Court.  (*Id*.; Unsworth Decl.

¶¶ 23, 26–29.)

The Isle of Man Scheme, which operates similarly to a chapter 11 plan of reorganization,

was submitted to the creditor body for approval.  (Gunnarsson Decl. ¶¶ 61–67.)  In this case, the

Company's Isle of Man Scheme was overwhelming supported by the Scheme Creditors in the

required number and amount, with seventeen Scheme Creditors, representing 100% by value of

---

[9]  Generally, subject to certain limited exceptions, Scheme Creditors have been paid £0.92 per £1.00 of their
"Admitted Claim" (such amount, the "Cash Distribution Amount") under the Isle of Man Scheme.  (Gunnarsson
Decl. ¶ 51.)

Scheme Creditors present and voting either in person or by proxy, voting in favor of the Isle of Man Scheme.[10]  (*Id.* ¶¶ 66–67.)

Given the unanimous support of the voting Scheme Creditors for the Isle of Man Scheme, and finding that the Isle of Man Scheme adhered to Isle of Man governing law, the Isle of Man Court entered the Isle of Man Sanction Order approving and authorizing the Isle of Man Scheme on December 22, 2014.  (Gunnarsson Decl. ¶ 3, Ex. C; Unsworth Decl. ¶¶ 51–55.)  The Isle of Man Court concluded that the Isle of Man Scheme was fair and that creditors were fairly represented by the creditors voting at the Isle of Man Scheme Meeting.  (Unsworth Decl. ¶¶ 52–53.)

Although this may be the first time recognition has been sought for an Isle of Man Scheme Proceeding in the United States, Isle of Man insolvency law is very similar to other English common law-based jurisdictions.[11]  Indeed, the Isle of Man Scheme has materially identical terms as the Company's English Scheme approved by the English Court on December 19, 2014.  (Gunnarsson Decl. ¶ 9, Ex. E.)  Bankruptcy courts routinely recognize foreign proceedings and schemes of arrangement from common law jurisdictions as "foreign proceedings" under chapter 15 of the Bankruptcy Code.[12]  For these reasons, the Isle of Man

---

[10]  For a scheme to become binding and effective under section 152 of the Companies Act, the scheme must be approved at a meeting of the scheme creditors by a majority in number representing at least 75% (by value) of the scheme claims of each class of creditors or members present and voting (whether in person or by proxy) at the Scheme Meeting.  (Gunnarsson Decl. ¶ 67; Unsworth Decl. ¶ 29.)  Here, a single class of Scheme Creditors was eligible to vote on the Schemes at the Scheme Meetings.  (Gunnarsson Decl. ¶ 51.)  The voting Scheme Creditors voted unanimously to approve the Isle of Man Scheme and the English Scheme.  (*Id.* ¶¶ 8, 66.)  Having met the required thresholds, the Isle of Man Scheme and the English Scheme became effective on December 23, 2014.  (*Id.* ¶¶ 3, 9.)

[11]  In the absence of binding Isle of Man case law, the Isle of Man courts will look to English and other common law jurisdiction authorities, which are highly persuasive, but not binding.  (Unsworth Decl. ¶ 12.)  Decisions of courts in other Commonwealth jurisdictions are also persuasive, but not binding.  (*Id.*)

[12]  For a non-exhaustive list of representative chapter 15 cases recognizing common law jurisdiction proceedings as "foreign proceedings" and "foreign main proceedings," see, e.g., *In re B. Endeavour Shipping Company Limited*, Case No. 15-10246 (REG) [Docket No. 10] (Bankr. S.D.N.Y. Mar. 10, 2015) (recognizing English proceeding as a

Scheme Proceeding is a "foreign proceeding" within the meaning of section 1517(a) of the

Bankruptcy Code.

The Isle of Man Scheme Proceeding is also a "foreign main proceeding" within the

meaning of section 1502(4) and 1517(b)(1) of the Bankruptcy Code because Isle of Man is the

Company's center of main interest ("<u>COMI</u>").  (Gunnarsson Decl. ¶¶ 42–47.)  The Bankruptcy

Code defines a "foreign main proceeding" as a "foreign proceeding pending in the country where

the debtor has the center of its main interests."  11 U.S.C. § 1502(4).  The foreign proceeding

"shall be recognized" as a foreign main proceeding if the foreign proceeding is pending where

the debtor has its COMI.  11 U.S.C. § 1517(b)(1).  The Court is entitled to presume that the

debtor's registered office is the debtor's COMI, absent evidence to the contrary.  *See* 11 U.S.C. §

1516(c); *see also Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127,

137 (2d Cir. 2013) ("Chapter 15 creates a rebuttable presumption that the country where a debtor

