**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------- x
                                                            :
In re:                                                      :          Chapter 15
                                                            :
MURRAY HOLDINGS LIMITED,[1]                                 :          Case No. 15-11231 (MG)
                                                            :
              Debtor in a Foreign Proceeding.               :
                                                            :
---------------------------------------------------------------- x

ORDER (I) RECOGNIZING THE ISLE OF MAN SCHEME PROCEEDING AS A
FOREIGN MAIN PROCEEDING, (II) RECOGNIZING AND ENFORCING THE ISLE
OF MAN SCHEME OF ARRANGEMENT AND THE ORDER OF THE ISLE OF MAN
COURT SANCTIONING THE ISLE OF MAN SCHEME OF ARRANGEMENT (III)
CLOSING THIS CHAPTER 15 CASE AND (IV) GRANTING CERTAIN RELATED
RELIEF

Upon the Verified Petition[2] and motion [Docket No. 3] of Arnaldur Jon

Gunnarsson and Arnar Scheving Thorsteinsson, in their capacities as the Nominated Directors

and authorized foreign representatives (in such capacities, the "Nominated Directors" or

"Foreign Representatives") of Murray Holdings Limited (the "Company") for entry of an order

(this "Order"), after notice and a hearing, (a) granting recognition of the Isle of Man Scheme

Proceeding as a foreign main proceeding, (b) recognizing, enforcing and giving effect to the Isle

of Man Scheme and the Isle of Man Sanction Order in the United States, (c) closing this Chapter

15 Case, and (d) granting such other and further relief as the Court deems just and proper; and

upon consideration of the Verified Petition and all pleadings related thereto, including (i) the

*Memorandum of Law in Support of Chapter 15 Petition for Recognition of Foreign Main*

*Proceeding and Related Relief* [Docket No. 8] (the "Memorandum of Law"), (ii) the *Declaration*

*of Arnaldur Jon Gunnarsson in Support of Chapter 15 Petition and Requested Relief* [Docket

---

[1] The Isle of Man registered number of Murray Holdings Limited is 080684C.  The mailing address and registered
office of Murray Holdings Limited is 69 Athol Street, Douglas, Isle of Man IM1 1JE.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed such terms in the Verified Petition.

No. 6] (the "Gunnarsson Declaration"), and (iii) the *Declaration of Victoria Unsworth in Support*
*of Chapter 15 Petition and Requested Relief* [Docket No. 7] (the "Unsworth Declaration"); and
the Court finding that: (a) the Court has jurisdiction to consider this matter pursuant to 28 U.S.C.
§§ 157 and 1334, sections 109 and 1501 of the Bankruptcy Code, and the Amended Standing
Order of Reference of the United States District Court for the Southern District of New York
(Preska, C.J.) dated January 31, 2012, (b) venue is proper before this Court pursuant to 28 U.S.C.
§ 1410, (c) this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and (d) notice of
the Verified Petition was due and proper under the circumstances and no further or other notice
need be given; and a hearing having been held to consider the relief requested in the Verified
Petition on June 25, 2015 and upon the record of the hearing and all of the proceedings had
before the Court; and the Court having found and determined that the relief sought in the
Verified Petition is consistent with the purpose of chapter 15 of the Bankruptcy Code and that
the legal and factual bases set forth in the Verified Petition, the Memorandum of Law, the
Gunnarsson Declaration and the Unsworth Declaration establish just cause for the relief granted
herein; and it appearing that the relief requested in the Verified Petition is in the best interest of
the Company, its estate, its creditors and other parties in interest; and after due deliberation and
sufficient cause appearing therefor;

**THIS COURT HEREBY FINDS AND DETERMINES THAT:**

A.    The findings and conclusions set forth herein constitute this Court's
findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy
Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy
Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law,

they are adopted as such.  To extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

      B.      The legal and factual bases set forth in the Verified Petition, the Memorandum of Law, the Gunnarsson Declaration and the Unsworth Declaration establish just cause for the relief granted herein, and the relief requested in the Verified Petition is in the best interest of the Company, its estate, its creditors and other parties in interest.

      C.      The relief granted hereby is necessary to effectuate the purposes and objectives of chapter 15 of the Bankruptcy Code and to protect the Company and interests of its creditors and other parties in interest.

      D.      The Foreign Representatives are persons within the meaning of section 101(41) of the Bankruptcy Code and are the duly appointed foreign representatives of the Company within the meaning of section 101(24) of the Bankruptcy Code.

      E.      The Company's Chapter 15 Case was properly commenced pursuant to sections 1504 and 1515 of the Bankruptcy Code.

      F.      The Chapter 15 Petition, the Verified Petition and the related documents filed by the Company on the Petition Date meet each of the requirements of section 1515 of the Bankruptcy Code and Bankruptcy Rule 1007(a)(4).

      G.      The Isle of Man Scheme Proceeding is a foreign proceeding within the meaning of section 101(23) of the Bankruptcy Code.

      H.      The Isle of Man Scheme Proceeding is entitled to recognition by this Court pursuant to section 1517(a) of the Bankruptcy Code.

      I.      The Isle of Man Scheme Proceeding is pending in the Isle of Man, which is the location of the Company's center of main interests, and, as such, is a foreign main

proceeding pursuant to section 1502(4) of the Bankruptcy Code and is entitled to recognition as a foreign main proceeding pursuant to section 1517(b)(1) of the Bankruptcy Code.

J.      The Foreign Representatives and the Company are entitled to all the relief provided pursuant to section 1520 of the Bankruptcy Code.

K.      The Foreign Representatives are entitled to the relief expressly set forth in 11 U.S.C. §§ 1521(a) and (b) that is granted hereby.

L.      The relief granted hereby is consistent with the purpose of chapter 15 of the Bankruptcy Code, necessary and appropriate, in the interests of the public and international comity, consistent with the public policy of the United States, warranted pursuant to sections 105, 350, 362, 1507, 1515-1517 and 1519-1522 of the Bankruptcy Code, Bankruptcy Rule 5009(c) and Local Rule 5009-2, and will not cause any hardship to any parties in interest that is not outweighed by the benefits of granting relief.

M.      Absent the relief granted hereby, the Company may be subject to the prosecution of judicial, quasi-judicial, arbitration, administrative or regulatory actions or proceedings against the Company or its property, thereby interfering with and causing harm to, the Company, its creditors, and other parties in interest in the Isle of Man Scheme Proceeding and, as a result, the Company, its creditors and such other parties in interest would suffer irreparable injury for which there is no adequate remedy at law.

N.      Absent the requested relief, the efforts of the Company, the Isle of Man Court and the Foreign Representatives in conducting the Isle of Man Scheme Proceeding and effectuating the Isle of Man Scheme may be thwarted by the actions of certain creditors, a result inimical to the purposes of chapter 15 as reflected in section 1501(a) of the Bankruptcy Code.

O.    Each of the injunctions contained in this Order (i) is within the Court's jurisdiction, (ii) is essential to the success of the Isle of Man Scheme, (iii) is an integral element of the Isle of Man Scheme and/or to its effectuation, (iv) confers material benefits on, and is in the best interests of, the Company and its creditors, including without limitation the Scheme Creditors (as such term is defined in the Isle of Man Scheme), and (v) is important to the overall objectives of the Company's restructuring.

P.    The public interest will be served by the relief granted herein.

**NOW, THEREFORE, IT IS HEREBY:**

ORDERED, that the Verified Petition is GRANTED; and it is further

ORDERED, that any objections to the Verified Petition that have not been withdrawn or resolved are overruled; and it is further

ORDERED, that the Isle of Man Scheme Proceeding is hereby recognized as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code; and it is further

ORDERED, that Arnaldur Jon Gunnarsson and Arnar Scheving Thorsteinsson, in their capacity as the Nominated Directors, are the duly appointed foreign representatives of the Company within the meaning of section 101(24) of the Bankruptcy Code.

ORDERED, that the Isle of Man Sanction Order (and any amendments or extensions thereof as may be granted from time to time by the Isle of Man Court) and the Isle of Man Scheme are hereby enforced on a final basis and given full force and effect in the United States; and it is further

ORDERED, that the Isle of Man Sanction Order, a copy of which is attached hereto as Exhibit 1, and the Isle of Man Scheme, a copy of which is attached to the Isle of Man Sanction Order, and all other agreements related thereto, and the transactions consummated or to

be consummated thereunder, are hereby recognized, granted comity and given full force and

effect in the United States and are binding and enforceable on all entities (as that term is defined

in section 101(15) of the Bankruptcy Code) in accordance with their terms, and such terms shall

be binding and fully enforceable on the Scheme Creditors, as well as their respective heirs,

successors, assigns, trustees, subsidiaries, affiliates, officers, directors, agents, employees,

representatives, attorneys, beneficiaries, guardians and similar officers, or any persons claiming

through or in the right of any such persons or entities (collectively, the "Related Parties")

whether or not they actually agreed to be bound by the Isle of Man Scheme or participated in the

Isle of Man Scheme Proceeding; and it is further

ORDERED, that all Scheme Creditors and Related Parties are permanently

enjoined from commencing or continuing in any manner, directly or indirectly, including by way

of counterclaim, any action, suit or other proceeding (including, without limitation, arbitration,

mediation or any judicial, quasi-judicial, or administrative action, proceeding or process

whatever in any judicial, arbitral, administrative or other forum), employing any process, or

performing any act to collect, recover or offset (except as expressly provided in the Isle of Man

Scheme) any debt cancelled, discharged or restructured under the Deed of Settlement and

Release or the Isle of Man Scheme and/or as a result of Isle of Man law relating to the Isle of

Man Scheme, or seeking any discovery related thereto; provided, however, that if such debt is

restructured under the Isle of Man Scheme and/or such law, such injunction applies only to the

extent that commencing or continuing such action, employing such process or performing such

act is inconsistent with the Isle of Man Scheme and/or such law; and it is further

ORDERED, that all Scheme Creditors and Related Parties are permanently

enjoined from commencing or continuing any action (including, without limitation, arbitration,

mediation or any judicial, quasi-judicial, or administrative action or proceeding or process

whatever in any judicial, arbitral, administrative or other forum), including by way of

counterclaim, employing any process, or performing any act, to collect, recover or offset (except

as expressly provided in the Isle of Man Scheme) any debt cancelled, discharged or restructured

under Deed of Settlement and Release or the Isle of Man Scheme and/or as a result of Isle of

Man law relating to the Isle of Man Scheme, against property of any entity released pursuant to

the Deed of Settlement and Release or the Isle of Man Scheme within the territorial jurisdiction

of the United States, including (i) enforcing, levying, attaching (including any prejudgment

attachment), collecting or otherwise recovering by any manner or means, whether directly or

indirectly, any judicial, quasi-judicial or administrative judgment, award, determination, decree,

assessment, garnishment or order, against any entity released pursuant to the Deed of Settlement

and Release or the Isle of Man Scheme or their respective property, or any direct or indirect

transferee of or successor to any property of any entity released pursuant to the Deed of

Settlement and Release or the Isle of Man Scheme, or any property of such transferee or

successor, or (ii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly,

any lien or encumbrance of any kind against such property; provided, however, that if such debt

is restructured under the Isle of Man Scheme and/or such law, such injunction applies only to the

extent that commencing or continuing such action, employing such process or performing such

act is inconsistent with the Isle of Man Scheme and/or such law; and it is further

ORDERED, that all Scheme Creditors and Related Parties are permanently

enjoined from (i) transferring, relinquishing or disposing of any property of any entity released

pursuant to the Deed of Settlement and Release or the Isle of Man Scheme located within the

territorial jurisdiction of the United States, or (ii) taking or continuing any act to obtain

possession of, comingle, or exercise control over, such property, to the extent any such act under

(i) or (ii) is inconsistent with the Isle of Man Scheme and Isle of Man law relating to the Isle of

Man Scheme; and it is further

ORDERED, that all entities (as that term is defined in section 101(15) of the

Bankruptcy Code) are permanently enjoined from commencing any suit, action or proceeding in

the territorial jurisdiction of the United States to settle any dispute which arises out of any

provision of the Isle of Man Scheme and Isle of Man law relating to the Isle of Man Scheme; and

it is further

ORDERED, that all entities (as that term is defined in section 101(15) of the

Bankruptcy Code) subject to the United States Bankruptcy Court's jurisdiction are permanently

enjoined from taking any action inconsistent with the Isle of Man Scheme, including, without

limitation, against any entity released pursuant to the Deed of Settlement and Release or the Isle

of Man Scheme or against any property of any entity released pursuant to the Deed of Settlement

and Release or the Isle of Man Scheme within the territorial jurisdiction of the United States; and

it is further

ORDERED, that Scheme Creditors and Related Parties are permanently enjoined

from commencing or continuing in any manner, directly or indirectly, including by way of

counterclaim, any action, suit or other proceeding (including, without limitation, arbitration,

mediation or any judicial, quasi-judicial, or administrative action, proceeding or process

whatever in any judicial, arbitral, administrative or other forum), or employing any process,

against the Foreign Representatives (personally or in such capacity), or any entity released

pursuant to the Deed of Settlement and Release or the Isle of Man Scheme, or any of their

respective successors, assigns, agents, representatives, advisors or attorneys (collectively, the

"Company Parties") or any of them in respect of any claim or cause of action, in law or in equity,

arising out of or relating to any action taken or omitted to be taken by any of the Company

Parties as of the Effective Date in connection with this Chapter 15 Case or in preparing,

disseminating, applying for or implementing the Isle of Man Scheme or the Isle of Man Sanction

Order; and it is further

ORDERED, that no action taken by the Foreign Representatives in preparing,

disseminating, applying for, implementing or otherwise acting in furtherance of the Isle of Man

Scheme, or any order entered in respect of the Chapter 15 Case, any further order for additional

relief in the Chapter 15 Case, or any adversary proceedings or contested matters in connection

therewith, will be deemed to constitute a waiver of any immunity afforded to the Nominated

Directors as Foreign Representatives, including without limitation pursuant to section 1510 of

the Bankruptcy Code; and it is further

ORDERED, that the Chapter 15 Case (In re Murray Holdings Limited, Case No.

15-11231 (MG) (Bankr. S.D.N.Y. 2015)) is hereby closed pursuant to sections 1517(d) and

350(a) of the Bankruptcy Code; and it is further

ORDERED, that a docket entry shall be made in the Chapter 15 Case reflecting

the entry of this Order; and it is further

ORDERED, that this Order is entered without prejudice to the rights of the

Foreign Representatives, the Company, or any other party-in-interest, to seek to seek to reopen

the Chapter 15 Case for cause pursuant to section 350(b) of the Bankruptcy Code; and it is

further

ORDERED, that the terms and conditions of this Order shall be immediately

effective and enforceable upon its entry; and it is further

ORDERED, that the Foreign Representatives and the Company are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order; and it is further

ORDERED, that the Foreign Representatives and the Company are authorized and empowered to take all actions necessary to implement the relief granted in this Order; and it is further

ORDERED, that the Foreign Representatives, the Company, and/or each of their successors, representatives, advisors, or counsel shall be entitled to the protections contained in sections 306 and 1510 of the Bankruptcy Code; and it is further

ORDERED, that this Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: June 25, 2015
     New York, New York

                            **/s/Martin Glenn**
                            MARTIN GLENN
                United States Bankruptcy Judge

## *EXHIBIT 1*

***Isle of Man Sanction Order with Attached Isle of Man Scheme***

CHP 10/0021

### IN THE HIGH COURT OF JUSTICE OF THE ISLE OF MAN
### CIVIL DIVISION
### CHANCERY PROCEDURE

**IN THE MATTER** of Isis Investments Limited (in liquidation)

and

**IN THE MATTER** of the Companies Act 1931

and

**IN THE MATTER** of the Application Notice of Isis Investments Limited (in liquidation) and Kaupthing hf dated 13 November 2014

**HIS HONOUR THE DEEMSTER DOYLE**
**FIRST DEEMSTER AND CLERK OF THE ROLLS**

At a Court held
on 22 December 2014

**UPON** the above styled Application by Notice dated 13 November 2014 being heard in the presence of Counsel for the Claimants Isis Investments Limited in liquidation (the "Company") and Counsel for Kaupthing hf ("Kaupthing") who also entered an appearance for Kaupthing Finance ehf ("Kaupthing Finance") AND having read the evidence filed in the proceedings including the Thirty Ninth Witness Statement of Andrew Paul Shimmin dated 18 December 2014, the Sixth Witness Statement of Peter Bruce Clucas made on 18 December 2014 and the Seventh Witness Statement of Peter Bruce Clucas made on 19 December 2014 AND having heard Counsel for the Company and for Kaupthing AND UPON the Company via its Counsel having undertaken to be bound by the Scheme of Arrangement set forth in the schedule hereto (the "Scheme") and to execute and do and procure to be executed and done all such documents, acts and things as may be necessary or desirable to be executed and done by it for the purpose of giving effect to the Scheme AND Kaupthing and Kaupthing Finance by their Counsel having undertaken to be bound by the Scheme and to execute and do and procure to be executed and done all such documents, acts and things as may be necessary or desirable to be executed and done by it for the purpose of giving effect to the Scheme AND UPON the Court being satisfied that the Scheme Creditors (as defined in the Scheme) had been given the requisite notice of the Scheme Meeting (as defined in the Order of 18 November 2014) held on 15 December 2014 and of this hearing

AND UPON there being no appearance nor written representations by or on behalf of any Scheme Creditor AND the Court being satisfied as to the fairness of the Scheme **IT IS ORDERED THAT**

1. The Court hereby sanctions the Scheme as set forth in the schedule hereto.

2. The Company, Kaupthing or their respective Counsel deliver an office copy of this Order to the registrar of companies pursuant to section 152(3) of the Companies Act 1931.

3. Kaupthing and Kaupthing Finance be bound by the terms of the Scheme.

**AND THE COURT FURTHER DECLARES THAT** for the purposes of any application for recognition of or assistance in connection with the Scheme which may be made in the British Virgin Islands and/or any state of the United States of America including, without limitation, under Chapter 15 of the United States Bankruptcy Code (but without prejudice to a decision of the Courts of either the British Virgin Islands and/or the United States of America) upon the Scheme becoming effective and by virtue of its terms:

4. Andrew Paul Shimmin, in his capacity as Scheme Supervisor (as defined in the Scheme) be the person authorised to administer the reorganisation of the Company's affairs including acting as a foreign representative in any proceedings under Chapter 15 of the United States Bankruptcy Code; and

5. The Nominated Directors (as defined in the Scheme), when appointed, will be persons authorised to act as representatives of the Company and the Scheme including acting as a foreign representative in any proceedings under Chapter 15 of the United States Bankruptcy Code.

SEAL OF THE HIGH COURT

## THE ISIS SCHEME

**IN THE HIGH COURT OF JUSTICE**          **SERIAL No. CHP 10/0021**
**OF THE ISLE OF MAN**


### IN THE MATTER OF ISIS INVESTMENTS LIMITED
### (IN LIQUIDATION)

**and**

### IN THE MATTER OF THE COMPANIES ACT 1931

---

### SCHEME OF ARRANGEMENT

**(under section 152 of the Companies Act 1931)**

---

**BETWEEN**

**ISIS INVESTMENTS LIMITED (IN LIQUIDATION)**

**(a company incorporated with limited liability under the laws of the Isle of Man with
registered number 080684C)**

**and its**

**SCHEME CREDITORS (as herein defined)**

# PART A

## PRELIMINARY

1.    **Definitions and Interpretation**

1.1    In the Isle of Man Scheme, unless the context otherwise requires or unless otherwise expressly provided for, the following capitalised expressions shall bear the following meanings:

| | |
|---|---|
| **"Accepted"** | means in relation to a New Claim, the acceptance by the Scheme Supervisor of the New Claim (or part thereof) without dispute in accordance with Clause 26 or, if the New Claim is a Disputed Claim, the determination of such New Claim (or part thereof) in accordance with Clause 27; |
| **"Action 363 Proceedings"** | means proceedings before the Chancery Division of the Court between the Company and the Former Directors, initially pursuant to claim number HC13D00363, as consolidated with the Action 599 Proceedings; |
| **"Action 599 Consent Order"** | means the consent order in respect of the Action 599 Proceedings as set out at Schedule 4 to the Isle of Man Scheme, or substantially of similar effect as regards the Scheme Creditors, Kaupthing, Kaupthing Finance and Oscatello; |
| **"Action 599 Proceedings"** | means proceedings issued before the Chancery Division of the Court between the Company and (i) Oscatello, (ii) Kaupthing, (iii) Adalsteinsson (as a representative party), (iv) Eliza and (v) Kaupthing Finance, pursuant to claim number HC09C00599; |
| **"Adalsteinsson"** | means Elfar Adalsteinsson; |
| **"Administration of Justice Act"** | means the Administration of Justice Act 1981; |
| **"Admitted Claim"** | means each of (i) the claims of the Known Scheme Creditors and marked as an "Admitted Claim" in Schedule 3 to the Isle of Man Scheme; and (ii) a New Claim which has been Accepted; |
| **"Admitted New Claims"** | means in relation to a New Claimant, the Accepted amount of its New Claim calculated as at the Record Time; |
| **"Admitted New Scheme Creditors"** | means the holders of the Admitted New Claims as at the Record Time; |

1

| | |
|---|---|
| **"Affiliates"** | means each person's employees, shareholders, parent companies, divisions, subsidiary undertakings, general and limited partners, successors and assigns (past or present), but shall, for the avoidance of doubt, exclude the Former Directors; |
| **"Aggregate Known Admitted Claims"** | means the aggregate amount of the Admitted Claims of the Known Scheme Creditors as specified in Schedule 3 to the Isle of Man Scheme; |
| **"Applicable Period"** | means (i) in relation to the Undisputed Amount the period from (and including) the Deposit Date to (but excluding) the date on which such sum is paid to Oscatello by the Company (acting by the Liquidator) in accordance with Clause 19.1(f) of this Isle of Man Scheme; or (ii) in relation to the Provisioned Amount and the Resulting Amount the period from (and including) the Deposit Date to (but excluding) the date on which there is a final determination of Oscatello's actual entitlement under the Oscatello Trust by the Court in the Revised Action 599 Proceedings and such sum is paid to Oscatello by the Company; |
| **"Application"** | means an application to the Isle of Man Court pursuant to (i) section 194 of the Isle of Man Companies Act seeking orders (amongst others) for a permanent stay of the winding up of the Company; (ii) section 190 of the Isle of Man Companies Act and Rule 179 of the Companies Act (Winding- Up) Rules 1934 seeking orders (amongst others) for a release of the Liquidator and (iii) section 194 of the Isle of Man Companies Act seeking orders (amongst others) that the Nominated Directors be appointed as directors of the Company with full power and authority to manage and control the affairs of the Company; |
| **"Bar Date"** | means 5:00pm (London time) on (i) the date falling 35 days after the Effective Date; or (ii) if the date in (i) falls on a day that is not a Business Day, the earliest Business Day; |

| | |
|---|---|
| **"Base Rate"** | means the Bank of England base rate from time to time; |
| **"Boodle Hatfield"** | means Boodle Hatfield LLP; |
| **"Boodle Hatfield Funds"** | means the amounts of £697,538.98 and £88,744.86 paid into Boodle Hatfield's client account on 24 December 2009 and 8 January 2010 respectively, on account of the deferred consideration payable under the Somerfield SPA, which together with interest at the Boodle Hatfield Funds Rate accrued on such amounts since such dates, comprise the amount of £807,377.15 as at 29 September 2014, plus interest at the Boodle Hatfield Funds Rate accrued on such amounts since that date; |
| **"Boodle Hatfield Funds Rate"** | means 0.5% per annum compounded quarterly being the interest rate as at the date of this Isle of Man Scheme on Boodle Hatfield's client account or such other rate as may apply on Boodle Hatfield's client account from time to time; |
| **"Business Day"** | means any day on which banks are open for business generally in London and the Isle of Man; |
| **"BVI"** | means the British Virgin Islands; |
| **"Callin Wild"** | means Callin Wild LLC; |
| **"Cash Distribution Amount"** | means, in relation to a Scheme Creditor's Admitted Claim, an amount equal to £0.92 per £1.00 of that Admitted Claim; |
| **"Claim"** | means all and any actions, causes of action, claims, counterclaims, suits, debts, sums of money, accounts, contracts, agreements, promises, contribution, indemnification, damages, judgments, executions, demands, Liabilities or rights whatsoever or howsoever arising, whether present, future, prospective or contingent, known or unknown, whether or not for a fixed or unliquidated amount, whether or not involving the payment of money or the performance of an act or obligation, whether arising in common law, in equity or by statute in or under the laws of the Isle of Man, Iceland, |

England and Wales or in any other jurisdiction or in any other manner whatsoever, and **"Claims"** shall be construed accordingly;

**"Claim Form"**     means the form to be completed by New Scheme Creditors or their duly authorised agents, setting out the details of their New Claims against the Company;

**"CODA"**     means the Isle of Man Company Officers (Disqualification) Act 2009;

**"Companies Act"**     means the Companies Act 2006 as applicable in England and Wales;

**"Companies Registry"**     means the companies registry maintained by the Isle of Man Department of Economic Development;

**"Company"**     means Isis Investments Limited (in liquidation), a company incorporated with limited liability and registered under the laws of the Isle of Man with registered number 080684C;

**"Conditions"'**     means the conditions to the Isle of Man Scheme set out in Clause 34 to the Isle of Man Scheme;

**"Control"**     means in relation to a body corporate, the power of a person to secure that the affairs of the body corporate are conducted in accordance with the wishes of that person: (i) by possessing more than 50% of the voting power, in or in relation to that body corporate; or (ii) by virtue of any powers conferred by the constitutional documents of the body corporate, provided that such powers are capable of being exercised at the relevant time;

**"Court"**     means the High Court of Justice of England and Wales;

**"Court Funds"**     means the funds paid into Court by the Company on the Deposit Date in the Action 599 Proceedings, which, together with interest at the Court Rate accrued on such funds since the Deposit Date and less the sum of £5,000,000 paid out to the Liquidator on or about 3 February 2012 comprises the amount of £127,607,728.25 as at 17 October 2014, plus

interest at the Court Rate accrued on such sum since that date;

"Court Order"

means a sealed copy of the order of the Court sanctioning the English Scheme;

"Court Rate"

means 0.3% per annum being the interest rate as at the date of this Isle of Man Scheme on a Court Funds Office basis account or such other rate as may apply on a Court Funds Office basis account from time to time;

"Deed of Settlement and Release"

means the deed of settlement and release to be entered into by (amongst others) the Company, Kaupthing, Kaupthing Finance, the Sundry Creditors, Oscatello, the Liquidator and the Scheme Creditors, as set out in Schedule 2 to be governed by the laws of England and Wales;

"Deposit Date"

means 2 March 2009, being the date the Company paid the Court Funds into Court in the Action 599 Proceedings;

"Disputed Claim"

means a New Claim that is disputed under Clause 27;

"Disputed Funds"

means the aggregate amount of (i) the Court Funds; and (ii) the Boodle Hatfield Funds;

"Dispute Proceedings"

means in respect of a Disputed Claim, proceedings issued in the Isle of Man Court as if the Disputed Claim were an application to reverse or vary a liquidator's rejection of a proof of debt made pursuant to Rule 85 of the Isle of Man Companies (Winding Up) Rules 1934;

"Distribution Conditions"

means the conditions to the occurrence of the Initial Distribution Date referred to in Clause 33;

"Distribution Confirmation Deed"

means a completed form in the form distributed to Scheme Creditors by the Liquidator confirming (amongst other things) the Settlement Instructions for each Scheme Creditor;

"Distribution Date"

means the date by which (i) all distributions of the Cash Distribution Amount have been made to all Scheme Creditors (including New Claimants with Admitted Claims); (ii) the

|  | Kaupthing Facility Agreement between the Company and Kaupthing has become effective; (iii) the KF Facility Agreement between the Company and Kaupthing Finance has become effective; (iv) the Company has paid to Oscatello the Undisputed Amount and (v) the Company (acting by the Liquidator) has paid the Samarand Distribution Amount into the Samarand Escrow Account in accordance with an order or direction from the Isle of Man Court in the Interpleader Proceedings, subject to Clause 29.4 of this Isle of Man Scheme; |
|---|---|
| **"Effective Date"** | means the date on which the Conditions at Clause 34 hereto are satisfied; |
| **"Eliza"** | means Eliza Limited (in liquidation), a company incorporated in the BVI; |
| **"English Scheme"** | means the scheme of arrangement in respect of the Company under Part 26 of the Companies Act in its present form or with or subject to any modification, addition or condition approved or imposed by the Court or approved in accordance with the terms of the English Scheme; |
| **"English Scheme Steps"** | has the meaning given to it in Clause 19 of the English Scheme; |
| **"Explanatory Statement"** | means the explanatory statement dated 18 November 2014 of the Company circulated to the Scheme Creditors and in connection with the English Scheme pursuant to section 897 of the Companies Act and the Isle of Man Scheme pursuant to the Isle of Man Companies Act; |
| **"Former Directors Advisers"** | means the professional advisers to the Former Directors, including Nabarro LLP and Slater & Gordon LLP; |
| **"Former Directors"** | means Sigurdur Einarsson, David Karran and Moira McHarrie; |
| **"Framework Agreement"** | means the framework agreement dated 19 December 2007 between Kaupthing, the Company, NOIIE, the TDT Trustees, Eliza, Oscatello and Silverville; |

| | |
|---|---|
| "Icelandic Consent Orders" | means the consent orders in respect of the Icelandic Proceedings as set out at Schedule 5 to the Isle of Man Scheme; |
| "Icelandic Court" | means the District Court of Reykjavik; |
| "Icelandic Proceedings" | means proceedings issued in Iceland between (i) Kaupthing; and (ii) certain of the Sub-Participants pursuant to the claim numbers X-587/2012; X-588/2012; X-589/2012; X-590/2012; X-591/2012; X-593/2012; X-594/2012; X-596/2012; X-597/2012; X-598/2012; X-599/2012; X-600/2012; X-601/2012; X-602/2012; X-603/2012; X-604/2012; and X-605/2012; |
| "Initial Distribution Date" | means the date falling five Business Days after the date the Distribution Conditions have been satisfied; |
| "Initial Equity Participation Amount" | means the value of the Company's holding of the Tazamia B Shares as sub-participated to the Known Scheme Creditors pursuant to the Sub-Participation Agreements; |
| "Initial Interpleader Relief" | means an order or direction from the Isle of Man Court in the Interpleader Proceedings for the Company (acting by the Liquidator) to pay the Samarand Distribution Amount into the Samarand Escrow Account; |
| "Initial Sub-Participation Amount" | means the amount initially invested by the Known Scheme Creditors under the Sub-Participation Agreements as set out in Schedule 3 to this Isle of Man Scheme; |
| "Interpleader Proceedings" | means an application to be filed by the Company in the Isle of Man Court under Part 13, Chapter 3 of the Isle of Man Rules of Court in respect of the Samarand Distribution Amount in accordance with Clause 19.1(d) of this Isle of Man Scheme; |
| "Investec" | means Investec Trust (Guernsey) Limited; |
| "IOM Consent Order" | means the consent order in respect of the Isle of Man Proceedings as set out at Schedule 6 to the Isle of Man Scheme or substantially of similar |

|  |  |
|---|---|
|  | effect as regards Kaupthing and Kaupthing Finance; |
| **"IOM Scheme Steps"** | has the meaning given to it in Clause 19 of this Isle of Man Scheme; |
| **"Isle of Man Companies Act"** | means the Companies Act 1931, as amended from time to time; |
| **"Isle of Man Companies Registry"** | means the companies registry maintained by the Isle of Man Department of Economic Development; |
| **"Isle of Man Court"** | means the High Court of Justice of the Isle of Man; |
| **"Isle of Man Court Order"** | means a sealed copy of the order of the Isle of Man Court sanctioning the Isle of Man Scheme; |
| **"Isle of Man Proceedings"** | means proceedings issued in the Isle of Man between (i) the Company; (ii) Kaupthing; (iii) Kaupthing Finance; and (iv) the Former Directors, pursuant to serial number ORD 12/0036; |
| **"Isle of Man Rules of Court"** | means the Isle of Man Rules of the High Court of Justice 2009 (as amended); |
| **"Isle of Man Scheme"** | means this scheme of arrangement in respect of the Company under section 152 of the Isle of Man Companies Act in its present form or with or subject to any modification, addition or condition approved or imposed by the Isle of Man Court or approved in accordance with the terms of the Isle of Man Scheme; |
| **"Kaupthing"** | means Kaupthing hf., a company incorporated in Iceland with company number 560882-0419, acting by its Winding up Committee; |
| **"Kaupthing Admitted Claim"** | means the amount of £177,278,839.44, being the amount owing by the Company to Kaupthing, as at the Record Time, and admitted by the Scheme Supervisor in accordance with Clause 14 of this Isle of Man Scheme; |
| **"Kaupthing Distribution Amount"** | means, in relation to the Kaupthing Proof of Debt, an amount equal to £0.92 for £1.00 of the |

Kaupthing Admitted Claim, which equals to £163,096,532.29;

**"Kaupthing Facility Agreement"** means the facility agreement to be entered into between Kaupthing and the Company in accordance with Clause 31.8 of the Isle of Man Scheme in the form set out in Appendix 9 to the Deed of Settlement and Release;

**"Kaupthing Finance"** means Kaupthing Finance ehf., a company incorporated in Iceland with company number 510505-0690;

**"Kaupthing Group"** means Kaupthing and its Subsidiaries;

**"Kaupthing Finance English Proceedings"** means proceedings issued before the Chancery Division of the Court between the Company and Kaupthing Finance pursuant to claim number HC11CO4539;

**"Kaupthing Proof of Debt"** means the proof of debt dated 3 December 2010 and lodged by Kaupthing in the liquidation of the Company;

**"KF Admitted Claim"** means the amount of £141,519,871, being the amount owing by the Company to Kaupthing Finance as at the Record Time, and admitted by the Scheme Supervisor in accordance with Clause 14 of this Isle of Man Scheme;

**"KF Consent Order"** means the consent order in respect of Kaupthing Finance English Proceedings as set out at Schedule 7 to the Isle of Man Scheme;

**"KF Distribution Amount"** means, in relation to the KF Proof of Debt, an amount equal to £0.92 for £1.00 of the KF Admitted Claim, which equals to £130,198,281.32;

**"KF Facility Agreement"** means the facility agreement to be entered into between Kaupthing Finance and the Company in accordance with Clause 31.8 of the Isle of Man Scheme in the form set out in Appendix 9 to the Deed of Settlement and Release;

**"KF Proof of Debt"** means the proof of debt dated 3 December 2010 and lodged by Kaupthing Finance in the liquidation of the Company;

| | |
|---|---|
| **"Kirna"** | means Kirna ehf, a company incorporated in Iceland, with company number 670290-1079; |
| **"Known Scheme Claims"** | means, in relation to a Known Scheme Creditor, any and all claims that a Known Scheme Creditor has, or may have, against the Company; |
| **"Known Scheme Creditors"** | means those persons listed at Schedule 3 to the Isle of Man Scheme; |
| **"Liability"** | means any debt, liability or obligation whatsoever, whether it is present, future, prospective or contingent, whether or not its amount is fixed or undetermined, whether or not it involves the payment of money or the performance of an act or obligation, and whether it arises at common law, in equity or by statute, in or under the laws of England and Wales, the BVI, the Isle of Man, Iceland or any other law or jurisdiction, or in any other manner whatsoever and **"Liabilities"** shall be construed accordingly; |
| **"Liquidator"** | means Andrew Paul Shimmin of Shimmin, Wilson & Co, in his capacity as liquidator of the Company; |
| **"Litigation Consent Orders"** | means the Action 599 Consent Order, the IOM Consent Order, the KF Consent Order, the Icelandic Consent Orders and the Zaria Consent Order; |
| **"Longstop Date"** | means 30 June 2015; |
| **"Loss"** | means any loss, cost, damage, award, charge, interest, penalty, fine, expense and/ or other liability; |
| **"Medino"** | means Medino Promotion S.A., a company incorporated in the BVI, with company number 606.130; |
| **"New Claim"** | means a Claim against the Company as at the Record Time, other than (i) a Known Scheme Claim; (ii) the claim of Kaupthing that is currently subject to the Kaupthing Proof of Debt and the Action 599 Proceedings; (iii) the claim of Kaupthing Finance that is currently the subject of the KF Proof of Debt and the Action 599 Proceedings; (iv) a Sundry Claim; (v) the |

|                              |                                                                                                                                                                 |
|------------------------------|-----------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                              | claim of Oscatello that is currently subject to the Oscatello Proof of Debt and the Action 599 Proceedings, and any claim to interest thereon which may be brought in the Revised 599 Proceedings; and (vi) any claim of the Former Directors. |
| "New Claimant"               | means a person who has submitted a Claim Form;                                                                                                                   |
| "New Facility Agreements"    | means the Kaupthing Facility Agreement and the KF Facility Agreement;                                                                                            |
| "New Scheme Creditor"        | means the holders of a New Claim;                                                                                                                                |
| "NOIIE"                      | means New Ortland II Equities Limited;                                                                                                                           |
| "Nominated Account"          | means the account of the Company under the control of the Liquidator and held with Barclays Private Clients International Limited (Isle of Man), sort code 20-26-74, account no: 93579719, a/c name: 'Isis No 2 Account'; |
| "Nominated Directors"        | means the persons nominated by Kirna to be on the board of directors of the Company;                                                                             |
| "Non-Kaupthing Claimant"     | means any person, company, trustee, beneficiaries of a trust, body corporate, partnership, financial institution, unincorporated entity, but shall not include Kaupthing and its Subsidiaries provided that those Subsidiaries are subject to Kaupthing's Control and/ or are not under the control of an administrator, liquidator, provisional liquidator, receiver or any other analogous insolvency process in any jurisdiction; |
| "Ongoing Litigation"         | means the Action 599 Proceedings, the Kaupthing Finance English Proceedings, the Isle of Man Proceedings, the Zaria Global Proceedings, and the Proof of Debt Proceedings; |
| "Oscatello"                  | means Oscatello Investments Limited (in liquidation), a company incorporated in the BVI with company number 1410795;                                             |
| "Oscatello Proof of Debt"    | means the proof of debt lodged by Oscatello in the liquidation of the Company and dated 11 May 2010 and revised on 19 November 2010;                             |

| | |
|---|---|
| **"Oscatello Trust"** | means the purported trust granted by the Company for the benefit of Oscatello in respect of Oscatello's portion of the Violet Economic Return under Clause 6 of the Framework Agreement; |
| **"Party"** | means a party to this Isle of Man Scheme or other person consenting to be bound by this Isle of Man Scheme and includes any successors and assigns; |
| **"Personnel"** | means, in relation to any person, its current and former officers, partners, directors, employees, staff, agents and counsel; |
| **"Pillar"** | means Pillar Securitisation S.à r.l., a company incorporated under the laws of Luxembourg with company number B147031; |
| **"POD Consent Order"** | means the consent order in respect of the Proof of Debt Proceedings as set out at Schedule 9 to the Isle of Man Scheme; |
| **"Proceeding"** | means any process, suit, action, legal or other proceeding including any arbitration, mediation, alternative dispute resolution, judicial review, adjudication, demand, execution, restraint, forfeiture, re-entry, seizure, lien, enforcement of judgment, enforcement of any security or enforcement of any letter of credit; |
| **"Proof of Debt Proceedings"** | means proceedings in the Isle of Man pursuant to serial number CHP 10/0021 between the Company and (i) Kaupthing concerning the Kaupthing Proof of Debt; (ii) Kaupthing Finance concerning the KF Proof of Debt; and (iii) Oscatello concerning the Oscatello Proof of Debt; |
| **"Provisioned Amount"** | means the amount of £68,510,743 plus interest at the Court Rate accrued on such sum over the Applicable Period, being the maximum amount of Oscatello's entitlement under the Oscatello Trust; |
| **"Record Time"** | means 5:00 pm (London time) on 2 March 2010; |
| **"Redford"** | means the Redford Australian Unit Trust; |

| | |
|---|---|
| **"Redford Transaction"** | means the investment in Redford and the related investment in Spirit; |
| **"Released Advisers"** | means the professional advisers to the Company and its creditors, including Boodle Hatfield LLP, Cains Advocates Limited, Berwin Leighton Paisner LLP, Logos Legal Services Limited, Sidley Austin LLP, Advocates Smith Taubitz Unsworth Ltd and Skadden, Arps, Slate, Meagher & Flom (UK) LLP; |
| **"Resulting Amount"** | means the sum of £39,940,630 plus interest at the Court Rate accrued on such sum over the Applicable Period, being the Provisioned Amount less the Undisputed Amount; |

**"Revised 599 Proceedings"** means the re-re-amended claims in the Action 599 Proceedings to be pleaded by and determined between the Company and Oscatello to determine:

(a)     the true meaning and construction of Clause 6.1 of the Framework Agreement, specifically whether the payment waterfall provided at Clause 6.1(A) – (D) in respect of the Violet Economic Return (as defined therein) provides for an amount of £44.15 million to be payable in the first instance to the Claimant (such amount representing the total sum originally invested by the Claimant referred to at (i) and (ii) of Clause 6.1 in respect of the Violet Economic Return); and

(b)     the quantum of the First Defendant's trust claim to its proportion of the Violet Economic Return;

**"Revised Isle of Man Proceedings"** means the Isle of Man Proceedings as amended pursuant to the IOM Consent Order, solely relating to the Isle of Man Proceedings between the Company and the Former Directors;

**"Samarand"** means Samarand Assets Inc, a company incorporated under the laws of the BVI with company number 599.240;

| | |
|---|---|
| **"Samarand Claim"** | means the claim of Samarand in its capacity as a Known Scheme Creditor and marked as an "Admitted Claim" in Schedule 3 to this Isle of Man Scheme; |
| **"Samarand Distribution Amount"** | means the Cash Distribution Amount that would otherwise be payable to Samarand under this Isle of Man Scheme, but for the Liquidator being placed on notice of the Sub-Participant Dispute; |
| **"Samarand Escrow Account"** | means an account held with the Isle of Man Court, or such other account as directed by the Isle of Man Court in the Interpleader Proceedings, into which the Company shall pay the Samarand Distribution Amount in accordance with the Initial Interpleader Relief; |
| **"Samarand Sub-Participation Agreement"** | means the sub-participation agreement entered into between Samarand and the Company dated 2 June 2008; |
| **"Scheme Claim"** | means the Claims of all Scheme Creditors; |
| **"Scheme Creditor"** | means the Known Scheme Creditors and the New Scheme Creditors; |
| **"Scheme Funds"** | means an amount equal to the Court Funds less the Resulting Amount; |
| **"Scheme Proposal"** | means the document entitled "Heads of Terms for Arrangements" concerning the liquidation of the Company dated 3 June 2013 and signed on behalf of the Winding up Committee of Kaupthing, the Consenting Sub-Participants (as defined therein) and Zaria Global; |
| **"Scheme Proposal Payments"** | means the payments of the Cash Distribution Amount, the Undisputed Amount and the Sundry Claims; |
| **"Scheme Publications"** | means The Financial Times, the Isle of Man Courier, the Isle of Man Examiner, the Lögbirtingablað and the London Gazette; |
| **"Scheme Steps"** | means the English Scheme Steps and the IOM Scheme Steps; |

| | |
|---|---|
| **"Scheme Supervisor"** | means such persons as are appointed in accordance with Clause 41, and shall initially be Andrew Paul Shimmin of Shimmin, Wilson & Co; |
| **"Settlement Instructions"** | means the settlement instructions for a Sterling bank account provided in accordance with Clauses 31.5 and 31.6 of the Isle of Man Scheme; |
| **"Somerfield"** | means Somerfield Limited and each of its predecessors, a company incorporated in England and Wales with company number 01162517; |
| **"Somerfield SPA"** | means the sale and purchase dated 15 July 2008 between (amongst others) the Institutional Sellers, the Individual Sellers (each as defined therein) and Co-operative Ventures Limited whereby the Institutional Sellers and the Individual Sellers sold its interest in Somerfield to Co-operative Ventures Limited; |
| **"Spirit"** | means Spirit Realty Capital, Inc (New) formerly Spirit Finance, a US based Real Estate Investment Trust which is listed on the New York Stock Exchange under the identification NYSE:SRC; |
| **"Sterling"** | means the lawful currency of England and Wales; |
| **"Sub-Participation Agreements"** | means the sub-participation agreements relating to the Company's indirect investment in the Somerfield supermarket chain between (amongst others) the Company and the Known Scheme Creditors; |
| **"Sub-Participant Dispute"** | means the dispute relating to Samarand's rights and entitlements under the Samarand Sub-Participation Agreement and Samarand's claim to the Samarand Distribution Amount under this Isle of Man Scheme; |
| **"Subsidiary"** | means at any relevant time any subsidiary or any subsidiary undertaking (as such terms are defined in the Companies Act) of the Company; |

| | |
|---|---|
| **"Sundry Claims"** | means the claims of Boodle Hatfield and Callin Wild which together comprise the amount of £89,004.88, as at the Record Time; |
| **"Sundry Creditors"** | means Boodle Hatfield and Callin Wild; |
| **"Silverville"** | means Silverville Limited, a company incorporated in the BVI; |
| **"Tazamia"** | means Tazamia Limited (in liquidation), a company incorporated in the BVI with company number 660392; |
| **"Tazamia B Shares"** | means the 8,500 ordinary "B" shares in Tazamia initially held by Kaupthing and subsequently transferred to the Company on or around 29 December 2005; |
| **"TDT"** | means the Tchenguiz Discretionary Trust established by a declaration of trust in Jersey on 26 March 2007 for the benefit of Robert Tchenguiz and others; |
| **"TDT Trustee"** | means Rawlinson and Hunter Trustees S.A. in its capacity as the trustee of the TDT, and includes any of its predecessors and successors; |
| **"TFT"** | means the Tchenguiz Family Trust established by a declaration of trust in the BVI on 25 October 1988 for the benefit of Robert Tchenguiz and his brother, Vincent Tchenguiz;; |
| **"TFT Trustee"** | means Rawlinson and Hunter Trustees S.A. in its capacity as the trustee of the TFT, and includes any of its predecessors and successors; |
| **"Total Equity Participation Return"** | means the total return on the Initial Equity Participation Amount of £8,072,445, calculated in accordance with the terms of the Sub-Participation Agreements; |
| **"Total Sub-Participation Amount Return "** | means the total return on the Initial Sub-Participation Amount of £16,073,372, calculated in accordance with the terms of the Sub-Participation Agreements; |
| **"Undisputed Amount"** | means the sum of £28,570,113 plus interest at the Court Rate accrued on such sum over the Applicable Period, being the sum which it is |

agreed that Oscatello is entitled to under Clause 6 of the Framework Agreement if the true meaning and construction of that provision is as contended for by Kaupthing in the Action 599 Proceedings;

"Winding up Committee"      means the Winding up Committee of Kaupthing appointed by the Icelandic Court on 25 May 2009 and currently comprising Feldis L. Oskarsdottir, Johannes R. Johannsson and Theodor Sigurbergsson;

"Zaria Consent Order"       means the consent order in respect of the Zaria Global Proceedings as set out at Schedule 8 to the Isle of Man Scheme;

"Zaria Global"              means Zaria Global Limited, a company incorporated in the BVI with company number 681577; and

"Zaria Global Proceedings"  means the proceedings before the Chancery Division of the Court between Zaria Global and the Company pursuant to claim number HC09CO3526.

1.2  In this Isle of Man Scheme, unless the context otherwise requires or otherwise expressly provides:

(a)   references to Recitals, Parts, Clauses, Sub-Clauses, Schedules and Appendices are references to the recitals, parts, clauses and sub-clauses, schedules and Appendices respectively of or to the Isle of Man Scheme;

(b)   references to a "person" include references to an individual, firm, partnership, company, corporation, other legal entity, unincorporated body of persons or any state or state agency;

(c)   references to a statute or a statutory provision include the same as subsequently modified, amended or re-enacted from time to time;

(d)   references to an agreement, deed or document shall be deemed also to refer to such agreement, deed or document as amended, supplemented, restated. verified, replaced, and/or novated (in whole or in part) from time to time and to any agreement, deed or document executed pursuant thereto;

(e)   the singular includes the plural and vice versa and words importing one gender shall include all genders;

(f)   headings to Recitals, Parts, clauses and sub-clauses are for ease of reference only and shall not affect the interpretation of the Isle of Man Scheme;

(g)    the words **"include"** and **"including"** are to be construed without limitation, general words introduced by the word **"other"** are not to be given a restrictive meaning by reason of the fact that they are preceded by words indicating a particular class of acts, matters or things, and general words are not to be given a restrictive meaning by reason of the fact that they are followed by particular examples intended to be embraced by the general words;

(h)    a company is a **"subsidiary"** of another company, its **"holding company"**, if that other company (a) holds a majority of voting rights in it; (b) is a member of it and has the right to appoint or remove a majority of its board of directors; or (c) is a member of it and controls alone, pursuant to an agreement with other members, a majority of the voting rights in it, or, if it is a subsidiary of a company that is itself a subsidiary of that other company;

(i)    an **"undertaking"** means a body corporate or partnership; or an unincorporated association carrying on a trade or business, with or without a view to profit; and an undertaking is a parent undertaking in relation to another undertaking, a **"subsidiary undertaking"**, if (a) it holds the majority of the voting rights in the undertaking; (b) it is a member of the undertaking and has the right to appoint or remove a majority of its board of directors; (c) it has the right to exercise a dominant influence over the undertaking (i) by virtue of provisions contained in the undertaking's articles, or (ii) by virtue of a control contract; or (d) it is a member of the undertaking and controls alone, pursuant to an agreement with other shareholders or members, a majority of the voting rights in the undertaking; and

(j)    to the extent that there shall be any conflict or inconsistency between the terms of the Isle of Man Scheme and the Explanatory Statement then terms of the Isle of Man Scheme shall prevail.

## PART B

## RECITALS TO THE ISLE OF MAN SCHEME

2.    **The Company**

2.1    The Company was incorporated under the laws of the Isle of Man on 29 August 1996 as a private company limited by shares pursuant to the Isle of Man Companies Act with registered number 080684C.

2.2    The Company is a wholly owned subsidiary of Kirna, which is a wholly owned subsidiary of Kaupthing.

2.3    The Company's registered office is at 13-15 Hope Street, Douglas, Isle of Man, IM1 1AQ.

2.4    On 8 March 2010, Andrew Paul Shimmin was appointed as liquidator provisionally of the Company by the Isle of Man Court pursuant to an application filed by Kaupthing (the " **Liquidator Provisional**").

2.5    On 29 March 2010, the Company was wound up by the Isle of Man Court and an order was made confirming the Liquidator Provisional of the Company as the Liquidator.

3.    **Scheme Creditors**

3.1    The Scheme Creditors are the Known Scheme Creditors and the New Scheme Creditors.

3.2    Under the Ongoing Litigation, Adalsteinsson (as a representative party for the Known Scheme Creditors), asserts claims against the Company pursuant to (amongst other things) the terms of the Sub-Participation Agreements relating to the Company's indirect investment in the Somerfield supermarket chain.

3.3    The Known Scheme Claims comprise those Claims against the Company which are known to the Liquidator as at the date of the Explanatory Statement, whether through filing a proof of debt in the liquidation of the Company or otherwise, as more fully described in Schedule 3.

3.4    The Aggregate Known Admitted Claims has been determined and calculated and agreed by the Scheme Supervisor taking into account the following:

(a)    The repayment of the Initial Sub-Participation Amount;

(b)    The Total Sub-Participation Amount Return;

(c)    The repayment of the Initial Equity Participation Amount;

(d)    The Total Equity Participation Return; and

(e)    Interest payable under the Sub-Participation Agreements, calculated from 27 February 2009 to the Record Time.

3.5    Subject to Clause 3.6 and Clause 29 of this Isle of Man Scheme (with the exception of Samarand in respect of the Samarand Claim), all Known Scheme Creditors will be paid the Cash Distribution Amount on the Initial Distribution Date.

3.6    Subject to any contrary orders of the Isle of Man Court in the Interpleader Proceedings and Clause 29.4 of this Isle of Man Scheme, Samarand, a Known Scheme Creditor will not be paid its entitlement to the Cash Distribution Amount, being the Samarand Distribution Amount, on the Initial Distribution Date. Rather the Company (acting by the Liquidator), with the authorisation of the Scheme Supervisor, shall have filed the Interpleader Proceedings on or as soon as reasonably practicably after the Bar Date pursuant to which the Samarand Distribution Amount shall be held in the Samarand Escrow Account in accordance with Clause 29 of this Isle of Man Scheme.

3.7    The claims of the New Scheme Creditors are Claims against the Company at the Record Time, which are not Known Scheme Claims, Sundry Claims , the claims that are subject to the Oscatello Proof of Debt, the Kaupthing Proof of Debt and the KF Proof of Debt.

3.8    Under the Isle of Man Scheme, all Scheme Creditors shall be entitled to the Cash Distribution Amount on their Admitted Claims (save that the entitlement of Samarand to the Samarand Distribution Amount shall be subject to the orders of the Isle of Man Court in the Interpleader Proceedings)

4.    **Kaupthing and Kaupthing Finance**

4.1    Kaupthing was incorporated as a public company and domiciled in Iceland, which previously carried on business as a deposit-taking and investment bank in Iceland with various subsidiaries and affiliates in the United Kingdom.

4.2    On 28 November 2008 Kaupthing entered moratorium proceedings pursuant to Chapters III-IV of the Icelandic Bankruptcy Act and on 22 November 2010 Kaupthing formally entered winding up proceedings following a ruling of the Icelandic Court.

4.3    Kaupthing Finance was incorporated as a private company and domiciled in Iceland, which conducted debt financing within the Kaupthing Group. Kaupthing Finance is currently not subject to any insolvency proceedings or processes.

4.4    Kaupthing and Kaupthing Finance assert claims against the Company as documented in the Kaupthing Proof of Debt and the KF Proof of Debt.

5.      **Sundry Creditors**

The Sundry Creditors are those creditors who assert claims against the Company in respect of professional services rendered prior to the Company being placed into liquidation for the amount representing the Sundry Claims.

6.      **Purposes of the Isle of Man Scheme**

6.1     The principal purposes of the Isle of Man Scheme are to:

(a)     restore the Company to a position of solvency, free from historic liabilities (with the exception of the Oscatello Trust Claim to be determined in the Revised 599 Proceedings and the claims raised by the Company against the Former Directors in the Action 363 Proceedings and the Revised Isle of Man Proceedings, which are not compromised as part of the English Scheme or the Isle of Man Scheme), so that the winding up can be stayed and the Company can be returned to the control of its shareholder and the Nominated Directors;

(b)     provide the creditors of the Company with certainty, and a cost-efficient outcome, by valuing and compromising the claims of all of the Company's creditors (except Oscatello) and putting an end to the Ongoing Litigation; and

(c)     provide the Scheme Creditors with a swift resolution by providing prompt payment of a cash dividend in respect of their claims.

6.2     To achieve these purposes, the Isle of Man Scheme provides for (amongst other things):

(a)     A Bar Date for Claims against the Company;

(b)     The determination of the amount of the Scheme Claims;

(c)     The release of the Scheme Claims in consideration for a payment of the Cash Distribution Amount;

(d)     The compromise of Kaupthing and Kaupthing Finance's claims, by which they will be entitled to receive a future distribution equal to the Kaupthing Distribution Amount and the KF Distribution Amount under this Isle of Man Scheme, with such rights to receive the future distribution to be documented in the Kaupthing Facility Agreement and the KF Facility Agreement;

(e)     Save for the Revised 599 Proceedings and the Revised Isle of Man Proceedings the settlement of the Ongoing Litigation. In addition, the claims brought by the Company against the Former Directors in the Action 363 Proceedings would not be comprised under this Isle of Man Scheme;

(f)     A payment to the Sundry Creditors in satisfaction of the Sundry Claims; and

(g)     The Company (through the Liquidator) to file the Application seeking orders (amongst others) for a stay in the winding up.

7.      **Binding on third parties**

The Liquidator, Kaupthing, Kaupthing Finance and the Sundry Creditors shall execute the Deed of Settlement and Release, pursuant to which the Liquidator, Kaupthing, Kaupthing Finance and the Sundry Creditors will undertake to be bound by the terms of the Isle of Man Scheme.   Pursuant to the Deed of Settlement and Release, the Liquidator, Kaupthing, Kaupthing Finance and the Sundry Creditors agree to execute and do or procure to be executed and done all such documents, acts or things as may be necessary or desirable to be executed or done by it for the purposes of giving effect to the Isle of Man Scheme.

## PART C

## APPLICATION AND EFFECTIVENESS OF THE ISLE OF MAN SCHEME

8.    **The Liquidator**

The Liquidator has given and has not withdrawn his consent to act as a Scheme Supervisor and shall, by no later than the Effective Date, execute the Scheme Supervisor Agreement in the form of Schedule 1 and deliver it to the Company.

9.    **Scheme Creditors**

The Scheme Creditors are the Known Scheme Creditors and the New Scheme Creditors.

10.    **Application, extent and effectiveness of the Isle of Man Scheme**

10.1    On the Effective Date, all of the right, title and interest of the Scheme Creditors to their Scheme Claims shall be subject to the compromises and arrangements set out in the Isle of Man Scheme, and every term of this Isle of Man Scheme shall become effective.

10.2    The compromise and arrangement effected by the Isle of Man Scheme shall apply to all Scheme Claims and shall be binding on all Scheme Creditors.

10.3    The rights of the Scheme Creditors obtained under the Isle of Man Scheme, including the right to receive the Cash Distribution Amount, shall subject to and in accordance with the terms of the Isle of Man Scheme, be accepted by the Scheme Creditors in full and final settlement of all Scheme Claims.

10.4    Subject to and in accordance with the terms of the Isle of Man Scheme, each Scheme Creditor will be entitled to, if the Scheme Creditor has a Scheme Claim that is an Admitted Claim, a distribution of the Cash Distribution Amount in respect of its Scheme Claim in accordance with Clause 31 of the Isle of Man Scheme.

10.5    Each Scheme Creditor shall be liable for all legal costs and disbursements it has incurred relating to the Isle of Man Proceedings, the Kaupthing Finance English Proceedings, the Action 599 Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the winding up of the Company and the Isle of Man Scheme.

10.6    Each Scheme Creditor's entitlements under the Isle of Man Scheme are in lieu of their entitlements to prove in, and receive a dividend from, the winding up of the Company and, at the Effective Date, all rights of a Scheme Creditor against the Company merge into their entitlements under the Isle of Man Scheme.  For the avoidance of doubt, in the event that a Scheme Creditor is not entitled to a distribution of the Cash Distribution Amount, the Scheme Creditor will not be entitled to prove in, or receive a dividend from, the winding up of the Company.

10.7   For the avoidance of doubt, no claim of the Company against the Former Directors in the Action 363 Proceedings and the Isle of Man Proceedings (as revised into the Revised Isle of Man Proceedings) in respect of the affairs of the Company generally shall be compromised or prejudiced by this Isle of Man Scheme.

## 11.   No Proceedings

11.1   Subject to Clause 11.2, with effect from the Effective Date, no Scheme Creditor shall be entitled to take or continue any step or Proceeding against the Company, Kaupthing, or Kaupthing Finance and each of their Subsidiaries in any jurisdiction whatsoever for the purpose of obtaining any payment of any Scheme Claim or any part thereof. For the avoidance of doubt, this paragraph shall apply to the Ongoing Litigation.

11.2   Nothing in Clause 11.1 shall prejudice the enforcement by a Scheme Creditor of:

(a)     its rights under the Isle of Man Scheme; or

(b)     its rights or any claim against any person (other than the Company, any other Scheme Creditor or any of their Subsidiaries to the extent that such right and any such claim relates to a Scheme Claim).

11.3   No order, judgment, decision or award obtained by a Scheme Creditor in breach of Clause 11.1 shall give rise to an Admitted Claim. A Scheme Creditor shall not be entitled to rely on such order, judgment, decision or award to evidence a Scheme Claim and shall have no right to enforce the order, judgment, decision or award against the Company, Kaupthing, or Kaupthing Finance.

## 12.   Effect of Proceedings prohibited by Clause 11

12.1   If a Scheme Creditor obtains any money, benefit, property or advantage at the expense of the Company in breach of Clause 11.1, he shall be treated as having received, on account of his entitlement to the Cash Distribution Amount, an advance payment equal to the amount or gross value of such money, benefit, property or advantage, and the extent, if any, to which he is entitled to his Cash Distribution Amount shall be reduced accordingly.

12.2   For the purpose of Clause 12.1, the value of any amount obtained shall be the gross value as conclusively determined by the Scheme Supervisor, acting in good faith, and may include, such amount as he considers appropriate by way of interest; or costs, charges or expenses incurred by the Company, Kaupthing or Kaupthing Finance as a consequence of the Proceedings.

12.3   To the extent that the gross value exceeds the value of the Cash Distribution Amount to which the Scheme Creditor would otherwise be entitled, the Scheme Creditor shall hold the excess on trust for the Company and shall immediately pay it to the Company without set-off, deduction, retention, abatement or counterclaim. Interest will accrue on the excess, from the date on which the value is obtained by the Scheme Creditor, at a rate of 2 per cent. above the Base Rate.

12.4    The Company shall have the right to seek injunctive or other relief or remedy:

    (a)    in respect of the breach or anticipated breach of Clauses 11 or 12; and

    (b)    in respect of any Loss which the Company may suffer as a result of the breach of Clauses 11 or 12.

## 13.    The affairs of the Company and management control

13.1    To the fullest extent permissible at law, the Scheme Supervisor shall manage, control and administer the distributions of the Cash Distribution Amount and the assessment of any New Claims.

13.2    Upon the Scheme Supervisor vacating his role as Scheme Supervisor in accordance with Clause 42.1 of this Isle of Man Scheme, the Company (through the Liquidator) shall be deemed to have been instructed by the Scheme Creditors to file the Application. The Application shall seek orders (inter alia) from the Isle of Man Court that:

    (a)    there be a permanent stay of the winding up of the Company;

    (b)    the Liquidator be released as the liquidator and the deemed Official Receiver of the Company; and

    (c)    the Nominated Directors be appointed as directors of the Company with full power and authority to manage and control the affairs of the Company.

## 14.    Proofs of Debt submitted by the Known Scheme Creditors, Kaupthing and Kaupthing Finance

14.1    The Scheme Supervisor shall admit the proofs of debt submitted by:

    (a)    the Known Scheme Creditors for the Admitted Claim amounts set out in Schedule 3;

    (b)    Kaupthing in the Kaupthing Proof of Debt for the amount of the Kaupthing Admitted Claim; and

    (c)    Kaupthing Finance in the KF Proof of Debt for the KF Admitted Claim,

    and shall cause the Company (acting by the Liquidator) to take all and any necessary steps to consent to the orders sought by Kaupthing and Kaupthing Finance in the Proof of Debt Proceedings.

## 15.    Grant of authority to the Company to execute certain documents on behalf of Scheme Creditors

15.1    Each of the Scheme Creditors hereby irrevocably authorises the Company (acting by the Liquidator) to enter into, execute and deliver as a deed (or otherwise) on behalf of that Scheme Creditor in its capacity as a Scheme Creditor (including any person to

whom a Scheme Creditor has transferred its rights in respect of its Scheme Claim after the Record Time) (to the extent applicable):

(a)     the Deed of Settlement and Release; and

(b)     any and all such other documents (if any) that the Company reasonably considers necessary to give effect to the terms of the Isle of Man Scheme,

in each case to be held in escrow until or otherwise to become effective no earlier than the Effective Date in accordance with the Scheme Steps for the purposes of giving effect to the terms of the Isle of Man Scheme.

15.2    The authority granted under Clause 15.1 shall be treated, for all purposes whatsoever as having been granted by deed.  Such authority shall terminate upon the Longstop Date.

15.3    The Deed of Settlement and Release, to be executed pursuant to the authority conferred by Clause 15.1 of the Isle of Man Scheme, shall be substantially in the form set out in Schedule 2, subject to any modification approved or imposed by the Isle of Man Court in accordance with Clause 36.

15.4    Each Scheme Creditor on and from the Effective Date (and save in the case of fraud, negligence or misconduct) irrevocably ratifies and confirms any act or omission done, caused or purported to be done by any of the Company or its Subsidiaries, the Liquidator, the Scheme Supervisor, any director, or any of their respective directors, managers, officers, partners or affiliates pursuant to or for the purposes of giving effect to the Isle of Man Scheme.

16.     **Deed of Settlement and Release**

The Company (acting by the Liquidator) on behalf of the Scheme Creditors in accordance with and pursuant to the authority granted under Clause 15.1 of the Isle of Man Scheme, will execute and deliver the Deed of Settlement and Release to be held in escrow until the Effective Date.

17.     **Discontinuance and dismissal of legal proceedings**

Each Scheme Creditor authorises the Company to consent to, and to take any other step necessary to obtain orders of the relevant court discontinuing, staying, dismissing, compromising or otherwise disposing, including filing with the Court, the Icelandic Court and the Isle of Man Court (as the case may be) the Litigation Consent Orders in respect of the following proceedings:

(a)     the Action 599 Proceedings, save for the claims raised in the Revised 599 Proceedings;

(b)     the Proof of Debt Proceedings;

(c)     the Kaupthing Finance English Proceedings;

    (d)      the Isle of Man Proceedings;

    (e)      the Icelandic Proceedings; and

    (f)      the Zaria Global Proceedings.

## 18.    Further Assurance

Each Scheme Creditor must do anything the Company or the Scheme Supervisor reasonably considers is necessary or desirable to give full effect to the Isle of Man Scheme and the transactions contemplated by the Isle of Man Scheme, including giving effect to Clause 17 of the Isle of Man Scheme.

## 19.    Scheme Steps

19.1    The steps set out below (the **"IOM Scheme Steps"**) will and shall to the extent possible take effect in the order set out below:

    (a)      As soon as is reasonably practicable following the Effective Date, the Company (acting by the Liquidator) will:

          (i)      execute the Deed of Settlement and Release, for themselves and on behalf of each Scheme Creditor, and each of the Sundry Creditors, Kaupthing, Kaupthing Finance, Oscatello and Eliza will execute the Deed of Settlement and Release, which shall immediately take effect once they have been duly executed by the parties thereto;

          (ii)     execute the Kaupthing Facility Agreement for itself, and Kaupthing will execute the Kaupthing Facility Agreement (to be held in escrow until, or otherwise to become effective no earlier than, the Initial Distribution Date so as only to be capable of coming into effect on the Initial Distribution Date); and

          (iii)    execute the KF Facility Agreement for itself, and Kaupthing Finance shall execute the KF Facility Agreement (to be held in escrow until, or otherwise to become effective no earlier than, the Initial Distribution Date so as only to be capable of coming into effect on the Initial Distribution Date).

    (b)      As soon as is reasonably practicably following the Effective Date, the Company (acting through the Liquidator) pursuant to the authority granted under Clause 17, acting as agent for the Known Scheme Creditors that are party to the proceedings set out below, will:

          (i)      file with the Court and the Isle of Man Court (as the case may be) the Litigation Consent Orders in respect of:

(A)     the Action 599 Proceedings, save for the claims raised in the Revised 599 Proceedings by filing the Action 599 Consent Order;

(B)     the Proof of Debt Proceedings by filing the POD Consent Order;

(C)     the Kaupthing Finance English Proceedings by filing the KF Consent Order;

(D)     the Isle of Man Proceedings by filing the IOM Consent Order; and

(E)     the Zaria Global Proceedings by filing the Zaria Consent Order.

(c)     With effect from the Effective Date, each Scheme Creditor (with the exception of Samarand in respect of the Samarand Claim whose claim shall be subject to the Interpleader Proceedings referred to in Clause 19.1(d)) will be entitled to the Cash Distribution Amount, conditional upon the Distribution Conditions being satisfied.

(d)     As soon as is reasonably practicable following the Bar Date the Company (acting by the Liquidator) will, subject to Clause 29.4 of this Isle of Man Scheme, file the Interpleader Proceedings with the Isle of Man Court to seek orders for the Initial Interpleader Relief (amongst others).

(e)     On the Initial Distribution Date:

(i)     the Company, with the authorisation of the Scheme Supervisor, shall pay to the Known Scheme Creditors (with the exception of Samarand in respect of the Samarand Claim) their entitlement to the Cash Distribution Amount, to be calculated in accordance with the terms of this Isle of Man Scheme;

(ii)    the New Facility Agreements shall take effect; and

(iii)   the Company (acting by the Liquidator) pursuant to the authority granted under Clause 17, acting as agent for the Known Scheme Creditors that are party to the proceedings set out below, will instruct and authorise Kaupthing to file with the Icelandic Court the Litigation Consent Orders in respect of the Icelandic Proceedings by filing the Icelandic Consent Orders as soon as reasonably practicable.

(f)     On or as soon as reasonably practicable after the Initial Distribution Date, but only after payment to the Known Scheme Creditors (with the exception of Samarand in respect of the Samarand Claim), the Company (acting by the Liquidator) shall pay to Oscatello the Undisputed Amount.

(g)     On or as soon as reasonably practicable after the Initial Distribution Date, but in any event within 20 Business Days of the Initial Distribution Date and only after payment to Oscatello of the Undisputed Amount, the Company, with the authorisation of the Scheme Supervisor, shall pay to any Admitted New Scheme Creditors whose claims have been Accepted on or before the Initial Distribution Date their entitlement to the Cash Distribution Amount, to be calculated in accordance with the terms of this Isle of Man Scheme.

(h)     If there are any Admitted New Scheme Creditors whose claims have not been Accepted on or before the Initial Distribution Date, but are subsequently Accepted, the Company shall, with the authorisation of the Scheme Supervisor, pay them their entitlement to the Cash Distribution Amount, after five Business Days of the New Claim becoming Accepted.

(i)     Within five Business Days of the Distribution Date, the Company (acting by the Liquidator) acting as agent for the Scheme Creditors, and with the consent of Kaupthing and Kaupthing Finance, shall file the Application.

19.2    Subject to Clause 19.3 and Clause 29.4, to the extent possible the Scheme Steps will occur in sequential order set out in Clause 19.1. If one or more of the Scheme Steps does not occur and in the case of the requirement to file the Interpleader Proceedings in Clause 19.1(d) has not been waived, then all other Scheme Steps shall be deemed not to occur or have occurred, and any actions taken under or pursuant to such Scheme Steps shall have no legal effect and the releases given under the Isle of Man Scheme or in the Deed of Settlement and Release shall be deemed not given or not to have been given.

19.3    Clause 19.2 shall not apply in the event that a Scheme Creditor fails to submit a duly executed Distribution Confirmation Deed and the Company, with the authorisation of the Scheme Supervisor, is unable to pay the Cash Distribution Amount to that Scheme Creditor in accordance with Clause 19.1(e), 19.1(g), or 19.1(h) as a result of that Scheme Creditor failing to duly execute the Distribution Confirmation Deed, unless the requirement to provide Settlement Instructions in the manner contemplated in the Distribution Confirmation Deed, or the requirement to provide a duly executed Distribution Confirmation Deed is, in each case, waived by the Company in accordance with Clause 31.6 of this Isle of Man Scheme.

20.     **No admission of liability**

Save as expressly set out in the Isle of Man Scheme or in the Explanatory Statement, nothing in the Isle of Man Scheme or the Explanatory Statement or the circulation thereof to any person evidences or constitutes any admission by the Company, the Liquidator or the Scheme Supervisor that the person is a Scheme Creditor or that a Liability is owed to any person in respect of any claim or right. The agreement by the Company, the Liquidator or the Scheme Supervisor of an Admitted Claim is purely for the purposes of the Isle of Man Scheme and does not constitute any admission of Liability for any other purpose.

## PART D

## IDENTIFICATION OF SCHEME CLAIMS

21.   **Effective Date and Notification to Scheme Creditors**

21.1   Not more than ten Business Days after the Effective Date, the Company shall give notice that the Isle of Man Scheme has become effective and of the Bar Date in the following ways:

    (a)   by notice via electronic mail to each person who the Company believes may be a Scheme Creditor, and which has registered as a Scheme Creditor with the Company or otherwise notified the Liquidator of its valid email address; and

    (b)   by notice in the Scheme Publications.

22.   **Claim Forms for New Claims**

22.1   The notice of the occurrence of the Effective Date pursuant to Clause 21 shall invite New Scheme Creditors to enter the details of their New Claims on a Claim Form to be made available on request by the Scheme Supervisor.  The Scheme Supervisor will send a copy of the paper Claim Form to any New Scheme Creditor who requests one as soon as is reasonably practicable after receipt of the request.

22.2   All Claim Forms must be finalised and submitted by email prior to the Bar Date, or in the case of paper Claim Forms, sent to the Scheme Supervisor to arrive on or before the Bar Date.

22.3   Each Claim Form should be completed in accordance with its instructions and should include:

    (a)   the New Claimant's name, address, relevant email address(es) and telephone number(s);

    (b)   the total amount of the New Claim as of the Record Time;

    (c)   confirmation of whether or not the New Claim includes interest and, if so, the basis upon which the New Claimant claims to be entitled to interest;

    (d)   particulars of how and when the debt was incurred by the Company;

    (e)   the legal basis of the liability of the Company for the New Claim;

    (f)   any other facts which would assist the Scheme Supervisor in considering the New Claim; and

    (g)   the actual or electronic signature of the person signing the Claim Form, his name and contact details, and a statement of the basis upon which he is authorised to act on behalf of the New Claimant.

22.4    Copies of all the documents evidencing the existence and amount of the New Claim must be submitted with the Claim Form.  The Scheme Supervisor may require the New Claimant to submit further and better particulars of the New Claim, including additional supporting documentation, and/or may require that the Claim Form be verified by affidavit.

22.5    New Claimants shall also submit to the Scheme Supervisor on request such additional information as is reasonably required for the Company to make claims against third parties arising in connection with their New Claim.

22.6    New Claimants may submit to the Scheme Supervisor a revised Claim Form together with any relevant supporting documentation, at any time up to and including the Bar Date.

22.7    After the Bar Date, New Claimants are not entitled to make or revise their New Claim or provide further information (unless required to do so in accordance with the Isle of Man Scheme).

23.    **Claim Forms must be submitted before the Bar Date**

In order to be entitled to any Cash Distribution Amount, a New Scheme Creditor must on or before the Bar Date submit a Claim Form.  No payments or distributions will be made in respect of New Claims that are not submitted by a Claim Form on or before the Bar Date.

24.    **Record Time and Scheme Claims**

24.1    All Scheme Claims shall be determined as at the Record Time.

24.2    Interest on all Scheme Claims shall also be calculated up to the Record Time, after which, no interest shall accrue.

25.    **Valuation of New Claims**

25.1    If the Cash Distribution Amount is to be paid to a New Claimant before the date on which that New Claim would have fallen due for payment, the amount of the Cash Distribution Amount shall be discounted for accelerated payment using the rate of interest prescribed by the Administration of Justice Act.

25.2    The Scheme Supervisor shall estimate the value of any New Claim which, by reason of it being subject to any contingency or for any other reason, does not bear a certain value.  The Scheme Supervisor shall give notice of the amount of their estimate to the New Claimant and shall state in such notice the basis upon which the estimate has been made.

25.3    If the New Claim is for payments of a periodical nature, the New Claimant may claim for any unpaid amount accrued up to the Record Time.  Unless the Liquidator continues to make payments which accrue after the Record Time as an expense of the liquidation, the New Claimant's claim in respect of such amounts shall be limited to a

claim for damages for breach of contract. In calculating the amount of damages, the Scheme Supervisor shall assume that the New Claimant has taken all such steps as may be reasonable to mitigate his Loss and shall apply a discount for accelerated payment using the rate of interest prescribed by the Administration of Justice Act.

25.4    Any Scheme Claim in a currency other than Sterling shall be converted by the Scheme Supervisor into Sterling at the mid market exchange rate prevailing at the Record Time.

26.    **Determination of New Claims**

26.1    The Scheme Supervisor shall examine each Claim Form returned to him in accordance with Clause 22. Such examination shall include consideration of whether:

(a)    details of the New Claims are adequately supported by any documentation submitted with the Claim Form;

(b)    details of the quantum of the New Claims are sufficient and the basis of calculation is reasonable and has been accurately applied; and

(c)    there is any set-off that Clause 27 does or may apply.

26.2    Up to the Bar Date, the Scheme Supervisor may give notice to a New Claimant specifying further information or evidence they reasonably require to assist him in agreeing its New Claim.

26.3    After the Bar Date, if the Scheme Supervisor does not agree with the New Claim, or does not consider the supporting information to be adequate, he shall notify the New Claimant of that fact and the reasons, as soon as reasonably practicable, and shall request any further information or evidence that would assist him in deciding upon the New Claim.

26.4    The New Claimant shall respond within such reasonable time limits as the Scheme Supervisor may specify and shall similarly respond to any subsequent requests for information from the Scheme Supervisor.

26.5    If the Scheme Supervisor agrees with the New Claim, or agrees with the New Claimant a value for which the New Claim should be allowed as an Admitted New Claim, Clause 26.6 shall apply. If the Scheme Supervisor does not agree with the New Claim, Clause 26.7 shall apply.

26.6    If the Scheme Supervisor agrees with the New Claim in whole or in part, he shall notify the New Claimant of their agreement, in writing, as soon as reasonably practicable following that determination. The New Claim (or part thereof, without prejudice to any Disputed Claim) will become an Admitted Claim on the date the notice is sent.

26.7    If the New Claim is not agreed in full by the Scheme Supervisor within two months of the Bar Date, (or at such earlier time as the Scheme Supervisor shall determine or

such later time to which the Scheme Supervisor and the New Claimant shall both agree or acquiesce) such part (if any) of the New Claim as is not agreed shall become a Disputed Claim.

26.8    Where a New Claim (or part thereof) becomes a Disputed Claim, the Scheme Supervisor shall forthwith notify the New Claimant, in writing, that the whole or part of its New Claim has become a Disputed Claim including brief reasons for the dispute.

## 27.    Disputed Claims

27.1    A New Claimant who receives notice that the whole or part of its New Claim has become a Disputed Claim, or who receives notice of an estimated value of its contingent New Claim with which it disagrees, shall be entitled within 21 days of receipt of such notice to give notice to the Scheme Supervisor that it is appealing the rejection of its Disputed Claim and intends to enter into Dispute Proceedings.

27.2    If a final judgment is given in Dispute Proceedings, the Disputed Claim will become an Admitted Claim for the amount set out in the judgment, or in the case of a judgment which values the New Claim at zero, shall give no entitlement to any payment or distribution under the Isle of Man Scheme in respect of the Disputed Claim.

27.3    If any legal or other costs are awarded against the Company in respect of Dispute Proceedings, such amounts shall be payable by the Company to the relevant Scheme Creditor in full. If any legal or other costs are awarded in the Company's favour in respect of Dispute Proceedings, such amounts shall be payable to the Company in full and the Company may set off such amounts against its liability to pay (at the discretion of the Scheme Supervisor) a Cash Distribution Amount to the New Claimant.

27.4    If the New Claimant does not begin Dispute Proceedings within 21 days of receipt of the Scheme Supervisor's notice, then its Disputed Claim shall become an Admitted Claim at the value accepted by the Scheme Supervisor or, if rejected entirely by the Scheme Supervisor, shall give no entitlement to a payment or distribution under the Isle of Man Scheme.

27.5    Nothing in this Clause 27 shall prevent the Scheme Supervisor from agreeing in writing with the New Scheme Creditor the value of the Liability to which an unascertained New Claim relates, in which case the unascertained New Claim shall become an Admitted Claim for the amount agreed.

## 28.    Variation of time limits for disputes of New Claims

Where the Scheme Supervisor is satisfied that, due to exceptional circumstances outside the control of a New Claimant, that New Claimant has failed to comply with any time limit, other than the Bar Date, the Scheme Supervisor may, in his absolute discretion, extend that time limit for that New Claim by notice to the New Claimant.

29. **The Samarand Distribution Amount**

29.1    The Company (acting by the Liquidator), with the authorisation of the Scheme Supervisor, shall file the Interpleader Proceedings on or as soon as reasonably practicable after the Bar Date.

29.2    The Company (acting by the Liquidator) shall seek the Initial Interpleader Relief from the Isle of Man Court as soon as reasonably practicable, once the Interpleader Proceedings have been commenced, with the payment of the Samarand Distribution Amount into the Samarand Escrow Account pursuant to the Initial Interpleader Relief to occur no earlier than the Initial Distribution Date.

29.3    Following the Initial Interpleader Relief, the Samarand Distribution Amount shall be held in the Samarand Escrow Account to the order of the Isle of Man Court, and shall only be distributed to Samarand and/ or Pillar and/ or Medino and/ or any other party, as appropriate pursuant to an order of the Isle of Man Court.

29.4    If the Sub-Participant Dispute is settled on or before the Bar Date on terms that are satisfactory to the Liquidator (acting reasonably) and Medino and/ or any other party with an alleged interest in the Samarand Distribution Amount has not submitted a New Claim to the Scheme Supervisor by such date, the Liquidator shall not be required to file the Interpleader Proceedings in accordance with Clause 19.1(d) and this Clause 29 of this Isle of Man Scheme, and Samarand and/ or Pillar and/ or Medino, as appropriate shall be entitled to the Cash Distribution Amount in the agreed proportions pursuant to these terms of settlement in accordance with the terms of this Isle of Man Scheme as if the Sub-Participant Dispute had never occurred and all provisions in this Isle of Man Scheme relating to the Company (acting by the Liquidator) making payment of the Samarand Distribution Amount into the Samarand Escrow Account shall be waived.

30. **Assignments or transfers of Scheme Claims**

30.1    The Company shall be under no obligation to recognise any assignment or transfer of any Scheme Claim, whether before or after that Record Time, for the purposes of determining entitlements under the Isle of Man Scheme, save for where the Company has received before the Record Time notice in writing from the parties to such assignment or transfer of the assignment or transfer in accordance with the terms of all agreements between the relevant Scheme Creditor and the relevant Company in respect of that Scheme Claim, in which case the Company shall recognise such assignment or transfer for the purposes of determining entitlements under the Isle of Man Scheme (if any) subject to the assignee or transferee agreeing to be bound by the terms of the Isle of Man Scheme and to be treated as having been a Scheme Creditor for the purposes of the Isle of Man Scheme.

30.2    Where the Company has received from the relevant parties written notice of an assignment or transfer of a Scheme Claim after the Record Time, the Company may, in the absolute discretion of the Scheme Supervisor and subject to such evidence as they may reasonably require, agree to recognise such assignment or transfer for the purposes of determining entitlements under the Isle of Man Scheme, subject to the

assignee or transferee agreeing to be bound by the terms of the Isle of Man Scheme and to be treated as having been a Scheme Creditor for the purposes of the Isle of Man Scheme.

**PART E**

**SCHEME PAYMENTS AND DISTRIBUTIONS**

31.    **Distributions**

31.1    Subject to the Distribution Conditions, distributions under the Isle of Man Scheme shall only be payable to Scheme Creditors to the extent such Scheme Claims are Admitted Claims.

31.2    New Claimants shall have their claims determined in accordance with Part D (*Identification of Scheme Claims*) of the Isle of Man Scheme.

31.3    Each Scheme Creditor (with the exception of Samarand in respect of the Samarand Claim) shall be entitled to the Cash Distribution Amount to be calculated in accordance with the terms of the Isle of Man Scheme.

31.4    Subject to Clauses 19.1, 29.4, 31.5, 31.6, 32 and 33, the Company shall pay:

(a)    to the Known Scheme Creditors (with the exception of Samarand in respect of the Samarand Claim) their entitlement to the Cash Distribution Amount, to be calculated in accordance with the terms of the Isle of Man Scheme, on the Initial Distribution Date;

(b)    into the Samarand Escrow Account the Samarand Distribution Amount to be held in the Samarand Escrow Account subject to the Isle of Man Court granting the Initial Interpleader Relief;

(c)    to any Admitted New Scheme Creditors whose claims have been Accepted on or before the Initial Distribution Date, their entitlement to the Cash Distribution Amount, to be calculated in accordance with the terms of this Isle of Man Scheme, by or as soon as reasonably practicable after the Initial Distribution Date, but in any event within 20 Business Days of the Initial Distribution Date; and

(d)    to any Admitted New Scheme Creditors whose claims have not been Accepted on or before the Initial Distribution Date, but are subsequently Accepted, their entitlement to the Cash Distribution Amount, to be calculated in accordance with the terms of the Isle of Man Scheme, five Business Days after the New Claim is Accepted.

31.5    The payment obligations of the Company set out in Clause 31.4 shall be satisfied if the Company has made an electronic transfer of cash to the account details in the Settlement Instructions provided by the relevant Scheme Creditor in the Distribution Confirmation Deed attached to the Proxy Form.

31.6    The Company shall have no obligation to make any payment to a Scheme Creditor who has not provided valid Settlement Instructions in the Distribution Confirmation Deed unless and until such Scheme Creditor provides valid Settlement Instructions, or

the requirement to provide valid Settlement Instructions in the manner contemplated in the Distribution Confirmation Deed is waived by the Company. If a Scheme Creditor has failed to provide its Settlement Instructions in the Distribution Confirmation Deed, or such Settlement Instructions are incomplete in any way, the Company shall not be required to make any payment to such Scheme Creditor unless and until such information is duly provided, or the requirement to provide a duly executed Distribution Confirmation Deed is waived by the Company.

31.7    Distributions under this Isle of Man Scheme, including distributions of the Scheme Proposal Payments shall be paid by the Company (acting by the Liquidator) out of the Nominated Account, or such other account nominated by the Scheme Supervisor on or before the Effective Date. If there is a shortfall in this account to make payment of any of the sums comprising the Scheme Proposal Payments on the dates on which such sums fall due for payment in accordance with the terms of this Isle of Man Scheme, the Company (acting by the Liquidator) shall forthwith top up this account to satisfy any such shortfall and ensure the payment of the Scheme Proposal Payments in full.

31.8    The New Facility Agreements shall become effective on the Initial Distribution Date and shall document the terms for which Kaupthing and Kaupthing Finance will be entitled to receive their entitlement to the Kaupthing Distribution Amount and the KF Distribution Amount (as applicable).

31.9    For the avoidance of doubt, any claim of Kaupthing in its capacity as a Known Scheme Creditor shall not be dealt with under the Kaupthing Facility Agreement.

32.    **Material Claims**

32.1    The Initial Distribution Date shall be suspended if the Company receives notice against it on or prior to the Bar Date of any Proceedings or threatened proceedings or any Claim or Claims by a Non-Kaupthing Claimant, including any New Claims, for an aggregate amount of £10,000,000 or greater (the "**Material Claim**" and a "**Material Event**"). If a Material Event occurs, the Scheme Supervisor shall provide notice to all Scheme Creditors for whom the Scheme Supervisor has a valid email address forthwith of the occurrence of a Material Event.

32.2    If there are claims made by third parties against the Company that do not exceed an aggregate amount of £10,000,000 by the Bar Date ("**Small Claims**"), notwithstanding the Small Claims, the Company shall distribute the Cash Distribution Amount to Scheme Creditors for whom the Scheme Supervisor has a valid email address, in accordance with Clause 31 of the Isle of Man Scheme.

32.3    Subject to Clause 32.4 if a Material Event occurs, and the Material Claim is not withdrawn or settled within ten Business Days from the date of the Material Event, the Scheme Supervisor shall terminate the Isle of Man Scheme by providing notice in writing to all Scheme Creditors (the "**Termination Notice**").

32.4    The Scheme Supervisor shall retain a discretion to not issue a Termination Notice in accordance with Clause 32.3 in circumstances where an appropriate arrangement or

settlement has been approved by Kaupthing, the Scheme Supervisor, the Liquidator and the party asserting the Material Claim in respect of the subject matter concerning the Material Claim.

32.5    In the event that a Termination Notice is issued in accordance with Clause 32.3 of the Isle of Man Scheme:

    (a)    the Company, Liquidator, the Scheme Supervisor and the Scheme Creditors shall not be bound by the terms of the Isle of Man Scheme and any steps or action taken under the Isle of Man Scheme shall be deemed not to occur or have occurred, and any steps or actions taken under or pursuant to the Isle of Man Scheme shall have no legal effect; and

    (b)    the Liquidator shall file an application with the Court seeking (amongst other things) orders for the transfer of the Scheme Funds from the Nominated Account into an account held with the Court.

## 33.    Distribution Conditions

33.1    The occurrence of the Initial Distribution Date will be conditional upon the following:

    (a)    the occurrence of the Bar Date;

    (b)    each of the Scheme Creditors, the Company, the Liquidator, Kaupthing, Kaupthing Finance, Oscatello, the Sundry Creditors and Eliza having executed the Deed of Settlement and Release;

    (c)    each of the Company (acting through the Liquidator), Kaupthing and Kaupthing Finance having executed the New Facility Agreements;

    (d)    no Material Claim or Material Event arising which has not been settled or resolved in accordance with Clause 32.3 and 32.4 above;

    (e)    the Court and the Isle of Man Court (as applicable) granting the orders sought in the Litigation Consent Orders, in substantially the form as set out in the various schedules to this Isle of Man Scheme. For the avoidance of doubt, the filing of the Icelandic Consent Orders shall not be a condition to the Initial Distribution Date and the Icelandic Consent Orders shall be filed on the Initial Distribution Date in accordance with Clause 19.1(e)(iii); and

    (f)    the Court releasing and transferring the Scheme Funds into the Nominated Account, or such other account nominated by the Scheme Supervisor.

33.2    If the Initial Distribution Date has not occurred before the Longstop Date, upon the occurrence of Longstop Date, all provisions of the Isle of Man Scheme shall cease to have any force or effect and:

    (a)    the Company, Liquidator, the Scheme Supervisor and the Scheme Creditors shall not be bound by the terms of the Isle of Man Scheme and any steps or

action taken under the Isle of Man Scheme shall be deemed not to occur or have occurred, and any steps or actions taken under or pursuant to the Isle of Man Scheme shall have no legal effect; and

(b)     the Liquidator shall file an application with the Court seeking (amongst other things) orders for the transfer the Scheme Funds from the Nominated Account into an account held with the Court.

**PART F**

**CONDITIONS TO THE ISLE OF MAN SCHEME**

34.     **Conditions to the Isle of Man Scheme**

34.1    The provisions of the Isle of Man Scheme shall be effective on the date (such date, the
**"Effective Date"**) on which each of the following conditions are satisfied:

(a)     the Isle of Man Court Order being delivered to the Isle of Man Companies
Registry for registration; and

(b)     a sealed copy of the Court Order being delivered to the Companies Registry
for registration.

34.2    If the Effective Date has not occurred before the Longstop Date, upon the occurrence
of Longstop Date, all provisions of the Isle of Man Scheme shall cease to have any
force or effect.

## PART G

## GENERAL SCHEME PROVISIONS

35.    **Settlement and Release**

35.1    Unless expressed otherwise, the provisions of this Clause 35 will not take effect until the Effective Date.

35.2    Each party to the Deed of Settlement and Release shall duly execute and deliver a counterpart of the Deed of Settlement and Release to each other party, the Liquidator doing so himself as Liquidator, for the Company and, pursuant to the authority granted under Clause 15.1 for each of the Scheme Creditors, to be held in escrow until or otherwise to become effective no earlier than the Effective Date.

35.3    Each Scheme Creditor on behalf of itself and each of its predecessors, successors and assigns hereby releases, waives, acquits, cancels, forgives and forever discharges, to the fullest extent permitted by law the Company from all Claims arising on or prior to the Effective Date, including all Claims relating to the affairs of the Company and including all Claims pleaded and raised in each of the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings.

35.4    Without prejudice to Clause 35.3, each Scheme Creditor on behalf of itself and each of its predecessors, successors and assigns hereby releases, waives, acquits, cancels, forgives and forever discharges, to the fullest extent permitted by law, each of:

(a)    the Released Advisers and their Personnel;

(b)    the Former Directors and the Former Directors Advisers and their Personnel; and

(c)    the Affiliates of the Company,

from all Claims arising on or prior to the Effective Date relating to the affairs of the Company and/ or their investment in the Company including (i) all Claims arising on or prior to the Effective Date in connection with the Scheme Proposal and the Schemes; and (ii) all Claims pleaded and raised in each of the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings.

35.5    The Company on behalf of itself and each of its predecessors, successors and assigns hereby releases, waives, acquits, cancels, forgives and forever discharges, to the fullest extent permitted by law each of:

(a)    the Scheme Creditors from all Claims relating to any acts or omissions arising on or prior to the Effective Date relating to the affairs of the Company and

including all Claims pleaded and raised in each of the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings; and

(b)    the Released Advisers and their Personnel from all Claims arising on or prior to the Effective Date relating to the affairs of the Company and including (i) all Claims arising on or prior to the Effective Date in connection with the Scheme Proposal and the Schemes; and (ii) all Claims pleaded and raised in each of the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings, except for any Claims against or Liabilities of any Released Adviser and their Personnel that are unrelated to the Scheme Claims, the Scheme Proposal, the English Scheme or the Isle of Man Scheme, the negotiation or preparation thereof, or to any related matter.

35.6    Subject to Clause 35.1, the Company and each of the Scheme Creditors, in each case on behalf of itself and each of its predecessors, successors and assigns hereby releases, waives, acquits, cancels, forgives and forever discharges, to the fullest extent permitted by law each of (a) the Liquidator; and (b) the Scheme Supervisor, and each of their firms, affiliated firms, employees, agents, partners, directors, members, officers or representatives, from all Claims and Liabilities or causes of action relating to any acts or omissions arising on or prior to the Effective Date, except for any claims or causes of action relating to the Scheme Supervisor's own or the Liquidator's own illegal acts, gross negligence or wilful misconduct.

35.7    Each of the Scheme Creditors hereby authorises the Company (acting by the Liquidator) on and from the Effective Date to enter into, execute and deliver as a deed on behalf of each Scheme Creditor one or more Deeds of Settlement and Release by which any and all Claims and Liabilities referred to in Clause 35.3 shall be waived and released fully and absolutely from the Effective Date.

35.8    Any Deed of Settlement and Release to be executed pursuant to the authority conferred by Clause 35.7 shall be substantially in the forms attached at Schedule 2 subject to any modifications required or approved by the Isle of Man Court and shall take effect in relation to such claims and liabilities as the Isle of Man Court considers appropriate provided only that the effect of any such modification is not such as would cause the release of a claim or the imposition of any obligation that is not referred to in this Clause 35.

36.    **Modifications to the Isle of Man Scheme**

The Company may at any hearing before the Isle of Man Court to sanction the Isle of Man Scheme, consent on behalf of all Scheme Creditors to non-material modifications only of the Isle of Man Scheme or any additional non-material terms or conditions which the Isle of Man Court may think fit to approve or impose, provided

that such modifications, terms or conditions shall be consistent with the terms of the Scheme Proposal.

37. **Notice**

37.1 Any notice or other written communication to be given under or in relation to the Isle of Man Scheme shall be given in writing and shall be deemed to have been duly given if it is delivered by hand, or sent by courier, post, fax or email to:

    (a)    in the case of the Company, the Liquidator or the Scheme Supervisor:

        (i)    by courier or registered post to 13-15 Hope St, Douglas, IM1 1AQ;.

        (ii)    by fax to +44 1624 629 666; and

        (iii)    by email to paul@shimminwilson.com;

    (b)    in the case of a Scheme Creditor, its last known address according to the records of the Company; and

    (c)    in the case of any other person any address set forth for that person in any agreement entered into in connection with the Isle of Man Scheme or the last known address according to the Company or by fax to its last known fax number according to the Company.

37.2 Any notice or other written communication to be given under the Isle of Man Scheme shall be deemed to have been served;

    (a)    if delivered by hand or courier, on the first Business Day following delivery;

    (b)    if sent by post, on the second Business Day after posting if the recipient is in the country of despatch, otherwise on the tenth Business Day after posting; and

    (c)    if by fax or email, on the Business Day sent.

37.3 In proving service, it shall be sufficient proof, in the case of a notice sent by post, that the envelope was properly stamped, addressed and placed in the post.

37.4 The accidental omission to send any notice, written communication or other document in accordance with this Clause 37 or the non-receipt of any such notice by any Scheme Creditor, shall not affect the provisions of the Isle of Man Scheme.

37.5 The Company shall not be responsible for any Loss or delay in the transmission of any notices, other documents or payments posted by or to any Scheme Creditors which shall be posted at the risk of such Scheme Creditors.

38.   **Governing Law and Jurisdiction**

38.1   On and from the Effective Date, the operative terms of the Isle of Man Scheme and any non-contractual obligations arising out of or in connection with the Isle of Man Scheme shall be governed by, and construed in accordance with, the laws of the Isle of Man and the Scheme Creditors hereby agree that the courts of the Isle of Man shall have exclusive jurisdiction to hear and determine any suit, action or proceeding and to settle any dispute which arises out of or is connected with the terms of the Isle of Man Scheme or its implementation or out of any action taken or omitted to be taken under the Isle of Man Scheme or in connection with the administration of the Isle of Man Scheme and for such purposes, the Scheme Creditors irrevocably submit to the jurisdiction of the courts of the Isle of Man, provided, however, that nothing in this Clause shall affect the validity of other provisions determining governing law and jurisdiction as between the Company and any of any of the Scheme Creditors, whether contained in any contract or otherwise.

38.2   The terms of the Isle of Man Scheme and the obligations imposed on the Company and the Scheme Creditors hereunder shall take effect subject to any prohibition or condition imposed by any applicable law.

39.   **Exercise of Discretion**

Where under any provision of the Isle of Man Scheme, a matter is to be determined by the Company, the Liquidator or the Scheme Supervisor, as the case may be, it shall be determined by them, in their discretion in such manner as they may consider fair and reasonable.  If any difficulty shall arise in determining any such matter either generally or in any particular case or in ensuring the result described above, it shall be resolved by the Company, the Liquidator or the Scheme Supervisor, as the case may be, in such manner as it shall consider to be fair and reasonable and their decision shall, insofar as permitted by law, be final and binding on all concerned.

40.   **Severability**

40.1   The illegality, invalidity or unenforceability of any provision of this Isle of Man Scheme shall not affect the legality, validity or enforceability of any other provision. If any provision of this Isle of Man Scheme is found to be void or unenforceable, that provision shall be deemed to be deleted from this Isle of Man Scheme and the remaining provisions of this Isle of Man Scheme shall continue in full force and effect and the Parties shall use their respective reasonable endeavours to procure that any such provision is replaced by a provision which is valid and enforceable, and which gives effect to the spirit and intent of this Isle of Man Scheme.

41.   **The Scheme Supervisor**

41.1   Subject to Clause 41.2, any Scheme Supervisor must be a fit and proper person in the reasonable opinion of the Liquidator and able to adequately discharge the function of a Scheme Supervisor under the Isle of Man Scheme. Where more than one person has been appointed as a Scheme Supervisor, they may exercise and perform the powers,

rights, duties and functions of the Scheme Supervisor under the Isle of Man Scheme jointly or severally.

41.2    A Scheme Supervisor shall not take office until he or his firm has entered into the Scheme Supervisor Agreement, which shall include provisions as to his remuneration and expenses, and has contracted to be bound by the terms of the Isle of Man Scheme to the extent that they apply to him as Scheme Supervisor. The Company and each Scheme Creditor acknowledges and agrees that the Scheme Supervisor is permitted to exercise all the powers given to him and rely upon all the provisions relevant to him under the Isle of Man Scheme.

41.3    The Scheme Supervisor shall initially be Andrew Paul Shimmin of Shimmin Wilson & Co. The Company (acting by the Liquidator) shall have the power to appoint any successors, including appointing itself in its capacity as Scheme Supervisor after the Scheme Supervisor has vacated office. In the event the Company appoints itself as Scheme Supervisor under this Clause 41.3 or Clause 45, the requirement for it to sign a Scheme Supervisor Agreement in accordance with Clause 41.2 shall be waived by the Liquidator.

41.4    In exercising his powers and carrying out their duties under the Isle of Man Scheme, the Scheme Supervisor shall act as agent of the Company (to the extent the Company is not appointed as Scheme Supervisor under Clause 41.3 or Clause 45).

42.    **Vacation of office**

42.1    Without prejudice to Clause 42.2 and Clause 45, the Scheme Supervisor shall automatically step down as Scheme Supervisor on the Distribution Date.

42.2    A Scheme Supervisor shall also vacate office if he:

(a)    becomes bankrupt;

(b)    is disqualified from acting as a director under CODA or any equivalent legislation in force in any country where he may reside;

(c)    is admitted to hospital because of mental disorder or is the subject of an order concerning his mental disorder made by a court having jurisdiction in the Isle of Man or elsewhere in such matters, such that he is, in the opinion of the Liquidator, unable to carry out his duties as Scheme Supervisor;

(d)    dies;

(e)    is convicted of an indictable offence or be convicted of any offence by a court having jurisdiction in any other country where that offence, if committed in the Isle of Man, would have been an indictable offence under the laws of the Isle of Man; or

(f)    resigns his office by giving 60 days' notice in writing to the Company or such shorter period of notice as may be agreed by the Company or resigns his office

with immediate effect by giving notice in writing to the Company if he considers that he should for professional regulatory reasons or in the event of non-payment of his fees when due and such fees have been approved by the Company, a meeting of the Scheme Creditors or pursuant to a final order of the Isle of Man Court in each case pursuant to Clause 47.

## 43.    Role of the Scheme Supervisor

43.1    The Scheme Supervisor shall discharge the duties and responsibilities imposed upon him by the Isle of Man Scheme.

43.2    The Scheme Supervisor shall act in good faith with reasonable skill and care in the interests of the Scheme Creditors as a whole and shall exercise his powers, duties and functions under the Isle of Man Scheme with a view to ensuring that the Isle of Man Scheme is implemented in accordance with its terms.

## 44.    Powers of the Scheme Supervisor

The Scheme Supervisor shall have all of the powers necessary or desirable to enable him to discharge his duties and responsibilities under the Isle of Man Scheme (although it is acknowledged that the Scheme Supervisor cannot exercise any power that would result in their assuming control of the Company's affairs so as to supplant the Liquidator or its directors (as applicable)).

## 45.    Vacancy

If there is no Scheme Supervisor in office, the Company shall forthwith fill the vacancy.

## 46.    Liability of Scheme Supervisors

46.1    Except to the extent required by law, neither a Scheme Creditor, Kaupthing, Kaupthing Finance or a Sundry Creditor shall be entitled to challenge the validity of any act done or omitted to be done in good faith and with due care by the Scheme Supervisor in accordance with and to implement the provisions of the Isle of Man Scheme or the exercise by the Scheme Supervisor in good faith and with due care of any power conferred upon him for the purposes of the Isle of Man Scheme if exercised in accordance with and to implement the provisions of the Isle of Man Scheme.

46.2    Neither the Scheme Supervisor nor his firm, affiliated firms, employees, agents, partners, directors, members, officers or representatives shall (i) incur any personal liability whatsoever in respect of any of the obligations undertaken by the Scheme Supervisor; or (ii) be liable for any Loss resulting from any act done by or omission of the Scheme Supervisor, unless any such Loss is attributable to his own gross negligence, breach of trust, fraud or dishonesty.

47.    **Remuneration and expenses of Scheme Supervisor**

The Scheme Supervisor shall be remunerated by the Company in respect of his role in
the Isle of Man Scheme and all acts reasonably incidental thereto and in accordance
with the agreement referred to in Clause 41. Such remuneration and expenses are to
be approved by the Company and such approval shall not be unreasonably withheld.
If approval cannot be obtained from the Company within a reasonable period, the
Scheme Supervisor may convene a meeting of the Scheme Creditors to determine the
level of the Scheme Supervisor's remuneration and expenses. If approval cannot be
obtained by way of an ordinary resolution at a meeting of the Scheme Creditors, the
Scheme Supervisor shall be permitted to apply on a show of hands, or cause the
Company to apply, to the Isle of Man Court for approval of his remuneration and
expenses as if the provisions of section 181(2) of the Isle of Man Companies Act
applicable to liquidators' applications for approval of their remuneration applied,
mutatis mutandis, to the Scheme Supervisor.

48.    **The Liquidator**

48.1   The Liquidator acts as agent for and on behalf of the Company and neither he nor his
firm, affiliated firms, employees, agents, partners, directors, members, officers or
representatives, shall incur any personal liability whatsoever in respect of any of the
obligations undertaken by the Company, or in respect of any failure on the part of the
Company to perform or comply with any such obligations, or under any associated
arrangements or negotiations, or under any document entered into pursuant to the Isle
of Man Scheme, or howsoever otherwise.

48.2   The Liquidator shall not incur any personal liability whatsoever under the Isle of Man
Scheme nor in relation to any related matter or claim, whether in contract, tort
(including negligence) or restitution or by reference to any other remedy or right in
any jurisdiction or forum.

48.3   The exclusions of liability set out in the Isle of Man Scheme shall arise and continue
notwithstanding the termination of the agency of the Liquidator or his discharge from
office as liquidator of the Company before or after the Effective Date and shall
operate as a waiver of any claims in tort as well as under contract.

48.4   Each of the Liquidator's firm, affiliated firms, employees, agents, partners, directors,
members, officers and representatives shall be entitled to rely on and enjoy the benefit
of this Clause 48 as if they were party to the Isle of Man Scheme.

48.5   Any liquidator of the Company appointed after the date of the Effective Date shall be
entitled to rely on and enjoy the benefit of this Clause 48 as if they were a party to the
Isle of Man Scheme.

48.6   Nothing in the Isle of Man Scheme shall require the Liquidator to take any action
which would breach any applicable law or regulation.

48.7   To the extent that the remuneration of the Liquidator and the expenses of the
liquidation of the Company to date have not previously been approved by the Isle of

Man Court and paid to the Liquidator, the remuneration of the Liquidator and all expenses properly incurred or to be incurred in the winding-up of the Company, which shall include any outstanding liability to pay any adverse cost orders made in the Ongoing Litigation, shall be paid out of the assets of the Company.

49.    **Foreign Representatives**

The Nominated Directors shall be authorised to act as representatives for the Company on any application for recognition and assistance in relation to either the Isle of Man Scheme or the English Scheme in any jurisdiction and under whatever law including the laws of the BVI and / or Chapter 15 of the United States Bankruptcy Code and any law derived from or similar to the UNCITRAL Model Law on Cross-Border Insolvency Proceedings.

## SCHEDULE 1

## SCHEME SUPERVISOR AGREEMENT

**THIS SCHEME SUPERVISOR AGREEMENT** is dated _____ 2014

**BETWEEN:**

    1) Andrew Paul Shimmin of Shimmin Wilson & Co (the **"Scheme Supervisor"**)

    2) Isis Investments Limited in liquidation (the **"Company"**)

(Each a **"Party"** and together the **"Parties"**)

**WHEREAS:**

(A)    The Company and its Scheme Creditors are party to the English Scheme and the Isle of Man Scheme (together the **"Schemes"**).

(B)    The Scheme Supervisor has been appointed as Scheme Supervisor in accordance with the Schemes.

(C)    The appointment of the Scheme Supervisor is subject to the execution and delivery of this Scheme Supervisor Agreement (the **"Agreement"**).

(D)    The Scheme Supervisor has agreed to enter into this Agreement.

**1.**    **DEFINITIONS AND INTERPRETATION:**

1.1    In this Agreement, unless otherwise defined herein and except where the context otherwise requires, capitalised terms used herein shall have the same meanings ascribed to such terms in the Schemes.

1.2    Clause headings are for ease of reference only and shall not affect the interpretation or effect of any provision hereof.

1.3    In this Agreement unless the context otherwise requires:

        (a)    the singular includes the plural and vice versa;

        (b)    words importing one gender shall include all genders;

        (c)    references in this Agreement to Clauses are to the clauses of this Agreement;

        (d)    references to a "person" shall include references to an individual, firm, partnership, company, corporation or other legal entity, unincorporated body of persons or any state or state agency; and

        (e)    references to times shall mean London time unless otherwise stated.

**2.**     **EFFECTIVENESS OF THIS AGREEMENT**

2.1     This Agreement shall become effective and binding on each of the Parties on the Effective Date.

2.2     This Agreement is irrevocable and remains in full force and effect until the Scheme Supervisor has fully performed his obligations under this Agreement, provided that:

      (a)     a Termination Notice has not been issued in accordance with Clause 32 of each of the Schemes; or

      (b)     the Scheme Supervisor has not been required to vacate office in accordance with Clause 42 of each of the Schemes.

**3.**     **CONSENT TO ACT**

3.1     The Scheme Supervisor hereby consents to act as a Scheme Supervisor in accordance with the terms and conditions of the Schemes.

3.2     The Scheme Supervisor will undertake all work as is, in his opinion, necessary to comply with the terms of the Schemes and to comply with any relevant statutory responsibilities.

**4.**     **SCHEME SUPERVISOR'S FEES AND EXPENSES**

4.1     The Scheme Supervisor's charges are calculated primarily by reference to the time spent by him and his staff dealing with any matters within the scope of work charged at the charge rates applicable at the time of undertaking the work.

4.2     In respect of this appointment, having reference to the skill, qualification and experience of the staff undertaking the work, the Scheme Supervisor proposes to charge the rates per hour set out in Schedule 1.

4.3     In addition to the Scheme Supervisor's fees, he shall be entitled to charge and recover any additional "out of pocket" expenses (including but not limited to the fees of any legal or other advisers retained by the Scheme Supervisor and all travel and accommodation expenses) which he may necessarily incur in the conduct of the scope of work. Any such costs, which will be in addition to the time cost, will be documented on the relevant invoice (or supporting schedule). VAT will be charged at the prevailing rate where applicable.

4.4     Out of pocket expenses and disbursements incurred specifically and necessarily during the conduct of the scope of work will be re-charged either on receipt of such disbursement invoice or periodically as may be appropriate. Such invoices will be recharged at the Sterling cost to the Scheme Supervisor together with any applicable VAT.

4.5     As regards to office disbursement costs, it is not proposed to charge specifically for individual disbursements such as telephone, postage and copying. However, when, due

to the nature of any specific work undertaken it is likely that the Scheme Supervisor will incur a significant amount of disbursements, particularly in respect of international telephone, fax, postal and courier charges he may charge for such reasonable disbursements.

4.6    All fees, expenses and disbursements (if any) will be subject to VAT at the prevailing rates, where applicable.

## 5.    ROLE AND RESPONSIBILITY

5.1    The Scheme Supervisor shall discharge all of his duties and responsibilities imposed upon him by the Schemes.

5.2    The Scheme Supervisor shall have and may exercise all of the powers necessary or desirable to enable him to discharge his duties and responsibilities under the Schemes, provided that the Scheme Supervisor cannot and shall not exercise any power that would result in him assuming control of the Company's affairs.

5.3    The Scheme Supervisor shall be authorised to act as representative of the Company.

5.4    Without prejudice to Clause 5.5 below of each of the Schemes, the Scheme Supervisor shall automatically step down as Scheme Supervisor on the Distribution Date.

5.5    The Scheme Supervisor shall also vacate office if he:

(a)    becomes bankrupt;

(b)    is disqualified from acting as a director under CDDA, CODA or any equivalent legislation in force in any country where he may reside;

(c)    is admitted to hospital because of mental disorder or is the subject of an order concerning his mental disorder made by a court having jurisdiction in England and Wales, the Isle of Man or elsewhere in such matters, such that he is, in the opinion of the Liquidator, unable to carry out his duties as Scheme Supervisor;

(d)    dies;

(e)    is convicted of an indictable offence or be convicted of any offence by a court having jurisdiction in any other country where that offence, if committed in England and Wales or the Isle of Man would have been an indictable offence under the laws of England and Wales or the Isle of Man; or

(f)    resigns his office by giving 60 days' notice in writing to the Company or such shorter period of notice as may be agreed by the Company or resigns his office with immediate effect by giving notice in writing to the Company if he considers that he should for professional regulatory reasons or in the event of

non-payment of his fees when due and such fees have been approved by the Company, a meeting of the Scheme Creditors or pursuant to a final order of the Court or the Isle of Man Court in each case pursuant to Clause 47 of each of the Schemes.

## 6.    SCHEME SUPERVISOR'S ACKNOWLEDGEMENT

The Scheme Supervisor acknowledges and agrees that:

(a)    the benefit of this Agreement can be enforced directly by the Company and each Scheme Creditor against the Scheme Supervisor; and

(b)    the Scheme Supervisor may be removed from office if the removal is approved by special resolution of the Scheme Creditors and order of the Isle of Man Court.

## 7.    LIABILITY

7.1    In performing his role and exercising his powers under this Agreement and the Schemes the Scheme Supervisor shall act as agent of the Company and without personal liability.

7.2    Neither the Scheme Supervisor nor his firm, affiliated firms, employees, agents, partners, directors, members, officers or representatives shall be liable for any loss resulting from any act he does or omits to do, unless any such loss is attributable to the Scheme Supervisor's own gross negligence, breach of trust, fraud or dishonesty.

## 8.    NOTICES

8.1    All notices or other communications to the Scheme Supervisor in respect of this Agreement must be:

(a)    in writing;

(b)    signed by the sender or by a person duly authorised by the sender;

(c)    marked for the attention of the Scheme Supervisor, or, if the recipient in writing has notified otherwise, then marked for attention in the way last notified; and

(d)    delivered or sent by pre-paid ordinary post to the address of the recipient set out in the signature block or given in any other way permitted by law.

## 9.    GOVERNING LAW AND JURISDICTION

This Agreement is governed by the laws of the Isle of Man.  The Scheme Supervisor irrevocably submits to the non-exclusive jurisdiction of the Isle of Man Court.

**10.    WAIVER**

10.1    A waiver of any right arising from a breach of this Agreement or of any right, power, authority, discretion or remedy arising upon default under this Agreement must be in writing and signed by the persons granting the waiver.

10.2    A failure or delay in exercise, or partial exercise, of:

        (a)    a right arising from a breach of this Agreement; or

        (b)    a right, power, authority, discretion or remedy created or arising upon default under this Agreement,

does not result in a waiver of that right, power, authority, discretion or remedy.

10.3    The Scheme Supervisor is not entitled to rely on a delay in the exercise or non-exercise of a right, power, authority, discretion or remedy arising from a breach of this Agreement or on a default under this Agreement as constituting a waiver of that right, power, authority, discretion or remedy.

10.4    The Scheme Supervisor may not rely on any conduct of a Scheme Creditor or the Company as a defence.

**11.    REMEDIES CUMULATIVE**

The rights and remedies of the Scheme Supervisor, the Company and the Scheme Creditors under this Agreement are in addition to other rights and remedies given by law independently of this Agreement.

**12.    ASSIGNMENT**

The rights and obligations of the Scheme Supervisor, the Company and each Scheme Creditor under this Agreement are personal and must not be assigned or otherwise dealt with at law or in equity.

**13.    ENTIRE AGREEMENT**

This Agreement constitutes the entire agreement between the Parties as to the subject matter hereof and no agreement, representations or warranties between the Parties other than those set out herein are binding on the Parties. This Agreement supersedes and replaces all prior commitments, undertakings or representations, whether oral or written, between the Parties in respect of the subject matter hereof.

**14.    FURTHER ACTION**

The Scheme Supervisor will as soon as reasonably possible do all things and execute and deliver all further documents necessary or expedient to give effect to this Agreement and the transactions contemplated by it.

**EXECUTED** by

**Andrew Paul Shimmin**
(acting in his capacity as Scheme
Supervisor of Isis Investments
Limited (in liquidation))

( )

———————————————

Andrew Paul Shimmin


**EXECUTED** by

**Andrew Paul Shimmin**
(acting in his capacity as liquidator
(as agent and without personal
liability) of Isis Investments Limited
(in liquidation))

( )

———————————————

Andrew Paul Shimmin

## SCHEDULE 1

### SCHEME SUPERVISOR'S CHARGE OUT RATES

|  | GB £/hr |
|---|---|
| Scheme Supervisor | 380.00 |
| Insolvency Manager | 253.00 |
| Senior Insolvency Administrator | 163.00 |
| Insolvency Assistants (up to) | 112.00 |
| Junior Insolvency Assistants (from) | 80.00 |
| | |
| Other Partner | 380.00 |

**SCHEDULE 2**

**DEED OF SETTLEMENT AND RELEASE**

## DEED OF SETTLEMENT AND RELEASE

**THIS DEED OF SETTLEMENT AND RELEASE** is dated [•] 2014

and made

**BETWEEN**:

1.    **ISIS INVESTMENTS LIMITED** (in liquidation), a company incorporated in the Isle of Man with registered address at 13-15 Hope Street, Douglas, Isle of Man, IM1 1AQ acting by the Liquidator Andrew Paul Shimmin as its agent without personal liability (**"Isis"** or the **"Company"**);

2.    **ANDREW PAUL SHIMMIN** of Shimmin Wilson & Co, 13-15 Hope Street, Isle of Man, IM1 1AQ in his capacity as liquidator of the Company (the **"Liquidator"**);

3.    **KAUPTHING hf.**, a company incorporated in Iceland with registered address at Borgartun 26, 105 Reykjavik, Iceland (**"Kaupthing"**);

4.    **KAUPTHING FINANCE ehf.**, a company incorporated in Iceland with registered address at Borgartun 26, 105 Reykjavik, Iceland (**"Kaupthing Finance"**);

5.    **ELIZA LIMITED** (in liquidation), a company incorporated in the British Virgin Islands with registered address at Palm Grove House, PO Box 438, Road Town, Tortola, British Virgin Islands acting by one of its jointly appointed liquidators, Stephen Akers (as its agent and without personal liability) (**"Eliza"**);

6.    **OSCATELLO INVESTMENTS LIMITED** (in liquidation), a company incorporated in the British Virgin Islands with registered address at Palm Grove House, PO Box 443, Road Town, Tortola, British Virgin Islands acting by one of its jointly appointed liquidators, Stephen Akers (as its agent and without personal liability) (**"Oscatello"**);

7.    **STEPHEN AKERS** of Grant Thornton UK LLP, 30 Finsbury Square, London EC2P 2YU and **MARK MCDONALD** of Grant Thornton (BVI) Limited, PO Box 4259, 171 Main Street, 2nd Floor, The Barracks, Road Town, Tortola, British Virgin Islands in their capacities as joint liquidators of Eliza and Oscatello (each as agent of each of Eliza and Oscatello and without personal liability) (the **"O&E Liquidators"**);

8.    **BOODLE HATFIELD LLP**, in its capacity as a Sundry Creditor (as defined in the Schemes) with registered address at 240 Blackfriars Road, London, SE1 8NW;

9.    **CALLIN WILD LLC**, in its capacity as a Sundry Creditor (as defined in the Schemes), with registered address at Bank Chambers, 15-19 Athol Street, Douglas, Isle of Man, 1M1 1LB; and

10.    **THE SCHEME CREDITORS** as defined in the Schemes acting by the Company pursuant to the authority conferred upon the Company under Clause 15 of the Schemes.

**WHEREAS:**

(A)    Pursuant to the terms of the Schemes, each Scheme Creditor has authorised the Company to enter into and execute and deliver this Deed on its behalf.

(B)    Oscatello, Eliza, the Sundry Creditors, Kaupthing and Kaupthing Finance are each party to this Deed for the purposes of (amongst other things) giving effect to the terms of the Schemes, the Scheme Proposal and to consenting to the terms of the Action 599 Consent Order.

(C)    The Parties have agreed to enter into and execute and deliver this Deed on the terms set out below.

## 1.    DEFINITIONS AND INTERPRETATION

1.1    Terms defined in the English Scheme have the same meaning in this Deed.

1.2    In this Deed, the following words and expressions have the following meanings:

"**Action 599 Consent Order**" means the consent order in respect of the Action 599 Proceedings as set out at Appendix 2 to this Deed;

"**Consenting Sub-Participants**" means those Sub-Participants who voted to support the English Scheme and the Isle of Man Scheme and/ or who have duly executed the Distribution Confirmation Deed;

"**Deed**" means this deed as amended or varied in writing from time to time and any document entered into pursuant to or collateral with it;

"**Eliza Judgment**" means the default judgments in favour of the Company for claim no. HC09C00972 of £90,863,636.56 and claim no. HC09C00971 of £90,863,636.56 plus interests and costs;

"**English Scheme**" means the scheme of arrangement in respect of the Company under Part 26 of the Companies Act in its present form or with or subject to any modification, addition or condition approved or imposed by the Court or approved in accordance with the terms of the English Scheme;

"**English Scheme Steps**" means the scheme steps referred to at Clause 19 of the English Scheme;

"**Icelandic Consent Orders**" means the consent orders in respect of the Icelandic Proceedings as set out at Appendix 4 to this Deed;

"**Initial Sub-Participation Investment**" means the amounts specified in Appendix 8;

"**IOM Consent Order**" means the consent order in respect of the Isle of Man Proceedings as set out at Appendix 3 to this Deed;

"**Interested Parties**" means Eliza, Kaupthing, Kaupthing Finance and each Sundry Creditor;

"**IOM Scheme Steps**" means the scheme steps referred to at Clause 19 of the Isle of Man Scheme;

"**Kaupthing Facility Agreement**" means the facility agreement to be entered into between Kaupthing and the Company in the form set out in Appendix 9 to this Deed;

"**KF Consent Order**" means the consent order in respect of Kaupthing Finance English Proceedings as set out at Appendix 5 to this Deed;

"**KF Facility Agreement**" means the facility agreement to be entered into between Kaupthing Finance and the Company in the form set out in Appendix 9 to this Deed;

"**New Facility Agreements**" means the Kaupthing Facility Agreement and the KF Facility Agreement;

"**O&E Agreement**" means the agreement dated 11 November 2014 between the Company, Oscatello, Eliza, Kaupthing and Kaupthing Finance as set out at Appendix 10 to this Deed;

"**Party**" means a party to this Deed or other person consenting to be bound by this Deed and includes any successors and assigns;

"**POD Consent Order**" means the consent order in respect of the Proof of Debt Proceedings as set out at Appendix 7 to this Deed;

"**Provisioned Amount**" means the amount of £68,510,743 plus interest at the Court Rate accrued on such sum over the Applicable Period, being the maximum amount of Oscatello's entitlement under the Oscatello Trust;

"**Release Instructions**" means the irrevocable authority to the Company from the Scheme Creditors pursuant to the Schemes to, from and after the Effective Date, enter into, execute and deliver this Deed;

"**Released Claim**" means a Claim released under Clauses 7, 8, 9 and 10 of this Deed and Clause 35 of each of the English Scheme and the Isle of Man Scheme;

"**Released Party**" means any Affiliate who is to receive the benefit of a release of a Claim from a Party as set out in Clauses 7, 8, 9 and 10 of this Deed;

"**Resulting Amount**" means the sum of £39,940,630 plus interest at the Court Rate accrued on such sum over the Applicable Period, being the Provisioned Amount less the Undisputed Amount;

"**Revised 599 Proceedings**" means the re-re-amended claims in the Action 599 Proceedings to be pleaded by and determined between the Company and Oscatello to determine:

(a)     the true meaning and construction of Clause 6.1 of the Framework Agreement, specifically whether the payment waterfall provided at Clause 6.1(A) – (D) in respect of the Violet Economic Return (as defined therein) provides for an amount of £44.15 million to be payable in the first instance to the Claimant (such amount representing the total sum originally invested by the Claimant

referred to at (i) and (ii) of Clause 6.1 in respect of the Violet Economic Return); and

(b)     the quantum of the First Defendant's trust claim to its proportion of the Violet Economic Return;

**"Schemes"** means the English Scheme and the Isle of Man Scheme;

**"Scheme Meetings"** means the English Scheme Meeting and the Isle of Man Scheme Meeting;

**"Scheme Steps"** means the English Scheme Steps and the IOM Scheme Steps;

**"Subordination Deed"** means the subordination agreement dated 30 June 2008 between Eliza (as borrower), Kaupthing (as senior creditor) and the Company (as junior creditor);

**"Sub-Participants"** means those creditors who entered into the Sub-Participation Agreements;

**"Sub-Participation Excluded Claims"** means all those causes of action, claims, rights of set off, contribution, lien, pledge, security or indemnity in favour of Kaupthing which arise out of or in connection with any funding advanced by Kaupthing directly to any of the Sub-Participants or in relation to any lien, pledge or other security interest granted to Kaupthing;

**"Third Party Claims"** means any claim brought by a Third Party Claimant in connection with the acquisition of Somerfield and the entering into of the Sub-Participation Agreements;

**"Third Party Claimants"** means Kirna, the Company, the Former Directors, Oscatello, Eliza, the TDT Trustee and Silverville; and

**"Zaria Consent Order"** means the consent order in respect of the Zaria Global Proceedings as set out at Appendix 6 to this Deed.

1.3     In this Deed, unless the context otherwise requires:

1.3.1     words in the singular include the plural and in the plural include the singular;

1.3.2     the words "including" and "include" shall not be construed as or take effect as limiting the generality of the foregoing;

1.3.3     the headings shall not be construed as part of this Deed nor affect its interpretation;

1.3.4     references to any clause, without further designation, shall be construed as a reference to the clause of this Deed so numbered;

1.3.5     reference to any act, statute or statutory provision shall include a reference to that provision as amended, re-enacted or replaced from time to time whether

before or after the date of this Deed and any former statutory provision replaced (with or without modification) by the provision referred to;

1.3.6    reference to a person includes a reference to any body corporate, unincorporated association or partnership and to that person's legal personal representatives or successors; and

1.3.7    the principles of construction set out in the Schemes apply to this Deed except that references to the Schemes shall instead be construed as referenced to this Deed.

## 2. UNDERTAKING IN RESPECT OF THE SCHEMES

2.1    Kaupthing, Kaupthing Finance, the Sundry Creditors and the Liquidator agree to consent to, and be bound by, the terms of the English Scheme and the Isle of Man Scheme.

2.2    Without prejudice to Clause 2.1, each of the Liquidator, Kaupthing, Kaupthing Finance and the Sundry Creditors hereby undertake to the Company to execute, do or procure to be executed and done all such documents, acts or things as may be necessary or desirable to be executed or done by each of the Liquidator, Kaupthing, Kaupthing Finance and the Sundry Creditors for the purposes of giving effect to the Schemes.

## 3. SUNDRY CREDITORS

Subject to Clause 19.2 of the Schemes and Clause 11 of this Deed, the Company shall pay to the Sundry Creditors, in full, their entitlement to the Sundry Claims on the Initial Distribution Date.

## 4. NEW FACILITY AGREEMENTS

Subject to Clause 19.2 of the Schemes and Clause 11 of this Deed, the Company, the Liquidator (as agent for the Company and without personal liability), Kaupthing and Kaupthing Finance shall enter into the New Facility Agreements.

## 5. THE PROVISIONED & RESULTING AMOUNTS

5.1    Each Scheme Creditor on behalf of itself and each of its predecessors and successors acknowledges that Kaupthing, Kaupthing Finance, the Company, Eliza and Oscatello entered into the O&E Agreement to agree (amongst other things) the Provisioned Amount in respect of the Revised 599 Proceedings.

5.2    The amount Oscatello claims that it is entitled to under the Oscatello Trust will, in the first instance, be reserved in full for the amount representing the Provisioned Amount pending the Initial Distribution Date.

5.3    With effect from the Initial Distribution Date, an amount equal to the Resulting Amount shall at all times be held in an account under the control of the Court pending final determination of Oscatello's actual entitlement by the Court in the Revised 599 Proceedings.

5.4     As soon as is reasonably practicable after the Initial Distribution Date, but only after payment to the Known Scheme Creditors, the Company (acting by the Liquidator) shall pay to Oscatello the Undisputed Amount.

6.      **SCHEME PROPOSAL PAYMENTS**

Distributions under the Schemes, including distributions of the Scheme Proposal Payments shall be paid by the Company (acting by the Liquidator) out of the Nominated Account, or such other account nominated by the Scheme Supervisor on or before the Effective Date. If there is a shortfall in this account to make payment of any of the sums comprising the Scheme Proposal Payments on the dates on which such sums fall due for payment in accordance with the terms of the Schemes, the Company (acting by the Liquidator) shall forthwith top up this account to satisfy any such shortfall and ensure the payment of the Scheme Proposal Payments in full.

7.      **RELEASE BY SCHEME CREDITORS**

7.1     Subject to Clause 19.2 of the Schemes and Clause 11 of this Deed, and pursuant to the authority conferred by the Release Instructions, each Scheme Creditor on behalf of itself and each of its predecessors, successors and assigns hereby releases, waives, acquits, cancels, forgives and forever discharges, to the fullest extent permitted by law the Company from all Claims arising on or prior to the Effective Date, including all Claims relating to the affairs of the Company and all Claims pleaded and raised in each of the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings.

7.2     Subject to Clause 19.2 of the Schemes and Clause 11 of this Deed, and pursuant to the authority conferred by the Release Instructions, each Scheme Creditor on behalf of itself and each of its predecessors, successors and assigns hereby releases, waives, acquits, cancels, forgives and forever discharges, to the fullest extent permitted by law, each of:

7.2.1     the Released Advisers and their Personnel;

7.2.2     the Former Directors and the Former Directors' Advisers and their Personnel; and

7.2.3     the Affiliates of the Company,

from all Claims arising on or prior to the Effective Date relating to the affairs of the Company and/ or their investment in the Company including (i) all Claims arising on or prior to the Effective Date in connection with the Scheme Proposal and the Schemes; and (ii) all Claims pleaded and raised in each of the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings.

7.3     Subject to Clause 19.2 of the Schemes and Clause 11 of this Deed, and pursuant to the authority conferred by the Release Instructions, each Scheme Creditor on behalf of itself and each of its predecessors, successors and assigns hereby releases, waives,

acquits, cancels, forgives and forever discharges, to the fullest extent permitted by law, each of Kaupthing, Kaupthing Finance, Eliza and Oscatello and each of their Affiliates from all Claims relating to any acts or omissions in respect of the Sub-Participation Agreements and the Framework Agreement arising on or prior to the Effective Date, including all Claims currently pleaded and raised in the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings.

8.      **RELEASE BY INTERESTED PARTIES**

8.1     Subject to Clause 19.2 of the Schemes and Clause 11 of this Deed, each of Eliza, Kaupthing, Kaupthing Finance and each Sundry Creditor on behalf of itself and each of its predecessors, successors and assigns hereby releases, waives, acquits, cancels, forgives and forever discharges, to the fullest extent permitted by law, the Company from all Claims arising on or prior to the Effective Date, including all Claims pleaded and raised in each of the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings, except for any claim of Kaupthing and/ or Eliza under the Subordination Deed. For the avoidance of doubt, this release shall not include a release of any of Kaupthing and/ or Kaupthing Finance's rights or entitlements under the Kaupthing Facility Agreement and the KF Facility Agreement to be entered into in accordance with the Scheme Proposal.

8.2     Subject to Clause 19.2 of the Schemes and Clause 11 of this Deed, each of Eliza, Kaupthing, Kaupthing Finance and each Sundry Creditor on behalf of itself and each of its predecessors, successors and assigns hereby releases, waives, acquits, cancels, forgives and forever discharges, to the fullest extent permitted by law, each of:

        8.2.1   the Released Advisers and their Personnel;

        8.2.2   the Affiliates of the Company,

                from all Claims arising on or prior to the Effective Date relating to the affairs of the Company and/ or their investment in the Company including (i) all Claims in connection with the Scheme Proposal and the Schemes; and (ii) all Claims pleaded and raised in each of the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings.

8.3     Subject to Clause 19.2 of the Schemes and Clause 11 of this Deed, Oscatello on behalf of itself and each of its predecessors, successors and assigns hereby releases, waives, acquits, cancels, forgives and forever discharges, to the fullest extent permitted by law, each of:

        8.3.1   the Company from all Claims relating to any acts or omissions arising on or prior to the Effective Date including all Claims currently pleaded and raised in the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings, but such release shall

exclude any Claims raised by or against Oscatello in the Revised 599 Proceedings;

8.3.2    the Consenting Sub-Participants from all Claims relating to any acts or omissions in respect of the Sub-Participation Agreements and the Framework Agreement arising on or prior to the Effective Date, including all Claims currently pleaded and raised in the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings; and

8.3.3    the Released Advisers and their Personnel from all Claims arising on or prior to the Effective Date relating to the affairs of the Company and/ or their investment in the Company including (i) all Claims in connection with the Scheme Proposal and the Schemes; and (ii) all Claims pleaded and raised in each of the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings.

8.4    Subject to Clause 19.2 of the Schemes and Clause 11 of this Deed, Eliza on behalf of itself and each of its predecessors, successors and assigns hereby releases, waives, acquits, cancels, forgives and forever discharges, to the fullest extent permitted by law the Consenting Sub-Participants from all Claims relating to any acts or omissions in respect of the Sub-Participation Agreements and the Framework Agreement arising on or prior to the Effective Date, including all Claims currently pleaded and raised in the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings.

Subject to Clause 19.2 of the Schemes and Clause 11 of this Deed, each of Kaupthing and Kaupthing Finance, on behalf of itself and each of its predecessors, successors and assigns hereby releases, waives, acquits, cancels, forgives and forever discharges, to the fullest extent permitted by law  the Consenting Sub-Participants from all Claims relating to any acts or omissions in respect of the Sub-Participation Agreements and the Framework Agreement arising on or prior to the Effective Date, including all claims currently pleaded and raised in the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings, except for any Claims of Kaupthing arising under the Sub-Participation Excluded Claims.

9.    **RELEASE BY THE COMPANY**

9.1    Subject to Clause 19.2 of the Schemes and Clause 11 of this Deed, the Company on behalf of itself and each of its predecessors, successors and assigns hereby releases, waives, acquits, cancels, forgives and forever discharges, to the fullest extent permitted by law each of:

9.1.1    the Scheme Creditors, Eliza, Kaupthing, Kaupthing Finance and each Sundry Creditor from all Claims relating to any acts or omissions arising on or prior to the Effective Date relating to the affairs of the Company and

including all Claims currently pleaded and raised in each of the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings, but such release shall exclude Eliza's liability under the Eliza Judgment;

9.1.2   Oscatello from all Claims relating to any acts or omissions arising on or prior to the Effective Date including all Claims currently pleaded and raised in the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings, but such release shall exclude any Claims by or against Oscatello in the Revised 599 Proceedings; and

9.1.3   the Released Advisers and their Personnel from all Claims arising on or prior to the Effective Date relating to the affairs of the Company including (i) all Claims in connection with the Scheme Proposal and the Schemes; and (ii) all Claims pleaded and raised in each of the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings, except for any Claims against or Liabilities of any Released Adviser and their Personnel that are unrelated to the Scheme Claims, the Scheme Proposal, the English Scheme or the Isle of Man Scheme, the negotiation or preparation thereof, or to any related matter.

## 10.   RELEASE OF THE SCHEME SUPERVISOR AND THE LIQUIDATOR

Subject to Clause 19.2 of the Schemes and Clause 11 of this Deed, the Company, Kaupthing, Kaupthing Finance and each of the Scheme Creditors, each on behalf of itself and each of its predecessors, successors and assigns hereby releases, waives, acquits, cancels, forgives and forever discharges, to the fullest extent permitted by law each of (a) the Liquidator; and (b) the Scheme Supervisor, and each of their firms, affiliated firms, employees, agents, partners, directors, members, officers or representatives, from all Claims and Liabilities or causes of action relating to any acts or omissions arising on or prior to the Effective Date, except for any claims or causes of action relating to the Scheme Supervisor's own or the Liquidator's own, illegal acts, gross negligence or wilful misconduct.

## 11.   FAILURE TO IMPLEMENT THE SCHEMES

11.1   If one or more of the Scheme Steps does not occur then all other Scheme Steps shall be deemed not to occur or have occurred, and any actions taken under or pursuant to such Scheme Steps shall have no legal effect and any releases of indemnities given under this Deed shall be deemed not given or not to have been given.

11.2   Without prejudice to Clause 11.1, in the event that:

11.2.1   the Longstop Date is reached, and Clause 33.2 of the Schemes takes effect but no extension of the Schemes is agreed pursuant to that provision such that there is no Initial Distribution Date and the Schemes lapse; or

11.2.2   if a Termination Notice is issued under Clause 32 of the Schemes,

the Liquidator shall file:

(a)   an application with the Court seeking (amongst other things) orders for the transfer of the Scheme Funds from the Nominated Account into an account held with the Court; and

(b)   list a Case Management Conference in respect of the Action 599 Proceedings for further case management directions.

## 12.   SETTLEMENT OF THE ONGOING LITIGATION

*The Action 599 Proceedings*

12.1   Each of the Company, Kaupthing, Kaupthing Finance, Oscatello, Eliza and Mr Elfar Adalsteinsson (as a representative party for the Sub-Participants) irrevocably undertakes to take all formal steps as shall be required in order to effectively compromise all claims, counterclaims and causes of action currently pleaded or advanced in the Action 599 Proceedings (saved for the claims to be raised in the Revised 599 Proceedings), which steps shall include the signing and lodging of the Action 599 Consent Order, to be done in accordance with the terms of the Schemes.

12.2   The Company and Oscatello irrevocably undertake to take such steps as shall be required to amend the current form of their respective pleadings in the Action 599 Proceedings to provide for the future determination of the Revised 599 Proceedings.

*The Kaupthing Finance English Proceedings*

12.3   Each of the Company, acting through the Liquidator, and Kaupthing Finance irrevocably undertakes to take all formal steps as shall be required in order to effectively compromise all claims, counterclaims and causes of action currently pleaded or advanced in the Kaupthing Finance English Proceedings, which steps shall include the signing and lodging of the KF Consent Order, to be done in accordance with the terms of the Schemes.

*The Proof of Debt Proceedings*

12.4   Each of the Company, acting through the Liquidator, Kaupthing, Kaupthing Finance and Oscatello irrevocably undertakes to take all formal steps as shall be required in order to effectively compromise all claims, counterclaims and causes of action currently pleaded or advanced in the Proof of Debt Proceedings, which steps shall include the signing and lodging the POD Consent Order, to be done in accordance with the terms of the Schemes.

*The Isle of Man Proceedings*

12.5   The Company, acting through the Liquidator, irrevocably undertakes to take all formal steps as shall be required in order to effectively compromise all claims, counterclaims and causes of action currently pleaded or advanced in the Isle of Man Proceedings against Kaupthing and Kaupthing Finance, which steps shall include the

signing and lodging of the IOM Consent Order, to be done in accordance with the terms of the Schemes.

*The Icelandic Proceedings*

12.6    Each of Kaupthing and the Consenting Sub-Participants irrevocably undertakes to take all formal steps as shall be required in order to effectively compromise all claims, counterclaims and causes of action currently pleaded or advanced in the Icelandic Proceedings, which steps shall include the signing and lodging of the Icelandic Consent Orders, to be done in accordance with the terms of the Schemes.

*The Zaria Global Proceedings*

12.7    Each of the Company and Zaria Global Limited (a Sub-Participant) irrevocably undertakes to take all formal steps as shall be required in order to effectively compromise all claims, counterclaims and causes of action currently pleaded or advanced in the Zaria Global Proceedings, which steps shall include the signing and lodging of the Zaria Consent Order, to be done in accordance with the terms of the Schemes.

13.    **FURTHER ASSURANCE**

Each of the Parties shall, at the request of the Company, promptly execute and deliver such documents and perform such acts as may be required to give full effect to the releases referred to in Clauses 7, 8, 9 and 10 and to initiate and thereafter complete the steps that need to be taken to compromise all claims, counterclaims and causes of action currently pleaded or advanced in the Ongoing Litigation referred to in Clause 12 and otherwise give effect to the undertakings and covenants herein. Each of the Parties shall be liable for all costs it has incurred.

14.    **WAIVER AND INDEMNITY**

14.1    Subject to Clauses 11.1, 14.3 and 14.4, with effect from the Effective Date, each Party irrevocably undertakes to each other Party that neither it nor its Affiliates shall take or continue any step or Proceeding against another Party and its Subsidiaries in any jurisdiction whatsoever for the purpose of obtaining any payment of any Released Claim or any part thereof. If any Party or its Affiliates are in breach of this Clause 14.1, that Party shall indemnify any other Party and their Affiliates from and against any costs, expenses, damages and liabilities (including interest, legal costs and disbursements) which any other Party or their Affiliates incur as a result of any proceedings taken against them or their Affiliates by the Party or its Affiliates acting in breach of this Clause 14.1.

14.2    Nothing in Clause 14.1 shall prejudice the enforcement by a Party or other released party (for whose benefit this Deed has been concluded) of:

14.2.1    its rights under this Deed and for the avoidance of doubt this shall include the Revised 599 Proceedings;

14.2.2    its rights under the Schemes; or

14.2.3   its rights or any claim against any person other than a Party or any of their Subsidiaries.

14.3   Each of the Parties further undertake to each other and their Affiliates to hold each other and their Affiliates harmless from and indemnify against any loss, claim, liability, demand, damages, costs or expense whatsoever (including interest and legal costs and disbursements) for which any other Party or their Affiliates may be liable to any third party where any such liability derives directly or indirectly from any proceedings or other process in respect of the Released Claims brought by or on behalf of that Party or its Affiliates in breach of Clause 14.1.

14.4   This Clause 14 shall have no application to:

14.4.1   Kaupthing and Kaupthing Finance in respect of its Affiliates that are subject to the control of an administrator, liquidator, provisional liquidator, receiver or any other analogous process in any jurisdiction; and

14.4.2   Oscatello and Eliza in respect of its Affiliates that are not under the control of the O&E Liquidators.

## 15.   KAUPTHING INDEMNITY

15.1   Subject to Clauses 11, 15.2 and 15.3 of this Deed, Kaupthing hereby agrees to indemnify the Consenting Sub-Participants, with effect from the Initial Distribution Date, from any Loss the Consenting Sub-Participant may suffer as a result of any Third Party Claim from a Third Party Claimant, up to a maximum amount of 168.29% of the value of a Consenting Sub-Participant's Initial Sub-Participation Investment, provided such Third Party Claim is brought within 12 months from the Initial Distribution Date.

15.2   The Consenting Sub-Participant will not be entitled to call upon this indemnity unless the Consenting Sub-Participant complies with the following:

15.2.1   as soon as reasonably practicable give Kaupthing written notice of any Claim having been threatened or made and provide details of such Claim including details of the amount of any Loss which may arise as a result of such Claim;

15.2.2   as soon as reasonably practicable and in advance of the incurrence of the relevant Loss and/ or action being taken or payment being made or any acknowledgement, compromise or agreement being made in respect of such Loss, give Kaupthing written notice that the Consenting Sub-Participation Scheme Creditor anticipates incurring such Loss;

15.2.3   not make any admission of liability, agreement or compromise in relation to the Loss without the prior written consent of Kaupthing (such consent not to be unreasonably withheld or delayed);

15.2.4   give Kaupthing and its professional advisers reasonable access to all information that is necessary to allow it to understand and respond to the Loss and/ or Claim; and

> 15.2.5    allow Kaupthing, at its expense, to conduct the Claim and provide reasonable assistance to Kaupthing in respect thereof, including taking such action as Kaupthing may reasonably request to avoid, dispute, compromise and/ or defend the Claim.

15.3    A Consenting Sub-Participant shall not be entitled to make a claim under the indemnity in Clause 15.1 to the extent that the Consenting Sub-Participant is still liable to Kaupthing under a Sub-Participation Excluded Claim.

## 16.    THE LIQUIDATOR AND THE O&E LIQUIDATORS

16.1    The Liquidator acts as agent for and on behalf of the Company and neither he nor his firm, affiliated firms, employees, agents, partners, directors, members, officers or representatives, shall incur any personal liability whatsoever in respect of any of the obligations undertaken by the Company, or in respect of any failure on the part of the Company to perform or comply with any such obligations, or under any associated arrangements or negotiations, or under any document entered into pursuant to this Deed, or howsoever otherwise, including in relation to acting as Scheme Supervisor.

16.2    The Liquidator shall not incur any personal liability whatsoever under this Deed nor in relation to any related matter or claim, whether in contract, tort (including negligence) or restitution or by reference to any other remedy or right in any jurisdiction or forum.

16.3    The exclusions of liability set out in this Deed shall arise and continue notwithstanding the termination of the agency of the Liquidator or his discharge from office as liquidator of the Company or as Scheme Supervisor before or after the Effective Date and shall operate as a waiver of any claims in tort as well as under contract.

16.4    Each of the Liquidator's firm, affiliated firms, employees, agents, partners, directors, members, officers and representatives shall be entitled to rely on and enjoy the benefit of this Clause 16 as if they were party to this Deed.

16.5    Any liquidator of the Company appointed after the date of the Effective Date but before the Nominated Directors are appointed shall be entitled to rely on and enjoy the benefit of this Clause 16 as if they were a party to this Deed.

16.6    Nothing in this Deed shall require the Liquidator to take any action which would breach any applicable law or regulation.

16.7    The provisions of this Clause 16 apply *mutatis mutandis* in relation to the O&E Liquidators.

## 17.    NO ADMISSION

This Deed is entered into in connection with the compromise of the various claims made in the Ongoing Litigation, the winding up of the Company and in the light of other considerations. It is not, and shall not be represented or construed by the Parties as an admission of liability or wrongdoing on the part of any Party to this Deed or any other person or entity.

18.   **RELIANCE AND FRAUD**

18.1   Each Party acknowledges that, in entering into this Deed, and any documents referred to herein, it does not rely on (whether wholly or partly), and shall have no remedy in respect of, any statement, representation, assurance or warranty made by or on behalf of any Party (whether orally or in writing).

18.2   Nothing in this Clause operates to limit or exclude any liability for fraud.

19.   **RIGHTS OF THIRD PARTIES**

19.1   The Parties agree and acknowledge that:

19.1.1   Each Released Party may rely on this Deed and enforce any of its terms under the Contracts (Rights of Third Parties) Act 1999 to enforce any term of this Deed;

19.1.2   Subject to Clause 19.1.1, a person who is not a Party has no right under the Contracts (Rights of Third Parties) Act 1999 to enforce or enjoy the benefit of any terms of this Deed; and

19.1.3   Notwithstanding any term of this Deed, the consent of any persons who is not a Party is not required to rescind or vary this Deed.

20.   **AMENDMENT**

20.1   No modification or variation of this Deed shall be valid unless it is in writing and signed by or on behalf of each Party.

20.2   Unless expressly agreed, no waiver, modification or variation of this Deed shall constitute, or be construed as, a general waiver of any provisions of this Deed, nor shall it affect any rights, obligations or liabilities under this Deed which have already accrued up to the date of such modification or waiver, and the rights and obligations of the Parties and their Affiliates under this Deed shall remain in full force and effect, except and only to the extent that they are so modified and varied.

21.   **GOVERNING LAW AND JURISDICTION**

21.1   Subject to Clause 21.2, this Deed shall be governed by, and construed in accordance with, the laws of England and Wales. Any dispute arising out of or in connection with, or concerning the carrying into effect of, this Deed shall be subject to the exclusive jurisdiction of the courts of England and Wales, and the Parties hereby irrevocably submit to the exclusive jurisdiction of the courts of England and Wales for these purposes.

21.2   Clause 21.1 is subject to mandatory Icelandic insolvency law.

22.   **SEVERABILITY**

The illegality, invalidity or unenforceability of any provision of this Deed shall not affect the legality, validity or enforceability of any other provision. If any provision of this Deed is found to be void or unenforceable, that provision shall be deemed to be

deleted from this Deed and the remaining provisions of this Deed shall continue in full force and effect and the Parties shall use their respective reasonable endeavours to procure that any such provision is replaced by a provision which is valid and enforceable, and which gives effect to the spirit and intent of this Deed.

23.    **MISCELLANEOUS**

Without prejudice to Clause 13 of this Deed, each Party shall bear its own legal and other costs to date, including the costs of any proceedings and or negotiations incurred in relation to the subject matter of the releases in Clauses 7, 8, 9 and 10, and any costs incidental to the negotiation, preparation, execution and implementation by it of this Deed, and no Party shall be liable to any other Party in respect of any legal or other costs incurred in connection with any of the matters referred to in this Deed including any adverse costs orders in any of the proceedings referred to in this Deed.

24.    **COUNTERPARTS**

This Deed may be executed in any number of counterparts and by the different parties hereto as separate counterparts, but shall not be effective until each party has executed at least one counterpart, each of which, when executed and delivered, shall constitute an original, but all the counterparts shall together constitute one and the same instrument.

**IN WITNESS WHEREOF**, this Deed has been duly executed as a deed by or on behalf of the Parties effective as of the date first above written:

Executed and delivered as a deed by
**ISIS Investments Limited (in liquidation)**
by Andrew Paul Shimmin in his capacity
as Liquidator (without personal liability)
being a person who, in accordance with
the laws of the Isle of Man,
is acting under its authority

in the presence of:

_____                    _____

Witness                                                                    Mr. Andrew Paul Shimmin

*Name:*

*Occupation:*

*Address:*
*Name:*

Executed and delivered as a deed by
**Mr. Andrew Paul Shimmin**
in his capacity as Liquidator
(without personal liability)
in the presence of:

_____
Witness

*Name:*

*Occupation:*

*Address:*

_____
Mr. Andrew Paul Shimmin

Executed and delivered as a deed by
**Kaupthing hf.**
by [●]
being persons who, in accordance with
the laws of Iceland,
are acting under its authority

_____
Authorised Signatory

*Name:*

_____
Authorised Signatory

*Name:*

Executed and delivered as a deed by
**Kaupthing Finance ehf.**
by [●]
being persons who, in accordance with
the laws of Iceland,
are acting under its authority

_____
Authorised Signatory

*Name:*

_____
Authorised Signatory

*Name:*

Executed and delivered as a deed by
**Eliza Limited (in liquidation)**
by Stephen Akers in his capacity as liquidator
being persons who, in accordance with
the laws of the British Virgin Islands,
are acting under its authority, in the presence of


_____          _____

Witness                                    Stephen Akers

*Name:*

*Occupation:*

*Address:*



Executed and delivered as a deed by
**Oscatello Investments Limited (in liquidation)**
by [●] in his capacity as liquidator
(without personal liability)
being persons who, in accordance with
the laws of the British Virgin Islands,
are acting under its authority


_____          _____

Authorised Signatory                       Stephen Akers

*Name:*

*Occupation:*

*Address:*

Executed and delivered as a deed by
**Mr. Stephen Akers**
in his capacity as O&E Liquidator
(without personal liability)
in the presence of:

_____                    _____
Witness                                       Mr. Stephen Akers

*Name:*

*Occupation:*

*Address:*

Executed and delivered as a deed by
**Mr. Mark McDonald**
in his capacity as O&E Liquidator
(without personal liability)
in the presence of:

_____                          _____
Witness                                                                    Mr. Mark McDonald

*Name:*

*Occupation:*

*Address:*

Executed and delivered as a deed by **Mr. Elfar Adalsteinsson**
in the presence of:

_____                          _____
Witness                                                                    Mr. Elfar Adalsteinsson

*Name:*

*Occupation:*

*Address:*

Executed and delivered as a deed by
**ISIS Investments Limited (in liquidation)**
acting by Andrew Paul Shimmin
being a person who, in accordance
with the laws of the Isle of Man,
is acting under the authority of
**ISIS Investments Limited (in liquidation)**
as duly appointed agent for and
on behalf of each Scheme Creditor
in the presence of:

_____                          _____
Witness                                                                    Mr. Andrew Paul Shimmin

*Name:*

*Occupation:*

*Address:*

Executed and delivered as a deed by **Boodle Hatfield LLP** in its capacity as a Sundry Creditor acting by two duly authorised members:

_____
*(Member Signature)*
Member Name (*Print Name*):

_____
*(Member Signature)*
Member Name (*Print Name*):

Executed and delivered as a deed by **Callin Wild LLC** in its capacity as a Sundry Creditor acting by two duly authorised members:

_____
*(Member Signature)*
Member Name (*Print Name*):

_____
*(Member Signature)*
Member Name (*Print Name*):

## Appendix 1

### List of Known Scheme Creditors

Mon Investments ehf. (assigned from Mr. Aðalsteinn Karlsson)

Kaupthing hf. (re Estate of Mrs. Anna Fríða Winther)

Mr. Bogi Óskar Pálsson

Brun Holding

Clover International Group S.A.

Eignarhaldsfélagið EAV ehf.

Mr. Elfar Adalsteinsson

Fontain Blanc Holding S.A.

Mon Investments ehf. (assigned from Mr. Guðmundur A Birgisson)

Mr. Hjálmar Kristjánsson

Icarus ehf. (formerly Saxbygg ehf.)

Mon Investments ehf. (assigned from IceCapital ehf (formerly Sund ehf.))

Ingi Gudjonsson (as sole shareholder of the dissolved entity Icetec Holding)

Ingimundur hf.

Mr. Ingimundur Ingimundarson

Mon Investments ehf (assigned from Mr. Jón Ingvarsson)

Komi Investments S.A.

Lowell Alliance Ltd

New Ortland II Equities

Samarand Assets Inc.

Mon Investments ehf. (assigned from Mr. Sigfús Sigfússon)

SKLUX SA SPF

Zaria Global Limited

Mr. Þorsteinn Már Baldvinsson

**Appendix 2**

**Action 599 Consent Order**

**Appendix 3**

**IOM Consent Order**

**Appendix 4**

**Icelandic Consent Orders**

**Appendix 5**

**KF Consent Order**

**Appendix 6**

**Zaria Consent Order**

**Appendix 7**

**POD Consent Order**

## Appendix 8

### List of Initial Sub-Participation Amount

| Creditor name | Initial Sub-Participation Amount |
|---|---|
| Mon Investments ehf. (assigned from Mr. Aðalsteinn Karlsson) | £500,000.00 |
| Kaupthing hf. (re Estate of Mrs. Anna Fríða Winther) | £500,000.00 |
| Mr. Bogi Óskar Pálsson | £1,500,000.00 |
| Brun Holding | £1,000,000.00 |
| Clover International Group S.A. | £500,000.00 |
| Eignarhaldsfélagið EAV ehf. | £1,000,000.00 |
| Mr. Elfar Adalsteinsson | £2,000,000.00 |
| Fontain Blanc Holding S.A. | £1,000,000.00 |
| Mon Investments ehf. (assigned from Mr. Guðmundur A Birgisson) | £1,000,000.00 |
| Mr. Hjálmar Kristjánsson | £500,000.00 |
| Icarus ehf. (formerly Saxbygg ehf.) | £3,000,000.00 |
| Mon Investments ehf. (assigned from IceCapital ehf (formerly Sund ehf.)) | £1,000,000.00 |
| Icetec Holding | £500,000.00 |
| Ingimundur hf. | £1,000,000.00 |
| Mr. Ingimundur Ingimundarson | £500,000.00 |
| Mon Investments ehf. (assigned from Mr. Jón Ingvarsson) | £500,000.00 |
| Komi Investments S.A. | £1,000,000.00 |
| Lowell Alliance Ltd. | £250,000.00 |
| New Ortland II Equities | £9,000,000.00 |
| Samarand Assets Inc. | £2,000,000.00 |
| Mon Investments ehf. (assigned from Mr. Sigfús Sigfússon) | £500,000.00 |
| SKLUX SA SPF | £5,750,000.00 |
| Zaria Global Limited | £5,000,000.00 |
| Mr. Þorsteinn Már Baldvinsson | £500,000.00 |
| **Sub-total:** | **£40,000,000.00** |

**Appendix 9**

**New Facility Agreements**

**Appendix 10**

**O&E Agreement**

**ISIS INVESTMENTS LIMITED (IN LIQUIDATION)**
13-15 Hope Street, Douglas, Isle of Man, IM1 1AQ

Oscatello Investments Limited (In
Liquidation)
Palm Grove House
PO Box 443
Road Town
Tortola, British Virgin Islands

Eliza Limited (In Liquidation)
Palm Grove House
PO Box 443
Road Town
Tortola, British Virgin Islands

Kaupthing Finance ehf
Borgartun 26
105, Reykjavik
Iceland

Kaupthing hf
Borgartun 26
105, Reykjavik
Iceland

11 November 2014

O&E AGREEMENT

1.    **Introduction**

1.1    Isis Investments Limited (the **"Company"**) is proposing to apply to the High Court
of Justice of England & Wales (the **"English Court"**) and the Isle of Man Court to
seek orders to convene a meeting of Scheme Creditors of the Company to consider
and, if thought fit, approve the English Scheme and the Isle of Man Scheme
(together, **"the Schemes"**). A final form version of the English Scheme is set out at
Schedule 1 to this letter.

1.2    Capitalised terms used in this letter have the meaning given to them in the English
Scheme at Schedule 1 to this letter.

2.    **The Scheme Proposal**

2.1    The proposed Schemes would implement a proposal negotiated and agreed with
certain members of Scheme Creditors, the Company, Kaupthing and Kaupthing
Finance (amongst others) (the **"Scheme Proposal"**). The commercial terms of
which, as documented in the proposed Schemes provide for (amongst other
things):

(a)    In return for the payment by the Company of the Cash Distribution
Amount to the Scheme Creditors, the Scheme Creditors shall waive, cancel
and release all Claims against the Company relating to any acts or
omissions arising on or prior to the Effective Date;

*Isis Investments Limited, in liquidation*
*(Incorporated in the Isle of Man with company number 080684C)*

- 2 -

(b)     Save for the Revised 599 Proceedings and the Revised Isle of Man Proceedings, all of the Ongoing Litigation will be discontinued and dismissed;

(c)     The Company, Kaupthing and Kaupthing Finance shall enter into the New Facility Agreements;

(d)     The amount Oscatello claims that it is entitled to under the Oscatello Trust will, in the first instance, be reserved in full for the amount representing the Provisioned Amount (as defined in paragraph 3 below), pending the Initial Distribution Date, with the treatment of the Provisioned Amount to be subsequently dealt with in accordance with the terms of the Schemes and the Deed of Settlement and Release;

(e)     Within 5 Business Days of the Distribution Date, the Company (acting by the Liquidator) shall file the Application seeking orders (amongst others) for a permanent stay of the winding up of the Company and that Mr Shimmin be released as Liquidator so that control of the management of the Company can be vested in the Nominated Directors; and

(f)     After payment to Oscatello of the Undisputed Amount, the Company, with the authorisation of the Scheme Supervisor, shall pay to any Admitted New Scheme Creditors whose claims have been Accepted on or before the Initial Distribution Date their entitlement to the Cash Distribution Amount, to be calculated in accordance with the terms of the Schemes.

2.2     It is a term of the Schemes that the Company, the Scheme Creditors, Kaupthing, Kaupthing Finance, Oscatello and Eliza (amongst others) execute the Deed of Settlement and Release. Further, under the terms of the Schemes, as soon as is reasonably practicable following the Effective Date, the Company (through the Liquidator), pursuant to the authority granted in Clause 17 of the Schemes and acting as agent for the Scheme Creditors, shall file the Action 599 Consent Orders and the POD Consent Orders. A copy of the Deed of Settlement and Release is located at Schedule 2 to this letter. A copy of the Action 599 Consent Orders and the POD Consent Orders are located at Schedules 3 and 4 to this letter.

3.      **The Provisioned Amount**

As set out in paragraph 2.1(b) above, with the exception of the Revised 599 Proceedings and the Revised Isle of Man Proceedings, all of the Ongoing Litigation will be discontinued and dismissed. Oscatello agrees that its maximum claim in the Revised 599 Proceedings shall be £68,510,743 plus interest at the Court Rate accrued on such sum over the Applicable Period (the "**Provisioned Amount**") and that this amount shall remain under the control of the English Court in the Revised 599 Proceedings at least until the Effective Date, in accordance with the terms of the Schemes and the Deed of Settlement and Release.

4.      **Acknowledgement and undertakings**

4.1     By signing this letter:

- 3 -

(a)    Oscatello (acting by its jointly appointed liquidator, Stephen Akers), the Company (acting by the Liquidator), Kaupthing and Kaupthing Finance hereby confirm that they agree to the sum representing the Provisioned Amount for the purposes of the Revised 599 Proceedings, and consent to the Provisioned Amount being held in an account under the control of the English Court pending the occurrence of the Effective Date, with the treatment of the Provisioned Amount to be subsequently dealt with in accordance with the terms of the Schemes and the Deed of Settlement and Release;

(b)    Oscatello and Eliza (in each case, acting by its jointly appointed liquidator, Stephen Akers) each:

    (i)    agrees that it will not oppose the Schemes;

    (ii)    undertakes to the Company to execute:

        (A)    the Deed of Settlement and Release;

        (B)    the Action 599 Consent Orders;

        (C)    the POD Consent Orders; and

        (D)    any and all such documents (if any) that the Company reasonably considers necessary to give effect to the terms of the Schemes and the Deed of Settlement and Release,

        in each case to be held in escrow until or otherwise to become effective no earlier than the Effective Date in accordance with the Scheme Steps for the purposes of giving effect to the terms of the Schemes.

5.    **Exclusion of personal liability**

5.1    The Liquidator, together with the liquidators of Oscatello and Eliza (the "**O&E Liquidators**") act as agent for and on behalf of the Company, Oscatello and Eliza, respectively and neither they nor their firms, affiliated firms, employees, agents, partners, directors, members, officers or representatives, shall incur any personal liability whatsoever in respect of any of the obligations undertaken by the Company, Oscatello and Eliza (as applicable), or in respect of any failure on the part of the Company, Oscatello and Eliza (as applicable) to perform or comply with any such obligations under this letter.

5.2    The Liquidator and the O&E Liquidators shall not incur any personal liability whatsoever under this letter nor in relation to any related matter or claim, whether in contract, tort (including without limitation negligence) or restitution or by reference to any other remedy or right in any jurisdiction or forum. The exclusions of liability set out in this paragraph 5 shall arise and continue notwithstanding the termination of the agency of the Liquidator and/ or the O&E Liquidators or their discharge from office as liquidator of the Company, Oscatello or Eliza respectively and shall operate as a waiver of any claims in tort as well as under contract. Each

- 4 -

of the Liquidator's and the O&E Liquidators' firms, affiliated firms, employees, agents, partners, directors, members, officers and representatives shall be entitled to rely on and enjoy the benefit of this paragraph as if they were party to this letter. Nothing in this letter shall require the Liquidator or the O&E Liquidators to take any action which would breach any applicable law or regulation.

6.    **Counterparts**

This letter may be executed in any number of counterparts and by the different parties hereto as separate counterparts, but shall not be effective until each party has executed at least one counterpart, each of which, when executed and delivered, shall constitute an original, but all the counterparts shall together constitute one and the same instrument.

7.    **Severability**

The illegality, invalidity or unenforceability of any provision of this letter shall not affect the legality, validity or enforceability of any other provision. If any provision of this letter is found to be void or unenforceable, that provision shall be deemed to be deleted from this letter and the remaining provisions of this letter shall continue in full force and effect and the parties shall use their respective reasonable endeavours to procure that any such provision is replaced by a provision which is valid and enforceable, and which gives effect to the spirit and intent of this letter.

8.    **Governing Law**

This agreement and any dispute or claim arising out of or in connection with it or its subject matter or formation (including non-contractual disputes or claims) shall be governed by and construed in accordance with the laws of the England and Wales.

Signed by **Isis Investments Limited (In liquidation)** acting by its liquidator

Liquidator

Name: Andrew Paul Shimmin

Signed by **Andrew Paul Shimmin**
in his capacity as liquidator (as agent and without personal liability)
of Isis Investments Limited (In Liquidation)

Andrew Paul Shimmin

Signed for and on behalf of **Kaupthing hf**
by its duly authorised signatories

Feldís L. Óskarsdóttir

Theodór S. Sigurbergsson

Jóhannes Rúnar Jóhannsson

Signed for and on behalf of **Kaupthing Finance ehf**
by its duly authorised signatory

Theodór S. Sigurbergsson

- 6 -                    Error! Reference source not found.

Signed for and on behalf of **Oscatello Investments**
**Limited (in liquidation)** acting by Stephen John Akers as one of its joint liquidators

_____

Stephen John Akers


Signed for and on behalf of **Eliza**
**Limited (in liquidation)** acting by Stephen John Akers as one of its joint its liquidators

_____

Stephen John Akers



Signed by **Stephen John Akers**
on behalf of himself and Mark McDonald in their capacity as joint liquidators (as agent
and without personal liability)
of Oscatello Investments Limited (In Liquidation)
and Eliza Limited (In Liquidation)

_____

Stephen John Akers

- 7 -

## SCHEDULE 1

## THE ENGLISH SCHEME

# THE ISIS SCHEME

**IN THE HIGH COURT OF JUSTICE**                    **SERIAL No. 7404/2014**

## IN THE MATTER OF ISIS INVESTMENTS LIMITED
## (IN LIQUIDATION)

**and**

## IN THE MATTER OF THE COMPANIES ACT 2006

---

## SCHEME OF ARRANGEMENT

**(under Part 26 of the Companies Act 2006)**

---

**BETWEEN**

**ISIS INVESTMENTS LIMITED (IN LIQUIDATION)**

**(a company incorporated with limited liability under the laws of the Isle of Man with
registered number 080684C)**

**and its**

**SCHEME CREDITORS (as herein defined)**

# PART A

## PRELIMINARY

1. **Definitions and Interpretation**

1.1    In this English Scheme, unless the context otherwise requires or unless otherwise expressly provided for, the following capitalised expressions shall bear the following meanings:

| | |
|---|---|
| **"Accepted"** | means in relation to a New Claim, the acceptance by the Scheme Supervisor of the New Claim (or part thereof) without dispute in accordance with Clause 26 or, if the New Claim is a Disputed Claim, the determination of such New Claim (or part thereof) in accordance with Clause 27; |
| **"Action 363 Proceedings"** | means proceedings before the Chancery Division of the Court between the Company and the Former Directors, initially pursuant to claim number HC13D00363, as consolidated with the Action 599 Proceedings; |
| **"Action 599 Consent Order"** | means the consent order in respect of the Action 599 Proceedings as set out at Schedule 4 to this English Scheme, or substantially of similar effect as regards the Scheme Creditors, Kaupthing, Kaupthing Finance and Oscatello; |
| **"Action 599 Proceedings"** | means proceedings issued before the Chancery Division of the Court between the Company and (i) Oscatello; (ii) Kaupthing; (iii) Adalsteinsson (as a representative party); (iv) Eliza; and (v) Kaupthing Finance, pursuant to claim number HC09C00599; |
| **"Adalsteinsson"** | means Elfar Adalsteinsson; |
| **"Administration of Justice Act"** | means the Administration of Justice Act 1981; |
| **"Admitted Claim"** | means each of (i) the claims of the Known Scheme Creditors and marked as an "Admitted Claim" in Schedule 3 to this English Scheme; and (ii) a New Claim which has been Accepted; |
| **"Admitted New Claims"** | means in relation to a New Claimant, the Accepted amount of its New Claim calculated as at the Record Time; |
| **"Admitted New Scheme Creditors"** | means the holders of the Admitted New Claims as at the Record Time; |

1

| | |
|---|---|
| **"Affiliates"** | means each person's employees, shareholders, parent companies, divisions, subsidiary undertakings, general and limited partners, successors and assigns (past or present), but shall, for the avoidance of doubt, exclude the Former Directors; |
| **"Aggregate Known Admitted Claims"** | means the aggregate amount of the Admitted Claims of the Known Scheme Creditors as specified in Schedule 3 to this English Scheme; |
| **"Applicable Period"** | means (i) in relation to the Undisputed Amount the period from (and including) the Deposit Date to (but excluding) the date on which such sum is paid to Oscatello by the Company (acting by the Liquidator) in accordance with Clause 19.1(f) of this English Scheme; or (ii) in relation to the Provisioned Amount and the Resulting Amount the period from (and including) the Deposit Date to (but excluding) the date on which there is a final determination of Oscatello's actual entitlement under the Oscatello Trust by the Court in the Revised Action 599 Proceedings and such sum is paid to Oscatello by the Company; |
| **"Application"** | means an application to the Isle of Man Court pursuant to (i) section 194 of the Isle of Man Companies Act seeking orders (amongst others) for a permanent stay of the winding up of the Company; (ii) section 190 of the Isle of Man Companies Act and Rule 179 of the Companies Act (Winding- Up) Rules 1934 seeking orders (amongst others) for a release of the Liquidator; and (iii) section 194 of the Isle of Man Companies Act seeking orders (amongst others) that the Nominated Directors be appointed as directors of the Company with full power and authority to manage and control the affairs of the Company; |
| **"Bar Date"** | means 5:00pm (London time) on (i) the date falling 35 days after the Effective Date; or (ii) if the date in (i) falls on a day that is not a Business Day, the earliest Business Day; |
| **"Base Rate"** | means the Bank of England base rate from time to time; |
| **"Boodle Hatfield"** | means Boodle Hatfield LLP; |

2

**"Boodle Hatfield Funds"**

means the amounts of £697,538.98 and £88,744.86 paid into Boodle Hatfield's client account on 24 December 2009 and 8 January 2010 respectively, on account of the deferred consideration payable under the Somerfield SPA, which together with interest at the Boodle Hatfield Funds Rate accrued on such amounts since such dates, comprise the amount of £807,377.15 as at 29 September 2014, plus interest at the Boodle Hatfield Funds Rate accrued on such amounts since that date;

**"Boodle Hatfield Funds Rate"**

means 0.5% per annum compounded quarterly being the interest rate as at the date of this English Scheme on Boodle Hatfield's client account or such other rate as may apply on Boodle Hatfield's client account from time to time;

**"Business Day"**

means any day on which banks are open for business generally in London and the Isle of Man;

**"BVI"**

means the British Virgin Islands;

**"Callin Wild"**

means Callin Wild LLC;

**"Cash Distribution Amount"**

means, in relation to a Scheme Creditor's Admitted Claim, an amount equal to £0.92 per £1.00 of that Admitted Claim;

**"Claim"**

means all and any actions, causes of action, claims, counterclaims, suits, debts, sums of money, accounts, contracts, agreements, promises, contribution, indemnification, damages, judgments, executions, demands, Liabilities or rights whatsoever or howsoever arising, whether present, future, prospective or contingent, known or unknown, whether or not for a fixed or unliquidated amount, whether or not involving the payment of money or the performance of an act or obligation, whether arising in common law, in equity or by statute in or under the laws of the Isle of Man, Iceland, England and Wales or in any other jurisdiction or in any other manner whatsoever, and **"Claims"** shall be construed accordingly;

**"Claim Form"**

means the form to be completed by New Scheme Creditors or their duly authorised

3

|  | agents, setting out the details of their New Claims against the Company; |
| **"CDDA"** | means the Company Directors (Disqualification) Act 1986; |
| **"Companies Act"** | means the Companies Act 2006 as applicable in England and Wales; |
| **"Companies Registry"** | means the Registrar of Companies for England and Wales; |
| **"Company"** | means Isis Investments Limited (in liquidation), a company incorporated with limited liability and registered under the laws of the Isle of Man with registered number 080684C; |
| **"Conditions"** | means the conditions to the English Scheme set out in Clause 34 to this English Scheme; |
| **"Control"** | means in relation to a body corporate, the power of a person to secure that the affairs of the body corporate are conducted in accordance with the wishes of that person: (i) by possessing more than 50% of the voting power, in or in relation to that body corporate; or (ii) by virtue of any powers conferred by the constitutional documents of the body corporate, provided that such powers are capable of being exercised at the relevant time; |
| **"Court"** | means the High Court of Justice of England and Wales; |
| **"Court Funds"** | means the funds paid into Court by the Company on the Deposit Date in the Action 599 Proceedings, which, together with interest at the Court Rate accrued on such funds since the Deposit Date and less the sum of £5,000,000 paid out to the Liquidator on or about 3 February 2012 comprises the amount of £127,607,728.25 as at 17 October 2014, plus interest at the Court Rate accrued on such sum since that date; |
| **"Court Order"** | means a sealed copy of the order of the Court sanctioning this English Scheme; |
| **"Court Rate"** | means 0.3% per annum being the interest rate as at the date of this English Scheme on a Court Funds Office basis account or such other rate as |

4

|  | may apply on a Court Funds Office basis account from time to time; |
|---|---|
| **"Deed of Settlement and Release"** | means the deed of settlement and release to be entered into by (amongst others) the Company, Kaupthing, Kaupthing Finance, the Sundry Creditors, Oscatello, the Liquidator and the Scheme Creditors, as set out in Schedule 2 to be governed by the laws of England and Wales; |
| **"Deposit Date"** | means 2 March 2009, being the date the Company paid the Court Funds into Court in the Action 599 Proceedings; |
| **"Disputed Claim"** | means a New Claim that is disputed under Clause 27; |
| **"Disputed Funds"** | means the aggregate amount of (i) the Court Funds; and (ii) the Boodle Hatfield Funds; |
| **"Dispute Proceedings"** | means in respect of a Disputed Claim, proceedings issued in the Isle of Man Court as if the Disputed Claim were an application to reverse or vary a liquidator's rejection of a proof of debt made pursuant to Rule 85 of the Isle of Man Companies (Winding Up) Rules 1934; |
| **"Distribution Conditions"** | means the conditions to the occurrence of the Initial Distribution Date referred to in Clause 33; |
| **"Distribution Confirmation Deed"** | means a completed form in the form distributed to Scheme Creditors by the Liquidator confirming (amongst other things) the Settlement Instructions for each Scheme Creditor; |
| **"Distribution Date"** | means the date by which (i) all distributions of the Cash Distribution Amount have been made to all Scheme Creditors (including New Claimants with Admitted Claims); (ii) the Kaupthing Facility Agreement between the Company and Kaupthing has become effective; (iii) the KF Facility Agreement between the Company and Kaupthing Finance has become effective; (iv) the Company has paid to Oscatello the Undisputed Amount; and (v) the Company (acting by the Liquidator) has paid the Samarand Distribution Amount into the Samarand Escrow Account in accordance with an order or direction from the Isle of Man Court |

5

|  | in the Interpleader Proceedings, subject to Clause 29.4 of this English Scheme; |
|---|---|
| **"Effective Date"** | means the date on which the Conditions at Clause 34 hereto are satisfied; |
| **"Eliza"** | means Eliza Limited (in liquidation), a company incorporated in the BVI; |
| **"English Scheme"** | means this scheme of arrangement in respect of the Company under Part 26 of the Companies Act in its present form or with or subject to any modification, addition or condition approved or imposed by the Court or approved in accordance with the terms of the English Scheme; |
| **"English Scheme Steps"** | has the meaning given to it in Clause 19 of this English Scheme; |
| **"Explanatory Statement"** | means the explanatory statement dated 18 November 2014 of the Company circulated to the Scheme Creditors and in connection with this English Scheme pursuant to section 897 of the Companies Act and the Isle of Man Scheme pursuant to the Isle of Man Companies Act; |
| **"Former Directors' Advisers"** | means the professional advisers to the Former Directors, including Nabarro LLP and Slater & Gordon LLP; |
| **"Former Directors"** | means Sigurdur Einarsson, David Karran and Moira McHarrie; |
| **"Framework Agreement"** | means the framework agreement dated 19 December 2007 between Kaupthing, the Company, NOIIE, the TDT Trustees, Eliza, Oscatello and Silverville; |
| **"Icelandic Consent Orders"** | means the consent orders in respect of the Icelandic Proceedings as set out at Schedule 5 to the English Scheme; |
| **"Icelandic Court"** | means the District Court of Reykjavik; |
| **"Icelandic Proceedings"** | means proceedings issued in Iceland between (i) Kaupthing; and (ii) certain of the Sub-Participants pursuant to the claim numbers X-587/2012; X-588/2012; X-589/2012; X-590/2012; X-591/2012; X-593/2012; X-594/2012; X-596/2012; X-597/2012; X-598/2012; X-599/2012; X-600/2012; X- |

6

|  | 601/2012;   X-602/2012;   X-603/2012;   X-604/2012; and X-605/2012; |
|---|---|
| **"Initial Distribution Date"** | means the date falling five Business Days after the date the Distribution Conditions have been satisfied; |
| **"Initial   Equity   Participation Amount"** | means the value of the Company's holding of the Tazamia B Shares as sub-participated to the Known Scheme Creditors pursuant to the Sub-Participation Agreements; |
| **"Initial Interpleader Relief"** | means an order or direction from the Isle of Man Court in the Interpleader Proceedings for the Company (acting by the Liquidator) to pay the Samarand Distribution Amount into the Samarand Escrow Account; |
| **"Initial           Sub-Participation Amount"** | means the amount initially invested by the Known Scheme Creditors under the Sub-Participation Agreements as set out in Schedule 3 to this English Scheme; |
| **"Interpleader Proceedings"** | means an application to be filed by the Company in the Isle of Man Court under Part 13, Chapter 3 of the Isle of Man Rules of Court in respect of the Samarand Distribution Amount in accordance with Clause 19.1(d) of this English Scheme; |
| **"Investec"** | means Investec Trust (Guernsey) Limited; |
| **"IOM Consent Order"** | means the consent order in respect of the Isle of Man Proceedings as set out at Schedule 6 to the English Scheme or substantially of similar effect as regards Kaupthing and Kaupthing Finance; |
| **"IOM Scheme Steps"** | has the meaning given to it in Clause 19 of the Isle of Man Scheme; |
| **"Isle of Man Companies Act"** | means the Companies Act 1931, as amended from time to time; |
| **"Isle of Man Companies Registry"** | means the companies registry maintained by the Isle of Man Department of Economic Development; |
| **"Isle of Man Court"** | means the High Court of Justice of the Isle of Man; |

7

| | |
|---|---|
| **"Isle of Man Court Order"** | means a sealed copy of the order of the Isle of Man Court sanctioning the Isle of Man Scheme; |
| **"Isle of Man Proceedings"** | means proceedings issued in the Isle of Man between (i) the Company; (ii) Kaupthing; (iii) Kaupthing Finance; and (iv) the Former Directors, pursuant to serial number ORD 12/0036; |
| **"Isle of Man Rules of Court"** | means the Isle of Man Rules of the High Court of Justice 2009 (as amended); |
| **"Isle of Man Scheme"** | means the scheme of arrangement in respect of the Company under section 152 of the Isle of Man Companies Act in its present form or with or subject to any modification, addition or condition approved or imposed by the Isle of Man Court or approved in accordance with the terms of the Isle of Man Scheme; |
| **"Kaupthing"** | means Kaupthing hf., a company incorporated in Iceland with company number 560882-0419, acting by its Winding up Committee; |
| **"Kaupthing Admitted Claim"** | means the amount of £177,278,839.44, being the amount owing by the Company to Kaupthing, as at the Record Time, and admitted by the Scheme Supervisor in accordance with Clause 14 of this English Scheme; |
| **"Kaupthing Distribution Amount"** | means, in relation to the Kaupthing Proof of Debt, an amount equal to £0.92 for £1.00 of the Kaupthing Admitted Claim, which equals to £163,096,532.29; |
| **"Kaupthing Facility Agreement"** | means the facility agreement to be entered into between Kaupthing and the Company in accordance with Clause 31.8 of the English Scheme in the form set out in Appendix 9 to the Deed of Settlement and Release; |
| **"Kaupthing Finance"** | means Kaupthing Finance ehf., a company incorporated in Iceland with company number 510505-0690; |
| **"Kaupthing Group"** | means Kaupthing and its Subsidiaries; |
| **"Kaupthing Finance English Proceedings"** | means proceedings issued before the Chancery Division of the Court between the Company and Kaupthing Finance pursuant to claim number |

8

HC11CO4539;

| | |
|---|---|
| **"Kaupthing Proof of Debt"** | means the proof of debt dated 3 December 2010 and lodged by Kaupthing in the liquidation of the Company; |
| **"KF Admitted Claim"** | means the amount of £141,519,871, being the amount owing by the Company to Kaupthing Finance as at the Record Time, and admitted by the Scheme Supervisor in accordance with Clause 14 of this English Scheme; |
| **"KF Consent Order"** | means the consent order in respect of Kaupthing Finance English Proceedings as set out at Schedule 7 to the English Scheme; |
| **"KF Distribution Amount"** | means, in relation to the KF Proof of Debt, an amount equal to £0.92 for £1.00 of the KF Admitted Claim, which equals to £130,198,281.32; |
| **"KF Facility Agreement"** | means the facility agreement to be entered into between Kaupthing Finance and the Company in accordance with Clause 31.8 of the English Scheme in the form set out in Appendix 9 to the Deed of Settlement and Release; |
| **"KF Proof of Debt"** | means the proof of debt dated 3 December 2010 and lodged by Kaupthing Finance in the liquidation of the Company; |
| **"Kirna"** | means Kirna ehf, a company incorporated in Iceland, with company number 670290-1079; |
| **"Known Scheme Claims"** | means, in relation to a Known Scheme Creditor, any and all claims that a Known Scheme Creditor has, or may have, against the Company; |
| **"Known Scheme Creditors"** | means those persons listed at Schedule 3 to the English Scheme; |
| **"Liability"** | means any debt, liability or obligation whatsoever, whether it is present, future, prospective or contingent, whether or not its amount is fixed or undetermined, whether or not it involves the payment of money or the performance of an act or obligation, and whether it arises at common law, in equity or by statute, in or under the laws of England and Wales, the BVI, the Isle of Man, Iceland or any other law or |

9

jurisdiction, or in any other manner whatsoever and **"Liabilities"** shall be construed accordingly;

**"Liquidator"**      means Andrew Paul Shimmin of Shimmin Wilson & Co, in his capacity as liquidator of the Company;

**"Litigation Consent Orders"**      means the Action 599 Consent Order, the IOM Consent Order, the KF Consent Order, the Icelandic Consent Orders and the Zaria Consent Order;

**"Longstop Date"**      means 30 June 2015;

**"Loss"**      means any loss, cost, damage, award, charge, interest, penalty, fine, expense and/ or other liability;

**"Medino"**      means Medino Promotion S.A., a company incorporated in the BVI, with company number 606.130;

**"New Claim"**      means a Claim against the Company as at the Record Time, other than (i) a Known Scheme Claim; (ii) the claim of Kaupthing that is currently subject to the Kaupthing Proof of Debt and the Action 599 Proceedings; (iii) the claim of Kaupthing Finance that is currently the subject of the KF Proof of Debt and the Action 599 Proceedings; (iv) a Sundry Claim; (v) the claim of Oscatello that is currently subject to the Oscatello Proof of Debt and the Action 599 Proceedings, and any claim to interest thereon which may be brought in the Revised 599 Proceedings; and (vi) any claim of the Former Directors.

**"New Claimant"**      means a person who has submitted a Claim Form;

**"New Facility Agreements"**      means the Kaupthing Facility Agreement and the KF Facility Agreement;

**"New Scheme Creditor"**      means the holders of a New Claim;

**"NOIIE"**      means New Ortland II Equities Limited;

**"Nominated Account"**      means the account of the Company under the control of the Liquidator and held with Barclays Private Clients International Limited (Isle of Man), sort code 20-26-74, account no: 93579719, a/c name: 'Isis No 2 Account';

10

| | |
|---|---|
| **"Nominated Directors"** | means the persons nominated by Kirna to be on the board of directors of the Company; |
| **"Non-Kaupthing Claimant"** | means any person, company, trustee, beneficiaries of a trust, body corporate, partnership, financial institution, unincorporated entity, but shall not include Kaupthing and its Subsidiaries provided that those Subsidiaries are subject to Kaupthing's Control and/ or are not under the control of an administrator, liquidator, provisional liquidator, receiver or any other analogous insolvency process in any jurisdiction; |
| **"Ongoing Litigation"** | means the Action 599 Proceedings, the Kaupthing Finance English Proceedings, the Isle of Man Proceedings, the Zaria Global Proceedings, and the Proof of Debt Proceedings; |
| **"Oscatello"** | means Oscatello Investments Limited (in liquidation), a company incorporated in the BVI with company number 1410795; |
| **"Oscatello Proof of Debt"** | means the proof of debt lodged by Oscatello in the liquidation of the Company and dated 11 May 2010 and revised on 19 November 2010; |
| **"Oscatello Trust"** | means the purported trust granted by the Company for the benefit of Oscatello in respect of Oscatello's portion of the Violet Economic Return under Clause 6 of the Framework Agreement; |
| **"Party"** | means a party to this English Scheme or other person consenting to be bound by this English Scheme, and includes any successors and assigns; |
| **"Personnel"** | means, in relation to any person, its current and former officers, partners, directors, employees, staff, agents and counsel; |
| **"Pillar"** | means Pillar Securitisation S.à r.l., a company incorporated under the laws of Luxembourg with company number B147031; |
| **"POD Consent Order"** | means the consent order in respect of the Proof of Debt Proceedings as set out at Schedule 9 to the English Scheme; |

| | |
|---|---|
| **"Proceeding"** | means any process, suit, action, legal or other proceeding including any arbitration, mediation, alternative dispute resolution, judicial review, adjudication, demand, execution, restraint, forfeiture, re-entry, seizure, lien, enforcement of judgment, enforcement of any security or enforcement of any letter of credit; |
| **"Proof of Debt Proceedings"** | means proceedings in the Isle of Man pursuant to serial number CHP 10/0021 between the Company and (i) Kaupthing concerning the Kaupthing Proof of Debt; (ii) Kaupthing Finance concerning the KF Proof of Debt; and (iii) Oscatello concerning the Oscatello Proof of Debt; |
| **"Provisioned Amount"** | means the amount of £68,510,743 plus interest at the Court Rate accrued on such sum over the Applicable Period, being the maximum amount of Oscatello's entitlement under the Oscatello Trust; |
| **"Record Time"** | means 5:00 pm (London time) on 2 March 2010; |
| **"Redford"** | means the Redford Australian Unit Trust; |
| **"Redford Transaction"** | means the investment in Redford and the related investment in Spirit; |
| **"Released Advisers"** | means the professional advisers to the Company and its creditors, including Boodle Hatfield LLP, Cains Advocates Limited, Berwin Leighton Paisner LLP, Logos Legal Services Limited, Sidley Austin LLP, Advocates Smith Taubitz Unsworth Ltd and Skadden, Arps, Slate, Meagher & Flom (UK) LLP; |
| **"Resulting Amount"** | means the sum of £39,940,630 plus interest at the Court Rate accrued on such sum over the Applicable Period, being the Provisioned Amount less the Undisputed Amount; |
| **"Revised 599 Proceedings"** | means the re-re-amended claims in the Action 599 Proceedings to be pleaded by and determined between the Company and Oscatello to determine: |

> (a) the true meaning and construction of Clause 6.1 of the Framework Agreement, specifically whether the payment waterfall provided at Clause 6.1(A) – (D)

12

in respect of the Violet Economic Return (as defined therein) provides for an amount of £44.15 million to be payable in the first instance to the Claimant (such amount representing the total sum originally invested by the Claimant referred to at (i) and (ii) of Clause 6.1 in respect of the Violet Economic Return); and

(b)    the quantum of the First Defendant's trust claim to its proportion of the Violet Economic Return;

**"Revised Isle of Man Proceedings"** means the Isle of Man Proceedings as amended pursuant to the IOM Consent Order, solely relating to the Isle of Man Proceedings between the Company and the Former Directors;

**"Samarand"** means Samarand Assets Inc, a company incorporated under the laws of the BVI with company number 599.240;

**"Samarand Claim"** means the claim of Samarand in its capacity as a Known Scheme Creditor and marked as an "Admitted Claim" in Schedule 3 to this English Scheme;

**"Samarand Distribution Amount"** means the Cash Distribution Amount that would otherwise be payable to Samarand under this English Scheme, but for the Liquidator being placed on notice of the Sub-Participant Dispute;

**"Samarand Escrow Account"** means an account held with the Isle of Man Court, or such other account as directed by the Isle of Man Court in the Interpleader Proceedings, into which the Company shall pay the Samarand Distribution Amount in accordance with the Initial Interpleader Relief;

**"Samarand Sub-Participation Agreement"** means the sub-participation agreement entered into between Samarand and the Company dated 2 June 2008;

**"Sub-Participant Dispute"** means the dispute relating to Samarand's rights and entitlements under the Samarand Sub-Participation Agreement and Samarand's claim to the Samarand Distribution Amount under this English Scheme;

**"Scheme Claim"** means the Claims of all Scheme Creditors;

13

| | |
|---|---|
| "Scheme Creditor" | means the Known Scheme Creditors and the New Scheme Creditors; |
| "Scheme Funds" | means an amount equal to the Court Funds less the Resulting Amount; |
| "Scheme Proposal" | means the document entitled "Heads of Terms for Arrangements concerning the liquidation of the Company" dated 3 June 2013 and signed on behalf of the Winding up Committee of Kaupthing, the Consenting Sub-Participants (as defined therein) and Zaria Global; |
| "Scheme Proposal Payments" | means the payments of the Cash Distribution Amount, the Undisputed Amount and the Sundry Claims; |
| "Scheme Publications" | means The Financial Times, the Isle of Man Courier, the Isle of Man Examiner, the Lögbirtingablað and the London Gazette; |
| "Scheme Steps" | means the English Scheme Steps and the IOM Scheme Steps; |
| "Scheme Supervisor" | means such persons as are appointed in accordance with Clause 41, and shall initially be Andrew Paul Shimmin of Shimmin Wilson & Co; |
| "Settlement Instructions" | means the settlement instructions for a Sterling bank account provided in accordance with Clauses 31.5 and 31.6 of the English Scheme; |
| "Somerfield" | means Somerfield Limited and each of its predecessors, a company incorporated in England and Wales with company number 01162517; |
| "Somerfield SPA" | means the sale and purchase dated 15 July 2008 between (amongst others) the Institutional Sellers, the Individual Sellers (each as defined therein) and Co-operative Ventures Limited whereby the Institutional Sellers and the Individual Sellers sold its interest in Somerfield to Co-operative Ventures Limited; |
| "Spirit" | means Spirit Realty Capital, Inc (New) formerly Spirit Finance, a US based Real Estate Investment Trust which is listed on the New York Stock Exchange under the identification NYSE:SRC; |

14

| | |
|---|---|
| **"Sub-Participation Agreements"** | means the sub-participation agreements relating to the Company's indirect investment in the Somerfield supermarket chain between (amongst others) the Company and the Known Scheme Creditors; |
| **"Subsidiary"** | means at any relevant time any subsidiary or any subsidiary undertaking (as such terms are defined in the Companies Act) of the Company; |
| **"Sundry Claims"** | means the claims of Boodle Hatfield and Callin Wild which together comprise the amount of £89,004.88, as at the Record Time; |
| **"Sundry Creditors"** | means Boodle Hatfield and Callin Wild; |
| **"Silverville"** | means Silverville Limited, a company incorporated in the BVI; |
| **"Sterling"** | means the lawful currency of England and Wales; |
| **"Tazamia"** | means Tazamia Limited (in liquidation), a company incorporated in the BVI with company number 660392; |
| **"Tazamia B Shares"** | means the 8,500 ordinary "B" shares in Tazamia initially held by Kaupthing and subsequently transferred to the Company on or around 29 December 2005; |
| **"TDT"** | means the Tchenguiz Discretionary Trust established by a declaration of trust in Jersey on 26 March 2007 for the benefit of Robert Tchenguiz and others; |
| **"TDT Trustee"** | means Rawlinson and Hunter Trustees S.A. in its capacity as the trustee of the TDT, and includes any of its predecessors and successors; |
| **"TFT"** | means the Tchenguiz Family Trust established by a declaration of trust in the BVI on 25 October 1988 for the benefit of Robert Tchenguiz and his brother, Vincent Tchenguiz; |
| **"TFT Trustee"** | means Rawlinson and Hunter Trustees S.A. in its capacity as the trustee of the TFT, and includes any of its predecessors and successors; |
| **"Total Equity Participation Return"** | means the total return on the Initial Equity Participation Amount of £8,072,445, calculated in accordance with the terms of the Sub- |

15

|  | Participation Agreements; |
|---|---|
| **"Total Sub-Participation Amount Return"** | means the total return on the Initial Sub-Participation Amount of £16,073,372, calculated in accordance with the terms of the Sub-Participation Agreements; |
| **"Undisputed Amount"** | means the sum of £28,570,113 plus interest at the Court Rate accrued on such sum over the Applicable Period, being the sum which it is agreed that Oscatello is entitled to under Clause 6 of the Framework Agreement if the true meaning and construction of that provision is as contended for by Kaupthing in the Action 599 Proceedings; |
| **"Winding up Committee"** | means the Winding up Committee of Kaupthing appointed by the Icelandic Court on 25 May 2009 and currently comprising Feldis L. Oskarsdottir, Johannes R. Johannsson and Theodor Sigurbergsson; |
| **"Zaria Consent Order"** | means the consent order in respect of the Zaria Global Proceedings as set out at Schedule 8 to the English Scheme; |
| **"Zaria Global"** | means Zaria Global Limited, a company incorporated in the BVI with company number 681577; and |
| **"Zaria Global Proceedings"** | means the proceedings before the Chancery Division of the Court between Zaria Global and the Company pursuant to claim number HC09CO3526. |

1.2    In this English Scheme, unless the context otherwise requires or otherwise expressly provides:

(a)    references to Recitals, Parts, Clauses, Sub-Clauses, Schedules and Appendices are references to the recitals, parts, clauses and sub-clauses, schedules and Appendices respectively of or to the English Scheme;

(b)    references to a "person" include references to an individual, firm, partnership, company, corporation, other legal entity, unincorporated body of persons or any state or state agency;

(c)    references to a statute or a statutory provision include the same as subsequently modified, amended or re-enacted from time to time;

(d)    references to an agreement, deed or document shall be deemed also to refer to such agreement, deed or document as amended, supplemented, restated.

16

verified, replaced, and/or novated (in whole or in part) from time to time and to any agreement, deed or document executed pursuant thereto;

(e) the singular includes the plural and vice versa and words importing one gender shall include all genders;

(f) headings to Recitals, Parts, clauses and sub-clauses are for ease of reference only and shall not affect the interpretation of the English Scheme;

(g) the words "**include**" and "**including**" are to be construed without limitation, general words introduced by the word "**other**" are not to be given a restrictive meaning by reason of the fact that they are preceded by words indicating a particular class of acts, matters or things, and general words are not to be given a restrictive meaning by reason of the fact that they are followed by particular examples intended to be embraced by the general words;

(h) a company is a "**subsidiary**" of another company, its "**holding company**", if that other company (a) holds a majority of voting rights in it; (b) is a member of it and has the right to appoint or remove a majority of its board of directors; or (c) is a member of it and controls alone, pursuant to an agreement with other members, a majority of the voting rights in it, or, if it is a subsidiary of a company that is itself a subsidiary of that other company;

(i) an "**undertaking**" means a body corporate or partnership; or an unincorporated association carrying on a trade or business, with or without a view to profit; and an undertaking is a parent undertaking in relation to another undertaking, a "**subsidiary undertaking**", if (a) it holds the majority of the voting rights in the undertaking; (b) it is a member of the undertaking and has the right to appoint or remove a majority of its board of directors; (c) it has the right to exercise a dominant influence over the undertaking (i) by virtue of provisions contained in the undertaking's articles, or (ii) by virtue of a control contract; or (d) it is a member of the undertaking and controls alone, pursuant to an agreement with other shareholders or members, a majority of the voting rights in the undertaking; and

(j) to the extent that there shall be any conflict or inconsistency between the terms of the English Scheme and the Explanatory Statement then terms of the English Scheme shall prevail.

17

## PART B

## RECITALS TO THE ENGLISH SCHEME

2.  **The Company**

2.1  The Company was incorporated under the laws of the Isle of Man on 29 August 1996 as a private company limited by shares pursuant to the Isle of Man Companies Act with registered number 080684C.

2.2  The Company is a wholly owned subsidiary of Kirna, which is a wholly owned subsidiary of Kaupthing.

2.3  The Company's registered office is at 13-15 Hope Street, Douglas, Isle of Man, IM1 1AQ.

2.4  On 8 March 2010, Andrew Paul Shimmin was appointed as liquidator provisionally of the Company by the Isle of Man Court pursuant to an application filed by Kaupthing (the "**Liquidator Provisional**").

2.5  On 29 March 2010, the Company was wound up by the Isle of Man Court and an order was made confirming the Liquidator Provisional of the Company as the Liquidator.

3.  **Scheme Creditors**

3.1  The Scheme Creditors are the Known Scheme Creditors and the New Scheme Creditors.

3.2  Under the Ongoing Litigation, Adalsteinsson (as a representative party for the Known Scheme Creditors), asserts claims against the Company pursuant to (amongst other things) the terms of the Sub-Participation Agreements relating to the Company's indirect investment in the Somerfield supermarket chain.

3.3  The Known Scheme Claims comprise those Claims against the Company which are known to the Liquidator as at the date of the Explanatory Statement, whether through filing a proof of debt in the liquidation of the Company or otherwise, as more fully described in Schedule 3.

3.4  The Aggregate Known Admitted Claims has been determined and calculated and agreed by the Scheme Supervisor taking into account the following:

   (a)  The repayment of the Initial Sub-Participation Amount;

   (b)  The Total Sub-Participation Amount Return;

   (c)  The repayment of the Initial Equity Participation Amount;

   (d)  The Total Equity Participation Return; and

   (e)  Interest payable under the Sub-Participation Agreements, calculated from 27 February 2009 to the Record Time.

18

3.5 Subject to Clause 3.6 and Clause 29 of this English Scheme (with the exception of Samarand in respect of the Samarand Claim), all Known Scheme Creditors will be paid the Cash Distribution Amount on the Initial Distribution Date.

3.6 Subject to any contrary orders of the Isle of Man Court in the Interpleader Proceedings and Clause 29.4 of this English Scheme, Samarand, a Known Scheme Creditor will not be paid its entitlement to the Cash Distribution Amount, being the Samarand Distribution Amount, on the Initial Distribution Date. Rather the Company (acting by the Liquidator), with the authorisation of the Scheme Supervisor, shall have filed the Interpleader Proceedings on or as soon as reasonably practicably after the Bar Date pursuant to which the Samarand Distribution Amount shall be held in the Samarand Escrow Account in accordance with Clause 29 of this English Scheme.

3.7 The claims of the New Scheme Creditors are Claims against the Company at the Record Time, which are not Known Scheme Claims, Sundry Claims, the claims that are subject to the Oscatello Proof of Debt, the Kaupthing Proof of Debt and the KF Proof of Debt.

3.8 Under the English Scheme, all Scheme Creditors shall be entitled to the Cash Distribution Amount on their Admitted Claims (save that the entitlement of Samarand to the Samarand Distribution Amount shall be subject to the orders of the Isle of Man Court in the Interpleader Proceedings).

4.     **Kaupthing and Kaupthing Finance**

4.1 Kaupthing was incorporated as a public company and domiciled in Iceland, which previously carried on business as a deposit-taking and investment bank in Iceland with various subsidiaries and affiliates in the United Kingdom.

4.2 On 28 November 2008 Kaupthing entered moratorium proceedings pursuant to Chapters III-IV of the Icelandic Bankruptcy Act and on 22 November 2010 Kaupthing formally entered winding up proceedings following a ruling of the Icelandic Court.

4.3 Kaupthing Finance was incorporated as a private company and domiciled in Iceland, which conducted debt financing within the Kaupthing Group. Kaupthing Finance is currently not subject to any insolvency proceedings or processes.

4.4 Kaupthing and Kaupthing Finance assert claims against the Company as documented in the Kaupthing Proof of Debt and the KF Proof of Debt.

5.     **Sundry Creditors**

The Sundry Creditors are those creditors who assert claims against the Company in respect of professional services rendered prior to the Company being placed into liquidation for the amount representing the Sundry Claims.

6.     **Purposes of the English Scheme**

6.1 The principal purposes of the English Scheme are to:

19

(a)     restore the Company to a position of solvency, free from historic liabilities (with the exception of the Oscatello Trust Claim to be determined in the Revised 599 Proceedings and the claims raised by the Company against the Former Directors in the Action 363 Proceedings and the Revised Isle of Man Proceedings, which are not compromised as part of the English Scheme or the Isle of Man Scheme), so that the winding up can be stayed and the Company can be returned to the control of its shareholder and the Nominated Directors;

(b)     provide the creditors of the Company with certainty, and a cost-efficient outcome, by valuing and compromising the claims of all of the Company's creditors (except Oscatello) and putting an end to the Ongoing Litigation; and

(c)     provide the Scheme Creditors with a swift resolution by providing prompt payment of a cash dividend in respect of their claims.

6.2     To achieve these purposes, the English Scheme provides for (amongst other things):

(a)     A Bar Date for Claims against the Company;

(b)     The determination of the amount of the Scheme Claims;

(c)     The release of the Scheme Claims in consideration for a payment of the Cash Distribution Amount;

(d)     The compromise of Kaupthing and Kaupthing Finance's claims, by which they will be entitled to receive a future distribution equal to the Kaupthing Distribution Amount and the KF Distribution Amount under this English Scheme, with such rights to receive the future distribution to be documented in the Kaupthing Facility Agreement and the KF Facility Agreement;

(e)     Save for the Revised 599 Proceedings and the Revised Isle of Man Proceedings, the settlement of the Ongoing Litigation. In addition, the claims brought by the Company against the Former Directors in the Action 363 Proceedings would not be comprised under this English Scheme;

(f)     A payment to the Sundry Creditors in satisfaction of the Sundry Claims; and

(g)     The Company (through the Liquidator) to file the Application seeking orders (amongst others) for a stay in the winding up.

7.      **Binding on third parties**

The Liquidator, Kaupthing, Kaupthing Finance and the Sundry Creditors shall execute the Deed of Settlement and Release, pursuant to which the Liquidator, Kaupthing, Kaupthing Finance and the Sundry Creditors will undertake to be bound by the terms of the English Scheme.  Pursuant to the Deed of Settlement and Release, the Liquidator, Kaupthing, Kaupthing Finance and the Sundry Creditors agree to execute and do or procure to be executed and done all such documents, acts or things as may be necessary or desirable to be executed or done by it for the purposes of giving effect to the English Scheme.

20

**PART C**

**APPLICATION AND EFFECTIVENESS OF THE ENGLISH SCHEME**

8.      **The Liquidator**

The Liquidator has given and has not withdrawn his consent to act as a Scheme Supervisor and shall, by no later than the Effective Date, execute the Scheme Supervisor Agreement in the form of Schedule 1 and deliver it to the Company.

9.      **Scheme Creditors**

The Scheme Creditors are the Known Scheme Creditors and the New Scheme Creditors.

10.     **Application, extent and effectiveness of the English Scheme**

10.1    On the Effective Date, all of the right, title and interest of the Scheme Creditors to their Scheme Claims shall be subject to the compromises and arrangements set out in the English Scheme, and every term of the English Scheme shall become effective.

10.2    The compromise and arrangement effected by the English Scheme shall apply to all Scheme Claims and shall be binding on all Scheme Creditors.

10.3    The rights of the Scheme Creditors obtained under the English Scheme, including the right to receive the Cash Distribution Amount, shall, subject to and in accordance with the terms of the English Scheme, be accepted by the Scheme Creditors in full and final settlement of all Scheme Claims.

10.4    Subject to and in accordance with the terms of the English Scheme, each Scheme Creditor will be entitled to, if the Scheme Creditor has a Scheme Claim that is an Admitted Claim, a distribution of the Cash Distribution Amount in respect of its Scheme Claim in accordance with Clause 31 of this English Scheme.

10.5    Each Scheme Creditor shall be liable for all legal costs and disbursements it has incurred relating to the Isle of Man Proceedings, the Kaupthing Finance English Proceedings, the Action 599 Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the winding up of the Company and the English Scheme.

10.6    Each Scheme Creditor's entitlements under the English Scheme are in lieu of their entitlements to prove in, and receive a dividend from, the winding up of the Company and, at the Effective Date, all rights of a Scheme Creditor against the Company merge into their entitlements under the English Scheme. For the avoidance of doubt, in the event that a Scheme Creditor is not entitled to a distribution of the Cash Distribution Amount, the Scheme Creditor will not be entitled to prove in, or receive a dividend from, the winding up of the Company.

10.7    For the avoidance of doubt, no claim of the Company against the Former Directors in the Action 363 Proceedings and the Isle of Man Proceedings (as revised into the Revised Isle of Man Proceedings) in respect of the affairs of the Company generally shall be compromised or prejudiced by this English Scheme.

21

11. **No Proceedings**

11.1    Subject to Clause 11.2, with effect from the Effective Date, no Scheme Creditor shall be entitled to take or continue any step or Proceeding against the Company, Kaupthing, or Kaupthing Finance and each of their Subsidiaries in any jurisdiction whatsoever for the purpose of obtaining any payment of any Scheme Claim or any part thereof.  For the avoidance of doubt this paragraph shall apply to the Ongoing Litigation.

11.2    Nothing in Clause 11.1 shall prejudice the enforcement by a Scheme Creditor of:

(a)    its rights under the English Scheme; or

(b)    its rights or any claim against any person (other than the Company, any other Scheme Creditor or any of their Subsidiaries to the extent that such right and any such claim relates to a Scheme Claim).

11.3    No order, judgment, decision or award obtained by a Scheme Creditor in breach of Clause 11.1 shall give rise to an Admitted Claim.  A Scheme Creditor shall not be entitled to rely on such order, judgment, decision or award to evidence a Scheme Claim and shall have no right to enforce the order, judgment, decision or award against the Company, Kaupthing, or Kaupthing Finance.

12. **Effect of Proceedings prohibited by Clause 11**

12.1    If a Scheme Creditor obtains any money, benefit, property or advantage at the expense of the Company in breach of Clause 11.1, he shall be treated as having received, on account of his entitlement to the Cash Distribution Amount, an advance payment equal to the amount or gross value of such money, benefit, property or advantage, and the extent, if any, to which he is entitled to his Cash Distribution Amount shall be reduced accordingly.

12.2    For the purpose of Clause 12.1, the value of any amount obtained shall be the gross value as conclusively determined by the Scheme Supervisor, acting in good faith, and may include such amount as he considers appropriate by way of interest; or costs, charges or expenses incurred by the Company, Kaupthing or Kaupthing Finance as a consequence of the Proceedings.

12.3    To the extent that the gross value exceeds the value of the Cash Distribution Amount to which the Scheme Creditor would otherwise be entitled, the Scheme Creditor shall hold the excess on trust for the Company and shall immediately pay it to the Company without set-off, deduction, retention, abatement or counterclaim. Interest will accrue on the excess, from the date on which the value is obtained by the Scheme Creditor, at a rate of 2 per cent. above the Base Rate.

12.4    The Company shall have the right to seek injunctive or other relief or remedy:

(a)    in respect of the breach or anticipated breach of Clauses 11 or 12; and

(b)    in respect of any Loss which the Company may suffer as a result of the breach of Clauses 11 or 12.

22

13.    **The affairs of the Company and management control**

13.1    To the fullest extent permissible at law, the Scheme Supervisor shall manage, control and administer the distributions of the Cash Distribution Amount and the assessment of any New Claims.

13.2    Upon the Scheme Supervisor vacating his role as Scheme Supervisor in accordance with Clause 42.1 of this English Scheme, the Company (through the Liquidator) shall be deemed to have been instructed by the Scheme Creditors to file the Application. The Application shall seek orders (inter alia) from the Isle of Man Court that:

(a)    there be a permanent stay of the winding up of the Company;

(b)    the Liquidator be released as the liquidator and the deemed Official Receiver of the Company; and

(c)    the Nominated Directors be appointed as directors of the Company with full power and authority to manage and control the affairs of the Company.

14.    **Proofs of Debt submitted by the Known Scheme Creditors, Kaupthing and Kaupthing Finance**

14.1    The Scheme Supervisor shall admit the proofs of debt submitted by:

(a)    the Known Scheme Creditors for the Admitted Claim amounts set out in Schedule 3;

(b)    Kaupthing in the Kaupthing Proof of Debt for the amount of the Kaupthing Admitted Claim; and

(c)    Kaupthing Finance in the KF Proof of Debt for the KF Admitted Claim,

and shall cause the Company (acting by the Liquidator) to take all and any necessary steps to consent to the orders sought by Kaupthing and Kaupthing Finance in the Proof of Debt Proceedings.

15.    **Grant of authority to the Company to execute certain documents on behalf of Scheme Creditors**

15.1    Each of the Scheme Creditors hereby irrevocably authorises the Company (acting by the Liquidator) to enter into, execute and deliver as a deed (or otherwise) on behalf of that Scheme Creditor in its capacity as a Scheme Creditor (including any person to whom a Scheme Creditor has transferred its rights in respect of its Scheme Claim after the Record Time) (to the extent applicable):

(a)    the Deed of Settlement and Release; and

(b)    any and all such other documents (if any) that the Company reasonably considers necessary to give effect to the terms of the English Scheme,

in each case to be held in escrow until or otherwise to become effective no earlier than the Effective Date in accordance with the Scheme Steps for the purposes of giving effect to the terms of the English Scheme.

15.2    The authority granted under Clause 15.1 shall be treated, for all purposes whatsoever as having been granted by deed. Such authority shall terminate upon the Longstop Date.

15.3    The Deed of Settlement and Release, to be executed pursuant to the authority conferred by Clause 15.1 of the English Scheme, shall be substantially in the form set out in Schedule 2, subject to any modification approved or imposed by the Court in accordance with Clause 36.

15.4    Each Scheme Creditor on and from the Effective Date (and save in the case of fraud, negligence or misconduct) irrevocably ratifies and confirms any act or omission done, caused or purported to be done by any of the Company or its Subsidiaries, the Liquidator, the Scheme Supervisor, any director, or any of their respective directors, managers, officers, partners or affiliates pursuant to or for the purposes of giving effect to the English Scheme.

16.     **Deed of Settlement and Release**

The Company (acting by the Liquidator) on behalf of the Scheme Creditors, in accordance with and pursuant to the authority granted under Clause 15.1 of the English Scheme, will execute and deliver the Deed of Settlement and Release to be held in escrow until the Effective Date.

17.     **Discontinuance and dismissal of legal proceedings**

Each Scheme Creditor authorises the Company to consent to, and to take any other step necessary to obtain orders of the relevant court discontinuing, staying, dismissing, compromising or otherwise disposing, including filing with the Court, the Icelandic Court and the Isle of Man Court (as the case may be) the Litigation Consent Orders in respect of the following proceedings:

(a)     the Action 599 Proceedings, save for the claims raised in the Revised 599 Proceedings;

(b)     the Proof of Debt Proceedings;

(c)     the Kaupthing Finance English Proceedings;

(d)     the Isle of Man Proceedings;

(e)     the Icelandic Proceedings; and

(f)     the Zaria Global Proceedings.

18.     **Further Assurance**

Each Scheme Creditor must do anything the Company or the Scheme Supervisor reasonably considers is necessary or desirable to give full effect to the English

Scheme and the transactions contemplated by the English Scheme, including giving effect to Clause 17 of the English Scheme.

19.  **Scheme Steps**

19.1  The steps set out below (the "**English Scheme Steps**") will and shall to the extent possible take effect in the order set out below:

(a)  As soon as is reasonably practicable following the Effective Date, the Company (acting by the Liquidator) will:

   (i)  execute the Deed of Settlement and Release, for themselves and on behalf of each Scheme Creditor, and each of the Sundry Creditors, Kaupthing, Kaupthing Finance, Oscatello and Eliza will execute the Deed of Settlement and Release, which shall immediately take effect once they have been duly executed by the parties thereto;

   (ii)  execute the Kaupthing Facility Agreement for itself, and Kaupthing will execute the Kaupthing Facility Agreement (to be held in escrow until, or otherwise to become effective no earlier than, the Initial Distribution Date so as only to be capable of coming into effect on the Initial Distribution Date); and

   (iii)  execute the KF Facility Agreement for itself, and Kaupthing Finance shall execute the KF Facility Agreement (to be held in escrow until, or otherwise to become effective no earlier than, the Initial Distribution Date so as only to be capable of coming into effect on the Initial Distribution Date).

(b)  As soon as is reasonably practicably following the Effective Date, the Company (acting through the Liquidator) pursuant to the authority granted under Clause 17, acting as agent for the Known Scheme Creditors that are party to the proceedings set out below, will:

   (i)  file with the Court and the Isle of Man Court (as the case may be) the Litigation Consent Orders in respect of:

      (A)  the Action 599 Proceedings, save for the claims raised in the Revised 599 Proceedings by filing the Action 599 Consent Order;

      (B)  the Proof of Debt Proceedings by filing the POD Consent Order;

      (C)  the Kaupthing Finance English Proceedings by filing the KF Consent Order;

      (D)  the Isle of Man Proceedings by filing the IOM Consent Order; and

      (E)  the Zaria Global Proceedings by filing the Zaria Consent Order.

25

(c)     With effect from the Effective Date, each Scheme Creditor (with the exception of Samarand in respect of the Samarand Claim whose claim shall be subject to the Interpleader Proceedings referred to in Clause 19.1(d)) will be entitled to the Cash Distribution Amount, conditional upon the Distribution Conditions being satisfied.

(d)     As soon as is reasonably practicable following the Bar Date the Company (acting by the Liquidator) will, subject to Clause 29.4 of this English Scheme, file the Interpleader Proceedings with the Isle of Man Court to seek orders for the Initial Interpleader Relief (amongst others);

(e)     On the Initial Distribution Date:

    (i)     the Company, with the authorisation of the Scheme Supervisor, shall pay to the Known Scheme Creditors (with the exception of Samarand in respect of the Samarand Claim) their entitlement to the Cash Distribution Amount, to be calculated in accordance with the terms of this English Scheme;

    (ii)    the New Facility Agreements shall take effect; and

    (iii)   the Company (acting by the Liquidator) pursuant to the authority granted under Clause 17, acting as agent for the Known Scheme Creditors that are party to the proceedings set out below, will instruct and authorise Kaupthing to file with the Icelandic Court the Litigation Consent Orders in respect of the Icelandic Proceedings by filing the Icelandic Consent Orders as soon as reasonably practicable.

(f)     On or as soon as reasonably practicable after the Initial Distribution Date, but only after payment to the Known Scheme Creditors (with the exception of Samarand in respect of the Samarand Claim), the Company (acting by the Liquidator) shall pay to Oscatello the Undisputed Amount.

(g)     On or as soon as reasonably practicable after the Initial Distribution Date, but in any event within 20 Business Days of the Initial Distribution Date and only after payment to Oscatello of the Undisputed Amount, the Company, with the authorisation of the Scheme Supervisor, shall pay to any Admitted New Scheme Creditors whose claims have been Accepted on or before the Initial Distribution Date their entitlement to the Cash Distribution Amount, to be calculated in accordance with the terms of this English Scheme.

(h)     If there are any Admitted New Scheme Creditors whose claims have not been Accepted on or before the Initial Distribution Date, but are subsequently Accepted the Company shall, with the authorisation of the Scheme Supervisor, pay them their entitlement to the Cash Distribution Amount, after five Business Days of the New Claim becoming Accepted.

(i)     Within five Business Days of the Distribution Date, the Company (acting by the Liquidator), acting as agent for the Scheme Creditors, and with the consent of Kaupthing and Kaupthing Finance, shall file the Application.

26

19.2    Subject to Clause 19.3 and Clause 29.4, to the extent possible the Scheme Steps will
occur in sequential order set out in Clause 19.1. If one or more of the Scheme Steps
does not occur and in the case of the requirement to file the Interpleader Proceedings
in Clause 19.1(d) has not been waived, then all other Scheme Steps shall be deemed
not to occur or have occurred, and any actions taken under or pursuant to such
Scheme Steps shall have no legal effect and the releases given under the English
Scheme or in the Deed of Settlement and Release shall be deemed not given or not to
have been given.

19.3    Clause 19.2 shall not apply in the event that a Scheme Creditor fails to submit a duly
executed Distribution Confirmation Deed and the Company, with the authorisation of
the Scheme Supervisor, is unable to pay the Cash Distribution Amount to that Scheme
Creditor in accordance with Clause 19.1(e), 19.1(g), or 19.1(h) as a result of that
Scheme Creditor failing to duly execute the Distribution Confirmation Deed, unless
the requirement to provide Settlement Instructions in the manner contemplated in the
Distribution Confirmation Deed, or the requirement to provide a duly executed
Distribution Confirmation Deed is, in each case, waived by the Company in
accordance with Clause 31.6 of this English Scheme.

20.    **No admission of liability**

Save as expressly set out in the English Scheme or in the Explanatory Statement,
nothing in the English Scheme or the Explanatory Statement or the circulation thereof
to any person evidences or constitutes any admission by the Company, the Liquidator
or the Scheme Supervisor that the person is a Scheme Creditor or that a Liability is
owed to any person in respect of any claim or right. The agreement by the Company,
the Liquidator or the Scheme Supervisor of an Admitted Claim is purely for the
purposes of the English Scheme and does not constitute any admission of Liability for
any other purpose.

## PART D

## IDENTIFICATION OF SCHEME CLAIMS

21.    **Effective Date and Notification to Scheme Creditors**

21.1    Not more than ten Business Days after the Effective Date, the Company shall give notice that the English Scheme has become effective and of the Bar Date in the following ways:

(a)    by notice via electronic mail to each person who the Company believes may be a Scheme Creditor, and which has registered as a Scheme Creditor with the Company or otherwise notified the Liquidator of its valid email address; and

(b)    by notice in the Scheme Publications.

22.    **Claim Forms for New Claims**

22.1    The notice of the occurrence of the Effective Date pursuant to Clause 21 shall invite New Scheme Creditors to enter the details of their New Claims on a Claim Form to be made available on request by the Scheme Supervisor. The Scheme Supervisor will send a copy of the paper Claim Form to any New Scheme Creditor who requests one as soon as is reasonably practicable after receipt of the request.

22.2    All Claim Forms must be finalised and submitted by email prior to the Bar Date, or in the case of paper Claim Forms, sent to the Scheme Supervisor to arrive on or before the Bar Date.

22.3    Each Claim Form should be completed in accordance with its instructions and should include:

(a)    the New Claimant's name, address, relevant email address(es) and telephone number(s);

(b)    the total amount of the New Claim as of the Record Time;

(c)    confirmation of whether or not the New Claim includes interest and, if so, the basis upon which the New Claimant claims to be entitled to interest;

(d)    particulars of how and when the debt was incurred by the Company;

(e)    the legal basis of the liability of the Company for the New Claim;

(f)    any other facts which would assist the Scheme Supervisor in considering the New Claim; and

(g)    the actual or electronic signature of the person signing the Claim Form, his name and contact details, and a statement of the basis upon which he is authorised to act on behalf of the New Claimant.

22.4    Copies of all the documents evidencing the existence and amount of the New Claim must be submitted with the Claim Form.  The Scheme Supervisor may require the

28

New Claimant to submit further and better particulars of the New Claim, including additional supporting documentation, and/or may require that the Claim Form be verified by affidavit.

22.5    New Claimants shall also submit to the Scheme Supervisor on request such additional information as is reasonably required for the Company to make claims against third parties arising in connection with their New Claim.

22.6    New Claimants may submit to the Scheme Supervisor a revised Claim Form together with any relevant supporting documentation, at any time up to and including the Bar Date.

22.7    After the Bar Date, New Claimants are not entitled to make or revise their New Claim or provide further information (unless required to do so in accordance with the English Scheme).

23.    **Claim Forms must be submitted before the Bar Date**

In order to be entitled to any Cash Distribution Amount, a New Scheme Creditor must on or before the Bar Date submit a Claim Form. No payments or distributions will be made in respect of New Claims that are not submitted by a Claim Form on or before the Bar Date.

24.    **Record Time and Scheme Claims**

24.1    All Scheme Claims shall be determined as at the Record Time.

24.2    Interest on all Scheme Claims shall also be calculated up to the Record Time, after which, no interest shall accrue.

25.    **Valuation of New Claims**

25.1    If the Cash Distribution Amount is to be paid to a New Claimant before the date on which that New Claim would have fallen due for payment, the amount of the Cash Distribution Amount shall be discounted for accelerated payment using the rate of interest prescribed by the Administration of Justice Act.

25.2    The Scheme Supervisor shall estimate the value of any New Claim which, by reason of it being subject to any contingency or for any other reason, does not bear a certain value. The Scheme Supervisor shall give notice of the amount of their estimate to the New Claimant and shall state in such notice the basis upon which the estimate has been made.

25.3    If the New Claim is for payments of a periodical nature, the New Claimant may claim for any unpaid amount accrued up to the Record Time. Unless the Liquidator continues to make payments which accrue after the Record Time as an expense of the liquidation, the New Claimant's claim in respect of such amounts shall be limited to a claim for damages for breach of contract. In calculating the amount of damages, the Scheme Supervisor shall assume that the New Claimant has taken all such steps as may be reasonable to mitigate his Loss and shall apply a discount for accelerated payment using the rate of interest prescribed by the Administration of Justice Act.

29

25.4    Any Scheme Claim in a currency other than Sterling shall be converted by the Scheme Supervisor into Sterling at the mid market exchange rate prevailing at the Record Time.

26.    **Determination of New Claims**

26.1    The Scheme Supervisor shall examine each Claim Form returned to him in accordance with Clause 22. Such examination shall include consideration of whether:

(a)    details of the New Claims are adequately supported by any documentation submitted with the Claim Form;

(b)    details of the quantum of the New Claims are sufficient and the basis of calculation is reasonable and has been accurately applied; and

(c)    there is any set-off that Clause 27 does or may apply.

26.2    Up to the Bar Date, the Scheme Supervisor may give notice to a New Claimant specifying further information or evidence they reasonably require to assist him in agreeing its New Claim.

26.3    After the Bar Date, if the Scheme Supervisor does not agree with the New Claim, or does not consider the supporting information to be adequate, he shall notify the New Claimant of that fact and the reasons, as soon as reasonably practicable, and shall request any further information or evidence that would assist him in deciding upon the New Claim.

26.4    The New Claimant shall respond within such reasonable time limits as the Scheme Supervisor may specify and shall similarly respond to any subsequent requests for information from the Scheme Supervisor.

26.5    If the Scheme Supervisor agrees with the New Claim, or agrees with the New Claimant a value for which the New Claim should be allowed as an Admitted New Claim, Clause 26.6 shall apply. If the Scheme Supervisor does not agree with the New Claim, Clause 26.7 shall apply.

26.6    If the Scheme Supervisor agrees with the New Claim in whole or in part, he shall notify the New Claimant of their agreement, in writing, as soon as reasonably practicable following that determination. The New Claim (or part thereof, without prejudice to any Disputed Claim) will become an Admitted Claim on the date the notice is sent.

26.7    If the New Claim is not agreed in full by the Scheme Supervisor within two months of the Bar Date, (or at such earlier time as the Scheme Supervisor shall determine or such later time to which the Scheme Supervisor and the New Claimant shall both agree or acquiesce) such part (if any) of the New Claim as is not agreed shall become a Disputed Claim.

26.8    Where a New Claim (or part thereof) becomes a Disputed Claim, the Scheme Supervisor shall forthwith notify the New Claimant, in writing, that the whole or part of its New Claim has become a Disputed Claim including brief reasons for the dispute.

30

27.   **Disputed Claims**

27.1   A New Claimant who receives notice that the whole or part of its New Claim has become a Disputed Claim, or who receives notice of an estimated value of its contingent New Claim with which it disagrees, shall be entitled within 21 days of receipt of such notice to give notice to the Scheme Supervisor that it is appealing the rejection of its Disputed Claim and intends to enter into Dispute Proceedings.

27.2   If a final judgment is given in Dispute Proceedings, the Disputed Claim will become an Admitted Claim for the amount set out in the judgment, or in the case of a judgment which values the New Claim at zero, shall give no entitlement to any payment or distribution under the English Scheme in respect of the Disputed Claim.

27.3   If any legal or other costs are awarded against the Company in respect of Dispute Proceedings, such amounts shall be payable by the Company to the relevant Scheme Creditor in full. If any legal or other costs are awarded in the Company's favour in respect of Dispute Proceedings, such amounts shall be payable to the Company in full and the Company may set off such amounts against its liability to pay (at the discretion of the Scheme Supervisor) a Cash Distribution Amount to the New Claimant.

27.4   If the New Claimant does not begin Dispute Proceedings within 21 days of receipt of the Scheme Supervisor's notice, then its Disputed Claim shall become an Admitted Claim at the value accepted by the Scheme Supervisor or, if rejected entirely by the Scheme Supervisor, shall give no entitlement to a payment or distribution under the English Scheme.

27.5   Nothing in this Clause 27 shall prevent the Scheme Supervisor from agreeing in writing with the New Scheme Creditor the value of the Liability to which an unascertained New Claim relates, in which case the unascertained New Claim shall become an Admitted Claim for the amount agreed.

28.   **Variation of time limits for disputes of New Claims**

Where the Scheme Supervisor is satisfied that, due to exceptional circumstances outside the control of a New Claimant, that New Claimant has failed to comply with any time limit, other than the Bar Date, the Scheme Supervisor may, in his absolute discretion, extend that time limit for that New Claim by notice to the New Claimant.

29.   **The Samarand Distribution Amount**

29.1   The Company (acting by the Liquidator), with the authorisation of the Scheme Supervisor, shall file the Interpleader Proceedings on or as soon as reasonably practicable after the Bar Date.

29.2   The Company (acting by the Liquidator) shall seek the Initial Interpleader Relief from the Isle of Man Court as soon as reasonably practicable, once the Interpleader Proceedings have been commenced, with the payment of the Samarand Distribution Amount into the Samarand Escrow Account pursuant to the Initial Interpleader Relief to occur no earlier than the Initial Distribution Date.

31

29.3    Following the Initial Interpleader Relief, the Samarand Distribution Amount shall be held in the Samarand Escrow Account to the order of the Isle of Man Court, and shall only be distributed to Samarand and/ or Pillar and/ or Medino and/ or any other party, as appropriate pursuant to an order of the Isle of Man Court.

29.4    If the Sub-Participant Dispute is settled on or before the Bar Date on terms that are satisfactory to the Liquidator (acting reasonably), and Medino and/ or any other party with an alleged interest in the Samarand Distribution Amount has not submitted a New Claim to the Scheme Supervisor by such date, the Liquidator shall not be required to file the Interpleader Proceedings in accordance with Clause 19.1(d) and this Clause 29 of this English Scheme, and Samarand and/ or Pillar and/ or Medino, as appropriate shall be entitled to the Cash Distribution Amount in the agreed proportions pursuant to these terms of settlement in accordance with the terms of this English Scheme as if the Sub-Participant Dispute had never occurred and all provisions in this English Scheme relating to the Company (acting by the Liquidator) making payment of the Samarand Distribution Amount into the Samarand Escrow Account shall be waived.

30.    **Assignments or transfers of Scheme Claims**

30.1    The Company shall be under no obligation to recognise any assignment or transfer of any Scheme Claim, whether before or after that Record Time, for the purposes of determining entitlements under the English Scheme, save for where the Company has received before the Record Time notice in writing from the parties to such assignment or transfer of the assignment or transfer in accordance with the terms of all agreements between the relevant Scheme Creditor and the relevant Company in respect of that Scheme Claim, in which case the Company shall recognise such assignment or transfer for the purposes of determining entitlements under the English Scheme (if any) subject to the assignee or transferee agreeing to be bound by the terms of the English Scheme and to be treated as having been a Scheme Creditor for the purposes of the English Scheme.

30.2    Where the Company has received from the relevant parties written notice of an assignment or transfer of a Scheme Claim after the Record Time, the Company may, in the absolute discretion of the Scheme Supervisor and subject to such evidence as they may reasonably require, agree to recognise such assignment or transfer for the purposes of determining entitlements under the English Scheme, subject to the assignee or transferee agreeing to be bound by the terms of this English Scheme and to be treated as having been a Scheme Creditor for the purposes of this English Scheme.

32

## PART E

## SCHEME PAYMENTS AND DISTRIBUTIONS

31.    **Distributions**

31.1    Subject to the Distribution Conditions, distributions under the English Scheme shall only be payable to Scheme Creditors to the extent such Scheme Claims are Admitted Claims.

31.2    New Claimants shall have their claims determined in accordance with Part D (*Identification of Scheme Claims*) of the English Scheme.

31.3    Each Scheme Creditor (with the exception of Samarand in respect of the Samarand Claim) shall be entitled to the Cash Distribution Amount to be calculated in accordance with the terms of the English Scheme.

31.4    Subject to Clauses 19.1, 29.4, 31.5, 31.6, 32 and 33, the Company shall pay:

(a)    to the Known Scheme Creditors (with the exception of Samarand in respect of the Samarand Claim) their entitlement to the Cash Distribution Amount, to be calculated in accordance with the terms of the English Scheme, on the Initial Distribution Date;

(b)    into the Samarand Escrow Account the Samarand Distribution Amount to be held in the Samarand Escrow Account, subject to the Isle of Man Court granting the Initial Interpleader Relief;

(c)    to any Admitted New Scheme Creditors whose claims have been Accepted on or before the Initial Distribution Date, their entitlement to the Cash Distribution Amount, to be calculated in accordance with the terms of this English Scheme, by or as soon as reasonably practicable after the Initial Distribution Date, but in any event within 20 Business Days of the Initial Distribution Date; and

(d)    to any Admitted New Scheme Creditors whose claims have not been Accepted on or before the Initial Distribution Date, but are subsequently Accepted, their entitlement to the Cash Distribution Amount, to be calculated in accordance with the terms of the English Scheme, five Business Days after the New Claim is Accepted.

31.5    The payment obligations of the Company set out in Clause 31.4 shall be satisfied if the Company has made an electronic transfer of cash to the account details in the Settlement Instructions provided by the relevant Scheme Creditor in the Distribution Confirmation Deed attached to the Proxy Form.

31.6    The Company shall have no obligation to make any payment to a Scheme Creditor who has not provided valid Settlement Instructions in the Distribution Confirmation Deed unless and until such Scheme Creditor provides valid Settlement Instructions, or the requirement to provide valid Settlement Instructions in the manner contemplated in the Distribution Confirmation Deed is waived by the Company. If a Scheme Creditor has failed to provide its Settlement Instructions in the Distribution

33

Confirmation Deed, or such Settlement Instructions are incomplete in any way, the Company shall not be required to make any payment to such Scheme Creditor unless and until such information is duly provided, or the requirement to provide a duly executed Distribution Confirmation Deed is waived by the Company.

31.7    Distributions under this English Scheme, including distributions of the Scheme Proposal Payments shall be paid by the Company (acting by the Liquidator) out of the Nominated Account, or such other account nominated by the Scheme Supervisor on or before the Effective Date. If there is a shortfall in this account to make payment of any of the sums comprising the Scheme Proposal Payments on the dates on which such sums fall due for payment in accordance with the terms of this English Scheme, the Company (acting by the Liquidator) shall forthwith top up this account to satisfy any such shortfall and ensure the payment of the Scheme Proposal Payments in full.

31.8    The New Facility Agreements shall become effective on the Initial Distribution Date and shall document the terms for which Kaupthing and Kaupthing Finance will be entitled to receive their entitlement to the Kaupthing Distribution Amount and the KF Distribution Amount (as applicable).

31.9    For the avoidance of doubt, any claim of Kaupthing in its capacity as a Known Scheme Creditor shall not be dealt with under the Kaupthing Facility Agreement.

32.    **Material Claims**

32.1    The Initial Distribution Date shall be suspended if the Company receives notice against it on or prior to the Bar Date of any Proceedings or threatened proceedings or any Claim or Claims by a Non-Kaupthing Claimant, including any New Claims, for an aggregate amount of £10,000,000 or greater (the "**Material Claim**" and a "**Material Event**"). If a Material Event occurs, the Scheme Supervisor shall provide notice to all Scheme Creditors for whom the Scheme Supervisor has a valid email address forthwith of the occurrence of a Material Event.

32.2    If there are claims made by third parties against the Company that do not exceed an aggregate amount of £10,000,000 by the Bar Date ("**Small Claims**"), notwithstanding the Small Claims, the Company shall distribute the Cash Distribution Amount to Scheme Creditors for whom the Scheme Supervisor has a valid email address, in accordance with Clause 31 of the English Scheme.

32.3    Subject to Clause 32.4 if a Material Event occurs, and the Material Claim is not withdrawn or settled within ten Business Days from the date of the Material Event, the Scheme Supervisor shall terminate the English Scheme by providing notice in writing to all Scheme Creditors (the "**Termination Notice**").

32.4    The Scheme Supervisor shall retain a discretion to not issue a Termination Notice in accordance with Clause 32.3 in circumstances where an appropriate arrangement or settlement has been approved by Kaupthing, the Scheme Supervisor, the Liquidator and the party asserting the Material Claim in respect of the subject matter concerning the Material Claim.

32.5    In the event that a Termination Notice is issued in accordance with Clause 32.3 of the English Scheme:

    (a)    the Company, Liquidator, the Scheme Supervisor and the Scheme Creditors shall not be bound by the terms of the English Scheme and any steps or action taken under the English Scheme shall be deemed not to occur or have occurred, and any steps or actions taken under or pursuant to the English Scheme shall have no legal effect; and

    (b)    the Liquidator shall file an application with the Court seeking (amongst other things) orders for the transfer of the Scheme Funds from the Nominated Account into an account held with the Court.

## 33.    Distribution Conditions

33.1    The occurrence of the Initial Distribution Date will be conditional upon the following:

    (a)    the occurrence of the Bar Date;

    (b)    each of the Scheme Creditors, the Company, the Liquidator, Kaupthing, Kaupthing Finance, Oscatello, the Sundry Creditors and Eliza having executed the Deed of Settlement and Release;

    (c)    each of the Company (acting through the Liquidator), Kaupthing and Kaupthing Finance having executed the New Facility Agreements;

    (d)    no Material Claim or Material Event arising which has not been settled or resolved in accordance with Clause 32.3 and 32.4 above;

    (e)    the Court and the Isle of Man Court (as applicable) granting the orders sought in the Litigation Consent Orders, in substantially the form as set out in the various schedules to this English Scheme. For the avoidance of doubt, the filing of the Icelandic Consent Orders shall not be a condition to the Initial Distribution Date and the Icelandic Consent Orders shall be filed on the Initial Distribution Date in accordance with Clause 19.1(e)(iii); and

    (f)    the Court releasing and transferring the Scheme Funds into the Nominated Account, or such other account nominated by the Scheme Supervisor.

33.2    If the Initial Distribution Date has not occurred before the Longstop Date, upon the occurrence of Longstop Date, all provisions of the English Scheme shall cease to have any force or effect and:

    (a)    the Company, Liquidator, the Scheme Supervisor and the Scheme Creditors shall not be bound by the terms of the English Scheme and any steps or action taken under the English Scheme shall be deemed not to occur or have occurred, and any steps or actions taken under or pursuant to the English Scheme shall have no legal effect; and

    (b)    the Liquidator shall file an application with the Court seeking (amongst other things) orders for the transfer the Scheme Funds from the Nominated Account into an account held with the Court.

## PART F

## CONDITIONS TO THE SCHEME

34.    **Conditions to the English Scheme**

34.1    The provisions of this English Scheme shall be effective on the date (such date, the **"Effective Date"**) on which each of the following conditions are satisfied:

(a)    a sealed copy of the Court Order being delivered to the Companies Registry for registration; and

(b)    the Isle of Man Court Order being delivered to the Isle of Man Companies Registry for registration.

34.2    If the Effective Date has not occurred before the Longstop Date, upon the occurrence of Longstop Date, all provisions of the English Scheme shall cease to have any force or effect.

# PART G

## GENERAL SCHEME PROVISIONS

35.    **Settlement and Release**

35.1   Unless expressed otherwise, the provisions of this Clause 35 will not take effect until the Effective Date.

35.2   Each party to the Deed of Settlement and Release shall duly execute and deliver a counterpart of the Deed of Settlement and Release to each other party, the Liquidator doing so himself as Liquidator, for the Company and, pursuant to the authority granted under Clause 15.1 for each of the Scheme Creditors, to be held in escrow until or otherwise to become effective no earlier than the Effective Date.

35.3   Each Scheme Creditor on behalf of itself and each of its predecessors, successors and assigns hereby releases, waives, acquits, cancels, forgives and forever discharges, to the fullest extent permitted by law the Company from all Claims arising on or prior to the Effective Date, including all Claims relating to the affairs of the Company and including all Claims pleaded and raised in each of the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings.

35.4   Without prejudice to Clause 35.3, each Scheme Creditor on behalf of itself and each of its predecessors, successors and assigns hereby releases, waives, acquits, cancels, forgives and forever discharges, to the fullest extent permitted by law, each of:

(a)    the Released Advisers and their Personnel;

(b)    the Former Directors and the Former Directors' Advisers and their Personnel; and

(c)    the Affiliates of the Company,

from all Claims arising on or prior to the Effective Date relating to the affairs of the Company and/ or their investment in the Company including (i) all Claims arising on or prior to the Effective Date in connection with the Scheme Proposal and the Schemes; and (ii) all Claims pleaded and raised in each of the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings.

35.5   The Company on behalf of itself and each of its predecessors, successors and assigns hereby releases, waives, acquits, cancels, forgives and forever discharges, to the fullest extent permitted by law each of:

(a)    the Scheme Creditors from all Claims relating to any acts or omissions arising on or prior to the Effective Date relating to the affairs of the Company and including all Claims pleaded and raised in each of the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global

37

Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings; and

(b)     the Released Advisers and their Personnel from all Claims arising on or prior to the Effective Date relating to the affairs of the Company and including (i) all Claims arising on or prior to the Effective Date in connection with the Scheme Proposal and the Schemes; and (ii) all Claims pleaded and raised in each of the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings, except for any Claims against or Liabilities of any Released Adviser and their Personnel that are unrelated to the Scheme Claims, the Scheme Proposal, the English Scheme or the Isle of Man Scheme, the negotiation or preparation thereof, or to any related matter.

35.6   Subject to Clause 35.1, the Company and each of the Scheme Creditors, in each case on behalf of itself and each of its predecessors, successors and assigns hereby releases, waives, acquits, cancels, forgives and forever discharges, to the fullest extent permitted by law each of (a) the Liquidator; and (b) the Scheme Supervisor, and each of their firms, affiliated firms, employees, agents, partners, directors, members, officers or representatives, from all Claims and Liabilities or causes of action relating to any acts or omissions arising on or prior to the Effective Date, except for any claims or causes of action relating to the Scheme Supervisor's own or the Liquidator's own illegal acts, gross negligence or wilful misconduct.

35.7   Each of the Scheme Creditors hereby authorises the Company (acting by the Liquidator) on and from the Effective Date to enter into, execute and deliver as a deed on behalf of each Scheme Creditor one or more Deeds of Settlement and Release by which any and all Claims and Liabilities referred to in Clause 35.3 shall be waived and released fully and absolutely from the Effective Date.

35.8   Any Deed of Settlement and Release to be executed pursuant to the authority conferred by Clause 35.7 shall be substantially in the forms attached at Schedule 2 subject to any modifications required or approved by the Court and shall take effect in relation to such claims and liabilities as the Court considers appropriate provided only that the effect of any such modification is not such as would cause the release of a claim or the imposition of any obligation that is not referred to in this Clause 35.

36.   **Modifications to the English Scheme**

The Company may at any hearing before the Court to sanction the English Scheme, consent on behalf of all Scheme Creditors to non-material modifications only of the English Scheme or any additional non-material terms or conditions which the Court may think fit to approve or impose, provided that such modifications, terms or conditions shall be consistent with the terms of the Scheme Proposal.

37.   **Notice**

37.1   Any notice or other written communication to be given under or in relation to the English Scheme shall be given in writing and shall be deemed to have been duly given if it is delivered by hand, or sent by courier, post, fax or email to:

38

(a)     in the case of the Company, the Liquidator or the Scheme Supervisor:

    (i)     by courier or registered post to 13-15 Hope St, Douglas, IM1 1AQ.

    (ii)    by fax to +44 1624 629 666; and

    (iii)   by email to paul@shimminwilson.com;

(b)     in the case of a Scheme Creditor, its last known address according to the records of the Company; and

(c)     in the case of any other person any address set forth for that person in any agreement entered into in connection with the English Scheme or the last known address according to the Company or by fax to its last known fax number according to the Company.

37.2    Any notice or other written communication to be given under the English Scheme shall be deemed to have been served;

(a)     if delivered by hand or courier, on the first Business Day following delivery;

(b)     if sent by post, on the second Business Day after posting if the recipient is in the country of despatch, otherwise on the tenth Business Day after posting; and

(c)     if by fax or email, on the Business Day sent.

37.3    In proving service, it shall be sufficient proof, in the case of a notice sent by post, that the envelope was properly stamped, addressed and placed in the post.

37.4    The accidental omission to send any notice, written communication or other document in accordance with this Clause 37 or the non-receipt of any such notice by any Scheme Creditor, shall not affect the provisions of the English Scheme.

37.5    The Company shall not be responsible for any Loss or delay in the transmission of any notices, other documents or payments posted by or to any Scheme Creditors which shall be posted at the risk of such Scheme Creditors.

## 38.    Governing Law and Jurisdiction

38.1    On and from the Effective Date, the operative terms of the English Scheme and any non-contractual obligations arising out of or in connection with the English Scheme shall be governed by, and construed in accordance with, the laws of England and Wales and the Scheme Creditors hereby agree that the courts of England and Wales shall have exclusive jurisdiction to hear and determine any suit, action or proceeding and to settle any dispute which arises out of or is connected with the terms of the English Scheme or its implementation or out of any action taken or omitted to be taken under this English Scheme or in connection with the administration of this English Scheme and for such purposes, the Scheme Creditors irrevocably submit to the jurisdiction of the courts of England and Wales, provided, however, that nothing in this Clause shall affect the validity of other provisions determining governing law

and jurisdiction as between the Company and any of any of the Scheme Creditors, whether contained in any contract or otherwise.

38.2   The terms of the English Scheme and the obligations imposed on the Company and the Scheme Creditors hereunder shall take effect subject to any prohibition or condition imposed by any applicable law.

### 39.   Exercise of Discretion

Where under any provision of the English Scheme, a matter is to be determined by the Company, the Liquidator or the Scheme Supervisor, as the case may be, it shall be determined by them, in their discretion in such manner as they may consider fair and reasonable.   If any difficulty shall arise in determining any such matter either generally or in any particular case or in ensuring the result described above, it shall be resolved by the Company, the Liquidator or the Scheme Supervisor, as the case may be, in such manner as it shall consider to be fair and reasonable and their decision shall, insofar as permitted by law, be final and binding on all concerned.

### 40.   Severability

40.1   The illegality, invalidity or unenforceability of any provision of this English Scheme shall not affect the legality, validity or enforceability of any other provision.   If any provision of this English Scheme is found to be void or unenforceable, that provision shall be deemed to be deleted from this English Scheme and the remaining provisions of this English Scheme shall continue in full force and effect and the Parties shall use their respective reasonable endeavours to procure that any such provision is replaced by a provision which is valid and enforceable, and which gives effect to the spirit and intent of this English Scheme.

### 41.   The Scheme Supervisor

41.1   Subject to Clause 41.2, any Scheme Supervisor must be a fit and proper person in the reasonable opinion of the Liquidator and able to adequately discharge the function of a Scheme Supervisor under this English Scheme. Where more than one person has been appointed as a Scheme Supervisor, they may exercise and perform the powers, rights, duties and functions of the Scheme Supervisor under the English Scheme jointly or severally.

41.2   A Scheme Supervisor shall not take office until he or his firm has entered into the Scheme Supervisor Agreement, which shall include provisions as to his remuneration and expenses, and has contracted to be bound by the terms of the English Scheme to the extent that they apply to him as Scheme Supervisor. The Company and each Scheme Creditor acknowledges and agrees that the Scheme Supervisor is permitted to exercise all the powers given to him and rely upon all the provisions relevant to him under the English Scheme.

41.3   The Scheme Supervisor shall initially be Andrew Paul Shimmin of Shimmin Wilson & Co. The Company (acting by the Liquidator) shall have the power to appoint any successors, including appointing itself in its capacity as Scheme Supervisor after the Scheme Supervisor has vacated office. In the event the Company appoints itself as Scheme Supervisor under this Clause 41.3 or Clause 45, the requirement for it to sign

a Scheme Supervisor Agreement in accordance with Clause 41.2 shall be waived by the Liquidator.

41.4    In exercising his powers and carrying out their duties under the English Scheme, the Scheme Supervisor shall act as agent of the Company (to the extent the Company is not appointed as Scheme Supervisor under Clause 41.3 or Clause 45).

## 42.    Vacation of office

42.1    Without prejudice to Clause 42.2 and Clause 45, the Scheme Supervisor shall automatically step down as Scheme Supervisor on the Distribution Date.

42.2    A Scheme Supervisor shall also vacate office if he:

   (a)    becomes bankrupt;

   (b)    is disqualified from acting as a director under CDDA or any equivalent legislation in force in any country where he may reside;

   (c)    is admitted to hospital because of mental disorder or is the subject of an order concerning his mental disorder made by a court having jurisdiction in England and Wales or elsewhere in such matters, such that he is, in the opinion of the Liquidator, unable to carry out his duties as Scheme Supervisor;

   (d)    dies;

   (e)    is convicted of an indictable offence or be convicted of any offence by a court having jurisdiction in any other country where that offence, if committed in England and Wales, would have been an indictable offence under the laws of England and Wales; or

   (f)    resigns his office by giving 60 days' notice in writing to the Company or such shorter period of notice as may be agreed by the Company or resigns his office with immediate effect by giving notice in writing to the Company if he considers that he should for professional regulatory reasons or in the event of non-payment of his fees when due and such fees have been approved by the Company, a meeting of the Scheme Creditors or pursuant to a final order of the Court in each case pursuant to Clause 47.

## 43.    Role of the Scheme Supervisor

43.1    The Scheme Supervisor shall discharge the duties and responsibilities imposed upon him by the English Scheme.

43.2    The Scheme Supervisor shall act in good faith with reasonable skill and care in the interests of the Scheme Creditors as a whole and shall exercise his powers, duties and functions under the English Scheme with a view to ensuring that the English Scheme is implemented in accordance with its terms.

41

44.    **Powers of the Scheme Supervisor**

The Scheme Supervisor shall have all of the powers necessary or desirable to enable him to discharge his duties and responsibilities under the English Scheme (although it is acknowledged that the Scheme Supervisor cannot exercise any power that would result in their assuming control of the Company's affairs so as to supplant the Liquidator or its directors (as applicable)).

45.    **Vacancy**

If there is no Scheme Supervisor in office, the Company shall forthwith fill the vacancy.

46.    **Liability of Scheme Supervisors**

46.1   Except to the extent required by law, neither a Scheme Creditor, Kaupthing, Kaupthing Finance or a Sundry Creditor shall be entitled to challenge the validity of any act done or omitted to be done in good faith and with due care by the Scheme Supervisor in accordance with and to implement the provisions of the English Scheme or the exercise by the Scheme Supervisor in good faith and with due care of any power conferred upon him for the purposes of the English Scheme if exercised in accordance with and to implement the provisions of the English Scheme.

46.2   Neither the Scheme Supervisor nor his firm, affiliated firms, employees, agents, partners, directors, members, officers or representatives shall (i) incur any personal liability whatsoever in respect of any of the obligations undertaken by the Scheme Supervisor; or (ii) be liable for any Loss resulting from any act done by or omission of the Scheme Supervisor, unless any such Loss is attributable to his own gross negligence, breach of trust, fraud or dishonesty.

47.    **Remuneration and expenses of Scheme Supervisor**

The Scheme Supervisor shall be remunerated by the Company in respect of his role in the English Scheme and all acts reasonably incidental thereto and in accordance with the agreement referred to in Clause 41. Such remuneration and expenses are to be approved by the Company and such approval shall not be unreasonably withheld. If approval cannot be obtained from the Company within a reasonable period, the Scheme Supervisor may convene a meeting of the Scheme Creditors to determine the level of the Scheme Supervisor's remuneration and expenses. If approval cannot be obtained by way of an ordinary resolution at a meeting of the Scheme Creditors, the Scheme Supervisor shall be permitted to apply on a show of hands, or cause the Company to apply, to the Court for approval of his remuneration and expenses as if the provisions of Rule 4.130(1) of the Insolvency Rules 1986 applicable to liquidators' applications for approval of their remuneration applied, mutatis mutandis, to the Scheme Supervisor.

48.    **The Liquidator**

48.1   The Liquidator acts as agent for and on behalf of the Company and neither he nor his firm, affiliated firms, employees, agents, partners, directors, members, officers or representatives, shall incur any personal liability whatsoever in respect of any of the

obligations undertaken by the Company, or in respect of any failure on the part of the Company to perform or comply with any such obligations, or under any associated arrangements or negotiations, or under any document entered into pursuant to this English Scheme, or howsoever otherwise.

48.2    The Liquidator shall not incur any personal liability whatsoever under the English Scheme nor in relation to any related matter or claim, whether in contract, tort (including negligence) or restitution or by reference to any other remedy or right in any jurisdiction or forum.

48.3    The exclusions of liability set out in the English Scheme shall arise and continue notwithstanding the termination of the agency of the Liquidator or his discharge from office as liquidator of the Company before or after the Effective Date and shall operate as a waiver of any claims in tort as well as under contract.

48.4    Each of the Liquidator's firm, affiliated firms, employees, agents, partners, directors, members, officers and representatives shall be entitled to rely on and enjoy the benefit of this Clause 48 as if they were party to the English Scheme.

48.5    Any liquidator of the Company appointed after the date of the Effective Date shall be entitled to rely on and enjoy the benefit of this Clause 48 as if they were a party to the English Scheme.

48.6    Nothing in this English Scheme shall require the Liquidator to take any action which would breach any applicable law or regulation.

48.7    To the extent that the remuneration of the Liquidator and the expenses of the liquidation of the Company to date have not previously been approved by the Isle of Man Court and paid to the Liquidator, the remuneration of the Liquidator and all expenses properly incurred or to be incurred in the winding-up of the Company, which shall include any outstanding liability to pay any adverse cost orders made in the Ongoing Litigation, shall be paid out of the assets of the Company.

49.    **Foreign Representatives**

The Nominated Directors shall be authorised to act as representatives for the Company on any application for recognition and assistance in relation to either the Isle of Man Scheme or the English Scheme in any jurisdiction and under whatever law including the laws of the BVI and / or Chapter 15 of the United States Bankruptcy Code and any law derived from or similar to the UNCITRAL Model Law on Cross-Border Insolvency Proceedings.

**SCHEDULE 1**

**SCHEME SUPERVISOR AGREEMENT**

## SCHEDULE 2

### DEED OF SETTLEMENT AND RELEASE

# SCHEDULE 3

## KNOWN SCHEME CREDITORS

| Known Scheme Creditor | Admitted Claim | Cash Distribution Amount | Cash Distribution Amount % of Admitted Claim | Initial Sub-Participation Amount |
|---|---|---|---|---|
| Mon Investments ehf (assigned from Mr. Aðalsteinn Karlsson) | £814,500.00 | £750,000.00 | 92% | £500,000.00 |
| Kaupthing hf (re Estate of Mrs. Anna Fríða Winther) | £814,500.00 | £750,000.00 | 92% | £500,000.00 |
| Mr. Bogi Óskar Pálsson | £2,443,500.00 | £2,250,000.00 | 92% | £1,500,000.00 |
| Brun Holding | £1,629,000.00 | £1,500,000.00 | 92% | £1,000,000.00 |
| Clover International Group S.A. | £814,500.00 | £750,000.00 | 92% | £500,000.00 |
| Eignarhaldsfélagið EAV ehf. | £1,629,000.00 | £1,500,000.00 | 92% | £1,000,000.00 |
| Mr. Elfar Aðalsteinsson | £3,258,000.00 | £3,000,000.00 | 92% | £2,000,000.00 |
| Fontain Blanc Holding S.A. | £1,629,000.00 | £1,500,000.00 | 92% | £1,000,000.00 |
| Mon Investments ehf (assigned from Mr. Guðmundur A Birgisson) | £1,629,000.00 | £1,500,000.00 | 92% | £1,000,000.00 |
| Mr. Hjálmar Kristjánsson | £814,500.00 | £750,000.00 | 92% | £500,000.00 |
| Icarus ehf. (formerly Saxbygg ehf.) | £4,887,000.00 | £4,500,000.00 | 92% | £3,000,000.00 |
| Mon Investments ehf (assigned from IceCapital ehf (formerly Sund ehf.)) | £1,629,000.00 | £1,500,000.00 | 92% | £1,000,000.00 |
| Ingl Gudjonsson (as sole shareholder of the dissolved entity Icetec Holding) | £814,500.00 | £750,000.00 | 92% | £500,000.00 |
| Ingimundur hf | £1,629,000.00 | £1,500,000.00 | 92% | £1,000,000.00 |
| Mr. Ingimundur Ingimundarson | £814,500.00 | £750,000.00 | 92% | £500,000.00 |
| Mon Investments ehf (assigned from Mr. Jón Ingvarsson) | £814,500.00 | £750,000.00 | 92% | £500,000.00 |
| Komi Investments SA | £1,629,000.00 | £1,500,000.00 | 92% | £1,000,000.00 |
| Lowell Alliance Ltd | £407,250.00 | £375,000.00 | 92% | £250,000.00 |
| New Ortland II Equities | £14,661,000.00 | £13,500,000.00 | 92% | £9,000,000.00 |
| Samarand Assets Inc | £3,258,000.00 | £3,000,000.00 | 92% | £2,000,000.00 |
| Mon Investments ehf (assigned from Mr. Sigfús Sigfússon) | £814,500.00 | £750,000.00 | 92% | £500,000.00 |
| SKLUX SA SPF | £9,366,750.00 | £8,625,000.00 | 92% | £5,750,000.00 |
| Zaria Global Limited | £8,145,000.00 | £7,500,000.00 | 92% | £5,000,000.00 |
| Mr. Þorsteinn Már Baldvinsson | £814,500.00 | £750,000.00 | 92% | £500,000.00 |
| **Sub-total:** | **£65,160,000.00** | **£60,000,000.00** | | **£40,000,000.00** |

46

**SCHEDULE 4**

**ACTION 599 CONSENT ORDER**

## SCHEDULE 5

## ICELANDIC CONSENT ORDERS

## SCHEDULE 6

## IOM CONSENT ORDER

**SCHEDULE 7**

**KF CONSENT ORDER**

**SCHEDULE 8**

**ZARIA CONSENT ORDER**

**SCHEDULE 9**

**POD CONSENT ORDER**

- 8 -

## SCHEDULE 2

## DEED OF SETTLEMENT AND RELEASE

## DEED OF SETTLEMENT AND RELEASE

**THIS DEED OF SETTLEMENT AND RELEASE** is dated [•] 2014

and made

**BETWEEN:**

1.  **ISIS INVESTMENTS LIMITED** (in liquidation), a company incorporated in the Isle of Man with registered address at 13-15 Hope Street, Douglas, Isle of Man, IM1 1AQ acting by the Liquidator Andrew Paul Shimmin as its agent without personal liability (**"Isis"** or the **"Company"**);

2.  **ANDREW PAUL SHIMMIN** of Shimmin Wilson & Co, 13-15 Hope Street, Isle of Man, IM1 1AQ in his capacity as liquidator of the Company (the **"Liquidator"**);

3.  **KAUPTHING hf.**, a company incorporated in Iceland with registered address at Borgartun 26, 105 Reykjavik, Iceland (**"Kaupthing"**);

4.  **KAUPTHING FINANCE ehf.**, a company incorporated in Iceland with registered address at Borgartun 26, 105 Reykjavik, Iceland (**"Kaupthing Finance"**);

5.  **ELIZA LIMITED** (in liquidation), a company incorporated in the British Virgin Islands with registered address at Palm Grove House, PO Box 438, Road Town, Tortola, British Virgin Islands acting by one of its jointly appointed liquidators, Stephen Akers (as its agent and without personal liability) (**"Eliza"**);

6.  **OSCATELLO INVESTMENTS LIMITED** (in liquidation), a company incorporated in the British Virgin Islands with registered address at Palm Grove House, PO Box 443, Road Town, Tortola, British Virgin Islands acting by one of its jointly appointed liquidators, Stephen Akers (as its agent and without personal liability) (**"Oscatello"**);

7.  **STEPHEN AKERS** of Grant Thornton UK LLP, 30 Finsbury Square, London EC2P 2YU and **MARK MCDONALD** of Grant Thornton (BVI) Limited, PO Box 4259, 171 Main Street, 2nd Floor, The Barracks, Road Town, Tortola, British Virgin Islands in their capacities as joint liquidators of Eliza and Oscatello (each as agent of each of Eliza and Oscatello and without personal liability) (the **"O&E Liquidators"**);

8.  **BOODLE HATFIELD LLP**, in its capacity as a Sundry Creditor (as defined in the Schemes) with registered address at 240 Blackfriars Road, London, SE1 8NW;

9.  **CALLIN WILD LLC**, in its capacity as a Sundry Creditor (as defined in the Schemes), with registered address at Bank Chambers, 15-19 Athol Street, Douglas, Isle of Man, 1M1 1LB; and

10. **THE SCHEME CREDITORS** as defined in the Schemes acting by the Company pursuant to the authority conferred upon the Company under Clause 15 of the Schemes.

**WHEREAS:**

(A)    Pursuant to the terms of the Schemes, each Scheme Creditor has authorised the Company to enter into and execute and deliver this Deed on its behalf.

(B)    Oscatello, Eliza, the Sundry Creditors, Kaupthing and Kaupthing Finance are each party to this Deed for the purposes of (amongst other things) giving effect to the terms of the Schemes, the Scheme Proposal and to consenting to the terms of the Action 599 Consent Order.

(C)    The Parties have agreed to enter into and execute and deliver this Deed on the terms set out below.

## 1.    DEFINITIONS AND INTERPRETATION

1.1    Terms defined in the English Scheme have the same meaning in this Deed.

1.2    In this Deed, the following words and expressions have the following meanings:

"**Action 599 Consent Order**" means the consent order in respect of the Action 599 Proceedings as set out at Appendix 2 to this Deed;

"**Consenting Sub-Participants**" means those Sub-Participants who voted to support the English Scheme and the Isle of Man Scheme and/ or who have duly executed the Distribution Confirmation Deed;

"**Deed**" means this deed as amended or varied in writing from time to time and any document entered into pursuant to or collateral with it;

"**Eliza Judgment**" means the default judgments in favour of the Company for claim no. HC09C00972 of £90,863,636.56 and claim no. HC09C00971 of £90,863,636.56 plus interests and costs;

"**English Scheme**" means the scheme of arrangement in respect of the Company under Part 26 of the Companies Act in its present form or with or subject to any modification, addition or condition approved or imposed by the Court or approved in accordance with the terms of the English Scheme;

"**English Scheme Steps**" means the scheme steps referred to at Clause 19 of the English Scheme;

"**Icelandic Consent Orders**" means the consent orders in respect of the Icelandic Proceedings as set out at Appendix 4 to this Deed;

"**Initial Sub-Participation Investment**" means the amounts specified in Appendix 8;

"**IOM Consent Order**" means the consent order in respect of the Isle of Man Proceedings as set out at Appendix 3 to this Deed;

"**Interested Parties**" means Eliza, Kaupthing, Kaupthing Finance and each Sundry Creditor;

"**IOM Scheme Steps**" means the scheme steps referred to at Clause 19 of the Isle of Man Scheme;

**"Kaupthing Facility Agreement"** means the facility agreement to be entered into between Kaupthing and the Company in the form set out in Appendix 9 to this Deed;

**"KF Consent Order"** means the consent order in respect of Kaupthing Finance English Proceedings as set out at Appendix 5 to this Deed;

**"KF Facility Agreement"** means the facility agreement to be entered into between Kaupthing Finance and the Company in the form set out in Appendix 9 to this Deed;

**"New Facility Agreements"** means the Kaupthing Facility Agreement and the KF Facility Agreement;

**"O&E Agreement"** means the agreement dated 11 November 2014 between the Company, Oscatello, Eliza, Kaupthing and Kaupthing Finance as set out at Appendix 10 to this Deed;

**"Party"** means a party to this Deed or other person consenting to be bound by this Deed and includes any successors and assigns;

**"POD Consent Order"** means the consent order in respect of the Proof of Debt Proceedings as set out at Appendix 7 to this Deed;

**"Provisioned Amount"** means the amount of £68,510,743 plus interest at the Court Rate accrued on such sum over the Applicable Period, being the maximum amount of Oscatello's entitlement under the Oscatello Trust;

**"Release Instructions"** means the irrevocable authority to the Company from the Scheme Creditors pursuant to the Schemes to, from and after the Effective Date, enter into, execute and deliver this Deed;

**"Released Claim"** means a Claim released under Clauses 7, 8, 9 and 10 of this Deed and Clause 35 of each of the English Scheme and the Isle of Man Scheme;

**"Released Party"** means any Affiliate who is to receive the benefit of a release of a Claim from a Party as set out in Clauses 7, 8, 9 and 10 of this Deed;

**"Resulting Amount"** means the sum of £39,940,630 plus interest at the Court Rate accrued on such sum over the Applicable Period, being the Provisioned Amount less the Undisputed Amount;

**"Revised 599 Proceedings"** means the re-re-amended claims in the Action 599 Proceedings to be pleaded by and determined between the Company and Oscatello to determine:

(a)    the true meaning and construction of Clause 6.1 of the Framework Agreement, specifically whether the payment waterfall provided at Clause 6.1(A) – (D) in respect of the Violet Economic Return (as defined therein) provides for an amount of £44.15 million to be payable in the first instance to the Claimant (such amount representing the total sum originally invested by the Claimant

referred to at (i) and (ii) of Clause 6.1 in respect of the Violet Economic Return); and

(b)     the quantum of the First Defendant's trust claim to its proportion of the Violet Economic Return;

**"Schemes"** means the English Scheme and the Isle of Man Scheme;

**"Scheme Meetings"** means the English Scheme Meeting and the Isle of Man Scheme Meeting;

**"Scheme Steps"** means the English Scheme Steps and the IOM Scheme Steps;

**"Subordination Deed"** means the subordination agreement dated 30 June 2008 between Eliza (as borrower), Kaupthing (as senior creditor) and the Company (as junior creditor);

**"Sub-Participants"** means those creditors who entered into the Sub-Participation Agreements;

**"Sub-Participation Excluded Claims"** means all those causes of action, claims, rights of set off, contribution, lien, pledge, security or indemnity in favour of Kaupthing which arise out of or in connection with any funding advanced by Kaupthing directly to any of the Sub-Participants or in relation to any lien, pledge or other security interest granted to Kaupthing;

**"Third Party Claims"** means any claim brought by a Third Party Claimant in connection with the acquisition of Somerfield and the entering into of the Sub-Participation Agreements;

**"Third Party Claimants"** means Kirna, the Company, the Former Directors, Oscatello, Eliza, the TDT Trustee and Silverville; and

**"Zaria Consent Order"** means the consent order in respect of the Zaria Global Proceedings as set out at Appendix 6 to this Deed.

1.3     In this Deed, unless the context otherwise requires:

1.3.1     words in the singular include the plural and in the plural include the singular;

1.3.2     the words "including" and "include" shall not be construed as or take effect as limiting the generality of the foregoing;

1.3.3     the headings shall not be construed as part of this Deed nor affect its interpretation;

1.3.4     references to any clause, without further designation, shall be construed as a reference to the clause of this Deed so numbered;

1.3.5     reference to any act, statute or statutory provision shall include a reference to that provision as amended, re-enacted or replaced from time to time whether

before or after the date of this Deed and any former statutory provision replaced (with or without modification) by the provision referred to;

1.3.6   reference to a person includes a reference to any body corporate, unincorporated association or partnership and to that person's legal personal representatives or successors; and

1.3.7   the principles of construction set out in the Schemes apply to this Deed except that references to the Schemes shall instead be construed as referenced to this Deed.

2.    **UNDERTAKING IN RESPECT OF THE SCHEMES**

2.1   Kaupthing, Kaupthing Finance, the Sundry Creditors and the Liquidator agree to consent to, and be bound by, the terms of the English Scheme and the Isle of Man Scheme.

2.2   Without prejudice to Clause 2.1, each of the Liquidator, Kaupthing, Kaupthing Finance and the Sundry Creditors hereby undertake to the Company to execute, do or procure to be executed and done all such documents, acts or things as may be necessary or desirable to be executed or done by each of the Liquidator, Kaupthing, Kaupthing Finance and the Sundry Creditors for the purposes of giving effect to the Schemes.

3.    **SUNDRY CREDITORS**

Subject to Clause 19.2 of the Schemes and Clause 11 of this Deed, the Company shall pay to the Sundry Creditors, in full, their entitlement to the Sundry Claims on the Initial Distribution Date.

4.    **NEW FACILITY AGREEMENTS**

Subject to Clause 19.2 of the Schemes and Clause 11 of this Deed, the Company, the Liquidator (as agent for the Company and without personal liability), Kaupthing and Kaupthing Finance shall enter into the New Facility Agreements.

5.    **THE PROVISIONED & RESULTING AMOUNTS**

5.1   Each Scheme Creditor on behalf of itself and each of its predecessors and successors acknowledges that Kaupthing, Kaupthing Finance, the Company, Eliza and Oscatello entered into the O&E Agreement to agree (amongst other things) the Provisioned Amount in respect of the Revised 599 Proceedings.

5.2   The amount Oscatello claims that it is entitled to under the Oscatello Trust will, in the first instance, be reserved in full for the amount representing the Provisioned Amount pending the Initial Distribution Date.

5.3   With effect from the Initial Distribution Date, an amount equal to the Resulting Amount shall at all times be held in an account under the control of the Court pending final determination of Oscatello's actual entitlement by the Court in the Revised 599 Proceedings.

5.4    As soon as is reasonably practicable after the Initial Distribution Date, but only after payment to the Known Scheme Creditors, the Company (acting by the Liquidator) shall pay to Oscatello the Undisputed Amount.

6.    **SCHEME PROPOSAL PAYMENTS**

Distributions under the Schemes, including distributions of the Scheme Proposal Payments shall be paid by the Company (acting by the Liquidator) out of the Nominated Account, or such other account nominated by the Scheme Supervisor on or before the Effective Date. If there is a shortfall in this account to make payment of any of the sums comprising the Scheme Proposal Payments on the dates on which such sums fall due for payment in accordance with the terms of the Schemes, the Company (acting by the Liquidator) shall forthwith top up this account to satisfy any such shortfall and ensure the payment of the Scheme Proposal Payments in full.

7.    **RELEASE BY SCHEME CREDITORS**

7.1    Subject to Clause 19.2 of the Schemes and Clause 11 of this Deed, and pursuant to the authority conferred by the Release Instructions, each Scheme Creditor on behalf of itself and each of its predecessors, successors and assigns hereby releases, waives, acquits, cancels, forgives and forever discharges, to the fullest extent permitted by law the Company from all Claims arising on or prior to the Effective Date, including all Claims relating to the affairs of the Company and all Claims pleaded and raised in each of the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings.

7.2    Subject to Clause 19.2 of the Schemes and Clause 11 of this Deed, and pursuant to the authority conferred by the Release Instructions, each Scheme Creditor on behalf of itself and each of its predecessors, successors and assigns hereby releases, waives, acquits, cancels, forgives and forever discharges, to the fullest extent permitted by law, each of:

7.2.1    the Released Advisers and their Personnel;

7.2.2    the Former Directors and the Former Directors' Advisers and their Personnel; and

7.2.3    the Affiliates of the Company,

from all Claims arising on or prior to the Effective Date relating to the affairs of the Company and/ or their investment in the Company including (i) all Claims arising on or prior to the Effective Date in connection with the Scheme Proposal and the Schemes; and (ii) all Claims pleaded and raised in each of the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings.

7.3    Subject to Clause 19.2 of the Schemes and Clause 11 of this Deed, and pursuant to the authority conferred by the Release Instructions, each Scheme Creditor on behalf of itself and each of its predecessors, successors and assigns hereby releases, waives,

acquits, cancels, forgives and forever discharges, to the fullest extent permitted by law, each of Kaupthing, Kaupthing Finance, Eliza and Oscatello and each of their Affiliates from all Claims relating to any acts or omissions in respect of the Sub-Participation Agreements and the Framework Agreement arising on or prior to the Effective Date, including all Claims currently pleaded and raised in the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings.

8.    **RELEASE BY INTERESTED PARTIES**

8.1    Subject to Clause 19.2 of the Schemes and Clause 11 of this Deed, each of Eliza, Kaupthing, Kaupthing Finance and each Sundry Creditor on behalf of itself and each of its predecessors, successors and assigns hereby releases, waives, acquits, cancels, forgives and forever discharges, to the fullest extent permitted by law, the Company from all Claims arising on or prior to the Effective Date, including all Claims pleaded and raised in each of the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings, except for any claim of Kaupthing and/ or Eliza under the Subordination Deed. For the avoidance of doubt, this release shall not include a release of any of Kaupthing and/ or Kaupthing Finance's rights or entitlements under the Kaupthing Facility Agreement and the KF Facility Agreement to be entered into in accordance with the Scheme Proposal.

8.2    Subject to Clause 19.2 of the Schemes and Clause 11 of this Deed, each of Eliza, Kaupthing, Kaupthing Finance and each Sundry Creditor on behalf of itself and each of its predecessors, successors and assigns hereby releases, waives, acquits, cancels, forgives and forever discharges, to the fullest extent permitted by law, each of:

8.2.1    the Released Advisers and their Personnel;

8.2.2    the Affiliates of the Company,

from all Claims arising on or prior to the Effective Date relating to the affairs of the Company and/ or their investment in the Company including (i) all Claims in connection with the Scheme Proposal and the Schemes; and (ii) all Claims pleaded and raised in each of the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings.

8.3    Subject to Clause 19.2 of the Schemes and Clause 11 of this Deed, Oscatello on behalf of itself and each of its predecessors, successors and assigns hereby releases, waives, acquits, cancels, forgives and forever discharges, to the fullest extent permitted by law, each of:

8.3.1    the Company from all Claims relating to any acts or omissions arising on or prior to the Effective Date including all Claims currently pleaded and raised in the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings, but such release shall

exclude any Claims raised by or against Oscatello in the Revised 599 Proceedings;

8.3.2    the Consenting Sub-Participants from all Claims relating to any acts or omissions in respect of the Sub-Participation Agreements and the Framework Agreement arising on or prior to the Effective Date, including all Claims currently pleaded and raised in the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings; and

8.3.3    the Released Advisers and their Personnel from all Claims arising on or prior to the Effective Date relating to the affairs of the Company and/ or their investment in the Company including (i) all Claims in connection with the Scheme Proposal and the Schemes; and (ii) all Claims pleaded and raised in each of the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings.

8.4    Subject to Clause 19.2 of the Schemes and Clause 11 of this Deed, Eliza on behalf of itself and each of its predecessors, successors and assigns hereby releases, waives, acquits, cancels, forgives and forever discharges, to the fullest extent permitted by law the Consenting Sub-Participants from all Claims relating to any acts or omissions in respect of the Sub-Participation Agreements and the Framework Agreement arising on or prior to the Effective Date, including all Claims currently pleaded and raised in the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings.

Subject to Clause 19.2 of the Schemes and Clause 11 of this Deed, each of Kaupthing and Kaupthing Finance, on behalf of itself and each of its predecessors, successors and assigns hereby releases, waives, acquits, cancels, forgives and forever discharges, to the fullest extent permitted by law  the Consenting Sub-Participants from all Claims relating to any acts or omissions in respect of the Sub-Participation Agreements and the Framework Agreement arising on or prior to the Effective Date, including all claims currently pleaded and raised in the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings, except for any Claims of Kaupthing arising under the Sub-Participation Excluded Claims.

9.    **RELEASE BY THE COMPANY**

9.1    Subject to Clause 19.2 of the Schemes and Clause 11 of this Deed, the Company on behalf of itself and each of its predecessors, successors and assigns hereby releases, waives, acquits, cancels, forgives and forever discharges, to the fullest extent permitted by law each of:

9.1.1    the Scheme Creditors, Eliza, Kaupthing, Kaupthing Finance and each Sundry Creditor from all Claims relating to any acts or omissions arising on or prior to the Effective Date relating to the affairs of the Company and

including all Claims currently pleaded and raised in each of the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings, but such release shall exclude Eliza's liability under the Eliza Judgment;

9.1.2   Oscatello from all Claims relating to any acts or omissions arising on or prior to the Effective Date including all Claims currently pleaded and raised in the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings, but such release shall exclude any Claims by or against Oscatello in the Revised 599 Proceedings; and

9.1.3   the Released Advisers and their Personnel from all Claims arising on or prior to the Effective Date relating to the affairs of the Company including (i) all Claims in connection with the Scheme Proposal and the Schemes; and (ii) all Claims pleaded and raised in each of the Action 599 Proceedings, the Isle of Man Proceedings, the Proof of Debt Proceedings, the Zaria Global Proceedings, the Icelandic Proceedings and the Kaupthing Finance English Proceedings, except for any Claims against or Liabilities of any Released Adviser and their Personnel that are unrelated to the Scheme Claims, the Scheme Proposal, the English Scheme or the Isle of Man Scheme, the negotiation or preparation thereof, or to any related matter.

10.   **RELEASE OF THE SCHEME SUPERVISOR AND THE LIQUIDATOR**

Subject to Clause 19.2 of the Schemes and Clause 11 of this Deed, the Company, Kaupthing, Kaupthing Finance and each of the Scheme Creditors, each on behalf of itself and each of its predecessors, successors and assigns hereby releases, waives, acquits, cancels, forgives and forever discharges, to the fullest extent permitted by law each of (a) the Liquidator; and (b) the Scheme Supervisor, and each of their firms, affiliated firms, employees, agents, partners, directors, members, officers or representatives, from all Claims and Liabilities or causes of action relating to any acts or omissions arising on or prior to the Effective Date, except for any claims or causes of action relating to the Scheme Supervisor's own or the Liquidator's own, illegal acts, gross negligence or wilful misconduct.

11.   **FAILURE TO IMPLEMENT THE SCHEMES**

11.1   If one or more of the Scheme Steps does not occur then all other Scheme Steps shall be deemed not to occur or have occurred, and any actions taken under or pursuant to such Scheme Steps shall have no legal effect and any releases of indemnities given under this Deed shall be deemed not given or not to have been given.

11.2   Without prejudice to Clause 11.1, in the event that:

11.2.1   the Longstop Date is reached, and Clause 33.2 of the Schemes takes effect but no extension of the Schemes is agreed pursuant to that provision such that there is no Initial Distribution Date and the Schemes lapse; or

11.2.2    if a Termination Notice is issued under Clause 32 of the Schemes,

the Liquidator shall file:

(a)    an application with the Court seeking (amongst other things) orders for the transfer of the Scheme Funds from the Nominated Account into an account held with the Court; and

(b)    list a Case Management Conference in respect of the Action 599 Proceedings for further case management directions.

## 12.    SETTLEMENT OF THE ONGOING LITIGATION

*The Action 599 Proceedings*

12.1    Each of the Company, Kaupthing, Kaupthing Finance, Oscatello, Eliza and Mr Elfar Adalsteinsson (as a representative party for the Sub-Participants) irrevocably undertakes to take all formal steps as shall be required in order to effectively compromise all claims, counterclaims and causes of action currently pleaded or advanced in the Action 599 Proceedings (saved for the claims to be raised in the Revised 599 Proceedings), which steps shall include the signing and lodging of the Action 599 Consent Order, to be done in accordance with the terms of the Schemes.

12.2    The Company and Oscatello irrevocably undertake to take such steps as shall be required to amend the current form of their respective pleadings in the Action 599 Proceedings to provide for the future determination of the Revised 599 Proceedings.

*The Kaupthing Finance English Proceedings*

12.3    Each of the Company, acting through the Liquidator, and Kaupthing Finance irrevocably undertakes to take all formal steps as shall be required in order to effectively compromise all claims, counterclaims and causes of action currently pleaded or advanced in the Kaupthing Finance English Proceedings, which steps shall include the signing and lodging of the KF Consent Order, to be done in accordance with the terms of the Schemes.

*The Proof of Debt Proceedings*

12.4    Each of the Company, acting through the Liquidator, Kaupthing, Kaupthing Finance and Oscatello irrevocably undertakes to take all formal steps as shall be required in order to effectively compromise all claims, counterclaims and causes of action currently pleaded or advanced in the Proof of Debt Proceedings, which steps shall include the signing and lodging the POD Consent Order, to be done in accordance with the terms of the Schemes.

*The Isle of Man Proceedings*

12.5    The Company, acting through the Liquidator, irrevocably undertakes to take all formal steps as shall be required in order to effectively compromise all claims, counterclaims and causes of action currently pleaded or advanced in the Isle of Man Proceedings against Kaupthing and Kaupthing Finance, which steps shall include the

signing and lodging of the IOM Consent Order, to be done in accordance with the terms of the Schemes.

*The Icelandic Proceedings*

12.6    Each of Kaupthing and the Consenting Sub-Participants irrevocably undertakes to take all formal steps as shall be required in order to effectively compromise all claims, counterclaims and causes of action currently pleaded or advanced in the Icelandic Proceedings, which steps shall include the signing and lodging of the Icelandic Consent Orders, to be done in accordance with the terms of the Schemes.

*The Zaria Global Proceedings*

12.7    Each of the Company and Zaria Global Limited (a Sub-Participant) irrevocably undertakes to take all formal steps as shall be required in order to effectively compromise all claims, counterclaims and causes of action currently pleaded or advanced in the Zaria Global Proceedings, which steps shall include the signing and lodging of the Zaria Consent Order, to be done in accordance with the terms of the Schemes.

13.    **FURTHER ASSURANCE**

Each of the Parties shall, at the request of the Company, promptly execute and deliver such documents and perform such acts as may be required to give full effect to the releases referred to in Clauses 7, 8, 9 and 10 and to initiate and thereafter complete the steps that need to be taken to compromise all claims, counterclaims and causes of action currently pleaded or advanced in the Ongoing Litigation referred to in Clause 12 and otherwise give effect to the undertakings and covenants herein. Each of the Parties shall be liable for all costs it has incurred.

14.    **WAIVER AND INDEMNITY**

14.1    Subject to Clauses 11.1, 14.3 and 14.4, with effect from the Effective Date, each Party irrevocably undertakes to each other Party that neither it nor its Affiliates shall take or continue any step or Proceeding against another Party and its Subsidiaries in any jurisdiction whatsoever for the purpose of obtaining any payment of any Released Claim or any part thereof. If any Party or its Affiliates are in breach of this Clause 14.1, that Party shall indemnify any other Party and their Affiliates from and against any costs, expenses, damages and liabilities (including interest, legal costs and disbursements) which any other Party or their Affiliates incur as a result of any proceedings taken against them or their Affiliates by the Party or its Affiliates acting in breach of this Clause 14.1.

14.2    Nothing in Clause 14.1 shall prejudice the enforcement by a Party or other released party (for whose benefit this Deed has been concluded) of:

14.2.1    its rights under this Deed and for the avoidance of doubt this shall include the Revised 599 Proceedings;

14.2.2    its rights under the Schemes; or

14.2.3    its rights or any claim against any person other than a Party or any of their Subsidiaries.

14.3    Each of the Parties further undertake to each other and their Affiliates to hold each other and their Affiliates harmless from and indemnify against any loss, claim, liability, demand, damages, costs or expense whatsoever (including interest and legal costs and disbursements) for which any other Party or their Affiliates may be liable to any third party where any such liability derives directly or indirectly from any proceedings or other process in respect of the Released Claims brought by or on behalf of that Party or its Affiliates in breach of Clause 14.1.

14.4    This Clause 14 shall have no application to:

14.4.1    Kaupthing and Kaupthing Finance in respect of its Affiliates that are subject to the control of an administrator, liquidator, provisional liquidator, receiver or any other analogous process in any jurisdiction; and

14.4.2    Oscatello and Eliza in respect of its Affiliates that are not under the control of the O&E Liquidators.

## 15.    KAUPTHING INDEMNITY

15.1    Subject to Clauses 11, 15.2 and 15.3 of this Deed, Kaupthing hereby agrees to indemnify the Consenting Sub-Participants, with effect from the Initial Distribution Date, from any Loss the Consenting Sub-Participant may suffer as a result of any Third Party Claim from a Third Party Claimant, up to a maximum amount of 168.29% of the value of a Consenting Sub-Participant's Initial Sub-Participation Investment, provided such Third Party Claim is brought within 12 months from the Initial Distribution Date.

15.2    The Consenting Sub-Participant will not be entitled to call upon this indemnity unless the Consenting Sub-Participant complies with the following:

15.2.1    as soon as reasonably practicable give Kaupthing written notice of any Claim having been threatened or made and provide details of such Claim including details of the amount of any Loss which may arise as a result of such Claim;

15.2.2    as soon as reasonably practicable and in advance of the incurrence of the relevant Loss and/ or action being taken or payment being made or any acknowledgement, compromise or agreement being made in respect of such Loss, give Kaupthing written notice that the Consenting Sub-Participation Scheme Creditor anticipates incurring such Loss;

15.2.3    not make any admission of liability, agreement or compromise in relation to the Loss without the prior written consent of Kaupthing (such consent not to be unreasonably withheld or delayed);

15.2.4    give Kaupthing and its professional advisers reasonable access to all information that is necessary to allow it to understand and respond to the Loss and/ or Claim; and

15.2.5    allow Kaupthing, at its expense, to conduct the Claim and provide reasonable assistance to Kaupthing in respect thereof, including taking such action as Kaupthing may reasonably request to avoid, dispute, compromise and/ or defend the Claim.

15.3    A Consenting Sub-Participant shall not be entitled to make a claim under the indemnity in Clause 15.1 to the extent that the Consenting Sub-Participant is still liable to Kaupthing under a Sub-Participation Excluded Claim.

16.    **THE LIQUIDATOR AND THE O&E LIQUIDATORS**

16.1    The Liquidator acts as agent for and on behalf of the Company and neither he nor his firm, affiliated firms, employees, agents, partners, directors, members, officers or representatives, shall incur any personal liability whatsoever in respect of any of the obligations undertaken by the Company, or in respect of any failure on the part of the Company to perform or comply with any such obligations, or under any associated arrangements or negotiations, or under any document entered into pursuant to this Deed, or howsoever otherwise, including in relation to acting as Scheme Supervisor.

16.2    The Liquidator shall not incur any personal liability whatsoever under this Deed nor in relation to any related matter or claim, whether in contract, tort (including negligence) or restitution or by reference to any other remedy or right in any jurisdiction or forum.

16.3    The exclusions of liability set out in this Deed shall arise and continue notwithstanding the termination of the agency of the Liquidator or his discharge from office as liquidator of the Company or as Scheme Supervisor before or after the Effective Date and shall operate as a waiver of any claims in tort as well as under contract.

16.4    Each of the Liquidator's firm, affiliated firms, employees, agents, partners, directors, members, officers and representatives shall be entitled to rely on and enjoy the benefit of this Clause 16 as if they were party to this Deed.

16.5    Any liquidator of the Company appointed after the date of the Effective Date but before the Nominated Directors are appointed shall be entitled to rely on and enjoy the benefit of this Clause 16 as if they were a party to this Deed.

16.6    Nothing in this Deed shall require the Liquidator to take any action which would breach any applicable law or regulation.

16.7    The provisions of this Clause 16 apply *mutatis mutandis* in relation to the O&E Liquidators.

17.    **NO ADMISSION**

This Deed is entered into in connection with the compromise of the various claims made in the Ongoing Litigation, the winding up of the Company and in the light of other considerations. It is not, and shall not be represented or construed by the Parties as an admission of liability or wrongdoing on the part of any Party to this Deed or any other person or entity.

18.    **RELIANCE AND FRAUD**

18.1    Each Party acknowledges that, in entering into this Deed, and any documents referred to herein, it does not rely on (whether wholly or partly), and shall have no remedy in respect of, any statement, representation, assurance or warranty made by or on behalf of any Party (whether orally or in writing).

18.2    Nothing in this Clause operates to limit or exclude any liability for fraud.

19.    **RIGHTS OF THIRD PARTIES**

19.1    The Parties agree and acknowledge that:

19.1.1    Each Released Party may rely on this Deed and enforce any of its terms under the Contracts (Rights of Third Parties) Act 1999 to enforce any term of this Deed;

19.1.2    Subject to Clause 19.1.1, a person who is not a Party has no right under the Contracts (Rights of Third Parties) Act 1999 to enforce or enjoy the benefit of any terms of this Deed; and

19.1.3    Notwithstanding any term of this Deed, the consent of any persons who is not a Party is not required to rescind or vary this Deed.

20.    **AMENDMENT**

20.1    No modification or variation of this Deed shall be valid unless it is in writing and signed by or on behalf of each Party.

20.2    Unless expressly agreed, no waiver, modification or variation of this Deed shall constitute, or be construed as, a general waiver of any provisions of this Deed, nor shall it affect any rights, obligations or liabilities under this Deed which have already accrued up to the date of such modification or waiver, and the rights and obligations of the Parties and their Affiliates under this Deed shall remain in full force and effect, except and only to the extent that they are so modified and varied.

21.    **GOVERNING LAW AND JURISDICTION**

21.1    Subject to Clause 21.2, this Deed shall be governed by, and construed in accordance with, the laws of England and Wales. Any dispute arising out of or in connection with, or concerning the carrying into effect of, this Deed shall be subject to the exclusive jurisdiction of the courts of England and Wales, and the Parties hereby irrevocably submit to the exclusive jurisdiction of the courts of England and Wales for these purposes.

21.2    Clause 21.1 is subject to mandatory Icelandic insolvency law.

22.    **SEVERABILITY**

The illegality, invalidity or unenforceability of any provision of this Deed shall not affect the legality, validity or enforceability of any other provision. If any provision of this Deed is found to be void or unenforceable, that provision shall be deemed to be

deleted from this Deed and the remaining provisions of this Deed shall continue in full force and effect and the Parties shall use their respective reasonable endeavours to procure that any such provision is replaced by a provision which is valid and enforceable, and which gives effect to the spirit and intent of this Deed.

23. **MISCELLANEOUS**

Without prejudice to Clause 13 of this Deed, each Party shall bear its own legal and other costs to date, including the costs of any proceedings and or negotiations incurred in relation to the subject matter of the releases in Clauses 7, 8, 9 and 10, and any costs incidental to the negotiation, preparation, execution and implementation by it of this Deed, and no Party shall be liable to any other Party in respect of any legal or other costs incurred in connection with any of the matters referred to in this Deed including any adverse costs orders in any of the proceedings referred to in this Deed.

24. **COUNTERPARTS**

This Deed may be executed in any number of counterparts and by the different parties hereto as separate counterparts, but shall not be effective until each party has executed at least one counterpart, each of which, when executed and delivered, shall constitute an original, but all the counterparts shall together constitute one and the same instrument.

**IN WITNESS WHEREOF**, this Deed has been duly executed as a deed by or on behalf of the Parties effective as of the date first above written:

Executed and delivered as a deed by
**ISIS Investments Limited (in liquidation)**
by Andrew Paul Shimmin in his capacity
as Liquidator (without personal liability)
being a person who, in accordance with
the laws of the Isle of Man,
is acting under its authority

in the presence of:

_____                    _____

Witness                                     Mr. Andrew Paul Shimmin

*Name:*

*Occupation:*

*Address:*
*Name:*

Executed and delivered as a deed by
**Mr. Andrew Paul Shimmin**
in his capacity as Liquidator
(without personal liability)
in the presence of:

_____                    _____

Witness                                                         Mr. Andrew Paul Shimmin

*Name:*

*Occupation:*

*Address:*


Executed and delivered as a deed by
**Kaupthing hf.**
by [●]
being persons who, in accordance with
the laws of Iceland,
are acting under its authority

_____                    _____

Authorised Signatory                              Authorised Signatory

*Name:*                                                         *Name:*


Executed and delivered as a deed by
**Kaupthing Finance ehf.**
by [●]
being persons who, in accordance with
the laws of Iceland,
are acting under its authority

_____                    _____

Authorised Signatory                              Authorised Signatory

*Name:*                                                         *Name:*

Executed and delivered as a deed by
**Eliza Limited (in liquidation)**
by Stephen Akers in his capacity as liquidator
being persons who, in accordance with
the laws of the British Virgin Islands,
are acting under its authority, in the presence of

_____          _____

Witness                                                    Stephen Akers

*Name:*

*Occupation:*

*Address:*

Executed and delivered as a deed by
**Oscatello Investments Limited (in liquidation)**
by [●] in his capacity as liquidator
(without personal liability)
being persons who, in accordance with
the laws of the British Virgin Islands,
are acting under its authority

_____          _____

Authorised Signatory                              Stephen Akers

*Name:*

*Occupation:*

*Address:*

Executed and delivered as a deed by
**Mr. Stephen Akers**
in his capacity as O&E Liquidator
(without personal liability)
in the presence of:

_____        _____
Witness                                                            Mr. Stephen Akers

*Name:*

*Occupation:*

*Address:*

Executed and delivered as a deed by
**Mr. Mark McDonald**
in his capacity as O&E Liquidator
(without personal liability)
in the presence of:

_____                          _____

Witness                                                     Mr. Mark McDonald

*Name:*

*Occupation:*

*Address:*


Executed and delivered as a deed by **Mr. Elfar Adalsteinsson**
in the presence of:

_____                          _____

Witness                                                     Mr. Elfar Adalsteinsson

*Name:*

*Occupation:*

*Address:*


Executed and delivered as a deed by
**ISIS Investments Limited (in liquidation)**
acting by Andrew Paul Shimmin
being a person who, in accordance
with the laws of the Isle of Man,
is acting under the authority of
**ISIS Investments Limited (in liquidation)**
as duly appointed agent for and
on behalf of each Scheme Creditor
in the presence of:

_____                          _____

Witness                                                     Mr. Andrew Paul Shimmin

*Name:*

*Occupation:*

*Address:*

Executed and delivered as a deed by **Boodle Hatfield LLP** in its capacity as a Sundry Creditor acting by two duly authorised members:

_____
*(Member Signature)*

Member Name (*Print Name*):

_____
*(Member Signature)*

Member Name (*Print Name*):

Executed and delivered as a deed by **Callin Wild LLC** in its capacity as a Sundry Creditor acting by two duly authorised members:

_____
*(Member Signature)*

Member Name (*Print Name*):

_____
*(Member Signature)*

Member Name (*Print Name*):

# Appendix 1

## List of Known Scheme Creditors

Mon Investments ehf. (assigned from Mr. Aðalsteinn Karlsson)

Kaupthing hf. (re Estate of Mrs. Anna Fríða Winther)

Mr. Bogi Óskar Pálsson

Brun Holding

Clover International Group S.A.

Eignarhaldsfélagið EAV ehf.

Mr. Elfar Adalsteinsson

Fontain Blanc Holding S.A.

Mon Investments ehf. (assigned from Mr. Guðmundur A Birgisson)

Mr. Hjálmar Kristjánsson

Icarus ehf. (formerly Saxbygg ehf.)

Mon Investments ehf. (assigned from IceCapital ehf (formerly Sund ehf.))

Ingi Gudjonsson (as sole shareholder of the dissolved entity Icetec Holding)

Ingimundur hf.

Mr. Ingimundur Ingimundarson

Mon Investments ehf (assigned from Mr. Jón Ingvarsson)

Komi Investments S.A.

Lowell Alliance Ltd

New Ortland II Equities

Samarand Assets Inc.

Mon Investments ehf. (assigned from Mr. Sigfús Sigfússon)

SKLUX SA SPF

Zaria Global Limited

Mr. Þorsteinn Már Baldvinsson

**Appendix 2**

**Action 599 Consent Order**

**Appendix 3**

**IOM Consent Order**

**Appendix 4**

**Icelandic Consent Orders**

**Appendix 5**

**KF Consent Order**

**Appendix 6**

**Zaria Consent Order**

**Appendix 7**

**POD Consent Order**

## Appendix 8

### List of Initial Sub-Participation Amount

| Creditor name | Initial Sub-Participation Amount |
|---|---|
| Mon Investments ehf. (assigned from Mr. Aðalsteinn Karlsson) | £500,000.00 |
| Kaupthing hf. (re Estate of Mrs. Anna Fríða Winther) | £500,000.00 |
| Mr. Bogi Óskar Pálsson | £1,500,000.00 |
| Brun Holding | £1,000,000.00 |
| Clover International Group S.A. | £500,000.00 |
| Eignarhaldsfélagið EAV ehf. | £1,000,000.00 |
| Mr. Elfar Adalsteinsson | £2,000,000.00 |
| Fontain Blanc Holding S.A. | £1,000,000.00 |
| Mon Investments ehf. (assigned from Mr. Guðmundur A Birgisson) | £1,000,000.00 |
| Mr. Hjálmar Kristjánsson | £500,000.00 |
| Icarus ehf. (formerly Saxbygg ehf.) | £3,000,000.00 |
| Mon Investments ehf. (assigned from IceCapital ehf (formerly Sund ehf.)) | £1,000,000.00 |
| Icetec Holding | £500,000.00 |
| Ingimundur hf. | £1,000,000.00 |
| Mr. Ingimundur Ingimundarson | £500,000.00 |
| Mon Investments ehf. (assigned from Mr. Jón Ingvarsson) | £500,000.00 |
| Komi Investments S.A. | £1,000,000.00 |
| Lowell Alliance Ltd. | £250,000.00 |
| New Ortland II Equities | £9,000,000.00 |
| Samarand Assets Inc. | £2,000,000.00 |
| Mon Investments ehf. (assigned from Mr. Sigfús Sigfússon) | £500,000.00 |
| SKLUX SA SPF | £5,750,000.00 |
| Zaria Global Limited | £5,000,000.00 |
| Mr. Þorsteinn Már Baldvinsson | £500,000.00 |
| **Sub-total:** | **£40,000,000.00** |

**Appendix 9**

**New Facility Agreements**

**Appendix 10**

**O&E Agreement**

- 9 -

## SCHEDULE 3

## ACTION 599 CONSENT ORDERS

**IN THE HIGH COURT OF JUSTICE**

**CHANCERY DIVISION**

Before [                    ]
Dated [      ] [2014]

CLAIM No. HC-2009-000007.
(Formerly HC09C00599)

B E T W E E N:

ISIS INVESTMENTS LIMITED (in liquidation)

<u>Claimant</u>

-and-

(1) OSCATELLO INVESTMENTS LTD (in liquidation)
(2) KAUPTHING HF.
(3) ELFAR ADALSTEINSSON (as a representative party for the investors)
(4) ELIZA LIMITED (in liquidation)
(5) KAUPTHING FINANCE EHF.

<u>Defendants</u>

AND

CLAIM No. HC-2009-000007.
(Formerly HC13D00363)

B E T W E E N:

ISIS INVESTMENTS LIMITED (in liquidation)

<u>Claimant</u>

-and-

(1) MOIRA THOMSON MCHARRIE
(2) DAVID KARRAN
(3) SIGURDUR EINARSSON

---

**CONSENT ORDER**

---

**UPON** Claim Number HC09C00599 (**"Claim 599"**) and Claim Number HC13D00363 (**"Claim 363"**) having been consolidated pursuant to the Order of Master March dated 6

ACTIVE 202718896v.15

December 2013 and the consolidated claim having been assigned Claim Number HC-2009-000007 (the "**Action**")

**AND UPON THE CLAIMANT** in Claim 599 having paid into Court the sums of £32,661,828 and £97,131,303 pending resolution of certain issues now in this Action (the "**Funds In Court**")

**AND UPON THE CLAIMANT**, through its Liquidator, having proposed (i) a scheme of arrangement under section 897 of the UK Companies Act 2006 between the Claimant (in liquidation) and the Scheme Creditors (as defined therein); and (ii) a scheme of arrangement under section 152 of the Isle of Man Companies Act 1931 between the Claimant and the Scheme Creditors (as defined therein) ((i) and (ii) together, the "**Schemes**") in order to compromise certain claims in its liquidation including the claims of the Second and Fifth Defendants and of the Third Defendant (and of the investors for whom he acts in these proceedings as a representative party)

**AND UPON THE PARTIES** having agreed to compromise certain claims and counterclaims in this Action in accordance with the Schemes and upon the terms set out in the Schemes and the Deed of Settlement and Release dated [    ] 2014 (the "**Settlement Agreement**")

**AND UPON** this Court and the Isle of Man Court having sanctioned the Schemes.

**BY CONSENT IT IS ORDERED THAT**:

1.  There shall be a stay of these proceedings until the sooner of the Longstop Date or the Initial Distribution Date (as those terms are defined in the Schemes).

2.  Upon the Initial Distribution Date, unless otherwise preserved by paragraph 3 of this Order, all claims and counterclaims in this Action, in so far as they comprised Claim 599, shall be stayed generally upon the terms of the Schemes and the Settlement Agreement and the parties shall have liberty to apply as to the carrying of the terms of this Order and the Settlement Agreement into effect. The Second to Fifth Defendants in Claim 599 shall, thereafter and upon the terms of the Settlement Agreement, take no further part in this action.

3.  Without prejudice to the content of paragraph 2 of this Order, and subject to the directions set out below, this Action shall, in relation to matters which comprised Claim 599 continue (between the Claimant and the First Defendant in Claim 599 only) in order to determine:

    (a)  the true meaning and construction of clause 6.1 of the Framework Agreement, specifically whether the payment waterfall provided at clause 6.1(A) – (D) in respect of the Violet Economic Return (as defined therein) provides for an amount of £44.15 million to be payable in the first instance to the Claimant (such amount representing the total sum originally invested by the Claimant

referred to at (i) and (ii) of clause 6.1 in respect of the Violet Economic Return); and

(b)    the quantum of the First Defendant's trust claim to its proportion of the Violet Economic Return,

(such proceedings being the **"Revised 599 Proceedings"**).

4.    Forthwith upon the entry of this order, the amount representing the Scheme Funds (as defined in the Schemes) shall be paid out of the Funds In Court into the account bearing sort code 20-26-74, account no: 93579719, a/c name: 'Isis No 2 Account', which is the Nominated Account of the Liquidator (Mr Andrew Paul Shimmin of Shimmin Wilson & Co) to be used for the sole purpose of the Claimant (acting by the Liquidator) with the authorisation of the Scheme Supervisor (as defined in the Schemes) making the distributions anticipated by the Schemes and the Settlement Agreement.

5.    In the event that (i) the Longstop Date is reached and (ii) Clause 33.2 of the Schemes takes effect but no extension of the Schemes is agreed pursuant to that provision such that there is no Initial Distribution Date and the Schemes lapse, or if (iii) a Termination Notice is issued under Clause 32 of the Schemes, then the Liquidator shall pay the Scheme Funds back into Court pending the determination of this Action and the parties shall list a Case Management Conference of this Action for further case management directions at the soonest available date

6.    On or as soon as reasonably practicable after the Initial Distribution Date , but only after payment to the Known Scheme Creditors (such terms being defined in the Schemes, the Settlement Agreement and the letter agreement made between the First, Second and Fifth Defendants in Claim 599 (the **"Letter Agreement"**)), the Claimant shall pay to the First Defendant in Claim 599 (**"Oscatello"**) the Undisputed Amount. To the extent that any Funds In Court are required by the Claimant in order to pay the Undisputed Amount to Oscatello, the parties consent to the payment out of the same to the Claimant provided always that the Resulting Amount (as defined in the Schemes, the Settlement Agreement and the Letter Agreement) remains in Court pending determination of the Revised 599 Proceedings.

7.    In respect of the claims preserved by and described at paragraph 3 of this Order (which claims comprise the Revised 599 Proceedings for the purposes of the Settlement Agreement), there shall be the following directions:

7.1    the Claimant shall file and serve Re-re-amended Particulars of Claim within 28 days of the Initial Distribution Date;

7.2    the First Defendant shall file and serve its Re-re-amended Defence and Counterclaim within 28 days thereafter;

7.3    the Claimant shall file and serve any Re-re-amended Reply and Defence to Counterclaim within a further 28 days thereafter; and

7.4    the matter shall be restored for a Case Management Conference at the earliest opportunity where the Claimant shall, if so advised, bring an application for the Revised 599 Proceedings and Claim 363 to be de-consolidated.

8.    Liberty to apply generally.

9.    There be no order as to costs.

Dated [    ] [2014]


.........................................................    .........................................................

Boodle Hatfield
DX 53 Chancery Lane
Ref: ELW SJF 52344 1
**Solicitors for Isis Investments Limited**

LOGOS Legal Services Limited
42 New Broad Street, London, EC2M 1JD
Ref: ALH/GO/L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
**Solicitors for Elfar Adalsteinsson**


.........................................................    .........................................................

Sidley Austin LLP
DX 580 London/City
Ref: MS/AF/59447-40020
**Solicitors for Kaupthing hf. and
Kaupthing Finance ehf.**

Skadden Arps, Slate, Meagher & Flom (UK) LLP
40 Bank Street, London, E14 5DS
Ref: Dominic McCahill
**Solicitors for Oscatello Investments Limited
and Eliza Limited**

CLAIM NO. HC09C00599

**IN THE HIGH COURT OF JUSTICE**

**CHANCERY DIVISION**

**Before [          ]**
**Dated [ 2014]**

**B E T W E E N:**

**ISIS INVESTMENTS LIMITED**

<u>**Claimant**</u>

-and-

**(1) OSCATELLO INVESTMENTS LTD**
**(2) KAUPTHING HF.**
**(3) ELFAR ADALSTEINSSON**
**(4) ELIZA LIMITED**
**(5) KAUPTHING FINANCE EHF.**

<u>**Defendants**</u>

------------------------

**CONSENT ORDER**

------------------------

Sidley Austin LLP
Woolgate Exchange
25 Basinghall Street
London EC2V 5HA
Ref: MS/AF/59447-40020
Tel: 0207 360 2006

- 10 -

## SCHEDULE 4

## POD CONSENT ORDERS

CHP 10/0021

**IN THE HIGH COURT OF JUSTICE OF THE ISLE OF MAN**

**CIVIL DIVISION**

**CHANCERY PROCEDURE**

**IN THE MATTER** of Isis Investments Limited (in liquidation)

and

**IN THE MATTER** of the Notices of Rejection of Proofs of Debt of Kaupthing hf., Kaupthing Finance ehf. and Oscatello Investments Limited (in liquidation) dated 20 February 2012

and

**IN THE MATTER** of the Notices of Appeal of Kaupthing hf., Kaupthing Finance ehf. and Oscatello Investments Limited (in liquidation) ("the Applicants") dated 5 October 2012

and

**IN THE MATTER** of a draft Consent Order dated <> [2014] ("the Consent Order")

At a Court held in Douglas
on <>  [2014]

**HIS HONOUR THE DEEMSTER DOYLE**
**HER MAJESTY'S FIRST DEEMSTER AND CLERK OF THE ROLLS**

UPON consideration of the Notices of Rejection, the Notices of Appeal, and the Consent Order AND UPON having noted the content of a letter dated <> 2014 ("the Letter") from Counsel for the Liquidator ("the Liquidator") of Isis Investments Limited (in liquidation) ("the Company") the content of which is supported by the Applicants AND UPON having noted that the Company has entered into a Scheme of Arrangement under Part 26 of the UK Companies Act 2006 ("the English Scheme") which was approved by the High Court of Justice of England and Wales by Order dated <> 2014 and a materially identical Scheme of Arrangement pursuant to section 152 of the Isle of Man Companies Act 1931 ("the Isle of Man Scheme") which was approved by the Court by Order dated <> 2014 (the English Scheme and the Isle of Man Scheme together being "the Schemes"), pursuant to which the Company has compromised certain claims made in its liquidation including the claims of the Applicants upon the terms set out in the Schemes AND HAVING noted that the terms of the Isle of Man Scheme (a copy of which is annexed to the Letter) provide that the

claims made by the Applicants in the liquidation of the Company be admitted at their full value AND UPON the terms of the Consent Order being agreed between the Parties AND UPON consideration had thereof IT IS ORDERED BY CONSENT that-

1. Each of the Proofs of Debt lodged by Kaupthing hf. and Kaupthing Finance ehf. in the winding-up of the Company shall and hereby is admitted in full by the Liquidator;

2. The Notice of Appeal of Oscatello Investments Limited (in liquidation) is hereby withdrawn and the Rejection of the Proof of Debt is accepted on the basis that it has been agreed by the Liquidator that Oscatello Investments Limited (in liquidation) has a proprietary claim against the Company of at least £28 million, with the quantum of any further amounts to be determined in the English Court Proceedings referred to in the Schemes as the Revised 599 Proceedings;

3. There be no Order as to costs.


..................................................
Advocate for the Liquidator

..................................................
Advocate for Kaupthing hf. and
Kaupthing Finance ehf.


..................................................
Advocate for Oscatello Investments
Limited (in liquidation)


<>  [2014]


SEAL OF THE HIGH COURT

## SCHEDULE 3

## KNOWN SCHEME CREDITORS

| Known Scheme Creditor | Admitted Claim | Cash Distribution Amount | Cash Distribution Amount % of Admitted Claim | Initial Sub-Participation Amount |
|---|---|---|---|---|
| Mon Investments ehf (assigned from Mr. Aðalsteinn Karlsson) | £814,500.00 | £750,000.00 | 92% | £500,000.00 |
| Kaupthing hf (re Estate of Mrs. Anna Fríða Winther) | £814,500.00 | £750,000.00 | 92% | £500,000.00 |
| Mr. Bogi Óskar Pálsson | £2,443,500.00 | £2,250,000.00 | 92% | £1,500,000.00 |
| Brun Holding | £1,629,000.00 | £1,500,000.00 | 92% | £1,000,000.00 |
| Clover International Group S.A. | £814,500.00 | £750,000.00 | 92% | £500,000.00 |
| Eignarhaldsfélagið EAV ehf. | £1,629,000.00 | £1,500,000.00 | 92% | £1,000,000.00 |
| Mr. Elfar Aðalsteinsson | £3,258,000.00 | £3,000,000.00 | 92% | £2,000,000.00 |
| Fontain Blanc Holding S.A. | £1,629,000.00 | £1,500,000.00 | 92% | £1,000,000.00 |
| Mon Investments ehf (assigned from Mr. Guðmundur A Birgisson) | £1,629,000.00 | £1,500,000.00 | 92% | £1,000,000.00 |
| Mr. Hjálmar Kristjánsson | £814,500.00 | £750,000.00 | 92% | £500,000.00 |
| Icarus ehf. (formerly Saxbygg ehf.) | £4,887,000.00 | £4,500,000.00 | 92% | £3,000,000.00 |
| Mon Investments ehf (assigned from IceCapital ehf (formerly Sund ehf.)) | £1,629,000.00 | £1,500,000.00 | 92% | £1,000,000.00 |
| Ingi Gudjonsson (as sole shareholder of the dissolved entity Icetec Holding) | £814,500.00 | £750,000.00 | 92% | £500,000.00 |
| Ingimundur hf | £1,629,000.00 | £1,500,000.00 | 92% | £1,000,000.00 |
| Mr. Ingimundur Ingimundarson | £814,500.00 | £750,000.00 | 92% | £500,000.00 |
| Mon Investments ehf (assigned from Mr. Jón Ingvarsson) | £814,500.00 | £750,000.00 | 92% | £500,000.00 |
| Komi Investments SA | £1,629,000.00 | £1,500,000.00 | 92% | £1,000,000.00 |
| Lowell Alliance Ltd | £407,250.00 | £375,000.00 | 92% | £250,000.00 |
| New Ortland II Equities | £14,661,000.00 | £13,500,000.00 | 92% | £9,000,000.00 |
| Samarand Assets Inc | £3,258,000.00 | £3,000,000.00 | 92% | £2,000,000.00 |
| Mon Investments ehf (assigned from Mr. Sigfús Sigfússon) | £814,500.00 | £750,000.00 | 92% | £500,000.00 |
| SKLUX SA SPF | £9,366,750.00 | £8,625,000.00 | 92% | £5,750,000.00 |
| Zaria Global Limited | £8,145,000.00 | £7,500,000.00 | 92% | £5,000,000.00 |
| Mr. Þorsteinn Már Baldvinsson | £814,500.00 | £750,000.00 | 92% | £500,000.00 |
| **Sub-total:** | **£65,160,000.00** | **£60,000,000.00** | | **£40,000,000.00** |

46

**SCHEDULE 4**

**ACTION 599 CONSENT ORDER**

**IN THE HIGH COURT OF JUSTICE**

**CHANCERY DIVISION**

**Before [              ]**
**Dated [      ] [2014]**

**CLAIM No. HC-2009-000007.**
**(Formerly HC09C00599)**

**B E T W E E N:**

**ISIS INVESTMENTS LIMITED (in liquidation)**

**Claimant**

**-and-**

**(1) OSCATELLO INVESTMENTS LTD (in liquidation)**
**(2) KAUPTHING HF.**
**(3) ELFAR ADALSTEINSSON (as a representative party for the investors)**
**(4) ELIZA LIMITED (in liquidation)**
**(5) KAUPTHING FINANCE EHF.**

**Defendants**

**AND**

**CLAIM No. HC-2009-000007.**
**(Formerly HC13D00363)**

**B E T W E E N:**

**ISIS INVESTMENTS LIMITED (in liquidation)**

**Claimant**

**-and-**

**(1) MOIRA THOMSON MCHARRIE**
**(2) DAVID KARRAN**
**(3) SIGURDUR EINARSSON**

---

**CONSENT ORDER**

---

**UPON** Claim Number HC09C00599 ("**Claim 599**") and Claim Number HC13D00363 ("**Claim 363**") having been consolidated pursuant to the Order of Master March dated 6

December 2013 and the consolidated claim having been assigned Claim Number HC-2009-000007 (the "**Action**")

**AND UPON THE CLAIMANT** in Claim 599 having paid into Court the sums of £32,661,828 and £97,131,303 pending resolution of certain issues now in this Action (the "**Funds In Court**")

**AND UPON THE CLAIMANT**, through its Liquidator, having proposed (i) a scheme of arrangement under section 897 of the UK Companies Act 2006 between the Claimant (in liquidation) and the Scheme Creditors (as defined therein); and (ii) a scheme of arrangement under section 152 of the Isle of Man Companies Act 1931 between the Claimant and the Scheme Creditors (as defined therein) ((i) and (ii) together, the "**Schemes**") in order to compromise certain claims in its liquidation including the claims of the Second and Fifth Defendants and of the Third Defendant (and of the investors for whom he acts in these proceedings as a representative party)

**AND UPON THE PARTIES** having agreed to compromise certain claims and counterclaims in this Action in accordance with the Schemes and upon the terms set out in the Schemes and the Deed of Settlement and Release dated [    ] 2014 (the "**Settlement Agreement**")

**AND UPON** this Court and the Isle of Man Court having sanctioned the Schemes.

**BY CONSENT IT IS ORDERED THAT**:

1.    There shall be a stay of these proceedings until the sooner of the Longstop Date or the Initial Distribution Date (as those terms are defined in the Schemes).

2.    Upon the Initial Distribution Date, unless otherwise preserved by paragraph 3 of this Order, all claims and counterclaims in this Action, in so far as they comprised Claim 599, shall be stayed generally upon the terms of the Schemes and the Settlement Agreement and the parties shall have liberty to apply as to the carrying of the terms of this Order and the Settlement Agreement into effect. The Second to Fifth Defendants in Claim 599 shall, thereafter and upon the terms of the Settlement Agreement, take no further part in this action.

3.    Without prejudice to the content of paragraph 2 of this Order, and subject to the directions set out below, this Action shall, in relation to matters which comprised Claim 599 continue (between the Claimant and the First Defendant in Claim 599 only) in order to determine:

   (a)    the true meaning and construction of clause 6.1 of the Framework Agreement, specifically whether the payment waterfall provided at clause 6.1(A) – (D) in respect of the Violet Economic Return (as defined therein) provides for an amount of £44.15 million to be payable in the first instance to the Claimant (such amount representing the total sum originally invested by the Claimant

referred to at (i) and (ii) of clause 6.1 in respect of the Violet Economic Return); and

(b)     the quantum of the First Defendant's trust claim to its proportion of the Violet Economic Return,

(such proceedings being the **"Revised 599 Proceedings"**).

4.      Forthwith upon the entry of this order, the amount representing the Scheme Funds (as defined in the Schemes) shall be paid out of the Funds In Court into the account bearing sort code 20-26-74, account no: 93579719, a/c name: 'Isis No 2 Account', which is the Nominated Account of the Liquidator (Mr Andrew Paul Shimmin of Shimmin Wilson & Co) to be used for the sole purpose of the Claimant (acting by the Liquidator) with the authorisation of the Scheme Supervisor (as defined in the Schemes) making the distributions anticipated by the Schemes and the Settlement Agreement.

5.      In the event that (i) the Longstop Date is reached and (ii) Clause 33.2 of the Schemes takes effect but no extension of the Schemes is agreed pursuant to that provision such that there is no Initial Distribution Date and the Schemes lapse, or if (iii) a Termination Notice is issued under Clause 32 of the Schemes, then the Liquidator shall pay the Scheme Funds back into Court pending the determination of this Action and the parties shall list a Case Management Conference of this Action for further case management directions at the soonest available date

6.      On or as soon as reasonably practicable after the Initial Distribution Date , but only after payment to the Known Scheme Creditors (such terms being defined in the Schemes, the Settlement Agreement and the letter agreement made between the First, Second and Fifth Defendants in Claim 599 (the **"Letter Agreement"**)), the Claimant shall pay to the First Defendant in Claim 599 (**"Oscatello"**) the Undisputed Amount. To the extent that any Funds In Court are required by the Claimant in order to pay the Undisputed Amount to Oscatello, the parties consent to the payment out of the same to the Claimant provided always that the Resulting Amount (as defined in the Schemes, the Settlement Agreement and the Letter Agreement) remains in Court pending determination of the Revised 599 Proceedings.

7.      In respect of the claims preserved by and described at paragraph 3 of this Order (which claims comprise the Revised 599 Proceedings for the purposes of the Settlement Agreement), there shall be the following directions:

7.1     the Claimant shall file and serve Re-re-amended Particulars of Claim within 28 days of the Initial Distribution Date;

7.2     the First Defendant shall file and serve its Re-re-amended Defence and Counterclaim within 28 days thereafter;

7.3     the Claimant shall file and serve any Re-re-amended Reply and Defence to Counterclaim within a further 28 days thereafter; and

7.4    the matter shall be restored for a Case Management Conference at the earliest opportunity where the Claimant shall, if so advised, bring an application for the Revised 599 Proceedings and Claim 363 to be de-consolidated.

8.    Liberty to apply generally.

9.    There be no order as to costs.

Dated [   ] [2014]


.......................................................

Boodle Hatfield
DX 53 Chancery Lane
Ref: ELW SJF 52344 1
**Solicitors for Isis Investments Limited**


.......................................................

LOGOS Legal Services Limited
42 New Broad Street, London, EC2M 1JD
Ref: ALH/GO/L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
**Solicitors for Elfar Adalsteinsson**


.......................................................

Sidley Austin LLP
DX 580 London/City
Ref: MS/AF/59447-40020
**Solicitors for Kaupthing hf. and
Kaupthing Finance ehf.**


.......................................................

Skadden Arps, Slate, Meagher & Flom (UK) LLP
40 Bank Street, London, E14 5DS
Ref: Dominic McCahill
**Solicitors for Oscatello Investments Limited
and Eliza Limited**

CLAIM NO. HC09C00599

IN THE HIGH COURT OF JUSTICE

CHANCERY DIVISION

**Before** [                    ]
**Dated  [ 2014]**

**B E T W E E N:**

**ISIS INVESTMENTS LIMITED**

<u>**Claimant**</u>

-and-

**(1) OSCATELLO INVESTMENTS LTD**
**(2) KAUPTHING HF.**
**(3) ELFAR ADALSTEINSSON**
**(4) ELIZA LIMITED**
**(5) KAUPTHING FINANCE EHF.**

<u>**Defendants**</u>

_____

**CONSENT ORDER**

_____

Sidley Austin LLP
Woolgate Exchange
25 Basinghall Street
London EC2V 5HA
Ref: MS/AF/59447-40020
Tel: 0207 360 2006

**SCHEDULE 5**

**ICELANDIC CONSENT ORDERS**

**[Template translation / To be submitted in Icelandic per each Icelandic Proceeding]**

No. [●] Submitted in the District Court of Reykjavik on [date]

**Joint booking of the Parties
in the District Court proceedings no. X-[●]/2012**

**[Claimant Name]
-vs-
Kaupthing hf.**

Appearing counsel to the Parties hereby jointly request that the following booking be entered into the court register:

„The undersigned counsel confirm that it is hereby requested that the District Court claim no. X-[●]/2012 be dismissed without orders as to costs, as the Parties have cancelled and waived claims against each other pursuant to a separate agreement.

Furthermore, the claim no. [●] in the winding-up process of the Defendant is withdrawn and waived in a final manner and shall be deleted from the claim register of the Defendant's Winding-up Committee"

This booking is submitted in the matter and forms part of the files of the proceedings.

Respectfully,                                          Respectfully,
LOGOS Legal Services                                   for and on behalf of
                                                       Kaupthing hf.

Guðmundur J. Oddsson hdl.                              Grímur Sigurðsson hrl.

**SCHEDULE 6**

**IOM CONSENT ORDER**

49

ORD 12/0036

## IN THE HIGH COURT OF JUSTICE OF THE ISLE OF MAN

## CIVIL DIVISION

## CHANCERY PROCEDURE

**BETWEEN**

Isis Investments Limited (in liquidation)

and

(1)  Moira Thomson McHarrie
(2)  David Karran
(3)  Sigurdur Einarsson
(4)  Kaupthing hf.
(5)  Kaupthing Finance ehf.

and

**IN THE MATTER** of a draft Consent Order dated <> [2014] ("the Consent Order")

At a Court held in Douglas
on <> [2014]

**HIS HONOUR THE DEEMSTER DOYLE**
**HER MAJESTY'S FIRST DEEMSTER AND CLERK OF THE ROLLS**

**UPON THE CLAIMANT**, through its Liquidator, having proposed (i) a scheme of arrangement under section 897 of the UK Companies Act 2006 between the Claimant (in liquidation) and the Scheme Creditors (as defined therein); and (ii) a scheme of arrangement under section 152 of the Isle of Man Companies Act 1931 between the Claimant and the Scheme Creditors (as defined therein) ((i) and (ii) together, the **"Schemes"**) in order to compromise certain claims in its liquidation including the Claimant's claims in this Action as against the Fourth and Fifth Defendants

**AND UPON THE CLAIMANT** having agreed to compromise the Claimant's claims in this Action as against the Fourth and Fifth Defendants in accordance with the Schemes and upon the terms set out in the Schemes and the Deed of Settlement and Release dated [     ] 2014 (the **"Settlement Agreement"**)

**AND UPON** the terms of the Consent Order being agreed between the Claimant and the Fourth and Fifth Defendants **AND UPON** consideration had thereof **IT IS ORDERED BY CONSENT** that-

1.  Subject to the terms of the Order, the stay of these proceedings pursuant to the Court Order dated 12 June 2013 shall remain in place on the same terms.

2.  Upon the Initial Distribution Date (as that term is defined in the Schemes) all claims and counterclaims in this Action, in so far as they relate to the Fourth and Fifth Defendants, shall continue to be stayed generally and upon the terms of the Schemes and the Settlement Agreement and the Claimant and/or Fourth and/or Fifth Defendants shall have liberty to apply as to the carrying out of the terms of this Order and the Settlement Agreement into effect.  Thereafter and upon the terms of the Settlement Agreement, the claims and counterclaims in this Action as between the Claimant and the Fourth and Fifth Defendants shall be dismissed and the Fourth and Fifth Defendants take no further part in this action.

3.  In the event that (i) the Longstop Date (as that term is defined in the Schemes) is reached and (ii) Clause 33.2 of each of the Schemes takes effect but no extension of the Schemes is agreed pursuant to that provision such that there is no Initial Distribution Date and the Schemes lapse, or if (iii) a Termination Notice is issued under Clause 32 of the Scheme, then the stay of these proceedings pursuant to the Court Order dated 12 June 2013 shall remain in place on the same terms.

4.  Liberty to apply generally.

5.  There be no order as to costs.

..............................................          ...............................................

Advocate for the Liquidator                    Advocate for Kaupthing hf. and

Kaupthing Finance ehf.

<> [2014]

SEAL OF THE HIGH COURT

**SCHEDULE 7**

**KF CONSENT ORDER**

**IN THE HIGH COURT OF JUSTICE**                    Claim No. HC11C04539

**CHANCERY DIVISION**

**Before [                    ]**

**Dated  [                    ]**

**B E T W E E N:**

ISIS INVESTMENTS LIMITED

**(In Liquidation)**

Claimant

- and -

KAUPTHING FINANCE EHF.

Defendant

---

### DRAFT CONSENT ORDER

---

**UPON THE CLAIMANT'S CLAIM** issued on 23 December 2011 (as amended on 27 March 2012) under Claim Number: HC11C04539 (the "**Claim**") seeking relief in respect of certain transactions

**AND UPON** the Order of Chief Master Winegarten dated 15 August 2012 staying the Claim until further Order

**AND UPON THE CLAIMANT**, through its Liquidator, having proposed (i) a scheme of arrangement under section 897 of the UK Companies Act 2006 between the Claimant (in liquidation) and the Scheme Creditors (as defined therein); and (ii) a scheme of arrangement under section 152 of the Isle of Man Companies Act 1931 between the Claimant and the Scheme Creditors (as defined therein) ((i) and (ii) together, the "**Schemes**") in order to compromise certain claims in its liquidation including the Claimant's Claim

**AND UPON THE PARTIES** having agreed to compromise the Claim in accordance with the Schemes and upon the terms set out in the Schemes and the Deed of Settlement and Release dated [                    ] (the **Settlement Agreement**)

**BY CONSENT IT IS ORDERED THAT:**

(1) There shall be a continued stay of these proceedings until the sooner of the Longstop Date or the Initial Distribution Date (as those terms are defined in the Schemes).

ACTIVE 204191189v.3

(2) Upon the Initial Distribution Date, all claims in these proceedings shall be stayed generally upon the terms of the Schemes and the Settlement Agreement and each party shall have permission to apply to the Court to enforce the terms of this Order and the Settlement Agreement without the need to bring a new claim.

(3) In the event that (i) the Longstop Date is reached and (ii) Clause 33.2 of the Scheme takes effect but no extension of the Schemes is agreed pursuant to that provision such that there is no Initial Distribution Date and the Schemes lapse, or if (iii) a Termination Notice is issued under Clause 32 of the Schemes, the Automatic Stay shall continue in force but each party shall have permission to apply to Court as to the future conduct of these proceedings.

(4) There be no order as to costs.

Boodle Hatfield LLP
240 Blackfriars Road
London  SE1 8NW


Ref: ELW/TAM/SJF/52344 001
**Solicitors for Isis Investments Limited
(in liquidation)**

Sidley Austin LLP
Woolgate Exchange
25 Basinghall Street
London  EC2V 5HA


Ref: MS/AF

**Solicitors for Kaupthing Finance ehf.**

## SCHEDULE 8

## ZARIA CONSENT ORDER

**IN THE HIGH COURT OF JUSTICE**                    **CLAIM NO. HC09C03526**

**CHANCERY DIVISION**

**Before [                    ]**
**Dated [      2014]**

**B E T W E E N:**

ZARIA GLOBAL LIMITED

<u>Claimant</u>

-and-

ISIS INVESTMENTS LIMITED (in liquidation)

<u>Defendant</u>

---

## CONSENT ORDER

---

**UPON THE DEFENDANT**, through its Liquidator, having proposed (i) a scheme of arrangement under section 897 of the UK Companies Act 2006 between the Defendant (in liquidation) and the Scheme Creditors (as defined therein); and (ii) a scheme of arrangement under section 152 of the Isle of Man Companies Act 1931 between the Defendant and the Scheme Creditors (as defined therein) ((i) and (ii) together, the **"Schemes"**) in order to compromise certain claims in its liquidation including the Claimant's claims in this Action

**AND UPON THE PARTIES** having agreed to compromise the Claimant's claims in this Action in accordance with the Schemes and upon the terms set out in the Schemes and the Deed of Settlement and Release dated [   ] 2014 (the "**Settlement Agreement**")

**BY CONSENT IT IS ORDERED THAT**:

1.    The automatic stay of these proceedings consequent upon the Order made by Newey J on 11 March 2010 (the **"Automatic Stay"**) for recognition as foreign main proceedings pursuant to the Cross-Border Insolvency Regulations 2006 of the appointment by the Isle of Man Court on 8 March 2010 of the Liquidator (then Liquidator Provisional) of the Defendant is lifted for the purposes only of (a) the making of this Order (b) carrying the terms of the Settlement Agreement into effect, and/or (c) enforcing the terms of this Order and/or the Settlement Agreement without

the need to bring a new claim.

2.    No further steps shall be taken in these proceedings until the sooner of the Longstop Date or the Initial Distribution Date (as those terms are defined in the Schemes).

3.    Upon the Initial Distribution Date, all claims and counterclaims in this action shall be stayed generally upon the terms of the Schemes and the Settlement Agreement and the parties shall have liberty to apply as to the carrying of the terms of this Order and the Settlement Agreement into effect.

4.    In the event that (i) the Longstop Date is reached and (ii) Clause 33.2 of the Schemes takes effect but no extension of the Schemes is agreed pursuant to that provision such that there is no Initial Distribution Date and the Schemes lapse, or if (iii) a Termination Notice is issued under Clause 32 of the Schemes, the Automatic Stay shall continue in force but the parties shall have liberty to apply as to the future conduct of this action

5.    There be no order as to costs.

Dated [    2014]


.......................................................          ..............................................................

Berwin Leighton Paisner LLP          Boodle Hatfield
Adelaide House          DX 53 Chancery Lane
London Bridge          Ref: ELW SJF 52344 1
London EC4R 9HA          **Solicitors for Isis Investments Limited (in**
**Solicitors for Zaria Global Limited**          **liquidation)**

CLAIM NO. HC09C03526

**IN THE HIGH COURT OF JUSTICE**

**CHANCERY DIVISION**

**Before [              ]**

**Dated [    2014]**

**B E T W E E N:**

**ZARIA GLOBAL LIMITED**

<u>**Claimant**</u>

-and-

**ISIS INVESTMENTS LIMITED (in liquidation)**

<u>**Defendant**</u>

---

**CONSENT ORDER**

---

Berwin Leighton Paisner LLP
Adelaide House
London Bridge
London EC4R 9HA
**Solicitors for Zaria Global Limited**
(Ref MSP/27860.1)
Tel: 020 3400 2287

## SCHEDULE 9

## POD CONSENT ORDER

CHP 10/0021

## IN THE HIGH COURT OF JUSTICE OF THE ISLE OF MAN

### CIVIL DIVISION

### CHANCERY PROCEDURE

**IN THE MATTER** of Isis Investments Limited (in liquidation)

and

**IN THE MATTER** of the Notices of Rejection of Proofs of Debt of Kaupthing hf., Kaupthing Finance ehf. and Oscatello Investments Limited (in liquidation) dated 20 February 2012

and

**IN THE MATTER** of the Notices of Appeal of Kaupthing hf., Kaupthing Finance ehf. and Oscatello Investments Limited (in liquidation) ("the Applicants") dated 5 October 2012

and

**IN THE MATTER** of a draft Consent Order dated <> [2014] ("the Consent Order")

At a Court held in Douglas
on <>  [2014]

**HIS HONOUR THE DEEMSTER DOYLE**
**HER MAJESTY'S FIRST DEEMSTER AND CLERK OF THE ROLLS**

UPON consideration of the Notices of Rejection, the Notices of Appeal, and the Consent Order AND UPON having noted the content of a letter dated <> 2014 ("the Letter") from Counsel for the Liquidator ("the Liquidator") of Isis Investments Limited (in liquidation) ("the Company") the content of which is supported by the Applicants AND UPON having noted that the Company has entered into a Scheme of Arrangement under Part 26 of the UK Companies Act 2006 ("the English Scheme") which was approved by the High Court of Justice of England and Wales by Order dated <> 2014 and a materially identical Scheme of Arrangement pursuant to section 152 of the Isle of Man Companies Act 1931 ("the Isle of Man Scheme") which was approved by the Court by Order dated <> 2014 (the English Scheme and the Isle of Man Scheme together being "the Schemes"), pursuant to which the Company has compromised certain claims made in its liquidation including the claims of the Applicants upon the terms set out in the Schemes AND having noted that the terms of the Isle of Man Scheme (a copy of which is annexed to the Letter) provide that the

claims made by the Applicants in the liquidation of the Company be admitted at their full value AND UPON the terms of the Consent Order being agreed between the Parties AND UPON consideration had thereof IT IS ORDERED BY CONSENT that-

1. Each of the Proofs of Debt lodged by Kaupthing hf. and Kaupthing Finance ehf. in the winding-up of the Company shall and hereby is admitted in full by the Liquidator;

2. The Notice of Appeal of Oscatello Investments Limited (in liquidation) is hereby withdrawn and the Rejection of the Proof of Debt is accepted on the basis that it has been agreed by the Liquidator that Oscatello Investments Limited (in liquidation) has a proprietary claim against the Company of at least £28 million, with the quantum of any further amounts to be determined in the English Court Proceedings referred to in the Schemes as the Revised 599 Proceedings;

3. There be no Order as to costs.


.................................................
Advocate for the Liquidator

.................................................
Advocate for Kaupthing hf. and
Kaupthing Finance ehf.


.................................................
Advocate for Oscatello Investments
Limited (in liquidation)


<>  [2014]


SEAL OF THE HIGH COURT

ISLE OF MAN COURTS
OF JUSTICE

2 2 DEC 2014        20

EXAMINED AND CERTIFIED A
TRUE COPY

DEPUTY ASSISTANT CHIEF REGISTRAR