---

foreign main proceeding); *In re New World Res. N.V.*, Case No. 14-2226 (SMB) [Docket No. 20] (Bankr. S.D.N.Y. Sept. 9, 2014) (recognizing English proceeding as a foreign main proceeding and enforcing scheme of arrangement against scheme creditors); *In re Hibu Inc.*, Case No. 14-70323 [Docket No. 29] (Bankr. E.D.N.Y. Feb. 27, 2014) (same); *In re Zlomrex Int'l Fin. S.A.*, Case No. 13-14138 [Docket No. 17] (Bankr. S.D.N.Y. Jan. 31, 2014) (same); *In re Magyar Telecom, B.V.*, Case No. 13-13508 (SHL) [Docket No. 26] (Bankr. S.D.N.Y. Dec. 11, 2013) (same); *In re Allianz Global Corporate & Specialty (France)*, Case No. 10-14990 (SMB) [Docket No. 20] (Bankr. S.D.N.Y. Nov. 10, 2010) (same); *In re Highlands Ins. Co. (U.K.) Ltd.*, Case No. 07-13970 (MG) [Docket No. 40] (Bankr. S.D.N.Y. Aug. 18, 2009) (recognizing English proceeding as foreign main proceeding and enforcing certain orders issued by the English court against all persons and entities in the United States); *In re Castle Holdco 4, Ltd.*, Case No. 09-11761 (REG) [Docket No. 25] (Bankr. S.D.N.Y. May 7, 2009) (recognizing English order sanctioning scheme of arrangement and enforcing scheme and sanction order against all scheme creditors); *see also In re Caledonian Bank Ltd.*, Case No. 15-10334 (MG) [Docket No. 39] (Bankr. S.D.N.Y. Mar. 17, 2015) (recognizing Cayman proceeding as a foreign main proceeding); *In re Suntech Power Holdings Co., Ltd.*, Case No. 14-10383 (SMB) [Docket No. 71] (Bankr. S.D.N.Y. Dec. 4, 2014) (same); *In re LDK Solar Co. Ltd. (in Provisional Liquidation)*, Case No. 14-12387 (PJW) [Docket No. 44] (Bankr. D. Del. Nov. 21, 2014) (recognizing Cayman restructuring as a foreign main proceeding and enforcing scheme of arrangement against scheme creditors); *In re Octaviar Admin. Pty. Ltd.*, Case No. 14-10438 (SCC) [Docket No. 20] (Bankr. S.D.N.Y. July 2, 2014) (recognizing Australian proceeding as foreign main proceeding); *In re Chartis Excess Ltd.*, Case No. 13-10888 (SHL) [Docket No. 15] (Bankr. S.D.N.Y. May 1, 2013) (recognizing Irish proceeding as foreign main proceeding and enforcing scheme of arrangement against scheme creditors).

At least one Isle of Man winding-up proceeding has been recognized under chapter 15.  *See In re Spencer Partners Ltd.*, Case No. 07-02356 (JEW) [Docket No. 13] (Bankr. D.S.C. May 29, 2007) (recognizing Isle of Man reorganization as foreign proceeding and granting certain related relief but deferring a ruling on whether the foreign proceeding was "main" or "nonmain").

has its registered office will be its COMI"). In this District, COMI is determined at the time that

the chapter 15 petition is filed. *In re Fairfield Sentry Ltd.*, 714 F.3d at 137 ("a debtor's COMI

should be determined based on its activities at or around the time the Chapter 15 is filed").

Here, the Company's registered office has been located in the Isle of Man since the time

of its incorporation under the laws of the Isle of Man on August 29, 1996 as a private company

limited by shares pursuant to the Companies Act with registered number 080684C.[13]

(Gunnarsson Decl. ¶¶ 11, 43, 45, Ex. G.) On March 29, 2010, the Company was wound up by

the Isle of Man Court and the Liquidator Order was entered, appointing Mr. Shimmin as the

Liquidator of the Company. (*Id.* ¶ 34, Ex. D.) From Mr. Shimmin's appointment as Liquidator

Provisional, and then as Liquidator in March 2010, until the appointment of the Nominated

Directors in March 2015, Mr. Shimmin directed and coordinated the Company's liquidation and

business affairs from the Isle of Man pursuant to the Liquidator Order. (*Id.* ¶¶ 44–45.) The

Company's books and records are currently located (and have always been located) in the Isle of

Man. (*Id.* ¶ 43.) The Nominated Directors also operate the business affairs of the Company

from the Isle of Man. (*Id.* ¶ 46.) Thus, the Court may presume that the Company's COMI is the

Isle of Man.

Although the presumption is well supported, the other factors often considered by courts

also support finding the Isle of Man as the Company's COMI. These factors include the location

of (a) the debtor's headquarters, (b) the person(s) who manage the debtor, (c) the debtor's

primary assets, (d) the majority of creditors affected by the proceeding, and (e) the legal

jurisdiction governing most disputes, among other considerations. *In re SPhinX, Ltd.*, 351 B.R.

---

[13]  The Company's Isle of Man registered office was recently changed to 69 Athol Street, Douglas, Isle of
Man IM1 1JE from the office of the former Liquidator, which was also in the Isle of Man. (Gunnarsson
Decl. ¶¶ 11, 45.)

103, 117 (Bankr. S.D.N.Y. 2006). These factors are "neither required nor dispositive" and are not mechanically applied to determine the debtor's COMI. *In re Fairfield Sentry Ltd.*, 714 F.3d at 137. The Company plainly meets these COMI factors.

The Liquidator administered the Company's affairs in the Isle of Man since 2010 until midnight on March 31, 2015, the date on which the Nominated Directors assumed control of the Company. (Gunnarsson Decl. ¶¶ 2–3, 37, 45–46.) Since the Nominated Directors were appointed and Mr. Shimmin vacated office as liquidator, the Company has continued to take actions and conduct business through its agents and attorneys in the Isle of Man. (*Id*. ¶ 46.) Indeed, on April 21, 2015, the Company's board of directors held a meeting in the Isle of Man. (*Id.*) During his term, the Liquidator administered the Company's assets from the Isle of Man, issued reports to the creditors and the Isle of Man Court with respect to the asset dispositions, compromised numerous litigation claims under the Isle of Man Scheme from the Isle of Man, and negotiated and implemented the Schemes from the Isle of Man, among other court-authorized activities involving the Company's management and operations as a going concern. (*Id*. ¶¶ 44–45.) No actions have been taken that would cause any third party to conclude that the Company's COMI is anywhere but the Isle of Man. (*Id*. ¶ 46.) The Company's assets prior to and after the Schemes becoming effective were either located in the Isle of Man, in the case of cash held by the Liquidator or Nominated Directors in an Isle of Man bank account, or managed from the Isle of Man. (*Id*. ¶¶ 18–25, 44–46.) All of the Company's creditors, including all Scheme Creditors, have therefore looked to the Isle of Man—the center of the Company's activities—for reorganization and adjustment of debt proceedings for nearly five years. (*Id*. ¶¶ 26, 33–37, 45, 60–67.)

Moreover, given the longstanding Isle of Man liquidation proceeding leading to the Isle of Man Scheme Proceeding, the Company's COMI as Isle of Man is "regular and ascertainable" to all interested parties and creditors and is "not easily subject to tactical removal." *In re Fairfield Sentry Ltd.*, 714 F.3d at 137. Since 2010, the Liquidator has provided notice of the Company's operations, potential liquidation, and restructuring from the Isle of Man. (Gunnarsson Decl. ¶¶ 44–45, 62–64.) The Scheme Creditors received notice convening the Isle of Man Scheme Meeting, a claim form, and a proxy form to vote on the Isle of Man Scheme by e-mail or, in certain circumstances, by hard copy, and by publication notice in the Scheme Publications.[14] (*Id.* ¶ 62.) The Company's creditors and other interested parties have looked to the Liquidator located in the Isle of Man for resolution of claims. (*Id.* ¶¶ 26–31, 45.) Since the appointment of the Nominated Directors, the Company's registered office and activities remain centered in the Isle of Man. (*Id.* ¶¶ 11, 43, 46.)

Where, as here, a debtor has engaged in substantial restructuring-related activities prior to the petition filing, courts will consider such activities in the determination of the debtor's COMI. *See In re Fairfield Sentry Ltd.*, 714 F.3d at 138 ("a court may look at the period between the commencement of the foreign proceeding and the filing of the Chapter 15 petition to ensure that a debtor has not manipulated its COMI in bad faith"); *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 416 (Bankr. S.D.N.Y. 2014) ("The COMI analysis permits consideration of any relevant activities, including liquidation activities and administrative functions."). Thus, given the Company's longstanding presence in the Isle of Man, the Company's COMI is the Isle of

---

[14]  The Scheme Publications are *The Financial Times*, *The Isle of Man Courier*, *The Isle of Man Examiner*, *The Lögbirtingablað*, and *The London Gazette*. (*Id.* ¶ 62.)

Man and the Isle of Man Scheme Proceeding is a "foreign main proceeding" under section

1517(b)(1) of the Bankruptcy Code.

## II.    Recognition and Enforcement of the Isle of Man Scheme and Sanction Order Is Appropriate

In this Chapter 15 Case, the Isle of Man Scheme Proceeding should be recognized as a

foreign main proceeding under section 1517 of the Bankruptcy Code because, as set forth above,

(a) the Chapter 15 Petition and related documents meet the procedural requirements under

section 1515(b) of the Bankruptcy Code; (b) the Chapter 15 Petition was filed by the Foreign

Representatives within the meaning of section 101(24) of the Bankruptcy Code; and (c) the Isle

of Man Scheme Proceeding is a foreign main proceeding under section 1502(4) of the

Bankruptcy Code, and recognition is not contrary to the narrowly-construed public policy

exception in section 1506 of the Bankruptcy Code.  Indeed, recognition of the Isle of Man

Scheme Proceeding as a foreign main proceeding serves the public interest by facilitating

international cooperation and ensuring fair and efficient cross-border restructurings in the

interests of the Company, all creditors, and other interested parties.  *See* 11 U.S.C. §§ 1501 and

1508.

Upon recognition of the Isle of Man Scheme Proceeding as a foreign main proceeding,

the Company is automatically entitled to the protections granted under section 1520 of the

Bankruptcy Code, including the application of the automatic stay under section 362 of the

Bankruptcy Code, among other relief.  *See* 11 U.S.C. § 1520(a) (citing 11 U.S.C. § 362).  To

ensure maximum effectiveness of the Isle of Man Scheme, the Foreign Representatives request

the Court's additional assistance to enforce the Isle of Man Scheme and Sanction Order in the

United States and to grant additional relief to preserve the Company's assets and ensure fair and

16

efficient administration of the Company's assets for the benefit of its creditors.  *See* 11 U.S.C. §§

1507(a), 1521(a).  As further explained below, such discretionary relief is appropriate under the

circumstances and consistent with principles of comity and public policy.

### A.    Principles of Comity Support Recognition and Enforcement of the Isle of Man Scheme and Sanction Order

Principles of comity are the hallmark of chapter 15 proceedings and favor recognition of

and enforcement of the Isle of Man Scheme and Sanction Order in the United States.[15]  *See*

*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir. 1987) ("American

courts have long recognized the need to extend comity to foreign bankruptcy proceedings."); *see*

*also In re Metcalfe & Mansfield Alternative Invs.*, 421 B.R. 685, 698 (Bankr. S.D.N.Y. 2010)

(absent "'either prejudice in the [foreign] court, or in the system of laws under which it is

sitting,' the [foreign] judgment should be enforced and not 'tried afresh'" (quoting *Hilton*, 159

U.S. at 202–03)).  In the insolvency context, comity is especially warranted because in collective

proceedings such as this Chapter 15 Case, "the assets of a debtor are dispersed in an equitable,

orderly, and systematic manner, rather than in a haphazard, erratic, or piecemeal fashion.

Consequently, American courts have consistently recognized the interest of foreign courts in

liquidating or winding up the affairs of their own domestic business entities."  *Cunard S.S. Co.*

*Ltd. v. Salen Reefer Services AB*, 773 F.2d 452, 456–58 (2d Cir. 1985) (citing *Hilton*, 159 U.S. at

163–64).  Comity is withheld only in the rarest of circumstances not applicable here.  *See id.* at

459 (e.g., comity may be denied if American creditors are treated unfairly).

---

[15]   The Supreme Court has defined comity as "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 143 (1895).

Congress intended that chapter 15 continue this longstanding tradition of international comity in cross-border insolvency proceedings. *See* 11 U.S.C. § 1501 generally. Accordingly, courts "should be guided by principles of comity and cooperation with foreign courts in deciding whether to grant the foreign representative additional post-recognition relief." *In re Atlas Shipping A/S*, 404 B.R. 726, 738 (Bankr. S.D.N.Y. 2009); *see also In re Rede Energia S.A.*, 515 B.R. 69, 91 (Bankr. S.D.N.Y. 2014) (courts fashion chapter 15 relief "in accordance with comity"); *In re Metcalfe & Mansfield Alternative Invs.*, 421 B.R. at 697 (post-recognition relief "'is largely discretionary and turns on the subjective factors that embody principles of comity'" (quoting *In re Bear-Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 333 (S.D.N.Y. 2008))). Indeed, "Chapter 15 emanates from and was designed around this central concept of comity. . . ." *In re Fairfield Sentry Ltd.*, Case No. 10-13164, 2013 Bankr. LEXIS 136, at *31 (Bankr. S.D.N.Y. Jan. 10, 2013) (citing several provisions of chapter 15 in support of cooperation with foreign courts and international comity); *see also CT Inv. Mgm't Co., LLC v. Cozumel Caribe, S.A. de C.V. (In re Cozumel Caribe S.A. de C.V.)*, 482 B.R. 96, 113 (Bankr. S.D.N.Y. 2012) ("A central tenet of chapter 15 is the importance of comity in cross-border insolvency proceedings."). Reflecting the importance of comity in chapter 15 proceedings under the Bankruptcy Code, if a court grants recognition, it "shall grant comity or cooperation to the foreign representative," subject to limitations not applicable here. 11 U.S.C. § 1509(b)(3); *see* 11 U.S.C. § 1501(a)(1).

Comity is often granted when the foreign proceeding and the orders issued to enforce the proceeding originate from a common law jurisdiction. "'[W]hen the foreign proceeding is in a sister common law jurisdiction with procedures akin to our own, comity should be extended with less hesitation, there being fewer concerns over the procedural safeguards employed in those

foreign proceedings.'" *In re Metcalfe & Mansfield Alternative Invs.*, 421 B.R. at 698 (quoting *In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd., Inc.*, 238 B.R. 25, 67 (Bankr. S.D.N.Y. 1999), *aff'd*, 275 B.R. 699 (S.D.N.Y. 2002)). As stated above in Section I.C, and in the Unsworth Declaration, the Isle of Man is a common law jurisdiction and its insolvency law governing the Isle of Man Scheme is akin to other common law jurisdictions, especially the United Kingdom. (Unsworth Decl. ¶ 12.) Recognition of the Isle of Man Scheme, a consensual, and arm's-length restructuring sanctioned and approved by the Isle of Man Court in the Sanction Order, encourages international cooperation in cross-border insolvency proceedings. (Gunnerson Decl. ¶ 69.) Given the frequent extension of comity to English and other common law schemes of arrangement,[16] and that the Isle of Man Scheme is a mirror-image of the related English Scheme approved by the English Court, the Court should exercise comity here and recognize and enforce the Isle of Man Scheme.

**B.    The Additional Relief Sought to Enforce the Isle of Man Scheme and Sanction Order and Protect the Company's U.S. Assets Is Authorized and Appropriate in this Chapter 15 Case**

Chapter 15 includes two sections, 1507 and 1521, that could support the Court's granting of additional, discretionary relief upon recognition to enforce foreign orders and proceedings consistent with principles of comity and cooperation with foreign courts. Although courts may differ on their approach to the interplay between section 1507 and section 1521 of the Bankruptcy Code,[17] either provision provides the Court with the authority to enforce the Isle of

---

[16] *See* supra note 12 (listing a sample of chapter 15 cases recognizing English schemes and other English or common law-based proceedings as foreign main proceedings).

[17] After granting the relief under section 1507, the *Sino-Forest* court declined to decide whether section 1521 would provide a basis for the requested relief and did not apply the three-step approach described in the Fifth Circuit's decision in *In re Vitro S.A.B. de C.V.*, 701 F.3d 1031, 1054 (5th Cir. 2012). *In re Sino-Forest Corp.*, 501 B.R. 655, 663 n.3 (Bankr. S.D.N.Y. 2013). *But see In re Cozumel Caribe, S.A. de C.V.*, 482 B.R. at 111 (concluding that because section 1521 permitted the relief, it was "unnecessary to look to section 1507 for such authority"). A

Man Scheme and Sanction Order upon recognition, subject to the public policy exception set

forth in section 1506 of the Bankruptcy Code.  Here, where the Isle of Man Scheme and Sanction

Order hail from a common law jurisdiction, with familiar procedural safeguards to promote

fairness and due process, the Court should grant the requested recognition and enforcement relief

under principles of comity, whether under section 1507, section 1521, or both sections of the

Bankruptcy Code.

Upon recognition, section 1507(a) permits the Court to "provide additional assistance to a

foreign representative under this title or under other laws of the United States."  11 U.S.C. §

1507(a).  The Court, when determining whether to provide additional assistance

> shall consider whether such additional assistance, consistent with the
> principles of comity, will reasonably assure—
>
>> (1) just treatment of all holders of claims against or
>> interests in the debtor's property;
>>
>> (2) protection of claim holders in the United States against
>> prejudice and inconvenience in the processing of claims in
>> such foreign proceeding;
>>
>> (3) prevention of preferential or fraudulent dispositions of
>> property of the debtor;
>>
>> (4) distribution of proceeds of the debtor's property
>> substantially in accordance with the orders prescribed by
>> this title; and
>>
>> (5) if appropriate the provisions of an opportunity for a
>> fresh start for the individual that such foreign proceeding
>> concerns.

11 U.S.C. § 1507(b).  The principles of comity are therefore integral to the Court's analysis of

whether to grant additional assistance under section 1507 of the Bankruptcy Code.  *See In re*

---

bankruptcy court recently commented on the lack of clarity on the interplay between sections 1507 and 1521 and observed that it "remains to be seen" whether the Fifth Circuit's *Vitro* three-part approach would be embraced by the courts.  *In re Rede Energia S.A.*, 515 B.R. at 91.  Nevertheless, the *Rede Energia* court concluded that chapter 15 "provides courts with broad, flexible rules to fashion relief that is appropriate to effectuate the objectives of the chapter in accordance with comity."  *Id.* (citations omitted).

*Metcalfe & Mansfield Alternative Invs.*, 421 B.R. at 696 ("Section 1507 directs the court to

consider comity in granting additional assistance to the foreign representative").

Also upon recognition, section 1521 provides that "where necessary to effectuate the

purpose of this chapter and to protect the assets of the debtor or the interests of the creditor," and

at the request of the foreign representative, the Court may "grant any appropriate relief,"

including—

> (1) staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520(a);
>
> (2) staying execution against the debtor's assets to the extent it has not been stayed under section 1520(a);
>
> (3) suspending the right to transfer, encumber or otherwise dispose of any assets of the debtor to the extent this right has not been suspended under section 1520(a);
>
> . . . .
>
> (5) entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the foreign representative or another person, including an examiner, authorized by the court;
>
> . . . .
>
> (7) granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a).

11 U.S.C. § 1521(a)(1)–(7).

Here, relief in support of the Isle of Man Scheme and Sanction Order under either or both

sections 1507 and 1521 of the Bankruptcy Code is warranted and consistent with well-

recognized principles of comity.  Granting the requested relief would extend protections to

enforce the terms of the Isle of Man Scheme and Sanction Order, ensure the fair and equitable

treatment of claim holders, and prevent any piecemeal litigation and potentially disruptive

attacks on the Company's assets in the United States.  (Gunnersson Decl. ¶ 69.)

1.      **Comity Warrants Recognition and Enforcement of the Isle of
Man Scheme and Sanction Order**

Granting recognition and enforcement of the Isle of Man Scheme and Sanction Order is

appropriate and necessary to ensure the fair and efficient administration of the Company's

restructuring and to protect its assets in the United States from dissident creditors and other

potential litigants.  Further, the interests of the Scheme Creditors and the Company are

"sufficiently protected" because the Isle of Man Scheme has become effective and the

Company's assets in the United States are subject to the consensual Isle of Man Scheme.  *See* 11

U.S.C. § 1522(a); *see also In re Rede Energia S.A.*, 515 B.R. at 94 (concluding that enforcement

of substantially consummated Brazilian reorganization plan "passes muster under section

1522(a) and is relief that is proper under section 1521").  Because the Isle of Man Scheme

provides creditors with due process protections, protects the Company, its assets, and the

interests of all stakeholders, and has become effective with overwhelming creditor support, the

Court should enforce the Isle of Man Scheme and Sanction Order in the Chapter 15 Case.

a.      **Due Process and Procedural Safeguards**

Numerous due process measures protect the interests of creditors.  The Isle of Man

Scheme was filed with the Isle of Man Court on October 10, 2014, two months before the Voting

Instruction Deadline on December 12, 2014.  (Gunnersson Decl. ¶¶ 60, 64.)  On October 14,

2010, the Isle of Man Court granted an order sanctioning the power of the Liquidator to propose

the Isle of Man Scheme.  (*Id*. ¶ 60.)  The Isle of Man Court then entered an order on November

18, 2014 permitting the Company, acting by the Liquidator, to convene the Isle of Man Scheme

Meeting and requiring the Liquidator, at least twenty-one days prior to that meeting, to provide

notice and distribute the solicitation materials to the Scheme Creditors.  (*Id*. ¶¶ 61–62.)

Scheme Creditors had the opportunity to attend and make objections at the Isle of Man Scheme Meeting on December 15, 2014.  (*Id.* ¶ 65.)  Seventeen Scheme Creditors attended the Isle of Man Scheme Meeting, either in person or by proxy, and unanimously voted in favor of the Isle of Man Scheme.  (*Id.* ¶ 66.)  The Isle of Man Scheme was approved by the voting Scheme Creditors.  (*Id.* ¶ 67.)  A hearing was held on December 22, 2014 at which the Isle of Man Court sanctioned the Isle of Man Scheme.  (*Id.*)  The Effective Date of the Isle of Man Scheme occurred on December 23, 2014.  (*Id.*)  Following the Effective Date, among other activities, the Liquidator made distributions under the Isle of Man Scheme and the Nominated Directors were appointed as directors of the Company.  (*Id.* ¶¶ 1–3, 8, 19.)

Where the foreign proceeding shares procedural safeguards consistent with standards of due process in the United States, the Court may comfortably enforce the Isle of Man Scheme and the Sanction Order.  *See, e.g.*, *In re Metcalfe & Mansfield Alternative Invs.*, 421 B.R. at 698 (enforcing Canadian proceeding upon acknowledging that the U.S. and Canada share common law traditions and notions of due process) (citations omitted); *In re Rede Energia S.A.*, 515 B.R. 69, 97 (Bankr. S.D.N.Y. 2014) (enforcing Brazilian reorganization upon determining that Brazilian bankruptcy law provided "meaningful protections that are similar to the protections embodied in U.S. law").  Moreover, the Court should enforce the Isle of Man Scheme and Sanction Order based on principles of comity where the enforcement would not "prejudice the rights of United States citizens or violate domestic public policy."  *See In re Sino-Forest Corp.*, 501 B.R. at 662 (quoting *In re Atlas Shipping A/S*, 404 B.R. at 733).  No such prejudice or violation is present here.

As described in the Verified Petition and the Gunnarsson and Unsworth Declarations, all Scheme Creditors are treated fairly and equitably under the Isle of Man Scheme.  (Gunnarsson

Decl. ¶ 69; Unsworth ¶¶ 35, 52–53.)  Scheme Creditors were provided the right to participate in

a claims process and restructuring proceeding consistent with the notice and hearing procedures

and other features of chapter 11 cases.  (Gunnarsson Decl. ¶¶ 25, 45, 50–51, 62–67; Unsworth

Decl. ¶¶ 32–47.)  The commonality between English-law schemes of arrangement and United

States insolvency proceedings has supported recognition and enforcement of numerous English

schemes in the past.[18]  This precedent is relevant to the recognition and enforcement of the Isle

of Man Scheme and Sanction Order, which are from a similar common law jurisdiction, and are

materially identical to the English Scheme and the English Court Order.  The same principles of

comity should apply here to enforce the Isle of Man Scheme and Sanction Order in the United

States.

### b.      Consensual Release and Related Provisions

The Isle of Man Scheme provides for certain baseline release, indemnity, and injunction

provisions, and the Deed of Settlement and Release includes a number of further releases.

(Gunnarsson Decl. ¶¶ 53–57; Exs. C, K.)  The combined aim of these provisions is to bring an

end to the litigation related to the Pre-Liquidation Transactions (except the excluded

proceedings), with the consent of each of the parties thereto.  (Gunnarsson Decl. ¶ 54.)  The

release provisions are an integral part of the consensual Isle of Man Scheme, and, indeed, the

release of complex litigation is the crux of the Isle of Man Scheme.  (*Id*. ¶ 59.)  The scope of all

releases, indemnity, and injunction provisions were fully disclosed to Scheme Creditors in the

Explanatory Statement, and the Scheme Creditors unanimously voted in favor of the Isle of Man

Scheme.  (*Id*. ¶¶ 58–59.)

---

[18]  *See* supra note 12 for a representative list of chapter 15 cases involving recognition and enforcement of English
and other common law-based schemes of arrangement.

The release provisions in the Isle of Man Scheme are permissible under section 152 of

the Companies Act.  (Unsworth. Decl. ¶¶ 59–61.)  The Isle of Man Court clearly considered the

releases as part of its consideration and sanction of the Isle of Man Scheme.  (*Id.* ¶ 61.)  Where

release and related injunction provisions are permissible under foreign law, and approved by the

foreign court, the Court should exercise comity and enforce the releases in the Chapter 15 Case.

*See In re Sino-Forest Corp.*, 501 B.R. at 662; *In re Metcalfe & Mansfield Alternative Invs.*, 421

B.R. at 696.

### c.        Recognition and Enforcement Promotes Reorganization

Recognition and enforcement of the Isle of Man Scheme and Sanction Order will give

full effect and credit to the relief granted by the Isle of Man Court, a competent foreign court

exercising proper jurisdiction in the framework of familiar common law principles, consistent

with principles of comity embodied in chapter 15 of the Bankruptcy Code.  A collective

restructuring process under the oversight of the Isle of Man Court protects all creditors,

effectuates a successful restructuring as contemplated under the Isle of Man Scheme, and

protects the equitable distribution of the Company's assets to Scheme Creditors.  Indeed, the

requested relief is very similar to that which is typically available in a chapter 11 bankruptcy

case.

Likewise, all creditors should be bound by the terms of the Isle of Man Scheme as

approved and made effective by the Isle of Man Court and the laws of the Isle of Man.  *See*

*Victrix S.S. Co. S.A.*, 825 F.2d at 714 ("Under general principles of comity as well as the specific

provisions of section 304, federal courts will recognize foreign bankruptcy proceedings provided

the foreign laws comport with due process and fairly treat claims of local creditors."); *see also*

*Canada S.Ry. Co. v. Gebhard*, 109 U.S. 527, 539 (1883) ("Unless all parties in interest, wherever

they reside, can be bound by the arrangement which it is sought to have legalized, the scheme

may fail. . . .  Under these circumstances the true spirit of international comity requires that

schemes of this character, legalized at home, should be recognized in other countries.").

Thus, recognition and enforcement of the Isle of Man Scheme and Sanction Order

promotes legal certainty for the Company and provides critical support to the Isle of Man

Scheme, the Foreign Representatives, and the Isle of Man Court to ensure the Company's

successful reorganization under the terms of the Isle of Man Scheme and Sanction Order.

### 2.     Relief Requested Meets Standards for Permanent Injunctive Relief

In support of enforcement of the Isle of Man Scheme and Sanction Order, and the

effectiveness of the compromises and releases core to the Company's successful

restructuring under the scheme, the Foreign Representative also seeks permanent

injunctive relief in this Chapter 15 Case.  To the extent standards for injunctive relief

apply here, those standards are readily met.

Injunctive relief is typically granted upon a showing of a likelihood of irreparable

harm.  Irreparable harm in the chapter 15 context may exist if there is a risk of disruption

to the orderly and fair distribution of assets through dissident creditor actions to the

prejudice of other creditors.  *See*, *e.g*., *Victrix S.S. Co., S.A*, 825 F.2d at 713–14 ("The

equitable and orderly distribution of a debtor's property requires assembling all claims

against the limited assets in a single proceeding; if all creditors could not be bound, a

plan of reorganization would fail."); *In re MMG LLC*, 256 B.R. 544, 555 (Bankr.

S.D.N.Y. 2000) ("[I]rreparable harm exists whenever local creditors of the foreign debtor

seek to collect their claims or obtain preferred positions to the detriment of other

26

creditors."); *In re Lines*, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988) ("[T]he premature

piecing out of property involved in a foreign liquidation proceeding constitutes

irreparable injury.").  As noted, the Foreign Representatives are concerned about

protecting the integrity of the Isle of Man Scheme and ensuring the fair and equitable

treatment of creditors.  Given the extent of litigation settled under the Isle of Man

Scheme, and other litigation involving the Company's indirect parent and other affiliates,

a genuine basis for concern exists that new litigation may be commenced in the United

States seeking to gain advantage with respect to the Company's substantial assets in the

United States.  Accordingly, the Foreign Representatives seek permanent injunctive relief

to protect the restructuring from dissident creditor actions.

The Court has authority to grant such permanent injunctive relief in this Chapter

15 Case.  *See*, *e.g.*, *Can. S. Ry. Co*, 109 U.S. at 539 (Canadian proceeding bound

bondholders and thus their actions in the United States "cannot be maintained"); *The

Argo Fund Ltd. v. Bd. of Dirs. of Telecom Argentina, S.A. (In re Bd. of Dirs. of Telecom

Argentina, S.A.)*, 528 F.3d 162, 175 (2d Cir. 2008) (rejecting creditor's challenge in

United States to Argentine proceedings as "contrary to our longstanding recognition that

foreign courts have an interest in conducting insolvency proceedings concerning their

own domestic business entities") (citations omitted); *In re Metcalfe & Mansfield

Alternative Invs.*, 421 B.R. at 696 (enforcing Canadian orders with third-party non-debtor

release and injunction provisions under "principles of enforcement of foreign judgments

and comity in chapter 15 cases").  Moreover, bankruptcy courts in this District have

granted permanent injunctive relief in other recent chapter 15 cases.  *See*, *e.g.*,  *In re

Zlomrex Int'l Fin. S.A.*, [Docket No. 17] (permanently enjoining scheme creditors from

taking any action to collect, recover, or offset any debt cancelled, discharged or restructured under the debtor's English scheme of arrangement); *In re Magyar Telecom, B.V.*, [Docket No. 26] (same).[19]

In sum, the requested discretionary relief to enforce the Isle of Man Scheme, including the injunctive relief of the Isle of Man Scheme, is consistent with both principles of comity applied by bankruptcy courts in chapter 15 cases and Second Circuit precedent. Without granting the requested relief, the Company, its creditors, and its stakeholders could suffer irreparable harm from an unraveling of the Isle of Man Scheme, and the heavily negotiated compromises core to the Schemes, the prospect of piecemeal litigation, and ultimately the Company's liquidation and demise.

---

[19] *See also In re JSC Alliance Bank*, Case No. 14-13194 (SHL) [Docket No. 12] (Bankr. S.D.N.Y. Dec. 22, 2014) (permanently enjoining all claimants and related parties from taking any action to collect, recover or offset any debt cancelled, discharged or restructured under the debtor's Kazakh restructuring plan); *In re Sovereign Assets Ltd.*, Case No. 14-13009 (SCC) [Docket No. 26] (Bankr. S.D.N.Y. Dec. 17, 2014) (permanently enjoining all persons and entities from seizing, exercising control over, attaching, enforcing and/or executing security interests, liens or judgments against the debtor's U.S. assets); *In re Rede Energia S.A.*, Case No. 14-10078 (SCC) [Docket No. 36] (Bankr. S.D.N.Y. Sep. 9, 2014) (permanently enjoining all entities from taking any action with respect to the debtor's U.S. assets); *In re JSC Astana-Finance*, Case No. 14-11217 (CGM) [Docket No. 17] (Bankr. S.D.N.Y. May 20, 2014) (permanently enjoining all claimants and other parties from taking any action to collect, recover or offset any debt cancelled, discharged or restructured under the debtor's Kazakh restructuring plan); *In re "BTA Bank" JSC*, No. 12-13081 (JMP) [Docket No. 20] (Bankr. S.D.N.Y. Jan. 3, 2013) (permanently enjoining all scheme creditors from taking any action to collect, recover, or offset any debt cancelled, discharged, or restructured under the debtor's Kazakh restructuring plan); *In re JSC BTA Bank*, No. 10-10638 (JMP) [Docket No. 62] (Bankr. S.D.N.Y. Jan. 6, 2011) (same); *In re Allianz Global Corporate & Specialty (France)*, [Docket No. 20] (permanently enjoining all scheme creditors from taking various actions against the debtors and their property); *In re Highlands Ins. Co. (U.K.) Ltd.*, [Docket No. 40] (permanently enjoining all scheme creditors from taking any action in contravention of the debtor's English scheme of arrangement); *In re Castle Holdco 4, Ltd.*, [Docket No. 25] (permanently enjoining all scheme creditors from taking any action inconsistent with the order sanctioning the debtors' English scheme of arrangement); *see also In re LDK Solar Co. Ltd.*, [Docket No. 44] (permanently enjoining all scheme creditors from taking any action to collect, recover, or offset any debt cancelled, discharged, or restructured under the debtor's Cayman Islands scheme of arrangement).

**C.    Recognition and Enforcement of the Isle of Man Scheme Is Not
Contrary to Public Policy**

The public policy exception established by section 1506 of the Bankruptcy Code has no

application here.  To the contrary, granting recognition of the Isle of Man Scheme Proceeding,

and the additional assistance requested by the Foreign Representatives to enforce the Isle of Man

Scheme in the United States, would advance the important public policy codified in chapter 15 to

encourage international cooperation in cross-border insolvency proceedings.  *See* 11 U.S.C. §§

1501, 1508.  Courts in this District construe the public policy exception narrowly.  *In re Sino-*

*Forest Corp.*, 501 B.R. at 665 ("[T]his public policy exception is narrowly construed." (citing *In*

*re Ephedra Prods. Liab. Litig.*, 349 B.R. 333 (S.D.N.Y. 2006))); *see also* H.R. Rep. 109-31(1),

109 Cong., 1st Sess. 2005, *reprinted in* 2005 U.S.C.C.A.N. 88, 169 at 172 ("The word

'manifestly' [used in section 1506] in international usage restricts the public policy exception to

the most fundamental policies of the United States."); *see also In re Fairfield Sentry Ltd.*, 714

F.3d at 139 (observing that the federal courts generally read the public policy exception

"'restrictively'" and invoke it "only 'under exceptional circumstances concerning matters of

fundamental importance for the enacting State'" (quoting Guide to Enactment of the

UNCITRAL Model Law on Cross-Border Insolvency ¶ 89)).

As stated above, the Isle of Man Scheme is consistent with United States bankruptcy

procedural norms for chapter 11 plans and is in no way "manifestly" contrary to United States

policy interests.  11 U.S.C. § 1506.  Scheme Creditors were treated fairly and equitably under the

Isle of Man Scheme and have been paid the Cash Distribution Amount under the Isle of Man

Scheme.  (Gunnarsson Decl. ¶¶ 51, 69.)  The Scheme Creditors had an opportunity, upon notice

and a hearing, to object to the Isle of Man Scheme (none did) and to participate in the Isle of

Man Scheme's claim process. (*Id.* ¶¶ 45, 51, 65–67.) The claim process included a proof of claim procedure and a bar date thirty-five days after the Effective Date of the Isle of Man Scheme. (*Id.* ¶ 51.) The Isle of Man Scheme was publicized in the widely-distributed Scheme Publications in Iceland, the United Kingdom, and the Isle of Man. (*Id.* ¶ 62.) Accordingly, the procedural fairness of the Isle of Man Scheme amply satisfies the public policy concerns under chapter 15.

Importantly, granting recognition of the Isle of Man Scheme as a foreign main proceeding and providing additional assistance to enforce the Isle of Man Scheme in the United States would prevent piecemeal litigation and disruption of the consensual restructuring process supported by the overwhelming majority of creditors, and therefore would ensure uniform and orderly administration. Granting such relief is also consistent with principles of international comity and best serves the important public policy interests of ensuring the fair and efficient administration of the Isle of Man Scheme and the protection and maximization of the value of the Company's assets in the United States for the benefit of its creditors globally. *See generally* 11 U.S.C. § 1501(a)(3), (a)(4).

## CONCLUSION

For the foregoing reasons, the Isle of Man Scheme Proceeding fulfills the requirements for recognition as a foreign main proceeding. The recognition and enforcement of the Isle of Man Scheme is consistent with principles of international comity and facilitates the Company's global restructuring through a collective proceeding approved by 100% of the voting Scheme Creditors. Recognition and enforcement also avoids the irreparable harm of piecemeal litigation and asset disposition that could arise if such relief is not granted by the Court. Accordingly, the

Foreign Representatives respectfully request that this Court grant the relief requested in the

Verified Petition and such further relief as may be just and proper.

*[**remainder of page left intentionally blank**]*

Dated:  New York, New York          SIDLEY AUSTIN LLP
        May 11, 2015

                                     _/s/ Danielle E. Perlman_
                                     Danielle E. Perlman
                                     787 Seventh Avenue
                                     New York, New York 10019
                                     Telephone:  (212) 839-5300

                                     - and -

                                     Jessica C.K. Boelter (*pro hac vice admission pending*)
                                     Candice L. Kline (*pro hac vice admission pending*)
                                     Matthew G. Martinez (*pro hac vice admission pending*)
                                     One South Dearborn
                                     Chicago, Illinois 60603
                                     Telephone:  (312) 853-7000

                                     *Counsel to the Foreign Representatives*